UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

NAVIGATOR CAPITAL PARTNERS, L.P., on behalf of itself and all others similarly situated,

    Plaintiff,

- against -

BEAR STEARNS ASSET MANAGEMENT, BEAR, STEARNS SECURITIES CORP., THE BEAR STEARNS COMPANIES INC., BEAR, STEARNS & CO. INC., RALPH CIOFFI, RAYMOND MCGARRIGAL AND MATTHEW TANNIN,

    Defendants,

- and -

BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P.,

    Nominal Defendant.

-----------------------------------------------------------x

**07 CIV 7783**

Case No. _____ Civ. _____

**NOTICE OF REMOVAL**

    PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332, 1441, & 1453, and 15 U.S.C. §§ 77p(c) & 78bb(f)(2), Bear Stearns Asset Management ("BSAM"), Bear, Stearns Securities Corp. ("BSSC"), The Bear Stearns Companies Inc. ("BSC"), Bear, Stearns & Co. Inc. ("BS&Co."), Ralph Cioffi, Raymond McGarrigal, and Matthew Tannin (collectively, "Defendants") hereby submit this Notice of Removal and in support thereof state as follows.

## BACKGROUND

1. On or about August 6, 2007, Plaintiff Navigator Capital Partners, L.P. ("Plaintiff") filed this action in the Supreme Court of the State of New York, County of New York, which the clerk of that Court assigned Index No. 07-602663 (the "Action").[1]

2. On or about August 13, 2007, Plaintiff served on Defendants BSAM, BSSC, BSC, BS&Co., Raymond McGarrigal, and Matthew Tannin, and on or about August 29, 2007, Plaintiff served on Defendant Ralph Cioffi, a Summons and a Complaint styled as a "Class Action and Verified Derivative Complaint," attached hereto as Exhibit A.

3. In the Action, Plaintiff purports to bring both a class action on behalf of itself and a putative class consisting of purchasers of limited partnership interests in the Bear Stearns High-Grade Structured Credit Strategies, L.P. (the "Domestic Feeder Fund") from August 1, 2006 through July 18, 2007, and a derivative action on behalf of the Domestic Feeder Fund.

4. The Complaint alleges that the Domestic Feeder Fund "invested substantially all [of its] assets" into a "Master Fund," Compl. ¶ 34, as did two other feeder funds, the Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd., and the Bear Stearns High-Grade Structured Credit Strategies (Overseas) Yen Unit Trust (collectively, the "Offshore Feeder Funds"), see id. ¶¶ 35-36.

5. The "Master Fund," i.e., the Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., was the hedge fund that engaged in all of the trading that is the subject of the Action. See id. ¶¶ 34-35.

---

[1] The Action as originally captioned by Plaintiff contained minor errors of punctuation in identifying the corporate Defendants. Defendants have reflected the corporate entities' correct names in the caption to this Notice of Removal, and in the accompanying filings to this Court.

6. The Complaint alleges that BSAM was the General Partner of the Domestic Feeder Fund, which is a Delaware Limited Partnership, and that the Master Fund and the Offshore Feeder Funds are organized under the laws of the Cayman Islands. *See id.* ¶¶ 15, 35-36.

7. The Complaint alleges that as of March 31, 2007, the Domestic Feeder Fund controlled nine hundred and twenty-five million dollars (U.S. $925,000,000.00) of investor capital, *see id.* ¶ 61, and that, in July 2007, BSC informed Plaintiff and other investors that "preliminary estimates show there is . . . very little value left for the Investors in the [Master] Fund as of June 30, 2007," *id.* ¶ 63 (quoting July 18, 2007 Letter from BSC) (emphasis from Complaint omitted). The Complaint does not purport to assert any claims on behalf of the Master Fund itself or on behalf of investors in either Offshore Feeder Fund.

8. The Complaint alleges that certain Defendants—BSAM, Ralph Cioffi, Matthew Tannin, and Raymond McGarrigal (collectively, the so-called "Management Defendants")—invested the Domestic Feeder Fund's assets through the Master Fund. It alleges that the Management Defendants represented that they would regularly monitor and adequately hedge risk, but failed to disclose to investors that they were not: (1) sufficiently monitoring and assessing the credit risk of the Master Fund's investments; (2) determining the frequency and severity of defaults of the Master Fund's portfolio; (3) developing and implementing credit enhancement mechanisms to cause cash flow to be diverted away from riskier investments; or (4) otherwise adequately engaging in hedging to minimize risks. *See, e.g., id.* ¶ 55; ¶ 71.

