Exhibit B

For the exclusive use of: _____          Memorandum No.: ____

**CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM**

# BEAR STEARNS
# HIGH-GRADE STRUCTURED CREDIT
# STRATEGIES, L.P.

*Limited Partnership Interests*

---

THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") OF BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P. (THE "PARTNERSHIP") DESCRIBED IN THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM (THE "MEMORANDUM") HAVE NOT BEEN REGISTERED WITH OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES AGENCY. THIS IS A PRIVATE OFFERING PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), RULE 506 THEREUNDER, AND APPLICABLE STATE SECURITIES LAWS. NEITHER THE SEC NOR ANY STATE AGENCY HAS PASSED UPON THE VALUE OF THESE SECURITIES, MADE ANY RECOMMENDATIONS AS TO THEIR PURCHASE, APPROVED OR DISAPPROVED THIS OFFERING, OR PASSED UPON THE ADEQUACY OR ACCURACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

---

**BEAR STEARNS ASSET MANAGEMENT INC.**
*General Partner*
383 Madison Avenue
New York, New York  10179

**August 2006**

## CFTC NOTICE

BEAR STEARNS ASSET MANAGEMENT INC. IS EXEMPT FROM, AND MAY NOT MAINTAIN, REGISTRATION WITH THE COMMODITY FUTURES TRADING COMMISSION ("COMMISSION") AS A COMMODITY POOL OPERATOR AND THEREFORE, UNLIKE A NON-EXEMPT COMMODITY POOL OPERATOR, IS NOT REQUIRED TO DELIVER A DISCLOSURE DOCUMENT AND A CERTIFIED ANNUAL REPORT TO PARTICIPANTS IN THE POOL. THE POOL IS OPERATED PURSUANT TO THE FOLLOWING CRITERIA: (I) INTERESTS IN THE POOL ARE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT, AND SUCH INTERESTS MAY NOT BE OFFERED AND SOLD THROUGH A PUBLIC OFFERING IN THE UNITED STATES; AND (II) (A) EACH NATURAL PERSON PARTICIPANT (INCLUDING SUCH PERSON'S SELF-DIRECTED EMPLOYEE BENEFIT PLAN, IF ANY), IS A "QUALIFIED ELIGIBLE PERSON", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 4.7(A)(2); AND (B) EACH NON-NATURAL PERSON PARTICIPANT IS A "QUALIFIED ELIGIBLE PERSON", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 4.7, OR AN "ACCREDITED INVESTOR", AS THAT TERM IS DEFINED IN 17 C.F.R. SECTION 230.501(A)(1)-(3), (A)(7) AND (A)(8).

## NOTICES TO ALL INVESTORS

INTERESTS ARE SPECULATIVE AND INVOLVE A SUBSTANTIAL RISK OF LOSS, INCLUDING THE POSSIBILITY OF THE TOTAL LOSS OF AN INVESTMENT THEREIN. CONSEQUENTLY, THEY ARE AVAILABLE ONLY TO PERSONS WILLING AND ABLE TO BEAR SUCH RISK. SEE "CERTAIN RISK FACTORS". A PROSPECTIVE INVESTOR SHOULD CAREFULLY READ THIS MEMORANDUM TO EVALUATE THE RISKS INVOLVED IN LIGHT OF SUCH INVESTOR'S INVESTMENT OBJECTIVES AND FINANCIAL RESOURCES.

THE INTERESTS ARE NOT INSURED OR GUARANTEED BY THE UNITED STATES FEDERAL DEPOSIT INSURANCE CORPORATION OR ANY OTHER GOVERNMENTAL AGENCY. THE INTERESTS ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF ANY BANK OR OTHER FINANCIAL INSTITUTION, AND ARE NOT GUARANTEED BY ANY BANK OR OTHER FINANCIAL INSTITUTION. THE INTERESTS ARE SUBJECT TO INVESTMENT RISKS, INCLUDING THE POSSIBLE LOSS OF THE ENTIRE AMOUNT INVESTED.

THE INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. IN ADDITION, INTERESTS ARE NOT TRANSFERABLE WITHOUT THE CONSENT OF BEAR STEARNS ASSET MANAGEMENT INC., THE GENERAL PARTNER OF THE PARTNERSHIP (THE "GENERAL PARTNER"). INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF AN INVESTMENT IN INTERESTS FOR AN INDEFINITE PERIOD OF TIME.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR JURISDICTION IN WHICH SUCH AN OFFER OR SOLICITATION IS UNLAWFUL.

THIS MEMORANDUM CONSTITUTES AN OFFER ONLY IF DELIVERY OF THIS MEMORANDUM IS PROPERLY AUTHORIZED BY THE GENERAL PARTNER OR AN APPROVED PLACEMENT AGENT. THIS MEMORANDUM HAS BEEN PREPARED BY THE GENERAL PARTNER SOLELY FOR THE BENEFIT OF PERSONS INTERESTED IN THE PROPOSED SALE OF INTERESTS, AND ANY REPRODUCTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS WITHOUT THE PRIOR WRITTEN CONSENT OF THE GENERAL PARTNER IS PROHIBITED. ANY CONTRARY ACTION MAY PLACE THE PERSON OR PERSONS TAKING SUCH ACTION IN VIOLATION OF STATE AND FEDERAL SECURITIES LAWS. THE OFFEREE AGREES TO RETURN THIS MEMORANDUM TO THE GENERAL PARTNER UPON REQUEST.

