### Special Allocations

Certain items of Partnership profits and losses are specially allocated only to certain Limited Partners, not all the Limited Partners as a group. Typically, special allocations result from regulatory or legal requirements prohibiting certain types of investors from participating (even indirectly through investing in the Partnership) in certain types of transactions.

### Profit Share

The General Partner will also be allocated a profit share ("Profit Share") at the end of the relevant Accounting Period (as defined herein) in an amount equal to 20% of Net New Income in respect of each Limited Partner's Capital Account. The Profit Share will be allocable with respect to each Limited Partner's Capital Account for each Accounting Period ending as of the end of each calendar year, as of the date of any withdrawal from such Capital Account (with respect to the amount withdrawn only), as of the date of any transfer of an interest in such Capital Account (with respect to the amount transferred only) and as of the date of dissolution of the Partnership.

"Net New Income" in respect of a Limited Partner's Capital Account as of a particular date is the amount, if any, by which Cumulative Net Income in respect of such Capital Account determined as of such date exceeds the High Water Mark in respect of such Capital Account. The General Partner may, in its sole discretion, waive all or a portion of the Profit Share due to the General Partner from any Limited Partner. "Cumulative Net Income" in respect of a Limited Partner's Capital Account as of a particular date is the amount, if any, by which (1) aggregate realized and unrealized gains, and aggregate items of operating income, credited to such Capital Account during the entire life of the Partnership to and including such date exceeds (2) aggregate realized and unrealized losses, and aggregate items of operating expenses, charged against such Capital Account during the entire life of the Partnership to and including such date (without charging any of the General Partner's Profit Share against such Capital Account).

"High Water Mark" in respect of a Limited Partner's Capital Account as of a specified date means (1) zero, until after the first calculation of a positive Profit Share in respect of such Capital Account pursuant to the foregoing provisions and, thereafter, (2) the highest amount of Cumulative Net Income previously calculated in respect of such Capital Account in accordance with the foregoing provisions, in either instance, subject to reduction in the event of a withdrawal, as follows: if a withdrawal is made from a Capital Account at a time when there is a loss carryforward for such Capital Account (*i.e.*, Cumulative Net Income is below the High Water Mark), then the High Water Mark will be reduced as of the date on which such Capital Withdrawal is made, and for every Accounting Period thereafter until a positive Profit Share is calculated in respect of such Capital Account, by an amount equal to (a) the excess of such High Water Mark over the current Cumulative Net Income multiplied by (b) a fraction, the numerator of which is equal to the Net Asset Value of the Capital Account immediately before giving effect to the withdrawal.

If a Profit Share is allocated to the General Partner in respect of a Limited Partner's Capital Account and a loss is subsequently charged to such Capital Account, the General Partner is entitled to retain all Profit Shares previously allocated to it in respect of that account. No subsequent Profit Share is allocable to the General Partner in respect of such Capital Account until such loss has been made up.

### Tax Allocations

As of the end of each fiscal year, Partnership income will be allocated among the Partners as follows: First, net income will be allocated to the General Partner until the amount so allocated equals the aggregate Profit Share allocated to the New Profit Memo Account for the year in question and all prior years. Second, net income will be allocated to Partners who withdrew an Interest in full during the year, to eliminate the difference between the amount received and the Partner's adjusted tax basis in its Interest. Third, net income will be allocated to any Partner with a Capital Account balance in excess of its adjusted tax basis in its Interest. Finally, any net income not previously allocated will be allocated *pro rata* among all Partners in proportion to their respective Capital Accounts.

As of the end of each fiscal year, Partnership loss will be allocated among the Partners as follows: First, net loss will be allocated to Partners who withdrew an Interest in full during the year, to eliminate the difference between the

Partner's adjusted tax basis in its Interest and the amount received upon withdrawal. Second, net loss will be allocated to any Partner with an adjusted tax basis in its Interest in excess of its Capital Account balance. Finally, any net loss not previously allocated will be allocated *pro rata* among all Partners in proportion to their respective Capital Accounts.

Notwithstanding the foregoing, the General Partner may allocate items of income, gain, loss, and deduction on a gross rather than a net basis.

Upon liquidation of the Partnership, the assets of the Partnership available for distribution pursuant to the Delaware Revised Uniform Limited Partnership Act will be distributed to each Partner in the ratio that such Partner's Capital Account bears to the Capital Accounts of all Partners.

## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

The following is a summary (the "Summary") of some of the U.S. federal income tax consequences to the Partners of an investment in the Partnership based upon the Internal Revenue Code of 1986, as amended (the "Code"), judicial decisions, Treasury Regulations (the "Regulations") and rulings in existence on the date hereof, all of which are subject to change. A complete discussion of all U.S. federal, state and local tax aspects of an investment in the Partnership is beyond the scope of the Summary, and prospective investors must consult their own tax advisors on such matters.

\*           \*           \*

Any discussion of U.S. federal tax issues set forth in this Memorandum was written in connection with the promotion and marketing by the Partnership, BSAM and the Placement Agents of the Interests. Such discussion was not intended or written to be legal or tax advice to any person and was not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any U.S. federal tax penalties that may be imposed on such person. Each investor should seek advice based on its particular circumstances from an independent tax advisor.

