UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————  x
                                                    :
NAVIGATOR CAPITAL PARTNERS, L.P., on behalf of      :
itself and all others similarly situated,           :
                                                    :
                              Plaintiff,            :
                                                    :    07 Civ. 07783 (AKH) (DFE)
             - against -                            :
                                                    :
                                                    :
BEAR STEARNS ASSET MANAGEMENT, BEAR,                :    Oral Argument Requested
STEARNS SECURITIES CORP., THE BEAR                  :
STEARNS COMPANIES INC., BEAR, STEARNS &             :
CO. INC., RALPH CIOFFI, RAYMOND                     :
MCGARRIGAL AND MATTHEW TANNIN,                      :
                                                    :
                              Defendants,           :
             - and -                                :
                                                    :
BEAR STEARNS HIGH-GRADE STRUCTURED                  :
CREDIT STRATEGIES, L.P.,                            :
                                                    :
                              Nominal Defendant.    :
——————————————————————  x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO REMAND

**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, NY 10017
(212) 894-7200

**SADIS & GOLDBERG LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.    The Partnership's Investments ..................................................................4

        1.    Master-Feeder Structure........................................................................4

        2.    The Structured Finance Securities At Issue ................................5

    B.    Defendants' Response To The Collapse Of The Sub-Prime Mortgage
        Market ....................................................................................................6

    C.    The Management Defendants' Breaches Of Fiduciary Duties ................7

ARGUMENT ........................................................................................................9

I.    REMAND OF THIS CASE IS REQUIRED ...........................................................9

    A.    Legal Standards Governing Remand Motions.........................................9

    B.    SLUSA Is Inapplicable .........................................................................9

        1.    No "Covered Security" Is At Issue ........................................10

        2.    No Misrepresentation Or Omission Is Alleged "In Connection
            With" The Purchase Or Sale Of Any Covered Security ............14

        3.    The Derivative Claims Are Not Preempted By SLUSA Because
            They Do Not Sound In Fraud.....................................................16

        4.    Defendants' Removal Finds No Support In The Policies
            Underlying SLUSA....................................................................16

    C.    CAFA Is Inapplicable .........................................................................17

        1.    The Section 1332(d)(9)(C) Exception To CAFA Jurisdiction
            Applies ......................................................................................17

        2.    The Section 1332(d)(3) And (d)(4) Exceptions To CAFA
            Jurisdiction Potentially Apply....................................................21

II.    PLAINTIFF SHOULD BE AWARDED COSTS AND ATTORNEYS' FEES
    RESULTING FROM DEFENDANTS' IMPROPER REMOVAL....................................22

CONCLUSION .....................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Blockbuster, Inc. v. Galeno*,
   472 F.3d 53 (2d Cir. 2006) .......................................................................................... 9, 17, 19

*Boxer v. Husky Oil Co.*,
   429 A.2d 995 (Del Ch. 1981) ................................................................................................ 20

*Carmona v. Bryant*,
   No. CV-06-78-S-BLW, 2006 WL 1043987 (D. Idaho Apr. 19, 2006) ............................. 18, 20

*Circle Indus. USA v. Parke Constr. Group, Inc.*,
   183 F.3d 105 (2d Cir. 1999) ................................................................................................. 22

*Davis v. Chase Bank, U.S.A., N.A*,
   453 F. Supp. 2d 1205 (C.D. Cal. 2006) ................................................................................ 18

*Estate of Pew v. Cardarelli*,
   No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006) .................................... 18, 20

*French v. First Union Sec, Inc.*,
   209 F. Supp. 2d 818 (M.D. Tenn. 2002).............................................................................. 15

*Gavin v. AT&T Corp.*,
   464 F.3d 634 (7th Cir. 2006) ............................................................................................ 15, 16

*Genton v. Vestin Realty Mortgage II, Inc.*,
   No. 06-CV-2517-BEN (WMC), 2007 WL 951838 (S.D. Cal. Mar. 9, 2007) ......................... 18

*Indiana Electric Workers Pension Trust Fund v. Millard*,
   No. 07 Civ. 172 (JGK), 2007 WL 2141697 (S.D.N.Y. July 25, 2007) ............................. 14, 15

*Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care
   Group, Inc.*,
   No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 8, 2005).................................... 19

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ................................................................................. 12

*LaSala v. Bank of Cyprus Pub. Co.*,
   2007 WL 2331049 (S.D.N.Y. Aug. 15, 2007)...................................................................... 16

*LaSala v. UBS, AG*,
   06 Civ. 1736 (CSH), 2007 WL 2331054 (S.D.N.Y. Aug. 15, 2007)................................ 14, 16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   126 S. Ct. 1503 (2006)......................................................................................................... 16

*Morgan Guar. Trust Co. v. Republic of Palau*,
   971 F.2d 917 (2d Cir. 1992) ................................................................................................ 22

*Phillips v. Reckson Assocs. Realty Corp.*,
   No. 06-CV-5971, 2006 U.S. Dist. LEXIS 83288 (E.D.N.Y. Nov. 15, 2006)............................ 9

*Ring v. AXA Financial, Inc.*,
    483 F.3d 95 (2d Cir. 2007) ........................................................................ 10, 13, 16

*Serrano v. 180 Connect, Inc.*,
    478 F.3d 1018 (9th Cir. 2007) ................................................................................. 17

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    332 F.3d 116 (2d Cir. 2003) .................................................................................... 10

*Strigliabotti v. Franklin Res., Inc.*,
    398 F. Supp. 2d 1094 (N.D. Ca. 2005) .................................................................... 15

*Williams v. Texas Commerce Trust Co. of New York*,
    No. 05-1070-CV-W-GAF, 2006 WL 1696681 (W.D. Mo. June 15, 2006) ........................... 19

**Statutes**

15 U.S.C. § 77p(b) .......................................................................................................... 10

15 U.S.C. § 77p(c) ............................................................................................................ 3

15 U.S.C. § 77p(f)(3) ...................................................................................................... 10

15 U.S.C. § 77r(b) ........................................................................................................... 10

15 U.S.C. § 77r(b)(1) ...................................................................................................... 10

15 U.S.C. § 77r(b)(2) ...................................................................................................... 11

15 U.S.C. § 78bb(f)(1) .................................................................................................... 10

15 U.S.C. § 78bb(f)(1)(A) ............................................................................................... 10