9. Based on these allegations that, among other things, the Management Defendants omitted from disclosure material facts to investors, the Complaint asserts four causes of action: two putative class action claims and two purported derivative claims. The two class action

claims are for breach of fiduciary duty against the Management Defendants, and for aiding and abetting a breach of fiduciary duty against BSC, BSSC, and BS&Co. The two derivative claims, which purport to be brought on behalf of the Domestic Feeder Fund, parallel the direct claims and assert one claim for breach of fiduciary duty against the Management Defendants, and the other for aiding and abetting a breach of fiduciary duty against BSC, BSSC, and BS&Co. *See id.* ¶¶ 68-102.

## BASES FOR REMOVAL

### I.  Federal Question Jurisdiction

10.  The Action is removable on the basis of federal question jurisdiction pursuant to the general removal statute, 28 U.S.C. § 1441(b), and to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(c), 78bb(f)(2).[2]

11.  SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging --
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> [*Id.* § 78bb(f)(1).]
>
> ...
>
> Any covered class action brought in any State court involving a

---

[2]  SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 "in substantially identical ways." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 n.6 (2006). For the sake of simplicity, Defendants in the remainder of this pleading cite only the amended 1934 Act.

4

> covered security . . . shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to [federal preemption].

*Id.* § 78bb(f)(2); *see Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003) ("The clear and unambiguous language convinces us that SLUSA was intended to completely preempt the field of certain types of securities class actions by essentially converting a state law claim into a federal claim and creating federal jurisdiction . . . ." (emphasis omitted)); *see also Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("No matter how an action is pleaded, if it is a 'covered class action . . . involving a covered security,' removal is proper."); *In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) ("Congress specifically directed the courts to interpret SLUSA in an expansive fashion.").

12. The Action meets each of the five elements of SLUSA's removal provision.

13. First, the Action is a "covered class action" under SLUSA. A "covered class action" is defined, in relevant part, to include "any single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members[.]" *Id.* § 78bb(f)(5)(B)(i)(II). The Complaint alleges that the class is so numerous that joinder of all members is impractical, seeks damages for a putative class of "others similarly situated," and alleges that "there are questions of law and fact common to all members of the Class which predominate over any questions affecting only individual Class members." Compl. ¶ 27(b).

14. Second, the Action is "based upon the statutory or common law of [a] State," 15 U.S.C. § 78bb(f)(1), because Plaintiff seeks to bring all of the claims under Delaware law. *See* Compl. ¶¶ 68-102.

5

15. Third, the Complaint asserts a *"misrepresentation or omission of . . . material fact[s]* in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (emphasis added). According to the Complaint, Defendants allegedly "systematically and continuously failed to disclose to investors" that Defendants "were not sufficiently monitoring and adequately assessing the . . . risk inherent in the Partnership's investments" or "adequately engaging in hedging techniques." Compl. ¶¶ 3, 55, 71; *see also id.* ¶ 67 ("Defendants . . . fail[ed] to disclose that they had not monitored and hedged . . . positions as they had committed themselves to do . . . ."). The Complaint alleges that, but for the Management Defendants' failure to disclose these facts, "Plaintiff and other investors . . . would have taken steps to avoid the massive losses they suffered." *Id.* ¶ 73.

16. Fourth, the Complaint's alleged misrepresentations or omissions of material fact are made *"in connection with* the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1) (emphasis added). To satisfy SLUSA's "in connection with" requirement, "it is enough that the fraud alleged coincide with a securities transaction—whether by the plaintiff or by someone else." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (internal quotation marks omitted); *see also id.* at 86 (recognizing the "presumption that Congress envisioned a broad construction" of SLUSA's "in connection with" requirement). The Complaint alleges that the failures to disclose were made in connection with the trading of equity securities in the Master Fund with money invested by members of the putative class into the Domestic Feeder Fund. *See* Compl. ¶¶ 34, 47, 49-53, 55.

17. Fifth, the Complaint's alleged misrepresentations are made "in connection with the purchase or sale of a *covered security*." 15 U.S.C. § 78bb(f)(1) (emphasis added). SLUSA, in relevant part, defines a "covered security" as a security that is

6

> (A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities);
>
> (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A)

*Id.* §§ 77r(b)(1); 78bb(f)(5)(E).