DURING THE COURSE OF THIS OFFERING AND PRIOR TO SALE, EACH OFFEREE OF INTERESTS AND ITS OFFEREE REPRESENTATIVE(S), IF ANY, ARE INVITED TO QUESTION THE GENERAL PARTNER CONCERNING THE TERMS AND CONDITIONS OF THE OFFERING AND TO OBTAIN ADDITIONAL INFORMATION, TO THE EXTENT THE GENERAL PARTNER HAS SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EXPENSE OR EFFORT, CONCERNING THE OFFERING OR TO VERIFY THE ACCURACY OF INFORMATION CONTAINED IN THIS MEMORANDUM. SUBJECT TO THE FOREGOING, ANY REPRESENTATION OR INFORMATION NOT CONTAINED HEREIN MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE PARTNERSHIP OR ITS GENERAL PARTNER SINCE NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY SUCH REPRESENTATIONS OR TO PROVIDE ANY SUCH INFORMATION. THE DELIVERY OF THIS MEMORANDUM DOES NOT IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY DATE SUBSEQUENT TO THE DATE ON THE COVER HEREOF.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS LEGAL OR TAX ADVICE. EACH PROSPECTIVE INVESTOR SHOULD CONSULT WITH PROFESSIONAL ADVISERS AS TO LEGAL, TAX, ACCOUNTING AND RELATED CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP AND AS TO THE SUITABILITY OF AN INVESTMENT IN THE PARTNERSHIP IN LIGHT OF SUCH INVESTOR'S INDIVIDUAL CIRCUMSTANCES.

EXCEPT AS EXPRESSLY CONTEMPLATED BY THIS MEMORANDUM, NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED HEREIN IN CONNECTION WITH THE MATTERS DESCRIBED HEREIN, AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS MEMORANDUM, A PROSPECTIVE INVESTOR (AND EACH EMPLOYEE, REPRESENTATIVE OR OTHER AGENT OF A PROSPECTIVE INVESTOR) MAY DISCLOSE TO ANY AND ALL PERSONS, WITHOUT LIMITATION OF ANY KIND, THE TAX TREATMENT AND TAX STRUCTURE OF THE TRANSACTIONS DESCRIBED IN THIS MEMORANDUM AND ALL MATERIALS OF ANY KIND THAT ARE PROVIDED TO THE PROSPECTIVE INVESTOR RELATING TO SUCH TAX TREATMENT AND TAX STRUCTURE (AS SUCH TERMS ARE DEFINED IN TREASURY REGULATION SECTION 1.6011-4). THIS AUTHORIZATION OF TAX DISCLOSURE IS RETROACTIVELY EFFECTIVE TO THE COMMENCEMENT OF DISCUSSIONS WITH PROSPECTIVE INVESTORS.

THIS MEMORANDUM CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF THE INFORMATION PURPORTED TO BE SUMMARIZED HEREIN; HOWEVER, THIS IS A SUMMARY ONLY AND DOES NOT PURPORT TO BE COMPLETE. ACCORDINGLY, REFERENCE IS MADE TO THE AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT OF THE PARTNERSHIP (THE "PARTNERSHIP AGREEMENT") AND THE OTHER AGREEMENTS, DOCUMENTS, STATUTES AND REGULATIONS REFERRED TO HEREIN FOR THE EXACT TERMS OF SUCH PARTNERSHIP AGREEMENT AND OTHER AGREEMENTS, DOCUMENTS, STATUTES AND REGULATIONS. CAPITALIZED TERMS NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS ASCRIBED TO THEM IN THE PARTNERSHIP AGREEMENT.

## SPECIAL NOTICE TO FLORIDA INVESTORS

IF THE INVESTOR IS NOT A BANK, A TRUST COMPANY, A SAVINGS INSTITUTION, AN INSURANCE COMPANY, A DEALER, AN INVESTMENT COMPANY AS DEFINED IN THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED, A PENSION OR PROFIT-SHARING TRUST, OR A QUALIFIED INSTITUTIONAL BUYER (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT), THE INVESTOR ACKNOWLEDGES THAT ANY SALE OF AN INTEREST TO THE INVESTOR IS VOIDABLE BY THE INVESTOR EITHER WITHIN THREE DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY THE INVESTOR TO THE ISSUER, OR AN AGENT OF THE ISSUER, OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO THE INVESTOR, WHICHEVER OCCURS LATER.

# BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P.

## DIRECTORY

**Partnership**
Bear Stearns High-Grade Structured Credit Strategies, L.P.
c/o Bear Stearns Asset Management Inc.
383 Madison Avenue
New York, New York 10179

**Placement Agents**
Bear, Stearns & Co. Inc., certain of its affiliates
and certain non-affiliated selling agents

**General Partner of the Partnership and Investment Manager of the Master Fund**
Bear Stearns Asset Management Inc.
383 Madison Avenue
New York, New York 10179

**Auditors of the Partnership**
Deloitte & Touche
1700 Market Street
Philadelphia, Pennsylvania 19103

**Counsel to the General Partner**
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019

**Administrator, Registrar and Transfer Agent of the Partnership**
PFPC Inc. (Delaware)
301 Bellevue Parkway
Wilmington, Delaware 19809

**Administrator, Registrar and Transfer Agent of the Master Fund**
PFPC Inc. (Delaware)
301 Bellevue Parkway
Wilmington, Delaware 19809

**Prime Broker to the Master Fund**
Bear, Stearns Securities Corp.
One Metrotech Center North
Brooklyn, New York 11201

# BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P.

## TABLE OF CONTENTS

**Section**           **Page**

INTRODUCTION .................................................................................................................................. 1

SUMMARY OF PRINCIPAL TERMS ................................................................................................. 3

THE INVESTMENT PROGRAM ....................................................................................................... 11
    Investment Objective ................................................................................................................ 11
    Structure of the Partnership ..................................................................................................... 11
    Investment Strategy ................................................................................................................. 11
    Leverage and Credit Hedges ................................................................................................... 13
    Leverage of the Repackaging Vehicle Junior Interests ........................................................... 14
    Permitted Investments ............................................................................................................. 14