\*           \*           \*

### Partnership Status

The General Partner has advised Sidley Austin LLP that at least 90% of the gross income expected to be earned by the Partnership will constitute interest income and income and gains from stocks and securities and futures, forwards and options with respect to stocks and securities. The General Partner has also advised Sidley Austin LLP that it has not elected, and does not intend to elect, to classify the Partnership as an association taxable as a corporation. Based on the foregoing, the General Partner has been advised by Sidley Austin LLP that the Partnership will be classified as a partnership, and not as an association or publicly traded partnership taxable as a corporation, for U.S. federal income tax purposes.

The Master Fund has elected to be classified as other than an association taxable as a corporation. Pursuant to such election, the Master Fund will be classified as a partnership if it has at least two members. The Master Fund should not be classified as a publicly traded partnership taxable as a corporation so long as at least 90% of its gross income constitutes qualifying income under Section 7704 of the Code and the Regulations promulgated thereunder.

No ruling has been obtained from the Internal Revenue Service ("IRS") confirming this tax classification, and the General Partner does not intend to seek such a ruling. There can be no assurance that the IRS will not assert that the Partnership or the Master Fund should be classified as an association taxable as a corporation or as a publicly traded partnership taxable as a corporation. If it were determined that the Partnership or the Master Fund should be classified as an association or publicly traded partnership taxable as a corporation, the taxable income of the Partnership or the Master Fund, as applicable, would be subject to corporate income tax rates, distributions (other than certain redemptions) would generally be classified as dividend income to the extent of the current or accumulated earnings and profits of the Partnership or the Master Fund, as applicable, and Limited Partners would not report profits and losses of the Partnership.

The following discussion assumes that the Partnership and the Master Fund will be classified as partnerships for U.S. federal income tax purposes.

### Taxation of Partners on Profits or Losses of the Partnership

The Partnership and the Master Fund, as entities, will not be subject to U.S. federal income tax. The Partnership will be required to report on its U.S. federal income tax return its allocable share of the Master Fund's income, gains, losses, deductions, credits and other items for the Master Fund's taxable year ending with or within the Partnership's taxable year. Each Partner will, in turn, be required for U.S. federal income tax purposes to take into account, in its taxable year with which or within which a taxable year of the Partnership ends, its distributive share of all items of Partnership income, gain (including unrealized gain from any positions that are "mark-to-market"), loss or deduction for such taxable year of the Partnership. A Partner must take such items into account even if the Partnership does not make any distributions of cash or other property to such Partner during its taxable year.

A Partner's distributive share of such items for U.S. federal income tax purposes generally is determined by the allocations made pursuant to the Partnership Agreement, *provided* that such allocations either have substantial economic effect or are deemed to be in accordance with the Partners' interests in the Partnership. Under the Partnership Agreement, allocations are generally made in proportion to Partners' Capital Accounts and therefore should have substantial economic effect. However, the tax allocations permitted by the Partnership Agreement when withdrawals occur generally will not be in proportion to Capital Accounts. Nonetheless, the General Partner believes such allocations are permitted for U.S. federal income tax purposes, and the Regulations appear to support that belief. If such allocations are not sustained, each Partner's distributive share of the items that are the subject of such allocations would be redetermined based upon its interest in the Partnership by taking into account all relevant facts and circumstances. Such a redetermination might result in a larger share of income being allocated (solely for tax purposes) to the Partners who had not redeemed Interests during the taxable year than was allocated to them pursuant to the Partnership Agreement.

### Section 475(f) Election

The Master Fund, as a trader in securities, has elected to mark-to-market its securities held at the end of each taxable year. In general, gain or loss with respect to securities is taken into account for U.S. federal income tax purposes only when realized. However, a trader in securities (defined to include, among other instruments, stock of a corporation, notes, bonds, debentures, or other evidence of indebtedness and certain notional principal contracts) may elect to mark-to-market its securities held at the end of each taxable year. The mark-to-market rules require a trader making the election to recognize gain or loss with respect to securities held in connection with its trade or business of trading in securities at the end of each taxable year as if the trader sold the securities for their fair market values on the last business day of the taxable year. Any such gain or loss will generally be treated as ordinary income or loss.

### Limitations on Deductibility of Partnership Losses by Partners

The amount of any loss of the Partnership that a Partner is entitled to include in its personal income tax return is limited to its adjusted tax basis for its Interest in the Partnership as of the end of the Partnership's taxable year in which such loss occurred. Generally, a Partner's adjusted tax basis for its Interest in the Partnership is the amount paid for such Interest reduced (but not below zero) by its share of any Partnership distributions, losses and expenses (including certain expenses of the Partnership that are not properly chargeable to Capital Accounts of the Partners and that are not deductible in computing the Partnership's taxable income) and increased by its share of the Partnership's income, including gains.

### Limitations on Deductibility of Certain Expenses

The Code provides that, for non-corporate taxpayers who itemize deductions when computing taxable income, expenses of producing income, including investment advisory fees, are to be aggregated with unreimbursed employee business expenses and other expenses of producing income (collectively, the "Aggregate Investment Expenses"), and the aggregate amount of such expenses will be deductible only to the extent such amount exceeds

2% of a taxpayer's adjusted gross income. In addition, for taxpayers whose adjusted gross income exceeds a certain threshold amount (the "AGI Threshold"), Aggregate Investment Expenses in excess of the 2% threshold, when combined with certain of a taxpayer's other deductions, are subject to a reduction (scheduled to be phased out between 2006 and 2010) equal to the lesser of 3% of the taxpayer's adjusted gross income in excess of the AGI Threshold and 80% of the amount of certain itemized deductions otherwise allowable for the taxable year (the "Phase-out"). Moreover, such Aggregate Investment Expenses are itemized deductions, which are not deductible by a non-corporate taxpayer in calculating its alternative minimum tax liability.