15 U.S.C. § 78bb(f)(2) .................................................................................................. 3, 9

15 U.S.C. § 78bb(f)(3)(A) ............................................................................................... 15

15 U.S.C. § 78bb(f)(3)(D) ............................................................................................... 10

28 U.S.C. § 1332 ............................................................................................................... 3

28 U.S.C. § 1332(d)(2) .................................................................................................... 22

28 U.S.C. § 1332(d)(3) ............................................................................................... 21, 22

28 U.S.C. § 1332(d)(4) ............................................................................................... 21, 22

28 U.S.C. § 1332(d)(4)(A) .............................................................................................. 17

28 U.S.C. § 1332(d)(4)(B) .............................................................................................. 17

28 U.S.C. § 1332(d)(5) .................................................................................................... 22

28 U.S.C. § 1332(d)(7) .................................................................................................... 21

28 U.S.C. § 1332(d)(9)(C) ....................................................................................... *passim*

28 U.S.C. § 1441 ............................................................................................................... 3

28 U.S.C. § 1453 ............................................................................................................... 3

28 U.S.C. 1447(c) ................................................................................................ 22

6 Del. Code Ann. § 15-404 .................................................................................. 20

6 Del. Code Ann. § 15-405 .................................................................................. 20

**Other Authorities**

S. Rep. 105-182 (1998) ....................................................................................... 13

Plaintiff Navigator Capital Partners, L.P. respectfully submits this memorandum of law in support of its Motion to Remand this action to the Supreme Court of the State of New York.

## PRELIMINARY STATEMENT

In a contrived effort to avoid defending Plaintiff's fiduciary duty claims on the merits, Defendants strain to shoehorn the facts alleged in the Complaint[1] into two wholly inapplicable statutory bases for removal:  SLUSA and CAFA.  Neither the law nor the facts alleged in the Complaint support Defendants' ludicrous attempt to characterize Plaintiff's claims under Delaware law as federal securities law claims.  Plaintiff respectfully submits that remand to New York State Supreme Court is required to enable Plaintiff to pursue its claims without further unwarranted delay.  An award of attorneys' fees and costs incurred as a result of Defendants' improper removal is also appropriate here.

Plaintiff and the other limited partners (the "Class") that held Partnership Interests at any time during the period from August 1, 2006 through July 18, 2007 (the "Class Period") lost hundreds of millions of dollars when Bear Stearns High-Grade Structured Credit Strategies, L.P. (the "Partnership" or the "Fund") imploded this summer.  The Partnership and the value of Class members' Partnership Interests evaporated because the Management Defendants failed to properly manage the Partnership and its investments during the recent decline in the sub-prime mortgage market.  This case arises out of the Management Defendants' breach of the fiduciary duties they owed to Plaintiff, other limited partners, and to the Partnership itself.  Accordingly, the Complaint alleges prototypical Delaware state law breach of fiduciary duty claims, and does not present any federal question or other basis for federal jurisdiction.  The complexity of the

---

[1] Capitalized terms used in this Preliminary Statement but not defined herein have the meanings attributed to such terms in the Statement of Facts below and/or in the Complaint.

underlying facts and circumstances does not alter the fact that Plaintiff's claims are classic breach of fiduciary duty claims that belong in state court.

Defendants first attempt to avoid defending Plaintiff's breach of fiduciary duty claims by pretending that the Complaint concerns "covered securities" and is therefore removable under SLUSA. As a threshold matter, it is beyond dispute that: (a) the Partnership Interests that Plaintiff and other Class members held in the Partnership are ***not*** covered securities; and (b) the shares of the Cayman-based Master Fund through which the Partnership invested substantially all of its assets are ***not*** "covered securities." In fact, the Complaint does not allege any misrepresentations or omissions of material facts in connection with the purchase or sale of any "covered security." Rather, the mismanagement and lack of candor at issue in the Complaint concern sub-prime mortgage-backed securities and related instruments, such as collateralized debt obligations ("CDOs") and credit default swaps, all of which are also indisputably ***not*** "covered securities" under any reading of SLUSA.

Because there is no "covered security" to ground their argument for removal under SLUSA, Defendants are confined to focusing upon a small number of relatively low-dollar amount positions in publicly traded equity securities held by the Master Fund. Defendants contend that the mere presence of these minuscule investments warrants removal of this action. As explained below in Point I.B., these "equity securities" are entirely tangential to the claims at issue, *de minimis* in amount and provide no basis for removal under SLUSA. It is therefore unremarkable that Defendants cite no authority supporting removal based upon the reed thin relationship that Defendants contend "equity securities" bear to Plaintiff's claims.

The Court can dispose of Defendants' fallback argument for removal under CAFA with equal ease. CAFA specifically exempts from its reach fiduciary duty claims such as those

asserted here.  As set forth in Point I.C., Defendants' restrictive reading of CAFA's "fiduciary duties" exception is contrary to the plain language of the statute and has been directly rejected by courts in this District and elsewhere.

New York State Supreme Court is the appropriate forum to resolve this state law controversy.  Plaintiff respectfully requests that the Court grant this Remand Motion and award Plaintiff its costs and attorneys' fees.

## STATEMENT OF FACTS

Plaintiff Navigator Capital Partners, L.P. ("Plaintiff") filed its Class Action and Verified Derivative Complaint ("Complaint") on August 6, 2007 in the Supreme Court of the State of New York, County of New York (Index No. 07-602663).[2]  On August 31, 2007, Defendants Bear Stearns Asset Management Inc. ("BSAM"), Ralph Cioffi, Raymond McGarrigal, Matthew Tannin (collectively, the "Management Defendants"), Bear, Stearns Securities Corp. ("BSSC"), The Bear Stearns Companies Inc. ("BSC") and Bear, Stearns & Co., Inc. ("BS&Co") (collectively, together with the Management Defendants, the "Defendants") filed a Notice of Removal ("Def. Notice") in this Court removing the action in reliance upon the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(c) & 78bb(f)(2), and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1441 & 1453.