18.  The Action clearly pertains to "a covered security." The Complaint alleges that "Defendants assured investors that risk would be minimized through the use of" various "strategies" for "hedging purposes," including the purchase of "futures and forward contracts" and "equity securities." Compl. ¶ 51 (internal quotation marks omitted). Such securities are listed on national securities exchanges and are thus "covered securities." In addition, the Fund's private placement memorandum—referenced in the Complaint, *see, e.g., id.* ¶¶ 29, 32—stated that the Domestic Feeder Fund "may invest in . . . equity securities." August 2006 Bear Stearns High-Grade Structured Credit Strategies, L.P. Confidential Private Placement Memorandum (attached hereto as Ex. B), at 11; *see also id.* at 14 ("The [Domestic Feeder Fund] will also use other instruments and strategies to hedge . . . . includ[ing] options, futures and short positions on various financial indices or individual securities . . . ."). Although SLUSA requires only that the alleged fraud be in connection with "*a* covered security," 15 U.S.C. § 78bb(f)(1) (emphasis added), during the putative class period, the Domestic Feeder Fund's assets were invested through the Master Fund in multiple positions consisting of millions of dollars in equity securities listed on national exchanges. *See* Declaration of Robert Ervin (attached hereto as Ex. C), ¶¶ 2-4 (identifying, for August 1, 2006, December 31, 2006, and April 30, 2007, equity securities in the Master Fund's portfolio that were listed on the New York Stock Exchange, the

American Stock Exchange and/or NASDAQ, including for each of those three sample dates positions in such securities of greater than $5 million and as of December 31, 2006 two such positions of greater than $13 million).

19. SLUSA's terms are clear and mandatory: "Any covered class action brought in any State court involving *a covered security . . . shall be removable.*" 15 U.S.C. § 78bb(f)(2) (emphasis added). Thus, a transaction needs not concern only covered securities for SLUSA removal to apply. "When a claim concerns a transaction that involves both covered and non-covered securities as alleged, the entire claim is subject to removal under SLUSA." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 n.21 (C.D. Cal. 2002). Because the Complaint makes allegations with respect to transactions involving covered securities, the Action is removable under SLUSA.

## II.  Diversity Jurisdiction

20. Even if the Action is not removable under SLUSA, it is removable in the alternative on the basis of diversity jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA").[3] Under CAFA, an action "may be removed to a district court of the United States in accordance with [title 28] section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b). CAFA provides that the federal district courts "shall have original jurisdiction of any civil action" that "is a class action in which" two elements are satisfied: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (2) "(A) any member of a class of

---

[3] Pub. L. No. 109-2, 119 Stat. 4, *codified as amended* at various sections of Title 28 of the United States Code.

plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." *Id.* § 1332(d)(2) (spacing altered).

21. The Action satisfies each of these elements.

22. First, Plaintiff has brought a "class action" as defined by CAFA. CAFA defines the term "class action" as "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B). New York CPLR § 901, the statute pursuant to which Plaintiff purports to proceed in state court on behalf of the putative class, *see* Compl. ¶ 26, is modeled directly on Federal Rule of Civil Procedure 23.

23. Second, the matter in controversy exceeds five million dollars. Under CAFA, that figure is calculated on an aggregated basis and need not be the amount of damages claimed by any single putative class member. 28 U.S.C. § 1332(d)(6). Plaintiff's putative class action claims are on behalf of holders of interest in the Domestic Feeder Fund and allege harms stemming from a collapse in the Fund's value—from, for example, "$925 million of investor capital . . . through March 31, 2007," Compl. ¶ 61—to an amount not specified with precision but described by the Complaint, quoting a July 19, 2007 letter from BSC, as "very little." *Id.* ¶ 63; *see also* Declaration of Robert Ervin (attached hereto as Ex. C), ¶¶ 5-6 (stating that as of May 31, 2007, the Domestic Feeder Fund's Net Asset Value was $159,900,711, and that "[a]lthough the Domestic Feeder Fund has not sent out NAV statements for any months subsequent to May 2007, I know that the NAV for the Domestic Feeder Fund has eroded

substantially since the NAV statement for May 31, 2007 was sent to investors in the Domestic Feeder Fund").