CERTAIN RISK FACTORS ............................................................................................................... 15
    Potential Loss of Investment .................................................................................................. 15
    Leverage .................................................................................................................................. 15
    CDO Investment Related Risks .............................................................................................. 16
    Risks Related to an Investment in Repackaging Vehicle Junior Interests ............................. 18
    Other Investment Related Risks ............................................................................................. 19
    Restrictions on Voting Rights of the Partnership as Holder of Repackaging Vehicle Junior
        Interests ............................................................................................................................ 22
    Certain Risks Related to the General Partner ......................................................................... 22
    Certain Risks Related to Partnership's Structure .................................................................... 24
    Other Risks .............................................................................................................................. 25

CONFLICTS OF INTEREST .............................................................................................................. 26
    Compensation ......................................................................................................................... 26
    Appointment ........................................................................................................................... 26
    Advisory Time ........................................................................................................................ 26
    Other Clients; Allocation of Investment Opportunities .......................................................... 26
    Proprietary Trading ................................................................................................................. 27
    Brokerage Placement Practices ............................................................................................... 28
    Brokerage Commissions/Soft Dollars .................................................................................... 28
    Principal Trades and Interested Party Transactions; Cross Transactions .............................. 29
    Investment Manager's Role as Repackaging Vehicle Collateral Manager ............................ 30
    Asset Valuation ....................................................................................................................... 30
    Material Non-Public Information ........................................................................................... 30
    Borrowing Arrangements ....................................................................................................... 30

THE GENERAL PARTNER AND INVESTMENT MANAGER ..................................................... 31
    General Partner of the Partnership .......................................................................................... 31
    Removal of the General Partner .............................................................................................. 32
    Affiliated Investors ................................................................................................................. 32
    Liability and Indemnification of the General Partner under the Partnership Agreement ...... 32
    Investment Manager; the Investment Management Agreement ............................................. 33

THE MASTER FUND ......................................................................................................................... 34
    Capitalization .......................................................................................................................... 34

Master Fund Directors; Delegation .................................................................................. 34
Certain Provisions of the Master Fund's Articles of Association Relating to Directors ... 35
Indemnification of Directors ............................................................................................. 36
Other Provisions Relating to the Directors ....................................................................... 36
Transactions between the Master Fund and the Investment Manager or its Affiliates .... 36

THE ADMINISTRATOR .......................................................................................................... 37

FEES AND EXPENSES ............................................................................................................. 37
Organizational and Initial Offering Costs ........................................................................ 37
Advisory Fee ...................................................................................................................... 37
Operational Costs .............................................................................................................. 38
Administration Fees ........................................................................................................... 38
Selling Commissions .......................................................................................................... 38
Waiver; Rebates ................................................................................................................. 38

BROKERAGE PRACTICES ..................................................................................................... 39

WITHDRAWALS, DISTRIBUTIONS AND ASSIGNMENTS ............................................... 41
Withdrawals ....................................................................................................................... 41
Compulsory Withdrawals ................................................................................................... 42
Suspension of Withdrawals and Payment of Proceeds ..................................................... 43
Distributions ...................................................................................................................... 43
Assignments ....................................................................................................................... 43

ALLOCATION OF PROFIT AND LOSS ................................................................................. 44
Partnership Accounting ..................................................................................................... 44
Determination of Net Asset Value ..................................................................................... 45
Special Allocations ............................................................................................................ 47
Profit Share ........................................................................................................................ 47
Tax Allocations .................................................................................................................. 47

CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS ......................................... 48
Section 475(f) Election ...................................................................................................... 49
Limitations on Deductibility of Partnership Losses by Partners ..................................... 49
Limitations on Deductibility of Certain Expenses ........................................................... 49
Limitations on Deductibility of Interest on Investment Indebtedness ............................. 50
Syndication Fees ................................................................................................................ 50
Passive Foreign Investment Companies and Controlled Foreign Corporations ............. 51
Tax Exempt Investors ......................................................................................................... 52
Partnership Audits ............................................................................................................. 53
State and Local Taxes ........................................................................................................ 53

INVESTMENTS BY EMPLOYEE BENEFIT PLANS ............................................................ 53
In General .......................................................................................................................... 53
Restrictions on Investments by Benefit Plan Investors .................................................... 54
Ineligible Purchasers ......................................................................................................... 55

PLAN OF DISTRIBUTION ....................................................................................................... 55

SUBSCRIPTION PROCEDURE ............................................................................................... 55

PRIVACY STATEMENT ........................................................................................................... 56

MISCELLANEOUS .................................................................................................................... 57

Side Letter Arrangements ................................................................................................. 57
Reports to Limited Partners .............................................................................................. 57
Amendments to the Partnership Agreement ..................................................................... 57
Available Documents ........................................................................................................ 58
Inquiries ............................................................................................................................. 58

ANNEX A – AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT

ANNEX B – SUBSCRIPTION AGREEMENT

ANNEX C – FORM ADV, PART II OF BEAR STEARNS ASSET MANAGEMENT INC.

## INTRODUCTION

Bear Stearns High-Grade Structured Credit Strategies, L.P. is a Delaware limited partnership (the "Partnership") formed on August 26, 2003. The primary objective of the Partnership is to seek high current income and capital appreciation relative to LIBOR. There can be no assurance that the Partnership will achieve this objective or that substantial losses will not be incurred. Bear Stearns Asset Management Inc., a corporation formed under the laws of the State of New York ("BSAM" or the "General Partner"), serves as the general partner of the Partnership. BSAM also serves as the investment manager (in such capacity, the "Investment Manager") to Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (the "Master Fund"), an exempted company incorporated under the laws of the Cayman Islands. BSAM is the asset management subsidiary of The Bear Stearns Companies Inc. ("BSC") and, as described further herein, is an affiliate of Bear, Stearns & Co. Inc. ("Bear Stearns"), a broker-dealer subsidiary of BSC and of Bear Stearns Securities Corp., the Partnership's prime broker and wholly-owned subsidiary of BSC. All investment and trading decisions on behalf of the Master Fund will be made by the Investment Manager.