As a trader, the General Partner will treat the Advisory Fee, as well as the other ordinary expenses of the Partnership, including net payments under notional principal contracts in which the Partnership invests, as ordinary business deductions not subject to the 2% floor and the Phase-out. However, the IRS could contend that the Partnership should be characterized and treated as an investor and that such expenses are subject to the 2% floor and the Phase-out. Regardless of the Partnership's status as a trader or investor, the Partnership will treat the General Partner's annual Profit Share as a share of income and gain that is taxable to the General Partner rather than the Limited Partners and therefore not a deduction by the Partnership that would be subject to the foregoing limitations on deductibility if the Partnership were an investor. However, the IRS could contend that the General Partner's Profit Share should be characterized as investment advisory fees, which would be subject to the aforementioned limitations on deductibility to the extent that the IRS successfully contended that the Partnership is properly characterized as an investor. If the IRS successfully challenges the Partnership's treatment of such payments as not subject to the aforementioned limits on deductibility, each non-corporate Limited Partner's share of the amounts so characterized would be subject to the foregoing limitations on deductibility and Limited Partners could be required to file amended tax returns.

PROSPECTIVE INVESTORS MUST CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FOREGOING INVESTMENT ADVISORY FEES ISSUE, WHICH IS A MATTER OF UNCERTAINTY AND COULD HAVE A MATERIAL IMPACT ON AN INVESTMENT IN THE PARTNERSHIP.

<u>Limitations on Deductibility of Interest on Investment Indebtedness</u>

Interest paid or accrued on indebtedness properly allocable to property held for investment is investment interest. Thus, any interest expense incurred by a Limited Partner to purchase or carry an Interest or incurred by the Partnership or the Master Fund to purchase or carry property held for investment generally will be investment interest. Investment interest is generally deductible by non-corporate taxpayers only to the extent that it does not exceed net investment income (that is, generally, the excess of (1) gross income from interest, dividends, rents and royalties, and (2) certain gains from the disposition of investment property, over the expenses directly connected with the production of such investment income). Any investment interest expense disallowed as a deduction in a taxable year solely by reason of the above limitation is treated as investment interest paid by or accrued in the succeeding taxable year.

<u>Syndication Fees</u>

Neither the Partnership nor the Master Fund will be entitled to any deduction for syndication fees such as the commissions paid to Placement Agents. Such expenses may be includible by a Partner for purposes of determining capital gain or loss upon redemption of its interest in the Partnership.

<u>Treatment of Income and Loss Under the Passive Activity Loss Rules</u>

The Code contains rules (the "Passive Activity Loss Rules") designed to prevent the deduction of losses from passive activities against income not derived from such activities, including income from investment activities not constituting a trade or business, such as interest and dividends ("Portfolio Income") and salary. The trading activities of the Partnership and the Master Fund will not constitute a passive activity, with the result that the Partnership's income will constitute Portfolio Income or other income not from a passive activity. Accordingly, losses resulting from a Partner's other passive activities cannot be offset against such income, and net losses from the Partnership's operations will be deductible in computing the taxable income of each Partner (subject to other limitations on the deductibility of such losses).

### Passive Foreign Investment Companies and Controlled Foreign Corporations

The Partnership may invest directly or through the Master Fund in one or more non-U.S. corporations that will generally be classified as passive foreign investment companies (each such corporation, a "PFIC") for U.S. federal income tax purposes. The Partnership may file an election to treat each PFIC as a qualified electing fund ("QEF") for U.S. federal income tax purposes. As a result of such election, the Partnership (and consequently, each Partner) will generally include in gross income in the tax year in which (or with which) the PFIC's tax year ends: (i) its pro rata share of the ordinary earnings of the PFIC for the taxable year as ordinary income, and (ii) its pro rata share of the net capital gain of the PFIC for the taxable year as long term capital gain. Partners will not be entitled to deduct currently any net loss of a PFIC. Distributions from a PFIC are generally not subject to taxation to the extent that such distributions represent amounts previously taxed.

The Partnership may invest directly or through the Master Fund in one or more non-U.S. corporations, any of which may be classified as a controlled foreign corporation (a "CFC") if U.S. Holders (i.e., a U.S. citizen or resident alien; a domestic partnership, trust or estate; and a domestic corporation) each own (directly, indirectly, or by attribution) at least 10% of the CFC's voting shares and together own either (i) more than 50% of the CFC's voting shares or (ii) more then 50% of the total value of the CFC's shares. If the Partnership invests in a CFC, the Partnership (and consequently, each Partner) will generally include in gross income in the tax year in which (or with which) the CFC's tax year ends, ordinary income equal to its pro rata share of the CFC's earnings (including both ordinary earnings and capital gains) for the tax year.