Plaintiff is a Limited Partner of the Partnership, which was organized under the laws of Delaware on August 26, 2003.  ¶¶ 14, 28, 56.[3]  BSAM is the General Partner and Investment Manager of the Partnership and the Master Fund (defined below) through which the Partnership invested.  ¶ 15.  As of December 31, 2006, BSAM was the third largest manager of collateralized

---

[2]  A copy of the Complaint is attached as Exhibit 1 to the Declaration of Andrew J. Entwistle, dated September 28, 2007 and submitted herewith ("Entwistle Declaration" or "Entwistle Decl.").

[3]  References to "¶__" and "¶¶__" are to paragraphs of the Complaint (unless otherwise specified).

debt obligations ("CDOs") that included sub-prime mortgages. ¶ 44. Defendants Cioffi, McGarrigal and Tannin are officers of BSAM and, together with BSAM, managed the Partnership at all relevant times. ¶¶ 15, 19-22. BSC is the parent of BSAM, BSSC and BS&Co., and is the second largest underwriter of mortgage bonds in the United States. ¶ 17. BSSC acted as Prime Broker and Custodian to the Master Fund. ¶ 16. BS&Co. is a broker-dealer subsidiary of BSC and BSSC. ¶ 18.

Defendants offered to sell Partnership Interests to prospective investors through a Confidential Private Placement Memorandum ("PPM"), dated August 31, 2004. ¶ 28. Defendants offered additional Partnership Interests pursuant to a second Confidential Private Placement Memorandum, dated August 2006 ("August 2006 PPM"). ¶ 29. Plaintiff invested more than $700,000 in the Partnership, and was admitted as a Limited Partner as of September 2004. ¶ 56.

### A. The Partnership's Investments

#### 1. Master-Feeder Structure

The Partnership invested substantially all of its assets through the Bear Stearns High-Grade Structured Credit Strategies Master Fund Ltd. (the "Master Fund"), a Cayman Islands entity. ¶ 34. The Master Fund was organized as part of a "master-feeder" structure through which separate funds made investments. ¶¶ 34-35. Under the "master-feeder" structure, "feeder" funds, including the Partnership, conducted most or all of their investment and trading activities indirectly through investments in the Master Fund. *Id.*

During the relevant period, the Partnership had beneficial ownership of a percentage of the Master Fund's assets. As of December 31, 2006, the Partnership's beneficial ownership of the Master Fund's net assets amounted to 28.58%. ¶ 37. The Master Fund's assets consisted predominantly of CDOs and other mortgage-backed structured finance securities.

2.        **The Structured Finance Securities At Issue**

The objective of the Partnership was to seek high current income and capital appreciation, "primarily through leveraged investments in investment-grade ***structured finance securities*** with an emphasis on triple-A and double-A rated ***structured finance securities***." ¶¶ 4, 39 (emphasis added).  Defendants stated to investors in August 2005 that the Partnership "generally takes positions in the high end of the capital structure which is ***hedged through the use of credit default swaps***". ¶ 49 (quoting Defendants' August 2005 response to the Alternative Investment Management Association's Illustrative Questionnaire (the "Response"); Entwistle Decl. Ex. 2, at 14 (emphasis added)).  Defendants further stated in the Response that "[t]he Fund generally invests, on a leveraged basis, in investment-grade ***structured finance securities*** rated AA or higher.  In addition, various derivatives, primarily credit-default swaps, but also options, swaps, swaptions, futures and forward contracts, equity securities and currencies, ***may*** be used for hedging purposes." ¶ 51 (emphasis added).

Through the Master Fund, the Management Defendants invested Partnership funds in, among other things, mortgage-backed CDOs.  ¶ 40.  CDOs are bundled bonds or loans that are typically "split" or "slice[d"] into several parts (or tranches).  *Id.*  The CDO parts are then sold individually to investors as separate securities.  *Id.*  In this case, the Management Defendants invested the Partnership's money in CDOs that were backed by sub-prime mortgages, which are riskier than traditional, credit-worthy mortgages given the borrowers' poor credit or heavy debt loads.  ¶ 41.  The market value of these investments depended upon the flow of principal and interest paid by sub-prime borrowers whose mortgages served as the underlying collateral for the mortgage-backed securities.  *Id*.  The Defendants were directly involved in the formation of many of the CDOs that the Management Defendants purchased on the Partnership's behalf.  ¶ 42.  Given this involvement, and BSAM's position as the third largest manager of CDOs backed

by sub-prime mortgages, the Defendants were keenly aware of the risks inherent in the CDOs in which they invested the Partnership's money.  ¶¶ 42, 44, 45.

**B.    Defendants' Response To The Collapse Of The Sub-Prime Mortgage Market**

Beginning at least as early as August 1, 2006, borrowers increasingly fell behind on their mortgage payments.  ¶ 46.  Among sub-prime loans, delinquencies of more than 90 days, foreclosures and seized properties rose to their highest levels in at least the preceding six years. *Id.*  These events led to a decrease in the value of CDOs backed by such loans, including those in which the Partnership was invested.  *Id.*  Even as the sub-prime market was collapsing, the Management Defendants continued to invest the Partnership's money in risky sub-prime mortgage-backed securities while at the same time failing to implement hedging and other strategies to minimize risk effectively.  ¶¶ 43, 47.  BSC, however, took steps in January 2007 to reduce its own exposure to the worsening sub-prime mortgage-backed securities market.  ¶ 48.

Despite the lack of an effective strategy to minimize the credit risk in the Partnership's mortgage-backed investments, the Management Defendants assured investors in a report for month end February 2007 that notwithstanding the volatility in credit markets associated with sub-prime mortgages:

> The Fund was well positioned for this spread widening because of the hedges put in place over the second half of 2006.  ***These hedges were concentrated in the triple-B and single-A tranches of the ABX indices***.[4]

For the month of March 2007, BSAM reported that the Fund had lost an estimated 3.71%, commenting that:

---

[4]  Paragraph 58 of the Complaint inadvertently quoted the Preliminary Performance Profile of a different failed Bear Stearns fund (the Bear Stearns High Grade Structured Strategies Enhanced Leverage Fund) for the period ended February 28, 2007, and provided the estimated return for that fund.  The correct quote is stated above, and a copy of the February 28, 2007 Preliminary Performance Profile for the Partnership is attached as Exhibit 2 to the Entwistle Declaration and states that the Fund had lost an estimated 1.32% for the month.

> Performance suffered in March for two reasons: first, **_continued weakness in CDOs with exposure to sub-prime collateral_** caused additional mark downs in our long asset exposure; second, our short positions rose in price as many investors who were **_short the sub-prime credit default index_** covered their positions . . . .