24.     Third, CAFA's requirement that "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), is satisfied. Defendants are all citizens of the States of Delaware, New Jersey, and/or New York.[4] The class of holders of interest in the Domestic Feeder Fund between August 1, 2006 and July 18, 2007 included residents of a wide variety of States other than Defendants' states of citizenship, including Alabama, California, Colorado, Florida, Georgia, Idaho, Illinois, Massachusetts, Maryland, Michigan, New Hampshire, Pennsylvania, Tennessee, Texas, Utah, Virginia, and Wyoming. *See* Declaration of Rajan Govindan (attached hereto as Ex. D), ¶ 3.

25.     Defendants have thus satisfied the *prima facie* requirements for CAFA removal. *See* 28 U.S.C. §§ 1332(d), 1453; *see also, e.g., Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("once federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception").

26.     None of the exceptions to CAFA removal jurisdiction applies to the Action.

27.     First, the exceptions for cases involving putative classes consisting largely of in-state residents do not apply because, based on a review of data from three sample dates (one each from the beginning, middle and end parts of the putative class period), less than one-third of account holders in the Domestic Feeder Fund during the class period, *see* Declaration of Rajan

---

[4] Pursuant to Local Rule 81.1, Defendants represent that: BSAM is a New York corporation with its principal office in the State of New York; BSC, BSSC and BS&Co. are each Delaware corporations with their principal places of business in New York; Ralph Cioffi resides in Tenafly, New Jersey; Raymond McGarrigal resides in Suffern, New York; and Matthew Tannin resides in New York, New York.

Govindan (attached hereto as Ex. D), ¶ 3, and therefore less than one-third putative class members, were New York residents. *See* 28 U.S.C. § 1332(d)(4) (providing for mandatory abstention from the exercise of CAFA removal jurisdiction where two-thirds of the putative class members are citizens of the forum state); *id.* § 1332(d)(3) (providing for discretionary abstention from the exercise of CAFA removal, subject to a specified multi-factor test, where between one-third and two-thirds of the putative class members are citizens of the forum state).

28. Second, CAFA's exception for cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief," *id.* § 1332(d)(5)(A), does not apply because all the parties to the Action are persons or non-governmental entities.

29. Third, none of the subject matter jurisdiction exceptions to CAFA removal applies. Title 28, Section 1332(d)(9), provides that original diversity jurisdiction:

> shall not apply to any class action that solely involves a claim (A) concerning a covered security as defined under [section] 16(f)(3) of the Securities Act of 1933 and section 28(f)(5)(E) of the Securities Exchange Act of 1934; (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 and the regulations issued thereunder).

*Id.* § 1332(d)(9) (citations and footnote omitted).

30. To promote CAFA's purpose of curbing "[a]buses in class actions [that] undermine the National judicial system," *id.* § 1711(a)(4), particularly with respect to "interstate class actions" that, like the Action, "involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy," S. Rep. No. 109-14,

at 27 (2005), Congress directed that the three subject matter exceptions in Section (d)(9) "be narrowly construed," *id.* at 45.

31. In evaluating whether any of CAFA's subject matter exceptions applies, this Court must look to the Complaint's substance, and not merely to Plaintiff's styling of the claims. *See, e.g., Davis v. Chase Bank, U.S.A., N.A.*, 453 F. Supp. 2d 1205, 1209 (C.D. Cal. 2006).

32. None of CAFA's three Section (d)(9) subject matter exceptions applies.

33. The Court need not even consider whether the first Section (d)(9) exception—for class actions that "solely involve[] a claim . . . concerning a covered security," 28 U.S.C. § 1332(d)(9)(A)—applies unless this Court has already removed the Action under SLUSA. Even then, this exception does not apply because the Complaint's allegations extend beyond claims concerning a covered security.[5] While the Complaint's alleged misrepresentations or omissions of material facts "coincide" with a covered security, *Dabit*, 547 U.S. at 85 (internal quotation marks omitted), the Complaint purports to charge breach of fiduciary duty with respect to covered and non-covered securities alike.

34. CAFA's second subject matter exception—for a class action that solely involves a claim that "relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized," 28 U.S.C. § 1332(d)(9)(B)—does not apply.

---

[5] Congress's inclusion of the "solely" language in Section 1332(d)(9) as it modified Section (d)(9)(A) during CAFA's legislative process was purposeful. CAFA's subject-matter exceptions first appeared in the proposed "Interstate Class Action Jurisdiction Act of 1999" ("ICAJA"). H.R. 1875, 106th Cong. § 3(b) (1999). Whereas the ICAJA version of what is now Section (d)(9)(A) exempted "*any* claim concerning a covered security" (emphasis added), the version Congress chose to enact in CAFA only exempts a class action if it "*solely* involves" such a claim. 28 U.S.C. § 1332(d)(9)(A) (emphasis added). Congress thus deliberately narrowed Section (d)(9)(A)'s scope.