Mr. Ralph Cioffi, Mr. Matthew Tannin and Mr. Ray McGarrigal are primarily responsible for directing the Investment Manager's investments for the Master Fund. The Partnership intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Partnership intends to seek investment opportunities beyond the structured finance asset category. As part of its strategy, the Partnership intends to gain exposure, on a non-recourse leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as collateralized debt obligations "CDOs") that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). The Partnership will make investments in other structured finance assets including asset-backed securities ("ABSs"), synthetic ABSs, mortgage-backed securities ("MBSs") and global structured asset securitizations. The Partnership will make investments (or otherwise take on risk) in both the traditional "cash" market and the derivatives market. In addition, the Partnership may invest in various derivatives, including primarily credit-default swaps, but also options, swaps, swaptions, futures and forward contracts (both listed and over-the-counter) on various financial instruments, equity securities and currencies. The Partnership will generally operate up to a Net Leverage (as defined herein) of its investments of 10 to 1, though the General Partner may use greater leverage or less leverage at times in its discretion. Positions may be financed by various sources of funding, including margin, bank lines and the repurchase markets (which may be provided by Bear Stearns or by or through an affiliate thereof). As the Partnership's positions are expected to be highly leveraged, its Net Asset Value (as defined herein) may increase or decrease at a greater rate than if leverage were not used.

While the Investment Manager may implement a combination of the investment strategies described herein, the composition of the investment portfolio will vary as opportunities dictate, and it is not possible to predict the degree of profitability, if any, which may be achieved from any particular strategy or investment. Further, the Investment Manager may develop new strategies or modify existing strategies with a view towards achieving the Master Fund's investment objectives.

The Partnership will invest substantially all of its assets through a "master-feeder" structure, conducting most, if not all, of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Partnership and other entities managed by BSAM or its affiliates. The purpose of the Master Fund is to achieve trading and administrative efficiencies. No additional fees are payable by the Partnership in connection with the Partnership's investment in the Master Fund. The Partnership is responsible, as an investor in the Master Fund, for its *pro rata* share of the Master Fund's operating and overhead expenses. Although investment and trading is currently anticipated to be only at the Master Fund level, the General Partner may also trade at the Partnership level in the future. References to the Partnership's or the Master Fund's investments and portfolio in this Memorandum refer to the combined investments and portfolio of the Partnership, the Master Fund and the Other Feeder Funds (as defined below) and references to the General Partner or the Investment Manager and its investment strategy and operations refer to Bear Stearns Asset Management Inc., as both General Partner of the Partnership and investment manager of the Master Fund, and its roles in connection with each respectively, unless the context suggests otherwise.

The Partnership offers suitable investors an opportunity to diversify a portion of the risk segments of their portfolios into an investment field in which profits can be recognized in a vehicle providing limited liability and administrative convenience.

*There can be no assurance that the Partnership will achieve its investment objectives or avoid substantial losses. No investor should make an investment in the Partnership with the expectation of sheltering income or receiving cash distributions. Potential investors are urged to consult with their personal tax advisors in connection with any investment in the Partnership.*

## SUMMARY OF PRINCIPAL TERMS

*The following summary is qualified in its entirety by reference to the more detailed information included elsewhere in this Confidential Private Placement Memorandum (the "Memorandum") and in the Partnership's Amended and Restated Limited Partnership Agreement (the "Partnership Agreement"). Capitalized terms used but not defined herein have the meaning set forth in the Partnership Agreement.*

### THE PARTNERSHIP

| | |
|---|---|
| THE PARTNERSHIP | Bear Stearns High-Grade Structured Credit Strategies, L.P., a Delaware limited partnership formed on August 26, 2003. |
| THE MASTER FUND | Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., an exempted company incorporated under the laws of the Cayman Islands. Although investment and trading is currently anticipated to be only at the Master Fund level, the General Partner may also trade at the Partnership level in the future. The Partnership will invest substantially all of its assets through a "master-feeder" structure, conducting most, if not all, of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Partnership and other entities managed by BSAM or its affiliates. From time to time, other funds or investment products (collectively, the "Other Feeder Funds") may invest in the Master Fund. As of the date hereof, such Other Feeder Funds include Bear Stearns High-Grade Structured Credit Strategies (Overseas) Ltd. (the "Offshore Feeder Fund"), an exempted company incorporated under the laws of the Cayman Islands to facilitate investment by non-U.S. investors and tax-exempt U.S. investors, and Bear Stearns High-Grade Structured Credit Strategies (Overseas) Yen Unit Trust, a Cayman Islands unit trust, that each invests substantially all of its assets in the Master Fund. References herein to the Partnership in respect of its investment program and related matters include reference to the Master Fund and the Other Feeder Funds, as applicable. *See "The Investment Program"*. |
| GENERAL PARTNER AND INVESTMENT MANAGER | Bear Stearns Asset Management Inc., a corporation formed under the laws of the State of New York (the "General Partner"), serves as the general partner of the Partnership and as the investment manager of each of the Master Fund and the Other Feeder Funds. |
| | *BSAM also operates Bear Stearns High-Grade Structured Credit Strategies Enhanced Leverage Master Fund, Ltd. (the "Enhanced Leverage High-Grade Fund"), an investment vehicle which has an investment strategy similar to that of the Master Fund, but that is subject to certain investment restrictions and considerations relating to additional leverage that it employs that are not applicable to the Master Fund. Accordingly, the investment portfolio and strategies of the Master Fund may differ substantially from those of the Enhanced Leverage High-Grade Fund.* |