Generally, if a non-U.S. corporation is both a CFC and a PFIC, the Partnership (and consequently, each Partner) will be subject to the CFC rules and will not be subject to the PFIC rules. Each prospective investor should consult its tax advisor about the possible application of the PFIC and CFC rules to its particular situation.

### At-Risk Limitation on the Deductibility of Partnership Losses

A Partner who is a non-corporate taxpayer or closely-held corporation meeting certain tests will not be able to currently deduct such Partner's distributive share of the Partnership's recognized losses for the taxable year, if any, to the extent those losses exceed the amount the Partner is deemed to be economically at risk with respect to the Partnership's activities. A Limited Partner in the Partnership is expected to be considered at risk with respect to his investment in the Partnership to the extent of the adjusted basis of his Interest, less any amounts borrowed by the Limited Partner in connection with the acquisition of that Interest for which he is not personally liable and for which it has not pledged any unrelated property as security. Losses denied under the at-risk limitations are suspended and may be deducted in subsequent years, subject to these and other applicable limitations.

### Foreign Taxes and Foreign Tax Credits

Interest and dividends paid on securities of foreign issuers held by the Partnership or the Master Fund may be subject to taxes imposed by a foreign country. Pursuant to the Regulations under Section 704(b) of the Code, foreign tax credits must be allocated in accordance with the receipts that generate such credits. Subject to the requirements and limitations imposed by the Code, Limited Partners may elect to claim their allocable share of any such foreign taxes paid by the Partnership or the Master Fund as a foreign tax credit against their U.S. federal income tax liability. Limited Partners who do not elect to claim a foreign tax credit may claim a deduction for their allocable share of such foreign taxes (subject to other applicable limitations on the deductibility of such taxes).

### Cash Distributions and Withdrawals of Interests

Cash received from the Partnership by a Partner as a distribution with respect to its Interest or withdrawal of less than all of such Interest generally is not reportable as taxable income by a Partner, except as described below. Rather, such distribution reduces (but not below zero) the total tax basis of the Interest held by the Partner after the distribution or withdrawal. Any cash distribution in excess of a Partner's adjusted tax basis for its Interest will be taxable to him as gain from the sale or exchange of such Interest. Because a Partner's tax basis in its Interest is not increased on account of its distributive share of the Partnership's income until the end of the Partnership's taxable year, distributions during the taxable year could result in taxable gain to a Partner even though no gain would result

if the same distributions were made at the end of the taxable year. Furthermore, the share of the Partnership's income allocable to a Partner at the end of the Partnership's taxable year would also be includible in the Partner's taxable income and would increase its tax basis in its remaining interest as of the end of such taxable year.

Withdrawals for cash of the entire Interest held by a Partner will result in the recognition of gain or loss for U.S. federal income tax purposes. Such gain or loss will be equal to the difference, if any, between the amount of the cash distribution and the Partner's adjusted tax basis for such Interest. A Partner's adjusted tax basis for its Interest includes for this purpose its distributive share of the Partnership's income or loss for the year of such withdrawal.

### Distributions in Kind

The Partnership may pay withdrawal proceeds in kind rather than in cash. In general, a Partner will not recognize gain or loss on the distribution of property (other than cash) and the tax basis of any property will be the same as the Partnership's tax basis in such property, but not in excess of the Partner's adjusted tax basis for its Interest, reduced by any cash distributed in the transaction. A Partner who receives an in kind distribution of property in liquidation of its Interest will have a basis in such property equal to such Partner's adjusted basis in its Interest, reduced by any cash distributed in the transaction.

### Withholding Tax

The Master Fund is an exempted company incorporated under the laws of the Cayman Islands which will elect to be classified as a partnership for U.S. federal income tax purposes. To the extent that the Master Fund is beneficially owned by U.S. persons, such as the Partnership, it is not subject to the 30% withholding tax generally imposed on non-U.S. persons. The Partnership intends to provide the Master Fund with IRS Form W-9 to claim that it is a U.S. person and thus is not subject to the above described withholding rules applicable to foreign persons. The Master Fund intends to provide IRS Form W-8IMY together with the Partnership's IRS Form W-9 and all other required supporting documentation to U.S. persons paying such interest for purposes of qualifying for the portfolio interest exemption from U.S. withholding tax and for purposes of limiting any other applicable withholding to the extent of foreign ownership of the Master Fund.

### Tax Exempt Investors

Generally, qualifying tax-exempt organizations, including pension and profit-sharing plans, are exempt from U.S. federal income taxation. This general exemption from tax does not apply to the unrelated business taxable income ("UBTI") of a tax-exempt organization. UBTI includes unrelated debt-financed income, which, for any taxable year, generally consists of (i) income derived by a tax-exempt organization (directly or through a partnership) from income-producing property with respect to which there is acquisition indebtedness at any time during the taxable year and (ii) gains derived by a tax-exempt organization (directly or through a partnership) from the disposition of property with respect to which there is acquisition indebtedness at any time during the twelve-month period ending with the date of such disposition.

*Unless otherwise permitted by the General Partner in its sole discretion, Interests may not be purchased by persons who are exempt from U.S. federal income taxation. In lieu of an investment in the Partnership, any non-U.S. person and any organization exempt from U.S. federal income taxation may want to consider and should consult with the Investment Manager regarding an investment in the Other Feeder Funds.*

TAX-EXEMPT INVESTORS ARE URGED TO CONSULT THEIR ADVISORS WITH RESPECT TO THE CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP.