¶ 59 (emphasis added).

For the month of April 2007, BSAM reported (on June 8, 2007) that the Partnership lost, on an unaudited basis, 5.09%, and that this brought the year to date return as of April 30, 2007, to negative 6.24%. ¶ 60.

On July 18, 2007, Defendants announced to Plaintiff and to other Class Members that there was "very little value left for the investors in the High-Grade Fund as of June 30, 2007" and that "[i]n light of these returns, we will seek an orderly wind-down of the Fund[] over time." ¶¶ 10, 63. As of March 31, 2007, the Fund had $925 million of investor capital and gross long positions of $9.682 billion. ¶ 61. As the New York Times concluded, the events leading to the collapse of the Partnership was "a crisis that Bear, with **_its long expertise in bonds, structured products and in particular mortgage-backed securities_**, should have seen coming." ¶ 12 (emphasis added).

## C.    The Management Defendants' Breaches Of Fiduciary Duties

As managers and General Partner of the Partnership, the Management Defendants owed fiduciary duties to Plaintiff and to the other Limited Partners, as well as to the Partnership itself. ¶¶ 2, 12, 87. Under Delaware law, the Management Defendants' fiduciary duties included the highest obligations of due care, good faith, candor, loyalty and fair dealing. ¶¶ 70, 89. Indeed, the August 2006 PPM acknowledged that "[t]he General Partner [*i.e.*, BSAM] has fiduciary

responsibilities with respect to the Partnership and will make investment decisions in a manner consistent with those responsibilities." ¶ 69 (quoting August 2006 PPM, at 30).[5]

The Management Defendants breached their fiduciary duties to the Partnership "by neglecting to manage the Fund in a manner that would minimize risk and control losses *in connection with sub-prime mortgage-backed securities*." ¶ 2 (emphasis added). *See also*, *e.g.*, ¶¶ 54, 75-84. Based upon the Management Defendants' mismanagement of the Partnership and their failure to adequately assess, monitor and hedge the risks associated with its investments backed by sub-prime mortgages, Count III of the Complaint asserts a derivative claim against the Management Defendants for their breach of fiduciary duties to the Partnership.

The Management Defendants also breached their fiduciary duties to Plaintiff and to the other Limited Partners by systematically and continuously failing to disclose to Class Members that the Management Defendants: (a) were not sufficiently monitoring and adequately assessing the credit risk inherent in the Partnership's investments; (b) were not determining the frequency and severity of defaults of the underlying assets of each of the structured finance securities invested in by the Partnership; (c) were not developing and implementing credit enhancement mechanisms which would cause cash flow to be diverted away from the Partnership's riskier investments under certain market conditions; and (d) were not otherwise adequately engaging in hedging techniques to minimize risk. ¶¶ 55, 68-74. Based upon the Management Defendants' failure to adequately disclose these facts, Count I of the Complaint asserts a Class claim against them for their breach of fiduciary duties to Plaintiff and the Class.

Defendants BSC, BSSC and BS&Co. knowingly participated in, and had actual knowledge of, the Management Defendants' breaches of fiduciary duties. Accordingly, the

---

[5] A copy of the August 2006 PPM is attached as Exhibit B to Defendants' Notice of Removal.

Complaint brings a derivative claim against them for aiding and abetting breach of fiduciary duty (Count IV), and a Class claim against them for aiding and abetting breach of fiduciary duty (Count II).

All claims are brought under Delaware law.

## ARGUMENT

## I.    REMAND OF THIS CASE IS REQUIRED

### A.    Legal Standards Governing Remand Motions

Defendants bear the burden of proving that this case has been properly removed, as it is well settled that "when a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *Phillips v. Reckson Assocs. Realty Corp*., No. 06-CV-5971, 2006 U.S. Dist. LEXIS 83288, *5-6 (E.D.N.Y. Nov. 15, 2006) (citations and quotations omitted).  *See also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (party removing under CAFA bears burden of proof). Further, "out of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute [28 U.S.C. 1447] narrowly, ***resolving any doubts against removability*.**"  *Phillips*, 2006 U.S. Dist. LEXIS 83288, at *6 (citations and quotations omitted; emphasis added) (rejecting SLUSA removal).

### B.    SLUSA Is Inapplicable

Defendants try to miscast Plaintiff's Complaint in an attempt to bring this case within the scope of SLUSA.  SLUSA does not justify Defendants' improper removal of this case because the Complaint's allegations are plainly beyond the intended scope, purpose and language of SLUSA.  15 U.S.C. §§ 77p(c), 78bb(f).

In order to be removed under SLUSA, Defendants must establish that Plaintiff's claims: (1) constitute a "covered class action" (2) filed in state court (3) based on state law (4) alleging a

misrepresentation or omission of material fact (5) "in connection with" the purchase or sale (6) of a "covered security." *See*, *e.g.*, *Ring v. AXA Financial, Inc.*, 483 F.3d 95, 98 (2d Cir. 2007). "[A] lawsuit that does not satisfy all the SLUSA criteria must be remanded to state court." *Id.* (citing 15 U.S.C. §§ 78bb(f)(1) and (f)(3)(D)).

Plaintiff does not dispute that the Complaint's claims satisfy the first, second and third of these elements (nor, with respect to the Class Claims, the fourth element). Defendants, however, cannot establish the remaining essential elements for SLUSA removal: that the claims allege misrepresentations or omissions of material facts *in connection with the purchase or sale of a covered security*.

### 1.    No "Covered Security" Is At Issue

As the Second Circuit has observed, "SLUSA only converts into federal claims those state claims that fall within its clear preemptive scope, thereby confining federal question jurisdiction under this statutory regime to a subset of securities fraud cases." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 124 (2d Cir. 2003). In particular, Congress "expressly confin[ed] SLUSA preemption and removal to lawsuits in which the plaintiff alleges a state law violation stemming from (for purposes of this suit) 'a misrepresentation or omission of a material fact in connection with ***the purchase or sale of a covered security***.'" *Id.* (quoting 15 U.S.C. § 78bb(f)(1)(A)) (emphasis added).[6]

"SLUSA defines 'covered securities' by reference to paragraphs (1) and (2) of 15 U.S.C. § 77r(b). The cited paragraphs define 'covered securities' [as] securities listed on one of the national securities exchanges as well as securities issued by investment companies registered with the SEC." *Ring*, 483 F.3d at 99 (citing 15 U.S.C. § 77p(f)(3) and 15 U.S.C. § 77r(b)(1) &

---

[6] *See also* 15 U.S.C. § 77p(b) (Securities Act of 1933) (same).