12

The "internal affairs doctrine" exception concerns structural matters of corporate governance. S. Rep. No. 109-14, at 45 (2005). Corporate governance-specific matters include "steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares." *Restatement (Second) of Conflict of Laws* § 302 cmt. A (1971). The Complaint focuses instead on Defendants' allegedly inadequate and misleading disclosures about trading risks and the effectiveness of hedging in connection with their investments. *See, e.g.*, Compl. ¶¶ 49-53, 57-59. These non-disclosure allegations in the Complaint also pertain to trading and hedging at the Master Fund level and bear not at all on the corporate governance of the Domestic Feeder Fund itself.

35. Lastly, the Complaint makes no attempt to allege that any of the non-Management Defendants—BSC, BSSC or BS&Co.—played any role in managing or directing the internal affairs of the Domestic Feeder Fund (or even the Master Fund for that matter).

36. Section (d)(9)'s third subject matter exception, for any class action solely based on a claim "that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security," 28 U.S.C. § 1332(d)(9)(C), does not apply. The plain language of this exception demonstrates that it concerns disputes regarding the *terms* of a security because the documents establishing such terms for a given security are what establish the "rights, duties .. and obligations" created by the security. *Id.*; *see also* S. Rep. No. 109-14, at 45 (2005) (indicating that the exception encompasses "disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise,

such as a certificate of incorporation or a certificate of designations"); *but see Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006), *appeal docketed*, No. 06-5703 (2d Cir. argued April 24, 2007). The Complaint's allegations here do not address the terms of the purported security that Plaintiff purchased (the limited partnership interests in the Domestic Feeder).

37. Instead, the gravamen of the Complaint concerns Defendants' alleged misrepresentations and inadequate disclosures during the operation of the Master Fund, events that occurred after the issuance of the Domestic Feeder Fund's formative documents and are unrelated to any dispute over those formative documents' meaning or scope.

## CONCLUSION

38. For the reasons set forth above, removal of the Action to this Court is proper under SLUSA as well as under CAFA.

39. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within 30 days after Defendants received a copy of the initial pleading setting forth the claims for relief on which the Action is based.

40. Pursuant to 28 U.S.C. § 1446(a), Defendants represent that apart from the Summons and Complaint attached hereto as Exhibit A, Defendants have received no other process, pleadings, motions or orders in the Action.

41. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly file a true and correct copy of this Notice with the Clerk of Court for the Supreme Court of the State of New York, County of New York, and serve Plaintiff's counsel with a copy of this Notice of Removal.

42. A true and correct copy of the Certificate of Service for this Notice of Removal is attached hereto as Exhibit E.

43.     For the foregoing reasons, this Court has jurisdiction over this matter. The United States District Court for the District of New York is the federal judicial district embracing the Supreme Court of New York, County of New York, where the Action was originally filed. Accordingly, the Action is properly removed from the Supreme Court of New York, County of New York, to this Court.

Respectfully Submitted,

By:

Dated: August 31, 2007

*Daniel Richenthal*
Charles C. Platt
Peter K. Vigeland
Daniel C. Richenthal
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

Attorneys for Defendants
BEAR STEARNS ASSET MANAGEMENT;
BEAR, STEARNS SECURITIES CORP.;
THE BEAR STEARNS COMPANIES INC.: and
BEAR, STEARNS & CO. INC.

Dated: August 31, 2007

_/s/ Ed Little /gn_
Edward J.M. Little
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6400

Attorney for Defendant
RALPH CIOFFI

Dated: August 31, 2007

*Catherine L. Redlich*
Catherine L. Redlich
DRISCOLL & REDLICH
521 Fifth Avenue, Suite 3300
New York, New York 10175
(212) 986-4030

Attorney for Defendant
RAYMOND MCGARRIGAL

```
```

Dated: August 31, 2007

/s/ Nina Beattie
Nina Beattie
Theresa Trzaskoma
BRUNE & RICHARD LLP
80 Broad Street
New York, New York 10004
(212) 668-1900

Attorneys for Defendant
MATTHEW TANNIN