| | |
|---|---|
| INVESTMENT OBJECTIVE AND APPROACH | The Partnership aims to seek high current income and capital appreciation relative to LIBOR. The Partnership intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Partnership intends to seek investment opportunities beyond the structured finance asset category. As part of its strategy, the Partnership intends to gain exposure, on a non-recourse leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as CDOs) that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). There can be no assurance that the Partnership will achieve its investment objective or avoid substantial losses. |
| PLACEMENT AGENTS | Bear, Stearns & Co. Inc. ("Bear Stearns"), certain of its affiliates and certain non-affiliated selling agents (collectively, "Placement Agents") may serve as placement agents with respect to Interests, subject to prior sale, when, as and if delivered, and subject to certain other conditions. |
| ADMINISTRATOR, REGISTRAR AND TRANSFER AGENT | PFPC Inc. (Delaware) serves as the administrator, registrar and transfer agent of the Partnership, the Master Fund and the Other Feeder Funds (the "Administrator"). |
| RISKS | *An investment in the Partnership is speculative and involves substantial risks and conflicts of interest. Interests are suitable only for investors who can afford to lose all or a substantial portion of their investment. See "Certain Risk Factors" and "Conflicts of Interest".* |

## THE OFFERING

| | |
|---|---|
| THE OFFERING | This Memorandum relates to an offering of limited partnership interests in the Partnership (the "Interests"). The Partnership will offer Interests generally as of the opening of business of the first Business Day (as defined below) of each month or on such other days as the General Partner, in its sole discretion, may allow (each, a "Subscription Date"). |
| | There is no limit on the total amount of subscriptions that may be accepted on behalf of the Partnership. |
| MINIMUM INVESTMENT | The minimum initial subscription amount for each new investor in the Partnership is $1,000,000. The minimum additional investment is $250,000. The General Partner may accept or reject any initial and additional subscriptions and waive the minimum subscription amounts in its sole discretion. |
| SUBSCRIPTION PROCEDURE | Prospective investors must complete and execute a subscription agreement (the "Subscription Agreement"), which must be delivered to the General Partner. Subscription Agreements must generally be received by the General Partner five Business Days prior to the relevant Subscription Date (or shorter period acceptable to the General Partner). All investors must also make arrangements with the General Partner for the transmission of their subscription funds two Business Days prior to the relevant Subscription Date before 5:00 p.m. (New York time) (or such shorter period acceptable to the General Partner). A Subscription Agreement is attached hereto as Annex B. |

| | |
|---|---|
| ELIGIBLE INVESTORS | The Partnership is conducting a private offering pursuant to Section 4(2) of the Securities Act of 1933 (the "Securities Act") and Regulation D thereunder. The Partnership is exempt from registration as an investment company under the Investment Company Act of 1940, as amended (the "Company Act") pursuant to Section 3(c)(7) thereof. Investors must be "Accredited Investors" as defined in Regulation D under the Securities Act and must be "qualified purchasers", as defined under Section 2(a)(51) of the Company Act. Unless otherwise permitted by the General Partner in its sole discretion, Interests may not be purchased by persons who are not U.S. persons or persons who are exempt from U.S. federal income taxation. In lieu of an investment in the Partnership, any organization exempt from U.S. federal income taxation may want to consider and should consult with the General Partner regarding an investment in the Offshore Feeder Fund. |
| AFFILIATED INVESTORS | As of the date of this Memorandum, an affiliate of the General Partner has an investment in the Partnership. The General Partner, its principals and/or its affiliates may from time to time, directly or through other investment vehicles (including one or more investment vehicles formed for the benefit of Bear Stearns and its affiliates), make additional investments in the Partnership and/or invest in the Other Feeder Funds. The General Partner, its principals and/or its affiliates are not required to maintain any investment in the Partnership or the Other Feeder Funds, and may withdraw its investment in the Partnership at any time without notice to Limited Partners. |

FEES, PROFIT SHARE, AND EXPENSES

| | |
|---|---|
| ORGANIZATIONAL EXPENSES | The Master Fund paid the expenses of organizing the Partnership, the Offshore Feeder Fund and the Master Fund and the initial offering of Interests and shares of the Offshore Feeder Fund. Such expenses are being amortized on a straight-line basis over a period of not less than 60 months, beginning as of September 2003 unless the Master Fund Directors decide that some other amortization method shall be applied. The Master Fund Directors believe that such amortization is more equitable than requiring the initial investors of the Partnership and the Offshore Feeder Fund to bear all such organizational expenses as would otherwise be required under generally accepted accounting principles ("GAAP"). The Partnership will bear, as an investor in the Master Fund, its *pro rata* share of all such organizational expenses. |
| ADVISORY FEE | The Partnership will pay to the General Partner an advisory fee (the "Advisory Fee") equal to 1/12 of 2.0% of the balance of each Limited Partner's Capital Account calculated as of the end of each calendar month (pro rated for periods of less than one month) prior to any accrual for or payment of any Advisory Fee, allocation of Profit Share or withdrawal effected on such date (approximately a 2.0% annual rate). The Advisory Fee is payable in arrears as of the last Business Day of each calendar quarter or upon the withdrawal of a Limited Partner from the Partnership. The General Partner may, in its sole discretion, waive all or a portion of the Advisory Fee due to the General Partner from any Limited Partner. |