### Tax Shelter Regulations

A participant in a reportable transaction is required to disclose its participation in such transaction by filing IRS Form 8886 ("Reportable Transaction Disclosure Statement"). In addition, a material advisor with respect to such transaction is required to (i) maintain a list containing certain information with respect to such transaction (including the participants with respect to whom the material advisor acted in such capacity) and (ii) file a return setting forth

information identifying and describing the transaction and any information describing any potential tax benefits expected to result from the transaction. The failure to comply with such rules can result in substantial penalties.

The General Partner cannot predict whether any of the Partnership's transactions will subject it, the Partnership or any of the Partners to the aforementioned requirements. However, if the General Partner (or any other material advisor) determines that any such transaction causes it or the Partnership to be subject to the aforementioned requirements, the General Partner (or any other material advisor) will, and will cause the Partnership to, fully comply with such requirements. Prospective investors should consult with their tax advisors regarding the applicability of these rules to their investment in the Partnership.

### Partnership Audits

The tax treatment of Partnership-related items is determined at the Partnership level rather than at the Partner level. The General Partner has been appointed as the tax matters partner with the authority to determine the Partnership's response to an audit. The limitations period for assessment of deficiencies and claims for refunds with respect to items related to the Partnership is generally three years after the Partnership's return for the taxable year in question is filed, and the General Partner has the authority to, and may, extend such period with respect to all Limited Partners. It is possible that the IRS will audit the information returns to be filed by the Partnership. If an audit results in an adjustment, the General Partner and each Limited Partner may be required to pay additional taxes, interest and possibly penalties and additions to tax. There can be no assurance that the Partnership's tax return will not be audited by the IRS or that no adjustments to such returns will be made as a result of such an audit.

### State and Local Taxes

In addition to the U.S. federal income tax consequences described above, the Partnership, the General Partner and the Limited Partners may be subject to various state, local and municipal taxes. Certain of such taxes could, if applicable, have a significant effect on the amount of tax payable in respect of an investment in the Partnership. A Limited Partner's distributive share of the profits of the Partnership may be required to be included in determining reportable income for state or local tax purposes. Limited Partners must consult their own advisors regarding the possible applicability of state, local, or municipal taxes to an investment in the Partnership.

---

Except as otherwise set forth, the foregoing statements regarding the U.S. federal income tax consequences to the Limited Partners of an investment in the Partnership are based upon the provisions of the Code as currently in effect and the existing administrative and judicial interpretations thereunder. No assurance can be given that administrative, judicial or legislative changes will not occur that would make the foregoing statements incorrect or incomplete.

THE FOREGOING DISCUSSION IS NOT INTENDED AS A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE CERTAIN OF THE TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP MAY NOT BE THE SAME FOR ALL TAXPAYERS. ACCORDINGLY, PROSPECTIVE INVESTORS IN THE PARTNERSHIP ARE URGED TO CONSULT THEIR TAX ADVISORS WITH SPECIFIC REFERENCE TO THEIR OWN TAX SITUATION UNDER U.S. FEDERAL INCOME TAX LAW AND THE PROVISIONS OF APPLICABLE STATE, MUNICIPAL AND LOCAL LAWS BEFORE SUBSCRIBING FOR INTERESTS.

## INVESTMENTS BY EMPLOYEE BENEFIT PLANS

### In General

The following section sets forth certain consequences under ERISA and the Code that a fiduciary of an "employee benefit plan" as defined in, and subject to Part 4 of Title I of, ERISA or of a "plan" as defined in and subject to Section 4975 of the Code who has investment discretion should consider before deciding to invest the plan's assets

in the Partnership (such "employee benefit plans" and "plans" being referred to herein as "Plans", and such fiduciaries with investment discretion being referred to herein as "Plan Fiduciaries"). The following summary is not intended to be complete, but only to address certain questions under ERISA and the Code that are likely to be raised by the Plan Fiduciary's own counsel.

\*      \*      \*

Any discussion of U.S. federal tax issues set forth in this Memorandum was written in connection with the promotion and marketing by the Partnership, BSAM and the Placement Agents of the transactions described in this Memorandum. Such discussion was not intended or written to be legal or tax advice to any person and was not intended or written to be used, and it cannot be used, by any person for the purpose of avoiding any U.S. federal tax penalties that may be imposed on such person. Each investor should seek advice based on its particular circumstances from an independent tax advisor.

\*      \*      \*

In general, the terms "employee benefit plan" as defined in ERISA and "plan" as defined in Section 4975 of the Code together refer to any plan or account of various types that provides retirement benefits or welfare benefits to an individual or to an employer's employees and their beneficiaries. Such plans and accounts include, but are not limited to, corporate pension and profit-sharing plans, "simplified employee pension plans", Keogh plans for self-employed individuals (including partners), individual retirement accounts described in Section 408 of the Code and medical benefit plans.

Each Plan Fiduciary must give appropriate consideration to the facts and circumstances that are relevant to an investment in the Partnership, including the role an investment in the Partnership plays in the Plan's investment portfolio. Each Plan Fiduciary, before deciding to invest in the Partnership, must be satisfied that investment in the Partnership is a prudent investment for the Plan, that the investments of the Plan, including the investment in the Partnership, are diversified so as to minimize the risks of large losses and that an investment in the Partnership complies with the governing documents of the Plan and related trust.