(2)).  Citing no case law whatsoever, Defendants baldly assert that this action "clearly pertains to 'a covered security.'"  (Def. Notice ¶ 18.)  Not so.

Defendants cannot dispute that the Partnership Interests that Plaintiff and other Class members held in the Partnership are *not* "covered securities" under SLUSA.  Nor is there any dispute that shares of the Cayman-based Master Fund – through which the Partnership "invested substantially all [of its] assets" (Def. Notice ¶ 4 (quoting Compl. ¶ 34)) – are *not* "covered securities."  Further, it is undisputed that the investments at the heart of this case – collateralized debt obligations (CDOs) and other structured finance securities backed by sub-prime mortgages – are *not* covered securities.

Accordingly, the only conceivable "covered securities" to which Defendants can point are a handful of relatively small equity positions taken by the Master Fund, none of which are at issue in this case.  Indeed, Defendants' entire argument rests on the purported fact that a *de minimis* portion of the "Fund's assets were invested through the Master Fund in multiple positions consisting of millions of dollars in equity securities listed on national exchanges." (Def. Notice ¶ 18.)[7]  As the Complaint makes plain, these small equity positions are irrelevant and entirely tangential to the claims in this case – claims which are based on the Management Defendants' inadequate monitoring and hedging activities in connection with the Partnership's highly leveraged exposure to the sub-prime mortgage market.  Apart from the fact that the equity positions held by the Master Fund were insignificant in comparison to the Master Fund's overall

---

[7] Notably, the dollar amounts of these equity positions taken by the Master Fund – which, according to Defendants, ranged from $430,375 to $16,407,702 – all pale in comparison to the $925 million of total investor capital controlled by the Fund as of March 31, 2007 (Def. Notice at ¶ 7 (citing Compl. ¶ 7).)  They are even more minimal when one takes into account that the Partnership had a beneficial interest in less than a third (28.58% as of December 31, 2006 (¶ 37)) of the Master Fund's total net assets.  Their insignificance is even clearer when compared to the $9.682 *billion* in gross long positions the Partnership had through March 31, 2007.  ¶ 61 (emphasis added).

assets (which predominantly consisted of mortgage-backed instruments), these equities are simply not implicated in Plaintiff's breach of fiduciary duty claims.

Defendants rely upon the statement in the August 2006 PPM that the Fund "***may*** invest in . . . equity securities" and that "equity securities" appears on a laundry list of instruments that could be used for "hedging purposes." (Def. Notice ¶ 18; emphasis added (selectively excerpting ¶ 51)). Yet, there is no allegation that Defendants actually used any "equity positions" to hedge any of the Partnership's investments (much less investments with sub-prime exposure), and Defendants do not contend that they did so. Indeed, to the extent that Defendants purportedly hedged at all, "[t]hese ***hedges were concentrated in the triple-B and single-A tranches of the ABX indices***" (Feb. 28, 2007 Performance Profile; Entwistle Decl., Ex. 3) and/or were "through the use of credit default swaps" (¶ 49). *See also*, *e.g.*, ¶ 59 (quoting March 31, 2007 Performance Profile; Entwistle Decl., Ex. 4 ("our short positions rose in price as many investors who were ***short the sub-prime credit default index*** covered their positions") (emphasis added)).

Defendants cite no case law suggesting that the tangential and far-removed presence of a "covered security" implicates SLUSA. Rather, Defendants incorrectly presume this to be the law and selectively quote *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 n.21 (C.D. Cal. 2002), for the dubious proposition that "[w]hen a claim concerns a transaction that involves both covered and non-covered securities as alleged, the entire claim is subject to removal under SLUSA." (Def. Notice ¶ 19.) In distinct contrast to Plaintiff's claims, the covered securities in *Kenneth Rothschild* were at the heart of the claims there, as Morgan Stanley "allegedly made misrepresentations concerning [] a money market mutual fund" (a covered security). *Id.* at 999. Thus, that Court held plaintiff's claims to be removable under SLUSA, finding that "[t]he fact that plaintiff's claims may tangentially relate to non-securities,

*i.e.*, the certificates of deposit – does not alter this result." *Id.* at 1000 n.21.  This case, however, presents the opposite situation:  Plaintiff's claims undeniably rest on non-covered securities (*e.g.*, structured finance securities backed by sub-prime mortgages) and have, at best, only the most attenuated relationship to "covered securities."

The Second Circuit's recent decision in *Ring v. AXA Financial, Inc.*, 483 F.3d 95 (2d Cir. 2007) is instructive and supports remand here.  There, the Court was presented with the question of "whether a Children's Term Rider ("CTR") that is not by itself a 'covered security' becomes a 'covered security' and thus subject to SLUSA removal and dismissal because it is attached to a variable life insurance policy falling within the definition of a 'covered security.'" *Id.* at 96.  Holding that "we should not preempt and dismiss a suit that alleges fraud occurred in connection only with a promise in a contract that does not relate to a 'covered security' even where another promise in the same contract does concern a 'covered security,'" the Second Circuit ordered the case remanded to New York County Supreme Court.  *Id.* at 101-02.

Moreover, SLUSA's legislative history confirms that the Act was never intended to reach claims where, as here, the litigation centers on non-covered securities, and there is only an extremely tangential and tenuous relation to covered securities.  In particular, the Senate Report, in discussing SLUSA's "purpose and scope," explains that a motivating factor was:

> the dangers of maintaining differing federal and state standards of liability **for nationally-traded securities** [and that d]isparate, and shifting, state litigation procedures may expose **issuers** to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made.

S. Rep. 105-182, at 3 (1998) (emphasis added).  Such concerns are plainly not implicated by this case.  No issuer of the nationally traded securities to which Defendants point is being sued, or is at any risk of liability from this case.  Rather, this case involves breaches of fiduciary duties, and

knowing participation in those breaches, in connection with structured finance securities backed by sub-prime mortgages – which are indisputably not "covered securities."