| | |
|---|---|
| PROFIT SHARE | The General Partner will also be allocated a profit share ("Profit Share") at the end of the relevant Accounting Period (as defined herein) in an amount equal to 20% of Net New Income in respect of each Limited Partner's Capital Account. The Profit Share will be allocable with respect to each Limited Partner's Capital Account for each Accounting Period ending as of the end of each calendar year, as of the date of any withdrawal from such Capital Account (with respect to the amount withdrawn only), as of the date of any transfer of an interest in such Capital Account (with respect to the amount transferred only) and as of the date of dissolution of the Partnership. |
| | "Net New Income" in respect of a Limited Partner's Capital Account as of a particular date is the amount, if any, by which Cumulative Net Income in respect of such Capital Account determined as of such date exceeds the High Water Mark in respect of such Capital Account. The General Partner may, in its sole discretion, waive all or a portion of the Profit Share due to the General Partner from any Limited Partner. "Cumulative Net Income" in respect of a Limited Partner's Capital Account as of a particular date is the amount, if any, by which (1) aggregate realized and unrealized gains, and aggregate items of operating income, credited to such Capital Account during the entire life of the Partnership to and including such date exceeds (2) aggregate realized and unrealized losses, and aggregate items of operating expenses, charged against such Capital Account during the entire life of the Partnership to and including such date (without charging any of the General Partner's Profit Share against such Capital Account). "High Water Mark" in respect of a Limited Partner's Capital Account as of a specified date means (1) zero, until after the first calculation of a positive Profit Share in respect of such Capital Account pursuant to the foregoing provisions and, thereafter, (2) the highest amount of Cumulative Net Income previously calculated in respect of such Capital Account in accordance with the foregoing provisions. |
| | If a Profit Share is allocated to the General Partner in respect of a Limited Partner's Capital Account and a loss is subsequently charged to such Capital Account, the General Partner is entitled to retain all Profit Shares previously allocated to it in respect of that account. No subsequent Profit Share is allocable to the General Partner in respect of such Capital Account until such loss has been made up. If a withdrawal is made from a Capital Account at a time when there is a loss carryforward for such Capital Account (i.e., Cumulative Net Income is below the High Water Mark), then such loss carryforward shall be reduced in proportion to the percentage of such Capital Account withdrawn. |
| OPERATIONAL EXPENSES | The Partnership will bear its operational expenses, including (without limitation) research expenses; legal fees; expenses of the continuous offering of Interests, including the cost of producing and distributing offering memoranda and other marketing materials; printing and mailing costs; filing fees and expenses; accounting, audit, and tax preparation expenses; computer software, licensing, programming and operating expenses; data processing costs; consultant fees; tax, litigation, and extraordinary expenses, if any; interest expenses (including interest due to repurchase agreements and borrowing by the Partnership); insurance expenses, custody fees, bank charges, brokerage commissions (including options trades); spreads and mark-ups on securities, swaps and forwards; short dividends, currency hedging costs, if any, and other investment and operating expenses. |
| | The Partnership will also bear, as an investor in the Master Fund, its *pro rata* share of the Master Fund's operational expenses, including, without limitation, interest expenses (including interest due to repurchase agreements and borrowing by the Master Fund); insurance expenses, custody fees, bank charges, brokerage commissions (including options trades); spreads and mark-ups on securities, swaps and forwards, short dividends, currency hedging costs, and other investment and |

|  |  |
|---|---|
|  | operating expenses, the fees and out-of-pocket expenses of the Administrator and the Master Fund's board of directors. The Investment Manager and the Administrator will each bear the costs of providing their respective services to the Partnership and the Master Fund, including their general overhead, salary, and office expenses. |
| SELLING COMMISSION | Bear, Stearns & Co. Inc. and certain of its affiliates, to the extent they act as Placement Agents to the Partnership will be compensated by the General Partner with payments based upon a percentage of the General Partner's Advisory Fee and/or Profit Share. Certain non-affiliated Placement Agents may be paid up to 3% of an investor's subscription price for Interests. Such commission may be waived or reduced by any such Placement Agent in respect of particular investors. |
| BROKERAGE COMMISSIONS | The General Partner transacts with brokers and dealers (including its affiliates) on the basis of best execution and in consideration of such broker's or dealer's ability to effect the transactions, the facilities, reliability and financial responsibility of such broker or dealer, and the provision or payment (or rebate to the Master Fund for payment) by such broker or dealer of the costs of research and brokerage services which are of benefit to the Partnership, the Master Fund, the General Partner and related investment vehicles and accounts. Bear, Stearns Securities Corp. ("BSSC" or the "Prime Broker") will serve as prime broker and custodian for the Master Fund and clear (generally on the basis of payment against delivery) the Master Fund's securities transactions which are effected through other brokerage firms. BSSC or an affiliated entity or unit thereof (including Bear Stearns) may also execute orders to the extent permitted by applicable regulations and receive commissions, fees and other compensation in connection therewith. *See "Brokerage Practices" and "Conflicts of Interest".* |

LIQUIDITY

|  |  |
|---|---|
| WITHDRAWALS | Subject to the conditions and limitations described herein, (i) a Limited Partner may, upon not less than 40 days' prior written notice to the General Partner, withdraw all or a portion of such Limited Partner's Capital Account as of the last Business Day of any calendar month subject to a withdrawal fee of 2% of the amount withdrawn, unless such withdrawal fee is reduced or waived by the General Partner in its sole discretion, and (ii) a Limited Partner may, upon not less than 60 days' prior written notice to the General Partner, withdraw all or a portion of such Limited Partner's Capital Account attributable to a capital contribution as of the last Business Day of the twelfth month-end following such capital contribution and every subsequent third month-end following the first year anniversary of such capital contribution without being subject to any withdrawal fee (each such date, a "Withdrawal Date"). |
|  | Partial withdrawals may not reduce a Limited Partner's Capital Account to less than the minimum investment of $1,000,000, unless such minimum is reduced or waived by the General Partner in its sole discretion. |
|  | If a Limited Partner makes capital contributions at different times, each capital contribution will be treated separately for the purpose of determining any applicable withdrawal fee, and withdrawals will be deemed to be made from the earliest capital contribution (as adjusted for changes in the Net Asset Value). The withdrawal fees described above are payable to the Partnership and are intended generally to cover anticipated expenses relating to the liquidation of Master Fund assets required to fund the relevant withdrawals, including "breakage costs". |
|  | The General Partner may reduce or waive such withdrawal fees for any Limited Partner to the extent that it determines in its sole discretion that the Partnership will |

not incur such expenses or that the Partnership will not otherwise be materially disadvantaged by such reduction or waiver. The General Partner, however, will in no event be obligated to reduce or waive such withdrawal fees, including when there are no such expenses.