EACH PLAN FIDUCIARY CONSIDERING ACQUIRING AN INTEREST MUST CONSULT ITS OWN LEGAL AND TAX ADVISORS BEFORE DOING SO.

### Restrictions on Investments by Benefit Plan Investors

ERISA and a regulation issued thereunder contain rules for determining when an investment by a Plan in an entity will result in the underlying assets of the entity being assets of the Plan for purposes of ERISA and Section 4975 of the Code (i.e., "plan assets"). Those rules provide that assets of an entity will not be plan assets of a Plan that purchases an interest therein if the investment by all "benefit plan investors" is not "significant" or certain other exceptions apply. The term "benefit plan investors" includes all Plans (i.e., all "employee benefit plans" as defined in, and subject to Part 4 of Title I of, ERISA and all "plans" as defined in and subject to Section 4975 of the Code), and all entities that hold "plan assets" (each, a "Plan Assets Entity") due to investments made in such entities by already described benefit plan investors. ERISA provides that a Plan Assets Entity is considered to hold plan assets only to the extent of the percentage of the Plan Assets Entity's equity interests held by benefit plan investors. In addition, all or a portion of an investment made by an insurance company using assets from its general account may be treated as a benefit plan investor. Investments by benefit plan investors will be deemed not significant if benefit plan investors own, in the aggregate, less than 25% of the total value of each class of equity interests of the entity (determined by not including the investments of persons with discretionary authority or control over the assets of such entity, of any person who provides investment advice for a fee (direct or indirect) with respect to such assets, and "affiliates" (as defined in the regulations issued under ERISA) of such persons; *provided, however,* that under no circumstances are investments by benefit plan investors excluded from such calculation).

In order to avoid causing the assets of the Partnership to be "plan assets", the General Partner intends to restrict the aggregate investment by benefit plan investors to under 25% of the total value of each class of equity interests of the Partnership (not including the investments of the General Partner, any person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Partnership, and any entity (other than a benefit plan investor) that is directly or indirectly through one or more intermediaries controlling, controlled by or under common control

with any of such entities (including an entity for which the General Partner is the general partner, investment adviser or provides investment advice), and each of the principals, officers and employees of any of the foregoing entities who has the power to exercise a controlling influence over the management or policies of such entity or of the Partnership). Furthermore, because the 25% test is ongoing, it not only restricts additional investments by benefit plan investors but can also cause the General Partner to require that existing benefit plan investors withdraw from the Partnership if other investors withdraw. If rejection of subscriptions or such mandatory withdrawals are necessary, as determined by the General Partner, to avoid causing the assets of the Partnership to be "plan assets", the General Partner will effect such rejections or withdrawals in such manner as the General Partner, in its sole discretion, determines.

### Ineligible Purchasers

In general, Interests may not be purchased with the assets of a Plan if the General Partner, the Administrator, any Director of the Master Fund, BSIL, the Prime Broker, Stone Tower Debt Advisors LLC, Dresdner Bank AG London Branch, any Placement Agent, any of their respective affiliates or any of their respective employees either: (i) has investment discretion with respect to the investment of such plan assets; (ii) has authority or responsibility to give or regularly gives investment advice with respect to such plan assets, for a fee, and pursuant to an agreement or understanding that such advice will serve as a primary basis for investment decisions with respect to such plan assets and that such advice will be based on the particular investment needs of the Plan; or (iii) is an employer maintaining or contributing to such Plan. A party that is described in clause (i) or (ii) of the preceding sentence is a fiduciary under ERISA and the Code with respect to the Plan, and any such purchase might result in a "prohibited transaction" under ERISA and the Code.

Except as otherwise set forth, the foregoing statements regarding the consequences under ERISA and the Code of an investment in the Partnership are based on the provisions of the Code and ERISA as currently in effect, and the existing administrative and judicial interpretations thereunder. No assurance can be given that administrative, judicial, or legislative changes will not occur that may make the foregoing statements incorrect or incomplete.

ACCEPTANCE OF SUBSCRIPTIONS ON BEHALF OF PLANS IS IN NO RESPECT A REPRESENTATION BY THE GENERAL PARTNER OR ANY OTHER PARTY RELATED TO THE PARTNERSHIP THAT THIS INVESTMENT MEETS THE RELEVANT LEGAL REQUIREMENTS WITH RESPECT TO INVESTMENTS BY ANY PARTICULAR PLAN OR THAT THIS INVESTMENT IS APPROPRIATE FOR ANY PARTICULAR PLAN. THE PERSON WITH INVESTMENT DISCRETION SHOULD CONSULT WITH HIS OR HER ATTORNEY AND FINANCIAL ADVISERS AS TO THE PROPRIETY OF AN INVESTMENT IN THE PARTNERSHIP IN LIGHT OF THE CIRCUMSTANCES OF THE PARTICULAR PLAN.

## PLAN OF DISTRIBUTION

This is a private offering pursuant to exemptions provided by Section 4(2) of the Securities Act and Rule 506 thereunder. The Partnership's assets are managed by the General Partner. The Partnership does not offer any feature designed to assure a return of capital to investors.