> ### 2. No Misrepresentation Or Omission Is Alleged "In Connection With" The Purchase Or Sale Of Any Covered Security

Defendants erroneously contend that "the Complaint's alleged misrepresentations or omissions of material fact are made '*in connection with* the purchase or sale of a covered security,'" (Def. Notice at ¶ 16 (quoting 15 U.S.C. § 78bb(f)(1))) because – they incorrectly state – "[t]he Complaint [purportedly] alleges that the failures to disclose were made in connection with the *trading of equity securities* in the Master Fund". (Def. Notice at ¶ 16 (citing ¶¶ 34, 47, 49-53, 55).) Defendants, however, should not be permitted the luxury of attacking phantom allegations found nowhere in the Complaint.

In fact, no misrepresentations or omissions are alleged in connection with any of the Master Fund's purchases or sales of equity securities. Moreover, Defendants' misconduct is too far removed from any of those transactions to be said to "coincide" with them. *See Indiana Electric Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172 (JGK), 2007 WL 2141697, at *6 (S.D.N.Y. July 25, 2007) ("An alleged fraud is 'in connection with' a purchase or sale of securities under SLUSA if the fraud 'coincides' with or is 'more than tangentially related' to the transaction.") (citations omitted).

Here, the only "purchase or sale of securities under SLUSA" to which Defendants point is the Master Fund's handful of purchases of equity securities. However, "[w]here the alleged conduct giving rise to the claim is too far removed from a [covered] securities transaction, the 'in connection with' requirement is not met." *LaSala v. UBS, AG*, 06 Civ. 1736 (CSH), 2007 WL 2331054, at *24, 27 (S.D.N.Y. Aug. 15, 2007) ("[B]ecause the conduct . . . in which the Bank is implicated here is too far removed from a securities transaction to be said to have 'coincided'

with it, Count 1 of the complaint [aiding and abetting breach of fiduciary duty] is not preempted by SLUSA."). *See also*, *e.g.*, *Strigliabotti v. Franklin Res., Inc.,* 398 F. Supp. 2d 1094, 1100 (N.D. Ca. 2005) ("The fraud in question . . . must have more than some tangential relation to the securities transaction.") (citations omitted); *French v. First Union Sec,* Inc., 209 F. Supp. 2d 818, 824 (M.D. Tenn. 2002) ("[I]n order for a breach to be 'in connection with' securities sales, the breach of the fiduciary duty must do more than simply implicate securities. Rather, there must be a showing of a nexus between the fraud and a securities transaction.") (citations omitted); *Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) ("Of course there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event. In that sense the fraud of which the plaintiff complains is connected to the merger, without which there would not have been such a fraud against the plaintiff and her class. But in the same sense the fraud is connected to the Big Bang, without which there would never have been a MediaOne or even an AT&T.").

The failures to disclose at issue simply have nothing to do with the handful of equity positions taken by the Master Fund. Rather, the disclosure failures all go to the Management Defendants' mismanagement of the Partnership and their failure to adequately assess, monitor and hedge the *risks associated with non-covered instruments such as CDOs exposed to the sub-prime mortgage market*. *See*, *e.g*., ¶¶ 2-4, 12, 39-49. Accordingly, Plaintiff's claims are not "in connection with" the purchase or sale of any covered security.[8]

---

[8]  Even if the Court were somehow to find that the Partnership Interests are "covered securities" and specifically "equity securities" (though they plainly are neither), and that all the other substantive requirements for SLUSA removal have been met (though, as explained herein, they have not), remand would still be required because Plaintiff's claims would then satisfy the conditions of SLUSA's savings clause known as the "'Delaware carve-out,' which rescues certain 'covered class actions' based on the law of the issuer's state of incorporation from SLUSA's preemptive sweep." *Ind. Elec. Workers Pension Trust Fund*, 2007 WL 2141697, at *3 (citing 15 U.S.C. § 78bb(f)(3)(A)).

### 3. The Derivative Claims Are Not Preempted By SLUSA Because They Do Not Sound In Fraud

The "requirements that must be satisfied for SLUSA preemption to apply are, under the law of this Circuit, applied to each claim in the Complaint rather than to the whole action." *LaSala v. UBS, AG*, No. 06 Civ. 1736, 2007 WL 2331054, at *25 (S.D.N.Y. Aug. 15, 2007). As discussed above, SLUSA does not bar any of Plaintiff's claims. In addition to the reasons set forth above, Counts III and IV of the Complaint are not subject to SLUSA because these derivative claims do not sound in fraud. *Id.*

Indeed, the derivative claims are not based at all on any misrepresentations or omissions; rather, they are based on the Management Defendants' "grossly negligent and/or bad faith failure to adequately assess, monitor and hedge the credit risks of investments held by the Fund and the Master Fund, and otherwise failing to manage the Fund with the requisite amount of due care." ¶ 90; *see also* ¶¶ 98-99. "Because none of these claims sounds in fraud or contains fraudulent conduct as a necessary component of the claim, none of them falls within SLUSA's reach." *LaSala v. Bank of Cyprus Pub. Co.*, 2007 WL 2331049, at *26 (S.D.N.Y. Aug. 15, 2007).

### 4. Defendants' Removal Finds No Support In The Policies Underlying SLUSA

Congress enacted SLUSA with the goal of providing "uniform national rules for class action litigation involving our national capital markets" by making federal courts the exclusive venue for class actions alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security: "The purpose of SLUSA was to prevent plaintiffs from making an end run around the restrictions on suits for federal securities fraud suits introduced by the [PSLRA] by filing the suits in state courts under state law." *Gavin*, 464 F.3d at 640 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1510-11 (2006)). *See also*, *e.g.*, *Ring*, 483 F.3d at 97.

This is not a securities fraud case, nor one that Plaintiff should have brought under the federal securities acts.  Resolution of this case does not depend upon whether Defendants violated any securities law.  Rather, this is a Delaware law breach of fiduciary duties case, brought by a limited partner on behalf of a Delaware limited partnership and other limited partners asserting claims against the general partner for breaching its fiduciary obligations in managing the Partnership and failing to communicate fully and candidly with Plaintiff and other limited partners.

Defendants' removal arguments are unavailing in light of the plain language of SLUSA and the policy bases pursuant to which SLUSA was enacted.