The General Partner may permit withdrawals on such shorter notice or on any date other than a Withdrawal Date (such withdrawals to be made on the basis of estimated Net Asset Values) in its sole and absolute discretion.

If, for any calendar quarter, the aggregate amount of withdrawal requests from the Partnership, together with redemption requests from the Other Feeder Funds, exceeds in value 25% of the net asset value of the Master Fund, determined as of the beginning of such calendar quarter and as adjusted for subscriptions during such calendar quarter, the General Partner (in such capacity and as investment manager or sponsor of the Other Feeder Funds) may elect to limit such withdrawals and redemptions to an aggregate value of not more than 25% of the net asset value of the Master Fund, allocating such withdrawals and redemptions pro rata according to the value of each withdrawing Limited Partner's Capital Account prior to its withdrawal request and the value of the shares/units of each redeeming investor of the Other Feeder Funds prior to its redemption request. Any unhonored portion of a withdrawal request will remain invested in the Partnership, and will be deferred to the next Withdrawal Date subject to the same limitation.

**MANDATORY WITHDRAWALS**

The General Partner may compel a Limited Partner to withdraw entirely from the Partnership, or to withdraw any portion of such Limited Partner's Capital Account, at any time without notice, if the General Partner reasonably believes that such Limited Partner subscribed for an Interest as a result of a misrepresentation or if such Limited Partner's continued participation in the Partnership would, in the reasonable judgment of the General Partner, put the Partnership or the other Limited Partners at a material tax, legal, regulatory, or pecuniary disadvantage including, by way of example and not limitation: (i) causing the Partnership to be required to be registered or regulated under the Company Act; (ii) causing the Partnership to be an association or "publicly traded partnership" taxable as a corporation for U.S. federal income tax purposes; (iii) causing the assets of the Partnership to be deemed to be "plan assets" for purposes of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"); (iv) causing the Partnership to be registered under the Securities Exchange Act of 1934 (the "Exchange Act"), or the offering of its Interests registered under the Securities Act; (v) causing the General Partner to be required to be registered with the Commodity Futures Trading Commission ("CFTC") as a "commodity pool operator" and become a member of the National Futures Association ("NFA") (if the General Partner is not then so registered and/or such a member); (vi) causing a violation under any law or any contractual provision to which the Partnership or its property or the General Partner is subject; or (vii) causing the Partnership to be in violation of (in the reasonable judgment of the General Partner), to potentially violate or otherwise cause concerns under, the anti-money laundering program and related responsibilities of the Partnership or the General Partner. In addition to the foregoing, the General Partner may compel a Limited Partner to withdraw entirely from the Partnership, or to withdraw any portion of such Limited Partner's Capital Account, at any time upon 90 days' prior written notice if such Limited Partner's continued participation in the Partnership would, in the reasonable judgment of the General Partner, put the Partnership or the other Limited Partners at a material administrative disadvantage; provided that the General Partner may not so terminate the participation of a Limited Partner during the pendency of a Removal Petition as defined in the Partnership Agreement.

| | |
|---|---|
| PAYMENT OF CAPITAL WITHDRAWALS | Withdrawal proceeds (based on unaudited data) will generally be paid within 30 days of the relevant Withdrawal Date. However, upon a complete withdrawal of a Limited Partner, the General Partner will, after applying all charges and credits properly allocable to such Limited Partner's Capital Account, cause the Partnership to distribute to such Limited Partner 90% of the withdrawal proceeds within 30 days of the relevant Withdrawal Date, and the balance (based on unaudited data), without interest, will be paid within 60 days of such Withdrawal Date. Any amount subject to the foregoing "hold-back" will not remain subject to the profit/loss of the Partnership following the Withdrawal Date. The General Partner may waive the foregoing hold-back provisions in its sole and absolute discretion and permit the withdrawal of any Limited Partner to be made on the basis of estimated Net Asset Values, generally within 30 days of the effective date of withdrawal. Under certain circumstances, the Partnership may limit or suspend withdrawals, and/or defer payment of withdrawn amounts to withdrawing Limited Partners.

Generally, no interest will be paid by the Partnership on withdrawn amounts pending distribution to Limited Partners. |
| DISTRIBUTIONS | The General Partner does not anticipate that the Partnership will make any distributions. |
| ASSIGNMENTS | Interests may not be transferred or pledged without the prior written consent of the General Partner and compliance with applicable federal and state securities laws. No transferee or pledgee may become a substitute Limited Partner without the consent of the General Partner. |

## MISCELLANEOUS

| | |
|---|---|
| TAXATION | The Partnership intends to be classified as a partnership and not as an association taxable as a corporation for U.S. federal income tax purposes. Additionally, the Master Fund has elected to be classified as a partnership for U.S. federal income tax purposes. Accordingly, neither the Partnership nor the Master Fund should be subject to U.S. federal income tax, and each Limited Partner will be required to report on its own annual tax return such Limited Partner's allocable share of the Partnership's taxable income or loss. *See "Certain U.S. Federal Income Tax Considerations".*