Bear Stearns, certain of its affiliates and certain non-affiliated selling agents may serve as placement agents with respect to Interests (collectively, "Placement Agents"), subject to prior sale, when, as and if delivered, and subject to certain other conditions. The General Partner is authorized to appoint any broker-dealer of securities which is registered as such with the SEC and is a member as such with the NASD to make offers or sales of Interests. Additionally, the General Partner may appoint, under certain circumstances, any foreign bank, dealer, institution, or individual which is ineligible for or not subject to SEC registration or NASD membership to make offers or sales of Interests outside the United States and its possessions or territories.

## SUBSCRIPTION PROCEDURE

Interests are offered for sale through Placement Agents on a continuous basis as of the opening of business of the first Business Day of each calendar month. The minimum initial subscription amount for each new investor in the

Partnership is $1,000,000. The minimum additional investment is $250,000. The General Partner may accept or reject any initial or additional subscriptions and may waive the minimum subscription amounts in its sole discretion.

In order to subscribe for Interests, a prospective investor must submit a fully completed and executed Subscription Agreement to the General Partner. Subscription Agreements must be received by the General Partner at least five Business Days prior to the Subscription Date (or such shorter period permitted by the General Partner). The subscriber must also make arrangements with the General Partner for the transmission of its subscription funds, which must be received by the Partnership prior to 5:00 p.m. (New York time) two Business Days prior to the relevant Subscription Date (or such shorter period acceptable to the General Partner). After both the Subscription Agreement and subscription amount are received, the General Partner will promptly notify the subscriber whether the subscription will be accepted or rejected. Subscription Agreements should be sent to the General Partner, c/o Bear Stearns Asset Management Inc., 383 Madison Avenue, New York, New York 10179.

All subscriptions are irrevocable. The Partnership may accept a subscription only in part, and will promptly notify any affected subscriber.

As part of the subscription process, prospective investors must furnish the General Partner and the Administrator with all representations and documentation required pursuant to their anti-money laundering policies and applicable anti-money laundering laws and regulations and agree to provide any information deemed necessary by the General Partner in its sole discretion to comply with its anti-money laundering program and related responsibilities from time to time.

**PROSPECTIVE SUBSCRIBERS MUST CAREFULLY CONSIDER THE INFORMATION REQUIRED IN THE SUBSCRIPTION AGREEMENT AND THE PROPOSED AMOUNT OF THEIR INVESTMENT IN LIGHT OF THE AMOUNT OF THEIR OTHER SPECULATIVE INVESTMENTS. AN INVESTMENT IN THE PARTNERSHIP IS SUITABLE ONLY FOR A LIMITED PORTION OF THE RISK SEGMENT OF AN INVESTOR'S PORTFOLIO.**

## PRIVACY STATEMENT

This privacy statement is issued by the Partnership, the General Partner, and their affiliates. The Partnership and the General Partner consider privacy to be fundamental to investor relationships and adhere to the policies and practices described below to protect current and former investors' nonpublic personal information.

The Partnership and the General Partner do not disclose nonpublic personal information about investors or former investors to third parties other than as described herein. The Partnership and the General Partner never sell investor lists or individual investor information. Internal policies are in place to protect confidentiality, while allowing investor needs to be served. Only individuals who need to do so in carrying out their job responsibilities may access investor information. The Partnership and the General Partner maintain physical, electronic, and procedural safeguards that comply with federal standards to protect confidentiality. These safeguards extend to all forms of interaction with the Partnership and the General Partner, including the Internet.

In the normal course of business, investors give the Partnership and the General Partner nonpublic personal information on subscription documents and other forms, on websites, and through transactions with affiliates of the General Partner. The Partnership, the Administrator and the General Partner collect information about investors (such as name, address, birth date, social security number, educational and professional background, assets, and income) and the investors' transactions with the Partnership, the Administrator and the General Partner and its affiliates (such as investments, performances, and account balances). To enable the Partnership, the Administrator and the General Partner to serve investors, information may be shared with affiliates and third parties that perform various services for the Partnership, the Administrator and the General Partner, such as transfer agents, lawyers, custodians, administrators, and broker-dealers. This shared information includes identification information (e.g., name and address), transaction and experience information (e.g., account balance), and other information necessary to accomplish transactions. This information may be shared with affiliates, with companies with which the Partnership and the General Partner have marketing agreements, or with other parties only as permissible by law. Any organization receiving client information may only use it for the purpose designated by the General Partner or its affiliates. In addition, the Administrator may pass on client information to the General Partner.

## MISCELLANEOUS

### Side Letter Arrangements

The Partnership and the Other Feeder Funds may from time to time enter into agreements with certain investors which provide for terms of investment that are more favorable to such investors than the terms described in this Memorandum (collectively, "Side Letters"). Such terms may include (i) the waiver, reduction or rebate of Advisory Fees and/or Profit Shares or incentive fees, (ii) preferential transfer or liquidity rights, including additional withdrawal dates and waived or reduced withdrawal notice periods, withdrawal fees or holdback periods for withdrawal proceeds, (iii) the commitment to permit future investments in the Partnership by such investors when the Partnership is otherwise closed to new or additional investments and (iv) undertakings designed to protect an investor from violating an applicable statute or administrative regulation. The Partnership may also agree to provide certain investors with supplemental information and reports; *provided, however,* that any such supplemental information and reports will also be offered to all other Limited Partners (who may or may not choose to receive such supplemental information and reports). In any such case, the supplemental information or reports provided for in the Side Letter may affect the decision of its recipient to request a withdrawal from its Capital Account. Other than with respect to supplemental information and reports, Side Letters will not generally entitle other investors to the same preferential terms of investment and the Partnership may not disclose to other investors the existence or terms of any such Side Letters. The Partnership will enter into Side Letters only if and to the extent they are consistent, and implemented in accordance, with the governing documents of the Partnership and the fiduciary duties owed by the Partnership to its investors.