### C.    CAFA Is Inapplicable

This case is not properly removable under CAFA.  A plain reading of the Complaint establishes that Plaintiff's claims fall within the "fiduciary duties" exception to CAFA jurisdiction, 28 U.S.C. § 1332(d)(9)(C).  Accordingly, remand is required.

### 1.    The Section 1332(d)(9)(C) Exception To CAFA Jurisdiction Applies

Even assuming the threshold requirements of CAFA are satisfied, this case falls within the "fiduciary duties" exception to CAFA removal.[9]  CAFA provides an express exception to federal subject matter jurisdiction over any class action that "solely involves" a claim

> that relates to the rights, duties (***including fiduciary duties***), and
> obligations ***relating to or created by or pursuant to any security***
> (as defined under section 2(a)(1) of the Securities Act of 1933

---

[9]  Defendants cite *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018 (9th Cir. 2007) for the proposition that Plaintiff has the burden to prove the application of any express statutory exception to jurisdiction under CAFA.  (Def. Notice ¶ 25.)  Defendants' reading of *Serrano* is too broad, as that court held only that the party objecting to removal had the burden of proving the applicability of the §§ 1332(d)(4)(A) & (B) exceptions to CAFA removal.  While this may be the law in the Ninth Circuit, as of the date of this filing, the Second Circuit has not decided which party bears the burden of proof on the statutory exceptions to CAFA.  *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006).  Plaintiff does not concede that it has the burden of proof on this exception.

["Securities Act"]) (15 U.S.C. 77b(a)(1)) and the regulations
issued thereunder.

28 U.S.C. § 1332(d)(9)(C) (emphasis added).  Defendants do not (and cannot) dispute that the

Partnership Interests at issue here constitute "securities" under the Securities Act.[10]

The only claims asserted in the Complaint are for breach of fiduciary duty and aiding and

abetting breach of fiduciary duty under Delaware law.  *See* ¶¶ 68-102.  These claims all relate to

and are made pursuant to Plaintiff's ownership of its Partnership Interests.  Accordingly, all

claims in the Complaint plainly "relat[e] to" fiduciary duties owed to Plaintiff by virtue of its

ownership interest in the Partnership as required under section 1332(d)(9)(C).[11]

Breach of fiduciary duty claims like those presented here are precisely what section

1332(d)(9)(C) was designed to exempt from removal under CAFA.  *See, e.g., In re Textainer*

*P'ship Sec. Litig.*, No. C 05-0969 (MMC), 2005 WL 1791559, at *6-7 (N.D. Cal. July 27, 2005)

(remanding under section 1332(d)(9)(C) plaintiff's class action breach of fiduciary duty claim

based on ownership of limited partnership interests); *Carmona v. Bryant*, No. CV-06-78-S-BLW,

2006 WL 1043987, at *3 (D. Idaho Apr. 19, 2006) (remanding shareholder's Delaware breach of

fiduciary duty claim on grounds that "plain language of [section 1332(d)(9)(C)] covers" such a

case); *Genton v. Vestin Realty Mortgage II, Inc.*, No. 06-CV-2517-BEN (WMC), 2007 WL

951838, *2 (S.D. Cal. Mar. 9, 2007) ("The plain language of the statute, by adding 'including

fiduciary duties' in parentheses . . . shows a clear intent to cover fiduciary duty claims in addition

---

[10]  *See* Def. Notice ¶¶ 36-37; *see also, e.g., Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2006 WL 3524488, at
*5 n.3 (N.D.N.Y. Dec. 6, 2006).  Of course, the definition of a "security" under CAFA has no bearing upon whether
a claim involves a "covered security" under SLUSA.

[11]  The Complaint here is plainly distinguishable from the complaint considered by the court in *Davis v. Chase Bank,
U.S.A., N.A*, 453 F. Supp. 2d 1205 (C.D. Cal. 2006) cited by Defendants.  In *Davis*, the court found that section
1332(d)(9)(C) did not apply because the credit card agreements at issue were not securities, and the complaint
asserted claims for breaches of certain California consumer protection statutes.  *Id.* at 1209.  Plaintiff here brings
only state law breach and aiding and abetting breach of fiduciary duty claims arising from the Partnership Interests,
which are the very claims explicitly exempted from CAFA under section 1332(d)(9)(C).

to other claims."); *Williams v. Texas Commerce Trust Co. of New York*, No. 05-1070-CV-W-GAF, 2006 WL 1696681, at *5 (W.D. Mo. June 15, 2006) (finding debenture holders' breach of fiduciary duty and related state law claims against indenture trustee subject to section 1332(d)(9)(C) exception to CAFA removal); *Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care Group, Inc.*, No. Civ. 3:05-0451, 2005 WL 2000658, at *2 (M.D. Tenn. Aug. 8, 2005) (finding breach of fiduciary duty and related claims under Delaware law were exempt from CAFA removal under section 1332(d)(9)(C)).  The same result is required here.

Defendants erroneously read the section 1332(d)(9)(C) exception as being limited to "disputes regarding the *terms* of a security," or the "formative documents" establishing those terms.  (Def. Notice ¶¶ 36-37.)[12]  No such limitation is found in the express language of the statutory provision, nor can one be drawn from the legislative history.[13]  The plain language of section 1332(d)(9)(C) specifically encompasses claims based on fiduciary duties which "relate to," are "created by," or are made "pursuant to" a security under the Securities Act.  Under any common sense reading, such broad language includes fiduciary duties not only created by the terms of a particular security and the documents under which it was issued, but also fiduciary

---

[12]  In addition to being contrary to CAFA's plain language, Defendants' proposed interpretation would lead to a perverse circumstance in which it would be appropriate for a state court to determine whether a security creates a fiduciary duty but that only a federal court could decide whether such duties were properly discharged.