Because the Partnership does not intend to make distributions, to the extent that the Partnership is successful in its investment strategy, Limited Partners should expect to incur tax liabilities from an investment in the Partnership that will not be covered by cash distributions with which to pay such liabilities. |
| LIMITED LIABILITY | Limited Partners invest in the Partnership with limited liability and cannot lose more than the amount of their investment and their share of the Partnership's profits. |
| REPORTS | Limited Partners will receive monthly account statements, audited annual financial statements, and necessary federal tax information for the Partnership. |
| FISCAL YEAR END | December 31. |
| BUSINESS DAY | A day on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealings in foreign exchange and foreign currency deposits) in the Cayman Islands and New York City and/or such other day as the General Partner may from time to time determine. |

- 9 -

| | |
|---|---|
| AUDITORS | Deloitte & Touche. |
| LEGAL COUNSEL TO THE GENERAL PARTNER | Sidley Austin LLP, New York, New York, served as legal counsel to the General Partner in connection with the organization of the Partnership and the preparation of this Memorandum. Sidley Austin LLP may continue to serve in such capacity in the future, but has not assumed any obligation to update this Memorandum. Sidley Austin LLP may also advise the General Partner in matters relating to the operation of the Partnership — including, without limitation, on matters relating to its fiduciary obligations to Limited Partners — on an ongoing basis. Sidley Austin LLP does not represent and has not represented the prospective investors or the Partnership in the course of the organization of the Partnership, the negotiation of its business terms, the offering of the Interests or in respect of its ongoing operations. Prospective investors must recognize that, as they have had no representation in the organization process, the terms of the Partnership relating to themselves and the Interests have not been negotiated at arm's length.<br><br>Sidley Austin LLP's engagement by the General Partner in respect of the Partnership is limited to the specific matters as to which it is consulted by the General Partner and, therefore, there may exist facts or circumstances which could have a bearing on the Partnership's (or the General Partner's) financial condition or operations with respect to which Sidley Austin LLP has not been consulted and for which Sidley Austin LLP expressly disclaims any responsibility. |
| LEGAL COUNSEL TO THE MASTER FUND | Walkers, Walker House, Box 265, George Town, Cayman Islands, serves as Cayman Islands counsel to the Master Fund. |

---

*AN INVESTMENT IN THE PARTNERSHIP IS SPECULATIVE AND INVOLVES A HIGH DEGREE OF RISK. NO SUBSCRIBER SHOULD HAVE ANY NEED FOR ANY MONIES INVESTED IN THE PARTNERSHIP TO MEET CURRENT NEEDS OR ONGOING FINANCIAL REQUIREMENTS. EACH PROSPECTIVE INVESTOR MUST CAREFULLY ASSESS THE RISKS OF SECURITIES TRADING AND, PARTICULARLY, TRADING AND INVESTING IN COLLATERALIZED DEBT OBLIGATIONS BEFORE DETERMINING WHETHER TO SUBSCRIBE FOR A LIMITED PARTNERSHIP INTEREST.*

---

## THE INVESTMENT PROGRAM

### Investment Objective

The Partnership's primary objective is to seek high current income and capital appreciation relative to LIBOR. The Partnership intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Partnership intends to seek investment opportunities beyond the structured finance asset category. The Partnership will make investments in CDOs and other structured finance assets, including ABSs, synthetic ABSs, MBSs, and global structured asset securitizations. The Partnership will make investments (or otherwise take on risk) in both the traditional "cash" market and the derivatives market. In addition, the Partnership may invest in various derivatives, including primarily credit-default swaps, but also options, swaps, swaptions, futures and forward contracts (both listed and over-the-counter) on various financial instruments, equity securities and currencies.

### Structure of the Partnership

The Partnership will invest substantially all of its assets through a "master-feeder" structure, conducting most, if not all, of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Partnership and other entities managed by BSAM or its affiliates. The purpose of the Master Fund is to achieve trading and administrative efficiencies. The Partnership may, however, invest a portion of its assets directly rather than investing through the Master Fund. Partnership positions may be financed by various sources of funding, including bank lines and the repurchase markets. As the Partnership's positions are expected to be highly leveraged, the Partnership's Net Asset Value may increase or decrease at a greater rate than if leverage were not used.

While the Partnership's investment objective may be achieved through direct, leveraged investments in investment-grade structured finance securities and other structured finance assets, the Partnership intends, as part of its strategy, to gain exposure, on a non-recourse, leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as CDOs) that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). Each such structured vehicle is referred to herein as a "Repackaging Vehicle". The Investment Manager or an affiliate thereof may, but need not, be the collateral manager or similar service provider with respect to a Repackaging Vehicle (each a "Repackaging Vehicle Manager").

### Investment Strategy

Structured finance securities are the securities of special purpose vehicles ("SPVs") that purchase diversified pools of assets. The assets held by the SPV are financed through the issuance of several classes, or tranches, of securities each of which has a specific right to the interest and principal payments from the underlying diversified pool of assets held by the SPV. Each of the tranches issued by an SPV has a credit quality rating that is determined by the tranche's repayment priority to the interest and principal payments generated by the underlying assets. The Master Fund will focus on the senior securities issued by SPVs that are rated from AAA to AA- by Standard & Poor's, from Aaa to Aa3 by Moody's or from AAA to AA- by Fitch.

The Investment Manager will use its structuring and research experience to identify structured finance securities with fundamentally strong credit risk profiles that are priced attractively. A significant portion of the investment return of the Master Fund is expected to be current income resulting from a positive yield spread between the investment income of the investments (together with any corresponding hedging instruments) of the Master Fund and the associated borrowing costs. Additionally, to the extent that the Master Fund's assets increase in value, the Master Fund may realize capital appreciation.

As part of the Master Fund's investment strategy, the Investment Manager intends, subject to market conditions and other relevant factors, to invest up to 40% of the net asset value of the Master Fund, as measured at the time any investment is made, in equity tranches (or equivalent securities) of Repackaging Vehicles (the "Repackaging Vehicle Junior Interests"). The returns of Repackaging Vehicle Junior Interests will be generated primarily from the