### Reports to Limited Partners

Within 30 days of the end of each calendar month, the Partnership will prepare an account statement containing information relating to the Net Asset Value of the Partnership and each Limited Partner's Capital Account balance as of the end of such month. In addition, an annual report containing audited financial statements will be prepared and distributed to Limited Partners as soon as practicable after the close of the Partnership's fiscal year. Limited Partners will also receive all necessary federal tax information regarding the Partnership. Copies of these reports will be mailed to Limited Partners at their registered addresses.

### Amendments to the Partnership Agreement

The Partnership Agreement provides generally that the General Partner may amend the Partnership Agreement at any time and from time to time, in a manner that materially adversely affects or could reasonably be expected to have a material adverse affect on the Partnership or the Limited Partners; *provided, however,* that the General Partner may not make any such amendment without (i) giving notification to the Limited Partners, at least thirty (30) days prior to the implementation of such amendment, setting forth all material facts relating to such amendment and (ii) obtaining the Consent of the Partnership (as defined in the Partnership Agreement) to such amendment prior to the implementation thereof.

In addition, the General Partner, without obtaining the authorization or approval of any Limited Partner and without giving prior notification to any Limited Partner, may amend the Partnership Agreement at any time and from time to time to the extent necessary, in the reasonable judgment of the General Partner, to:

(i) cause the provisions relating to Capital Accounts to comply with the provisions of Section 704 of the Code and the Regulations thereunder;

(ii) otherwise cause the provisions of the Partnership Agreement to comply with any requirement, condition, or guideline contained in any order, directive, opinion, ruling, or regulation of a federal or state agency or contained in federal or state law;

(iii) ensure the Partnership's continuing classification as a partnership for U.S. federal income tax purposes;

(iv) prevent the Partnership from being treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and the Regulations;

(v) take such actions as may be necessary or appropriate to avoid the assets of the Partnership being treated for any purpose of ERISA or Section 4975 of the Code as assets of any "employee benefit plan" as defined in and subject to ERISA or of any "plan" as defined in Section 4975 of the Code (or any corresponding provisions of succeeding law) or to avoid the Partnership's engaging in a prohibited transaction as defined in Section 406 of ERISA or Section 4975(c) of the Code;

(vi) prevent the Partnership from being required to register as an "investment company" under the Company Act;

(vii) add to the obligations of the General Partner for the benefit of the Partnership or the Limited Partners;

(viii) reflect the admission, substitution, termination, or withdrawal of Partners after the date hereof in accordance with the provisions of the Partnership Agreement;

(ix) cure any ambiguity in the Partnership Agreement or correct any provision in the Partnership Agreement that is manifestly incorrect; or

(x) provide that any one or more additional General Partners may possess and exercise any one or more of the rights, powers, and authority of a general partner under the Partnership Agreement.

Moreover, upon giving notification to the Limited Partners, but without obtaining the authorization or approval of any Limited Partner, the General Partner may amend the Partnership Agreement at any time and from time to time for such purpose as the General Partner may deem necessary, appropriate, advisable, or convenient, provided that, in the General Partner's reasonable judgment, such amendment could not reasonably be expected to have a material adverse affect on the Partnership or any Limited Partner. No such amendment, however, may either eliminate or set a significant barrier to the rights of the Nonaffiliated Limited Partners to remove and/or replace the General Partner, as provided in the Partnership Agreement.

**Available Documents**

The Master Fund's Memorandum and Articles of Association and the Partnership's and the Master Fund's agreements with the General Partner and the Administrator are available for inspection and review by Limited Partners, prospective investors, and their authorized representatives during normal business hours at the office of the Administrator. Such documents will also be sent to Limited Partners and prospective investors at cost upon request. The Partnership will afford prospective investors the opportunity to obtain any additional information necessary to verify the accuracy of any representations or information set forth in this Memorandum, to the extent that the Partnership possesses such information or can acquire it without unreasonable effort or expense. Such review is limited only by the proprietary and confidential nature of the trading strategies utilized by the General Partner and by the confidentiality of personal information relating to other investors.

Because the Partnership will invest a substantial amount of its assets in Repackaging Vehicle Junior Interests, and an investment in the Partnership involves certain of the risks of investing in Repackaging Vehicle Junior Interests, the offering documents for Repackaging Vehicle Securities and/or any operative documents of the Repackaging Vehicles referred to in the Repackaging Vehicle offering documents, subject to any confidentiality requirements imposed on the Partnership, will be sent to Limited Partners and prospective investors without charge upon request to the General Partner at Bear Stearns Asset Management Inc., 383 Madison Avenue, New York, New York 10179, Attention: Alternative Fund Services; telephone: 212-272-1630; facsimile: 917-849-3018.

**Inquiries**

Inquiries regarding the Partnership and the Interests should be directed to the General Partner.