[13]  Defendants erroneously suggest that the Senate Committee Report on CAFA limits the application of section 1332(d)(9)(C) to only those cases concerning the meaning or scope of a particular security's terms.  (Def. Notice ¶ 36).  This argument is inapt since, as discussed herein, the plain language of the statute and the cases interpreting it contradict the cited committee report language.  In such circumstances, the committee report cannot override the express language of the statute.  *See, e.g.*, *Blockbuster*, 472 F.3d at 57 (rejecting Senate Committee Report language shifting burden of proof for CAFA jurisdiction to plaintiff given absence of such language in statute itself).

duties which arise pursuant to ownership of the security, or that otherwise relate to such security.[14]

Even the case cited by Defendants on this point, *Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006), directly rejected the same formalistic argument Defendants make here.  The Defendants in *Pew* asserted that the section 1332(d)(9)(C) exception should apply only "'to those claims that relate to the rights arising out of the security itself or the rights that a corporation's . . . organizational documents confer[] on a holder of the corporation's securities.'"  *Id.* at *5.  In rejecting this "restrictive reading" of the statute, the court held that

> [i]n referring to rights, duties and obligations 'relating to' a
> security, as well as those 'created by or pursuant to' a security,
> section 1332(d)(9)(C) covers not only rights, duties and obligations
> conferred by the terms of the security itself, such as voting rights,
> but also those rights, duties and obligations that are connected with
> the security.

*Id.*  The court's reasoning in *Pew* applies with equal force to Plaintiff's claims here.  *See also Carmona*, 2006 WL 1043987, at *2 (finding terms "relating to" and "pursuant to any security" in 1332(d)(9)(C) serve to "broaden subsection (C)'s applicability beyond those cases where the duty is 'created by' the [terms of the] security").

Both a plain reading of section 1332(d)(9)(C) and the cases interpreting it compel remand.

---

[14]  In any event, Defendants' suggestion that fiduciary duties are created only by the terms of a security or its formative documents ignores well-settled law to the contrary.  *See Boxer v. Husky Oil Co.*, 429 A.2d 995 (Del Ch. 1981) (general partner owes fiduciary duty to limited partners under common law and provisions of Delaware Uniform Partnership Act and Uniform Limited Partnership Act); *see also* 6 Del. Code Ann. § 15-404 (defining general partner's fiduciary duties to partnership and other partners), § 15-405 (providing for derivative claim against partnership or partner to enforce fiduciary duties).

### 2. The Section 1332(d)(3) And (d)(4) Exceptions To CAFA Jurisdiction Potentially Apply

The exceptions to CAFA jurisdiction found in 28 U.S.C. § 1332(d)(3) (the "interests of justice" exception), and § 1332(d)(4) (the "local controversy"/"home-state controversy" exceptions) potentially apply here.[15]  Both statutory exceptions to CAFA jurisdiction require a determination of the proposed class members' citizenship.  *See* 28 U.S.C. § 1332(d)(3) (granting court discretion to decline CAFA jurisdiction when more than one-third but less than two-thirds of proposed plaintiff class members are citizens of forum State), § 1332(d)(4) (requiring court to decline CAFA jurisdiction where more than two-thirds of plaintiff class members are citizens of forum State).  For purposes of these CAFA exceptions, the statute states that "[c]itizenship of the members of the proposed plaintiff classes shall be determined *as of the date of filing of the complaint*."  28 U.S.C. § 1332(d)(7) (emphasis added).

The Declaration of Rajan Govidan offered by Defendants contains a "sampling" of the States of residence of all investors who held Partnership interests as of August 1, 2006, December 31, 2006, and April 30, 2007.  (Def. Notice, Ex. D.)  This "sampling" indicates that approximately 26 percent of the proposed Class were New York residents at some point during the Class Period.  Although this substantial percentage falls just short of the one-third threshold needed to invoke the § 1332(d)(3) discretionary exception, Defendants have not provided the citizenship statistics of the proposed Class members as of August 6, 2007, the date when the Complaint was filed.  Moreover, by merely sampling the citizenship of Partnership investors as of certain dates, the Govidan Declaration fails to accurately account for the citizenship of

---

[15]  As noted in footnote 9 above, as of the date of this filing, the Second Circuit has not decided which party bears the burden on proof on the statutory exceptions to CAFA.  By raising the argument above, Plaintiff does not concede that it has the burden of proving these exceptions, but is merely responding to Defendants' contention that these exceptions do not apply.  (Def. Notice ¶ 27.)

investors who may have redeemed their Interests before the Partnership collapsed.  Such Class members would not necessarily be reflected on the "sampling" dates chosen by Mr. Govidan, but would still be members of the proposed Class.

The "sampling" of information that Defendants have elected to provide does not rule out application of these express exceptions to CAFA jurisdiction.  Accordingly, while Plaintiff contends that section 1332(d)(9)(C) requires remand (*see supra* C.1), should the Court determine that CAFA removal is warranted, Plaintiff reserves the right to seek leave to take limited jurisdictional discovery to determine the applicability of sections 1332(d)(3) and (d)(4).[16]

## II.    PLAINTIFF SHOULD BE AWARDED COSTS AND ATTORNEYS' FEES RESULTING FROM DEFENDANTS' IMPROPER REMOVAL

This Court has the discretion to award costs and attorney fees incurred from improper removal.  *See Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992) (28 U.S.C. 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees").  Such expenses and fees may be awarded absent a finding of bad faith.  *Id*. at 923.

An award of fees and expenses is appropriate here.  Defendants' improper removal has subjected Plaintiff to unnecessary expense, forcing it to appear in federal court, as well as research and prepare a motion to remand, merely to get this action returned to the court where it originally filed the Complaint.  *See Circle Indus. USA v. Parke Constr. Group, Inc.*, 183 F.3d 105 (2d Cir. 1999) (providing for attorneys' fees when granting a motion to remand serves the purpose of deterring improper removal).

---

[16]  Given that Defendants bear the burden of proving that all the prerequisites for CAFA jurisdiction have been satisfied, but have not offered any evidence as to the size of the proposed Class – despite their ready ability to do so, *see* Govidan Declaration ¶ 1 – Plaintiff also reserves the right to seek leave to take limited jurisdictional discovery on this issue as well.  *See* 28 U.S.C. §§ 1332(d)(2) & (d)(5).

## CONCLUSION

For the reasons set forth herein, this case should be remanded to New York State Supreme Court and Plaintiff should be awarded its costs and attorneys' fees resulting from Defendants' improper removal of this action.

Dated:  September 28, 2007

Respectfully Submitted,

By: /s/ Andrew J. Entwistle

Andrew J. Entwistle
Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
Jonathan H. Beemer
Michael H. Rosner
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, New York 10017
(212) 894-7200

Douglas R. Hirsch
**SADIS & GOLDBERG LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793

*Attorneys for Plaintiff*
*NAVIGATOR CAPITAL PARTNERS, L.P.*