UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
:
NAVIGATOR CAPITAL PARTNERS, L.P., on      :    Case No. 07 Civ. 07783 (AKH) (DFE)
behalf of itself and all others similarly situated,      :
:
Plaintiff,      :      Oral Argument Requested
:
- against -      :
:
BEAR STEARNS ASSET MANAGEMENT,      :
BEAR, STEARNS SECURITIES CORP.,      :
THE BEAR STEARNS COMPANIES INC.,      :
BEAR, STEARNS & CO. INC., RALPH      :
CIOFFI, RAYMOND MCGARRIGAL AND      :
MATTHEW TANNIN,      :
:
Defendants,      :
:
- and -      :
:
BEAR STEARNS HIGH-GRADE STRUCTURED      :
CREDIT STRATEGIES, L.P.,      :
:
Nominal Defendant.      :
:
-------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

WILMER CUTLER PICKERING HALE AND      HUGHES HUBBARD & REED LLP
DORR LLP                                One Battery Park Plaza
399 Park Avenue                         New York, New York  10004
New York, New York  10022               (212) 837-6400
(212) 230-8800


DRISCOLL & REDLICH                      BRUNE & RICHARD LLP
521 Fifth Avenue, Suite 3300            80 Broad Street
New York, New York  10175               New York, New York  10004
(212) 986-4030                          (212) 668-1900

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS .....................................................................................2

I.     The Complaint .............................................................................................2

       A.     The Nature of the Four Causes of Action ..............................................2
              1.     The First Direct Claim .................................................................2
              2.     The Second Direct Claim..............................................................5
              3.     The Two Derivative Claims...........................................................6

II.    The Parties ..................................................................................................7

ARGUMENT .......................................................................................................7

I.     THE ACTION WAS PROPERLY REMOVED UNDER SLUSA ...................7

       A.     The Governing Legal Standard for Removal Under SLUSA .................7
       B.     The Complaint Alleges Misrepresentations or Omissions of Material
              Fact "In Connection with the Purchase or Sale of a Covered Security"..................8
       C.     Plaintiff's Arguments Against SLUSA Removal Should Be Rejected ................11

II.    THIS COURT HAS DIVERSITY JURISDICTION UNDER CAFA ..............18

       A.     The "Securities" Exception Does Not Apply.......................................18
              1.     The Complaint's Direct Claims Are Based on Theories of
                     Fraud in the Inducement and Retention. ....................................19
              2.     The Text, Structure and Purpose of CAFA Require Rejection
                     of Plaintiff's Reading of the Securities Exception....................20
              3.     This Action Does Not "Solely" Concern Fiduciary Duty
                     Claims. .......................................................................................23
       B.     The Exceptions for Putative Classes Consisting Largely of In-State
              Residents Do Not Apply. ......................................................................23

CONCLUSION...................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Breuer v. Jim's Concrete of Brevard, Inc.*,
  538 U.S. 691 (2003)............................................................................................................24

*Cordova v. Lehman Brothers*,
  413 F. Supp. 2d 1309 (S.D. Fla. 2006) ..............................................................................13

*Dommert v. Raymond James Finance Services, Inc.*
  No. CIV A. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ............................16

*Eakins v. Pella Corp.*,
  455 F. Supp. 2d 450 (E.D. N.C. 2006)................................................................................24

*Enders v. American Patent Search Co.*,
  535 F.2d 1085 (9th Cir. 1976) ............................................................................................20

*Estate of Pew v. Cardarelli*,
  No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006), *appeal docketed*,
  No. 06-5703 (2d Cir. argued Apr. 24, 2007) ......................................................................22

*Frazier v. Pioneer Americas LLC*,
  455 F.3d 542 (5th Cir. 2006) ..............................................................................................24

*French v. First Union Securities, Inc.*,
  209 F. Supp. 2d 818 (M.D. Tenn. 2002)..............................................................................15

*Gavin v. AT&T Corp.*,
  464 F.3d 634 (7th Cir. 2006) ..............................................................................................15

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003)..............................................................................................19

*Hart v. Fedex Ground Package System Inc.*,
  457 F.3d 675 (7th Cir. 2006) ..............................................................................................24

*Herndon v. Equitable Variable Life Insurance Co.*,
  325 F.3d 1252 (11th Cir. 2003) ..........................................................................................13

*In re AutomobileStyle Plastics, Inc.*,
  269 F.3d 726 (6th Cir. 2001) ..............................................................................................11

*In re Lord Abbett Mutual Funds Fee Litigation*,
  463 F. Supp. 2d 505 (D.N.J. 2006) ....................................................................................17

*Indiana Electrical Workers Pension Trust Fund, IBEW v. Millard*,
  No. 07 Civ. 172, 2007 WL 2141697 (S.D.N.Y. July 25, 2007) ..............................................15

*Lander v. Hartford Life & Annuity Insurance Co.*,
  251 F.3d 101 (2d Cir. 2001)................................................................................................12

*Lasala v. UBS, AG*,
  --- F. Supp. 2d ---, 2007 WL 2331054 (S.D.N.Y. Aug. 15, 2007) ...................................15, 17

*Lasley v. New England Variable Life Insurance Co.*,
  126 F. Supp. 2d 1236 (N.D. Cal. 1999) ...............................................................................13

*Leykin v. AT&T Corp.*,
  216 F. App'x 14 (2d Cir. 2007) (unpublished) .......................................................................17

*McMorris v. TJX Cos., Inc.*,
  493 F. Supp. 2d 158 (D. Mass. 2007) ...................................................................................24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006).....................................................................................................7, 8, 14, 16

*Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*,
  485 F.3d 804 (11th Cir. 2007) ............................................................................................24

*Ring v. AXA Financial, Inc.*,
  483 F.3d 95 (2d Cir. 2007)..................................................................................................14

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997)............................................................................................................21

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)...................................................................................................6

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005)................................................................................................12

*SEC v. Zandford*,
  535 U.S. 813 (2002)............................................................................................................14

*Serrano v. 180 Connect, Inc.*,
  478 F.3d 1018 (9th Cir. 2007) ............................................................................................24

*Sofonia v. Principal Life Insurance Co.*,
  465 F.3d 873 (8th Cir. 2006) ..............................................................................................17

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    332 F.3d 116 (2d Cir. 2003)...........................................................................................12

*Strigliabotti v. Franklin Resources, Inc.*,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) ........................................................................15

*United States Mortgage, Inc. v. Saxton*,
    494 F.3d 833 (9th Cir. 2007) .........................................................................................16

*Vieira v. Wal-Mart Stores, Inc.*,
    No. 00-272-P-H, 2001 WL 394898 (D. Conn. Apr. 18, 2001)......................................18

## STATUTES

15 U.S.C. § 77r(b)(1)(A)....................................................................................................11

15 U.S.C. § 77r(b)(1)(C)....................................................................................................11

15 U.S.C. § 78bb(f)(1) ................................................................................8, 9, 11, 12, 13

15 U.S.C. § 78bb(f)(2) .........................................................................................12, 13, 17

15 U.S.C. § 78bb(f)(3) .......................................................................................................13

15 U.S.C. § 78bb(f)(3)(A)(ii)(I) ........................................................................................18

15 U.S.C. § 78bb(f)(3)(A)(ii)(II) .......................................................................................18

15 U.S.C. § 78bb(f)(5) ...................................................................................................3, 11

28 U.S.C. § 1332................................................................................................................21

28 U.S.C. § 1332(d)(3) ................................................................................................18, 23

28 U.S.C. § 1332(d)(4) ................................................................................................18, 23

28 U.S.C. § 1332(d)(9)(C) .................................................................................................18

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4
    (codified at 28 U.S.C. §§ 1332, 1441 & 1453).........................................................2, 20, 21

Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353,
    112 Stat. 3227 (codified at 15 U.S.C. §§ 77p(c) & 78bb(f)(2))..................................................2

**OTHER AUTHORITIES**

S. Rep. No. 109-14 (2005) ................................................................................21, 22

*Webster's Third New International Dictionary* (2002) ...............................................23

Defendants Bear Stearns Asset Management ("BSAM"), Bear Stearns Securities Corp. ("BSSC"), The Bear Stearns Companies, Inc. ("BSC"), Bear, Stearns & Co. Inc. ("BS&Co."), Ralph Cioffi, Raymond McGarrigal, and Matthew Tannin respectfully submit this Memorandum of Law in Opposition to Plaintiff Navigator Capital Partners, L.P.'s Motion To Remand.

## PRELIMINARY STATEMENT

This litigation—which seeks to define the rights of citizens from more than twenty states and alleges fraud in connection with the trading of hundreds of millions of dollars in securities—is precisely the sort of litigation that belongs in federal court.

The parties whose rights are directly at issue are diverse. No state's residents predominate, or even make up as much of one-third of the proposed plaintiff class.

The alleged fraud involved purchases and sales of securities on national markets as well as transactions with national and international financial institutions. It involved not only traditional equities, but an array of novel and complex financial products—most notably, tranches of mortgage-backed securities—including many hedging products and indices that are still evolving as ways to manage the risks of structured finance securities. Decisions made in this litigation about liability and disclosure requirements in this growing field may have substantial effects on the market for any or all of these products and on decisions that fund managers will make about whether to employ them at all. Finally, the sums at issue here are of far more than local concern.

Congress recognized that these types of cases belong in federal court when it enacted two statutes that substantially increased federal jurisdiction and provide jurisdiction to this Court for this action: the Securities Litigation Uniform Standards Act of 1998 and the Class Action Fairness Act of 2005.

## STATEMENT OF FACTS

**I.     The Complaint**

On or about August 6, 2007, plaintiff Navigator Capital Partners, L.P. ("Navigator" or "plaintiff") filed this action in the Supreme Court of the State of New York, County of New York (the "Action").  Defendants timely removed the complaint to federal court based upon the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. §§ 77p(c) & 78bb(f)(2)), and the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified at 28 U.S.C. §§ 1332, 1441 & 1453).

**A.     The Nature of the Four Causes of Action**

**1.     *The First Direct Claim***

In the first cause of action, plaintiff asserts a direct claim on its own behalf and on behalf of a class of investors against the so-called Management Defendants, consisting of the investment manager (BSAM), and three BSAM employees (Ralph Cioffi, Matthew Tannin, and Raymond McGarrigal), each of whom is alleged to have acted as a manager of the Bear Stearns High-Grade Structured Credit Strategies, L.P. (the "Domestic Feeder Fund" or the "Fund"). According to the complaint, the Domestic Feeder Fund "invested substantially all [of its] assets" into a "Master Fund" (*i.e.*, the Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.), a hedge fund that engaged in the trading, monitoring and hedging activity that is the subject of the Action.  *See* Compl. ¶¶ 15, 34-36.  BSAM and the three individual defendants are alleged to have breached their fiduciary duty owed directly to investors such as Navigator by making fraudulent representations to them and by failing to disclose material facts. *Id.* ¶¶ 22, 71.

The gravamen of the first cause of action is that the Management Defendants "systematically and continuously failed to disclose to investors" that they:

(a) were not sufficiently monitoring and adequately assessing the

> credit risk inherent in the [Domestic Feeder Fund]'s investments;
> (b) were not determining the frequency and severity of defaults of the underlying assets of each of the structured finance securities invested in by the [Fund];
> (c) were not developing and implementing credit enhancement mechanisms which would cause cash flow to be diverted away from the [Fund]'s riskier investments under certain market conditions; and
> (d) were not otherwise adequately engaging in hedging techniques to minimize risk.

*Id.* ¶ 3.  This key paragraph is repeated, either verbatim or in substantially similar fashion, throughout the complaint.  *See, e.g.*, *id.* ¶ 55 (a verbatim repetition of paragraph 3); *id.* ¶ 67 ("Defendants . . . fail[ed] to disclose that they had not monitored and hedged . . . positions as they had committed themselves to do . . . .").  In the section detailing the first cause of action, these allegations are again repeated verbatim.  *Id.* ¶ 71.

The complaint alleges that the Management Defendants' hedging strategy included the trading of equity securities.  *See id.* ¶¶ 47, 49-53, 55.  It alleges that "Defendants assured investors that risk would be minimized through the use of" various "strategies" for "hedging purposes," including the purchase of "futures and forward contracts" and "equity securities."  *Id.* ¶ 51 (internal quotation marks omitted).  Such securities are listed on national securities exchanges and are "covered securities" as defined by SLUSA.  *See* 15 U.S.C. § 78bb(f)(5).  In addition, the Domestic Feeder Fund's private placement memoranda—referenced in the complaint, *see, e.g.*, Compl. ¶¶ 29, 32—stated that the Domestic Feeder Fund "may invest in . . . equity securities."  August 2006 Bear Stearns High-Grade Structured Credit Strategies, L.P. Confidential Private Placement Memorandum ("August 2006 PPM") (Ex. B), at 11; August 2004 Bear Stearns High-Grade Structured Credit Strategies, L.P. Confidential Private Placement Memorandum ("August 2004 PPM") (relevant sections attached hereto as Ex. F), at 1 (same); *see also* August 2006 PPM, at 14 ("The [Domestic Feeder Fund] will also use other instruments

and strategies to hedge . . . . includ[ing] options, futures and short positions on various financial indices or individual securities . . . .").

The complaint contains many allegations that the Management Defendants failed to "hedge" as promised, and failed to disclose that their "hedges" were allegedly failing, without qualification as to the type of hedge at issue. *See, e.g.*, Compl. ¶ 6 ("Although the offering documents represented that the [Fund] managers would regularly monitor and adequately hedge risk, the managers shirked these responsibilities . . . ."); *id.* ¶ 7 ("the Management Defendants' failure to sufficiently hedge risk is apparent, at least in part, from the Fund's near total loss of value"); *id.* ¶ 47 ("failing to implement hedging and other strategies to minimize risk effectively"); *id.* ¶ 67 ("failing to disclose that they had not monitored and hedged the Partnership's positions as they had committed themselves to do").

As the Domestic Feeder Fund began to fail, the Management Defendants, according to the complaint, failed to make timely disclosures about the decline in its value. *See, e.g.*, *id.* ¶ 57 (alleging that the Management Defendants only "began to partially disclose the [Domestic Feeder Fund]'s ailing financial condition beginning in March 2007"); *id.* ¶ 60 (alleging that the statement of returns for the month of April 2007 was not reported until June 8, 2007). These tardy disclosures allegedly harmed investors who otherwise would have withdrawn earlier from the Fund or taken other steps to protect themselves. *See, e.g.*, *id.* ¶ 73 ("Had the Management Defendants disclosed these facts to Plaintiff and other investors, they would have taken steps to avoid the massive losses they suffered, such as by withdrawing their funds . . . .")

During the putative class period (defined in the complaint as August 1, 2006 through July 18, 2007), the Master Fund held covered securities[1] in the amount of tens of millions of dollars

---

[1]     The "covered securities" that the Master Fund held are outlined *infra* at pp. 10-11.

to hedge against any decline in the value of its structured finance securities. *See* Declaration of Robert Ervin, dated August 29, 2007 (Ex. C), ¶¶ 3-4 (identifying positions); Declaration of Matthew Tannin (attached hereto as Ex. G), ¶ 4 (stating the "positions identified in the Ervin Declaration were held as hedges against risks associated with long positions that the Master Fund held in structured finance securities"). For example, on December 31, 2006, near the midpoint of the putative class period, the Master Fund's hedge positions in covered securities amounted to over $43 million in long and short positions. *See* Declaration of Robert Ervin, dated August 29, 2007 (Ex. C), ¶ 3; Declaration of Matthew Tannin (Ex. G), ¶ 4. The Master Fund also held substantial investment positions in corporate debt, which were also covered securities. On December 31, 2006, these debt positions had a market value of over $162 million; and on April 30, 2007, they had a market value of over $217 million. Declaration of Robert Ervin, dated October 25, 2007 (attached hereto as Ex. H), ¶¶ 4-6 (identifying positions).

2.    *The Second Direct Claim*

In the second cause of action, Navigator sues on its own behalf and on behalf of a putative class of investors, asserting that three affiliates of BSAM aided and abetted the alleged breach of fiduciary duty by the Management Defendants. One named defendant, BSC, is the parent of the three other corporate defendants and is alleged to have "substantially assisted" the breach by helping value investments in the Master Fund. *Id.* ¶ 80. A second named defendant, BSSC, which allegedly acted as prime broker and custodian to the Master Fund, also allegedly assisted the breach. *Id. ¶* 82. The third defendant, BS&Co., allegedly acted as a broker-dealer, *id.* ¶ 18, and acted to help sell limited partnership interests in the Domestic Feeder Fund to

investors like Navigator.[2]

The gravamen of the second cause of action is that corporate affiliates of BSAM somehow assisted the Management Defendants in their breach of their fiduciary duties owed directly to investors. These defendants, BSC, BSSC, and BS&Co., are not alleged to be fiduciaries and are each alleged to have engaged in additional conduct beyond what the alleged fiduciaries did. By valuing the Master Fund's portfolio, by acting as a prime broker, or by selling limited partnership interests to investors, these defendants are alleged to have knowingly assisted the Management Defendants in defrauding and injuring the putative class members directly. *See id.* ¶¶ 78-79.

3.    *The Two Derivative Claims*

The third and fourth claims are derivative causes of action brought by Navigator on behalf of the Domestic Feeder Fund. The third claim, like the first claim, names the Management Defendants. Unlike the first claim, however, this derivative claim alleges mismanagement due to their "failure to adequately assess, monitor, and hedge the credit risks of investments" and "otherwise failing to manage the Fund," *id.* ¶ 90, causing harm to the Fund as a whole, *id.* ¶ 91, and does not allege that the Management Defendants breached their fiduciary duty by making misrepresentations and omissions. *Compare id.* ¶¶ 71-72.

The fourth claim, like the second claim, names BSC, BSSC, and BS&Co. as defendants. *Id.* ¶ 101. Unlike the second claim, however, the fourth claim does not allege distinct injury to plaintiff. *Compare id.* ¶ 72, with *id.* ¶ 100.

---

[2]    Although the complaint makes no allegations about BS&Co., other than that it acted as a broker-dealer, Compl. ¶ 18, the complaint relies upon the confidential offering memoranda, which are "deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (noting also that "[t]his principle has its greatest applicability in cases alleging fraud"). The confidential offering memoranda recite that BS&Co. acted as a placement agent selling limited partnership interests to investors. *See, e.g.,* August 2006 PPM (Ex. B), at 4.

## II.    The Parties

Navigator purports to bring the first and second causes of action asserted in the complaint on behalf of a putative class consisting of holders of limited partnership interests in the Domestic Feeder Fund from August 1, 2006 through July 18, 2007, excluding the defendants and those related to or affiliated with them (the "Putative Class").  *Id.* ¶ 26.  This Putative Class consists of persons and entities hailing from more than twenty states and foreign nations who hold interests in the Domestic Feeder Fund.  *See* Declaration of Rajan Govindan, dated October 24, 2007 (attached hereto as Ex. I), ¶ 4.A.  The Putative Class includes citizens of different states from those of the defendants (the defendants being citizens of Delaware, New Jersey and New York).  *See* Defendants' Notice of Removal at 10 n.4.  The percentage of Putative Class members who had reported to BSAM a residence or principal place of business in New York State, throughout the putative class period and through the date of the filing of the complaint, was less than one-third.  Declaration of Rajan Govindan, dated August 30, 2007 (Ex. D), ¶ 3.D-F; Declaration of Rajan Govindan, dated October 24, 2007 (Ex. I), ¶ 4.B.

## ARGUMENT

## I.    THE ACTION WAS PROPERLY REMOVED UNDER SLUSA

### A.    The Governing Legal Standard for Removal Under SLUSA

Plaintiff mistakenly contends that the Court must "resolv[e] any doubts against removability."  Plaintiff's Memorandum of Law in Support of Its Motion To Remand ("Pl.'s Mem.") 9 (internal quotation marks omitted).  Erroneously citing to the general removal statute (28 U.S.C. § 1447), rather than to SLUSA, plaintiff fails to contend with the Supreme Court's broad construction *in favor* of federal jurisdiction and preemption under SLUSA.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006).  The *Dabit* Court explained that both "ordinary principles of statutory construction" and "the particular concerns that

culminated in SLUSA's enactment" yield a "presumption that Congess envisioned a broad construction" of the statute's reach. *Id.* at 86. The statute reflects Congress's strong "preference for 'national standards for securities class action lawsuits involving national traded securities,'" and was crafted with the express purpose of preventing plaintiffs from defeating federal jurisdiction through artful pleading. *Id.* at 87 (quoting SLUSA § 2(5), 112 Stat. 3227).

### B. The Complaint Alleges Misrepresentations or Omissions of Material Fact "In Connection with the Purchase or Sale of a Covered Security"

Plaintiff concedes all the elements required for removal under SLUSA save one: it maintains that not one of its allegations of misrepresentation or omission is "in connection with the purchase or sale of a covered security." Pl.'s Mem. 10; 15 U.S.C. § 78bb(f)(1).[3] It asserts that the Master Fund's "small equity positions are irrelevant and entirely tangential to the claims in this case." Pl.'s Mem. 11. Rather than rely on its complaint in making this broad assertion, plaintiff selectively quotes from new documents attached to its Memorandum of Law—Preliminary Performance Profiles—that discuss hedging though use of the ABX indices and credit default swaps, neither of which are covered securities. *Id.* 12.

Plaintiff cannot avoid the actual allegations in its complaint. One of the complaint's core allegations—repeated again and again—is that investors lost their money because the Management Defendants failed to monitor and hedge as they had promised, and then concealed that failure from investors. *See, e.g.*, Compl. ¶¶ 3, 6, 51, 55, 67, 71. As disclosed in the Fund offering documents on which plaintiff allegedly relied, the Master Fund's hedging strategy included covered securities, and the Master Fund, in fact, hedged its positions with tens of millions of dollars in covered securities. Thus, Navigator is, within the meaning of SLUSA, a

---

[3]     SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 "in substantially identical ways." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 n.6 (2006). For the sake of simplicity, defendants cite only the amended 1934 Act in this memorandum.

"private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).

Plaintiff's sole theory of harm to investors in its first cause of action is that the Management Defendants misrepresented their monitoring and hedging of the Master Fund, a theory the complaint ties directly to covered securities.  The complaint alleges, for example, that although defendants "assured investors that risk would be minimized through the use of" various "strategies" for "hedging purposes," including the purchase of covered securities like "futures and forward contracts" and "equity securities," Compl. ¶ 51, the Management Defendants "systematically and continuously failed to disclose to investors" that they "were not adequately engage[ed] in hedging techniques to minimize risk," *id.* ¶¶ 3, 55, 71; *see also id.* ¶ 67 (defendants failed "to disclose that they had not . . . hedged . . . positions as they had committed themselves to do").  The theory of harm in the second cause of action is that affiliates of BSAM substantially assisted in imposing that same harm.  *See id.* ¶¶ 78-79.

The complaint repeatedly faults the Management Defendants for alleged omissions or misrepresentations about "hedging," without any qualification as to type of investments.  *See, e.g.*, *id.* ¶ 6 ("Although the offering documents represented that the [Fund] managers would regularly monitor and adequately hedge risk, the managers shirked these responsibilities . . . ."); *id.* ¶ 7 ("the Management Defendants' failure to sufficiently hedge risk is apparent"); *id.* ¶ 47 (Defendants "fail[ed] to implement hedging and other strategies to minimize risk effectively."); *id.* ¶ 54 ("Notwithstanding their obligation to adequately assess, monitor and hedge the credit risks of investments . . . the Management Defendants failed to do so . . . .").

The complaint cites two "offering documents" in framing its allegations regarding the Management Defendants' alleged misrepresentations or omissions—a "'Confidential Private

Placement Memorandum,' dated August 31, 2004," *id.* ¶ 28; *see also id.* ¶ 6, and a "Confidential Private Placement Memorandum issued in August 2006," *id.* ¶ 29; *see also id.* ¶¶ 6, 32, 40, 53. As disclosed in the offering documents, the Master Fund's hedging strategy included the purchase or sale of individual equities, indices, options, futures, and forwards as hedges, and also as investments. *See* August 2004 PPM (Ex. F), at 11 (Stating, under the heading "Leverage and Credit Hedges": "The [Fund] *will* also use other instruments and strategies to hedge potential market volatility. These instruments and strategies include options, futures and short positions on various financial indices or individual securities where the managers believe there is an opportunity to limit volatility in a negative market scenario." (emphasis added)); August 2006 PPM (Ex. B), at 11 (same); August 2004 PPM, at 18 ("The [Domestic Feeder Fund] may utilize a variety of financial instruments, such as . . . options, . . . futures, and forward contracts, both for investment purposes and for hedging purposes."); August 2006 PPM, at 21 (same); *see also* August 2004 PPM, at 1 ("The [Domestic Feeder Fund] will make investments (or otherwise take on risk) in both the traditional 'cash' market and the derivatives market. In addition, the [Domestic Feeder Fund] may invest in various derivatives, including . . . options, . . . futures and forward contracts (both *listed* and over-the-counter) on various financial instruments, equity securities and currencies." (emphasis added)); August 2006 PPM, at 1 (same).

The Domestic Feeder Fund *in fact* invested tens of millions of dollars through the Master Fund in covered securities to hedge its investments. *See* Declaration of Robert Ervin, dated August 29, 2007 (Ex. C), ¶¶ 3-4 (identifying equity securities held by the Master Fund); Declaration of Matthew Tannin (Ex. G), ¶ 4 (stating that the "positions identified in the Ervin Declaration were held as hedges against risks associated with long positions that the Master Fund

held in structured finance securities").[4]   In the month of December 2006 alone, for example, of

$205,777,896 in covered securities, the Master Fund held $43,303,400 in equity securities in

long and short positions to hedge against risks in the Master Fund's portfolio of structured

finance securities.  *See* Declaration of Robert Ervin, dated August 29, 2007 (Ex. C), ¶¶ 3-4;

Declaration of Robert Ervin, dated October 25, 2007 (Ex. H), ¶ 4; Declaration of Matthew

Tannin (Ex. G), ¶ 4.[5]  Thus, the Action not only "alleg[es]" a number of "misrepresentation[s] or

omission[s] of a material fact in connection with the purchase or sale of a covered security," 15

U.S.C. § 78bb(f)(1), its allegations are directly connected to *actual* investments in covered

securities.

### C.    Plaintiff's Arguments Against SLUSA Removal Should Be Rejected

Navigator's principal tack is to attempt to depreciate the use of covered securities to

hedge investments in the Master Fund, either by noting that most of the Master Fund's

---

[4]    Under SLUSA, "[t]he term 'covered security' means a security that satisfies the standards . . . specified in paragraph (1) or (2) of . . . [15 U.S.C. § 77r(b)]." 15 U.S.C. § 78bb(f)(5).  Paragraph (1) of section 77r(b) provides that "[a] security is a covered security if [it] is –

> (A)  listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market (or any successor to such entities)[.]

*Id.* § 77r(b)(1)(A).  The securities identified in the Declaration of Robert Ervin, dated August 29, 2007, are all listed on the New York Stock Exchange ("NYSE"), NASDAQ, or the American Stock Exchange, and thus are "covered" under subparagraph (A).

[5]    Three of the securities listed in the Declaration of Robert Ervin, dated October 25, 2007, are also "listed . . . on the [NYSE]"—U.S. Bancorp Capital IX 6.189, Wachovia Capital Trust III 5.8, and Suntrust Capital VIII 6.1— and are thus "covered" securities.  15 U.S.C. § 77r(b)(1)(A); *see supra* n.4.  The remaining securities in this Declaration are "covered" because each is a security "of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph A."  15 U.S.C. § 77r(b)(1)(C).  These debt securities were issued by companies listed on the NYSE, *see* Declaration of Robert Ervin, dated October 25, 2007 (Ex. H), ¶¶ 3, 6, and are senior to equity securities listed on the NYSE by those companies as disclosed in documents filed with the SEC, *see* Final Term Sheet of Prudential Financial, Inc. (relevant sections attached hereto as Ex. J), at 1; Prospectus Supplement of Prudential Financial, Inc. (relevant sections attached hereto as Ex. J), at S-10 ("We will issue the notes, and they will be our direct, unsubordinated and unsecured debt obligations."); Prospectus Supplement of Lincoln National Corp. (relevant sections attached hereto as Ex. J), at 20 ("The capital securities will rank senior in right of payment to our present and future preferred stock."); *see generally In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 748 (6th Cir. 2001) (an equity claim "is subordinated below that of other creditors" such as debt holders).

investments were in non-covered securities, *see, e.g.*, Pl.'s Mem. 11, or by attempting to distance Navigator's investment in the Domestic Feeder Fund from the hedging done with covered securities at the Master Fund level, *see id.*   Both arguments are unavailing.

SLUSA does not limit removal to actions in which "most" of the securities at issue are covered, nor does it require that any particular proportion be covered.  What SLUSA provides instead, simply and clearly, is that a covered action "alleging . . . *a misrepresentation or omission* of a material fact in connection with the purchase or sale of *a covered security* . . . shall be removable."  15 U.S.C. § 78bb(f)(1)-(2) (emphasis added).  Accordingly, even the purchase or sale of *one* covered security may bring an action within SLUSA, so long as the plaintiff alleges *one* material misrepresentation or omission in connection with the purchase or sale of that security.  *See, e.g.*, *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("The jurisdictional inquiry under SLUSA tracks the plain language of the statute.  [I]f it is a covered class action involving a covered security, removal is proper." (internal quotation marks omitted; alteration incorporated)).  Here, where the subject matter of one of the complaint's key allegations is tied to the covered securities held by the Master Fund—and the value of the qualifying equity hedges and corporate debt runs to hundreds of millions of dollars—this requirement is easily satisfied.

This result follows not only from the plain meaning of this text, but also from the remedial purpose of SLUSA.  As courts have uniformly observed, SLUSA was enacted to federalize class action litigation "involving allegations of fraud in the securities markets." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 114 (2d Cir. 2001).  SLUSA was written in broad and emphatic terms to prevent remand to state courts by clever pleading—which had long frustrated Congress's aim.  *See, e.g.*, *Spielman v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003) ("Driving enactment of SLUSA was Congress'[s]
finding that litigants eluded [the Private Securities Litigation Reform Act]'s reach with relative
ease. . . . SLUSA was enacted to close the loophole by mandating federal court as 'the exclusive
venue for class actions alleging fraud in the sale of certain covered securities' . . . . Congress
could not have spoken more clearly." (quoting *Lander*, 251 F.3d at 108)).  Thus, SLUSA
mandates removal of suits that include a solitary material misrepresentation about a solitary
covered security, subject to a small number of narrow carve-outs not applicable here.  15 U.S.C.
§ 78bb(f)(1)-(3).

Consistent with SLUSA's text and purpose, courts have consistently held that if a class
action contains allegations of misrepresentation or omission in connection with a purchase or
sale of a covered security, the action falls within SLUSA, irrespective of whether the action also
contains other allegations or involves other kinds of securities.  *See, e.g.*, *Herndon v. Equitable
Variable Life Ins. Co.*, 325 F.3d 1252, 1254 (11th Cir. 2003) ("The fact that a variable life
insurance policy account," which is a covered security, "adds a life insurance component to the
investment," which is a non-covered security, "does not negate the fact that the statutory
requirements of SLUSA have been met . . . ."); *Cordova v. Lehman Bros.*, 413 F. Supp. 2d 1309,
1317 (S.D. Fla. 2006) ("The fact that Plaintiffs coupled the option to invest in mutual funds with
a term life insurance policy does not negate the fact that the statutory requirements of SLUSA
have been met with the regard to the mutual fund component . . . ."); *Lasley v. New Eng.
Variable Life Ins. Co.*, 126 F. Supp. 2d 1236, 1238 (N.D. Cal. 1999) ("While it is undisputed that
ordinary life insurance policies are not covered securities under SLUSA, plaintiffs' complaint . . .
does not *solely* relate to ordinary policies." (emphasis added)).

Indeed, this Action would be removable under SLUSA even if, contrary to the

complaint's allegations and to fact, *none* of the covered securities were used for hedging, but were simply held as investments in the Master Fund. The Supreme Court in *Dabit* held that the fraud of which a plaintiff complains need only "'coincide'" with the purchase or sale of a covered security. 547 U.S. at 85; *see also SEC v. Zandford*, 535 U.S. 813, 819-820 (2002). And such "coincidence" plainly exists here, both temporally and in terms of subject matter. At the most fundamental level, plaintiff alleges that it was lulled into maintaining its investment in the Domestic Feeder Fund—including its beneficial ownership in hundreds of millions of dollars in corporate debt, *see* Declaration of Robert Ervin, dated October 25, 2007 (Ex. H), ¶¶ 2-6, which are covered securities—when the Management Defendants allegedly concealed mismanagement and failed to disclose timely the decline in the value of the Fund. *See, e.g.*, Compl. ¶ 73.

    The cases cited by plaintiff do not support remand and, upon analysis, actually explain why this Action falls within SLUSA. *Ring v. AXA Financial, Inc.*, 483 F.3d 95 (2d Cir. 2007), stands for the unremarkable proposition that if an action's allegations concern *only* non-covered securities, the action does not fall under SLUSA. The plaintiff in *Ring* brought a class action alleging that contract terms governing a Children's Term Insurance Rider violated state law. *Id.* at 97. Although the rider was a traditional insurance policy and thus not a covered security, the defendant sought to bring the action within SLUSA by pointing out that some of the prospective class members had purchased the policy as a rider to a variable annuity, which is a covered security. *Id.* The *Ring* court rejected this theory because the *only* fraud alleged related to the insurance contract, while no fraud was alleged in the terms or marketing of the covered variable annuity. *Id.* at 101 ("[W]e should not preempt . . . a suit that alleges fraud occurred in connection *only* with a promise in a contract that does not relate to a 'covered security.'" (emphasis added)). Here, unlike in *Ring*, plaintiff directly alleges misrepresentations about the

equity hedges and the corporate debt held by the Master Fund.

In another case cited by plaintiff, *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006), a court held that an alleged misrepresentation was not "in connection with" a purchase or sale because it took place months after the alleged sale. The plaintiff brought suit on behalf of holders of stock certificates in MediaOne, which had merged with AT&T in June 2000. *Id.* at 636-37. In December 2000, a representative of AT&T sent a letter advising former shareholders of MediaOne that, if they did not redeem their shares by a certain date, they would escheat to the state, and stating that AT&T's representative would handle the redemption for $7. *Id.* at 637-38. Plaintiff sued because AT&T had failed to mention that the same service was offered for free by another exchange agent. *Id.* The court concluded that that action did not fall within SLUSA because the alleged fraud happened long after the shares were sold, and thus "had nothing more to do with federal securities law than if [the letter] had asked the MediaOne shareholders 'do you want your AT&T shares sent to you by regular mail or by courier?'" *Id.* at 638. *Gavin* plainly has nothing to say about the instant Action, in which "the fraud of which [plaintiff] complains" is "connected" to the purchase of sale of a covered security not because it took place after a purchase or sale of a covered security, but because the alleged fraud *directly involved*— temporally and in terms of subject matter—the purchase or sale of covered securities.[6]

---

[6]    Plaintiff's citations to *Indiana Electrical Workers Pension Trust Fund, IBEW v. Millard*, No. 07 Civ. 172, 2007 WL 2141697 (S.D.N.Y. July 25, 2007); *LaSala v. UBS, AG*, --- F. Supp. 2d ---, 2007 WL 2331054 (S.D.N.Y. Aug. 15, 2007); *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094 (N.D. Cal. 2005); and *French v. First Union Sec., Inc.*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002), are inapposite. Pl.'s Mem. 14-15. *Indiana Electrical Workers* and *LaSala* were not decided on "in connection with" or "covered security" grounds. *Strigliabotti* and *French* were both decided before *Dabit* instructed that the "in connection with" requirement in SLUSA is to be construed broadly, and to the extent they are inconsistent with *Dabit* they are overruled. However, even on their own reasoning, these pre-*Dabit* cases are clearly distinguishable from this case. In *Strigliabotti*, the alleged fraud involved the failure of brokers to pass on cost-savings from transactions with third parties, and the alleged fraud did "not turn on the purchase or sale of securities." 398 F. Supp. 2d at 1101. In *French*, the court found that the defendants alleged only misconduct "related to [a broker's] *qualifications*, not his actual investment decisions." 209 F. Supp. 2d at 828 (emphasis added).

Plaintiff also suggests that its allegations may not be "in connection with" a purchase or sale because, as an investor in the Domestic Feeder Fund, it did not itself purchase the securities that are the subject of its allegations. Rather, Navigator argues, the covered securities were purchased for plaintiff and other investors by the Master Fund. *See, e.g.*, Pl.'s Mem. 11. This suggestion may quickly be put to rest. In *Dabit*, the Supreme Court considered whether "fraud is 'in connection with' a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling," and flatly "rejected that view." 547 U.S. at 85. "Under our precedents," the Court stated, "it is enough that the fraud alleged 'coincide' with a securities transaction—*whether by the plaintiff or by someone else*." *Id.* (emphasis added). "For the purposes of SLUSA . . . the identity of plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale'" of a covered security. *Id.* at 89.[7]

Plaintiff's remaining arguments against SLUSA removal are misguided because they fail to acknowledge that SLUSA removal is premised upon a qualifying "allegation," and not upon a plaintiff's characterization of its entire suit or upon the absence of causes of action that would not independently justify removal under SLUSA.

Plaintiff asserts that "[t]his is not a securities fraud case," but rather "a Delaware law breach of fiduciary duty case." Pl.'s Mem. 17. Even if true as a formal matter, this assertion is

---

[7]    *See also, e.g.*, *United States Mortg., Inc. v. Saxton*, 494 F.3d 833, 844-845 (9th Cir. 2007) (Plaintiffs "seek to avoid SLUSA . . . by arguing that they did not purchase or sell any listed security in response to the misrepresentations . . . . This is the very argument that *Dabit* rejected. Plaintiffs allege a scheme to fraudulently hide [the defendant]'s financial condition . . . . They allege harm from this scheme through inducement . . . to refrain from exercising rights . . . . While plaintiffs themselves did not purchase or sell any of the [covered securities]  . . . . [t]hey have alleged fraud that 'coincide[s]' with the purchase or sale of [such] securities, and SLUSA therefore preempts their claim." (second alteration in original)); *Dommert v. Raymond James Fin. Servs., Inc.* No. CIV A. 1:06-CV-102, 2007 WL 1018234, at *11-*12 (E.D. Tex. Mar. 29, 2007) (noting that the plaintiff "argu[es] that the alleged violations are about the relationship between her and the Defendants and not about the purchase and sale of securities," but "that relationship would not exist but for the contract that she entered into specifically for . . . investing," that the plaintiff's "allegations that the Defendants failed to disclose key information . . . are directly related to . . . the investing," and concluding that under *Dabit* the plaintiff's "state law claims for . . . breach of fiduciary duty" are covered by SLUSA).

not determinative of whether SLUSA applies. As Navigator concedes, its first and second causes of action allege misrepresentations or omissions of material fact, *i.e.*, fraud, *id.* at 10, which makes the action removable under SLUSA, *see, e.g.*, *Leykin v. AT&T Corp.*, 216 F. App'x 14 (2d Cir. 2007) (breach of fiduciary duty claims alleging a misrepresentation in connection with the purchase or sale of a covered security were within SLUSA's ambit) (unpublished); *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873 (8th Cir. 2006) (same).

　　　Plaintiff also asserts that its two derivative claims are not preempted by SLUSA because they "do not sound in fraud." Pl.'s Mem. 16. This argument conflates the question of preemption of the derivative claims under SLUSA with removal of the Action under SLUSA. In the context of this Motion To Remand, the sole question is whether this Court has subject matter jurisdiction following removal. If the complaint alleges a misrepresentation or omission in connection with a covered security, the Court has jurisdiction over the *action*. *See* 15 U.S.C. § 78bb(f)(2) (providing that covered "class action[s]" "shall be removable").[8] *See, e.g.*, *In re Lord Abbett Mut. Funds Fee Litig.*, 463 F. Supp. 2d 505, 511-512 (D.N.J. 2006) (As used here, "the commonly understood definition of the word 'action,' as used in the phrase 'covered class action,' . . . signals Congress's intent" to include "more than mere claims in a complaint.").

---

[8]　　　The dictum that Plaintiff quotes from *LaSala v. UBS, AG*, --- F. Supp. 2d ---, 2007 WL 2331054, at *25 (S.D.N.Y. Aug. 15, 2007)—that SLUSA must be applied "to each claim in the Complaint rather than to the whole action"—refers solely to preemption, *i.e.*, dismissal, under 15 U.S.C. § 78bb(f)(1), and *not* to removal under 15 U.S.C. § 78bb(f)(2). *See also id.* at *26 ("Only . . . allegations that fall within the scope of SLUSA's preemption are *preempted*." (emphasis added)). Whatever *LaSala* has to say about preemption, it has nothing to say about removal, the sole issue now before this Court.

Whether particular claims are pre-empted is a separate question not presented by this Motion.[9]

## II.    THIS COURT HAS DIVERSITY JURISDICTION UNDER CAFA

Although plaintiff does not dispute that this Action meets the *prima facie* requirements for federal diversity jurisdiction established by CAFA, plaintiff seeks to avoid removal by invoking the exceptions to CAFA jurisdiction codified at 28 U.S.C. § 1332(d)(9)(C) (the "securities exception"), and 28 U.S.C. §§ 1332(d)(3)-(4) (the "interests of justice," "local controversy," and "home state" exceptions).  These exceptions do not apply.

### A.    The "Securities" Exception Does Not Apply

The "securities" exception exempts from CAFA's general grant of federal jurisdiction "any class action that solely involves . . . a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 [15 U.S.C. § 77b(a)(1)] and the regulations issued thereunder.)"  28 U.S.C. § 1332(d)(9)(C).  Plaintiff contends that its fiduciary duty claims "relate" to a security for purposes of this exception because it has brought them as the owner of a security.  Pl.'s Mem. 18.

This Court should reject plaintiff's construction of the statute for at least two reasons.  *First*, Congress intended the securities exception to be construed narrowly, to authorize the return to state court of class actions that concern matters of traditional state concern—such as the

---

[9]    In a single sentence in a footnote, plaintiff asserts without elaboration that the Action may not be removed under SLUSA because it falls within the "'Delaware carve-out.'"  Pl.'s Mem. 15 n.8.  By relegating its comment to a footnote and failing to offer any explanation, Navigator has waived the argument.  *See, e.g.*, *Vieira v. Wal-Mart Stores, Inc.*, No. 00-272-P-H, 2001 WL 394898, at *7 (D. Conn. Apr. 18, 2001) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . .").  In any event, Navigator could not establish that the carve-out applies.  Plaintiff does not contend that any defendant is "the issuer" of a covered security at issue in this case.  Pl.'s Mem. 13; 15 U.S.C. § 78bb(f)(3)(A)(ii)(I).  Nor is any defendant an "affiliate of the issuer."  Further, the Action does not satisfy even one part of the second prong of the carve out, requiring that a suit involve the "recommendation, position, or other communication with respect to the sale of securities of an issuer" that "is made by or behalf of the issuer" "to holders of equity securities of the issuer," *and* "concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  *Id.* § 78bb(f)(3)(A)(ii)(II).

interpretation of duties that are defined by non-federal securities and the definition of fiduciary duties that relate to the governance of business organizations. It was not intended to exempt large interstate securities class actions—such as this one—alleging that investors were induced by a fraud to purchase or retain securities. Even if such allegations are used to support a breach of fiduciary duty claim, the claim does not "relate" to a security for purposes of the exception, as the text, structure, history and purpose of CAFA make clear. *Second*, even assuming that plaintiff's view of "relating" were adopted, its second and fourth causes of action do not "solely" state a fiduciary duty claim, as the exception requires. These two causes of action include allegations of aiding and abetting by non-fiduciaries which, if not subject to dismissal for failure to state a claim as to certain defendants, by definition go beyond any fiduciary duty claim.

1.   *The Complaint's Direct Claims Are Based on Theories of Fraud in the Inducement and Retention*

As noted above, *supra* at pp. 2-6, plaintiff's principal allegation in the first and second causes of action is that investors were harmed when they were induced by the Management Defendants' alleged misrepresentations and omissions to retain or purchase their securities. Indeed, plaintiff specifically alleges that, if not for this alleged wrongdoing, investors might have sold their securities. *See, e.g.*, Compl. ¶¶ 71-73. Even assuming plaintiff has stated a breach of fiduciary duty in form, the substance of its complaint plainly sounds in fraudulent inducement and retention. *See, e.g.*, *H-M Wexford LLC v. Encorp, Inc.,* 832 A.2d 129, 144 (Del. Ch. 2003) (identifying the elements of a fraudulent inducement claim as: "(1) the existence of a false representation, usually one of fact, made by the defendant; 2) the defendant had knowledge or belief that the representation was false, or made the representation with requisite indifference to the truth; 3) the defendant had the intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff acted or did not act in justifiable reliance on the representation; and 5) the plaintiff

19

suffered damages as a result of such reliance.  In addition to overt representations, fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak." (footnotes and internal quotation marks omitted)).

2.    *The Text, Structure and Purpose of CAFA Require Rejection of Plaintiff's Reading of the Securities Exception*

Plaintiff contends that *any* fiduciary duty claim "relates" to a security because it is brought by the owner of a security interest.  *See* Pl.'s Mem. 18.  But the meaning of a word within a statute—especially an elastic term like "relating"—can only be gathered from its context.  *See*, *e.g.*, *Enders v. American Patent Search Co.*, 535 F.2d 1085, 1090 (9th Cir. 1976) (determining whether an action "relates" to patents and rejecting "literalistic" readings in favor of "logical" readings based on context:  "While the human mind may be capable of formulating a literal connection between a particular statute and patents, the test must be whether there is a relationship strong enough to support a conclusion that it relates to patents for purposes of providing jurisdiction under section 1338.").

Here, it is clear that the exception should be construed narrowly.  CAFA was enacted pursuant to congressional findings that class actions were being abused in certain state courts, and in particular, that "State and Local Courts" were:

> (A) keeping cases of national importance out of Federal court;
>
> (B) sometimes acting in ways that demonstrate bias against out-of-State defendants; and
>
> (C) making judgments that impose their view of the law on other States and bind the rights of the residents of those States.

CAFA, Pub. L. No. 109-2, § 2(a)(4), 119 Stat. 4; *see also id.* § 2(a)(2) (discussing "abuses of class action device").  Accordingly, the purpose of CAFA, as set forth in its preamble, was to "provid[e] for Federal court consideration of interstate cases of national importance under

20

diversity jurisdiction." *Id.* § 2(b)(2). Congress implemented this broad goal by relaxing the requirements of federal jurisdiction with respect to class actions, most importantly by providing that, except for certain limited, specified carve-outs, federal courts would have jurisdiction over class actions in which there was minimal diversity and more than $5 million at issue. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997) (analysis of statutory language requires close attention to "the specific context in which that language is used, and the broader context of the statute as a whole").

The Senate Judiciary Committee Report on CAFA underscores this theme: "the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy." S. Rep. No. 109-14, at 27 (2005). Congress therefore enacted CAFA in order to remedy "a flaw in the current diversity jurisdiction statute (28 U.S.C. § 1332) that prevent[ed] most interstate class actions from being adjudicated in federal courts." *Id.* at 5. To this end, the bill was designed "to expand *substantially* federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* at 43 (emphasis added).

Accordingly, with respect to the subject-matter exceptions codified at 28 U.S.C. § 1332(d)(9), the Senate Judiciary Committee explained that it "intend[ed] that [they] be *narrowly construed*." *Id.* at 45 (emphasis added). The Committee described the exceptions at (9)(b) and (9)(c) as covering class actions "that relate to matters of corporate governance arising out of state law." *Id.* "By corporate governance litigation, the Committee means only litigation based solely on (a) state statutory law regulating the organization and governance of business enterprises such

21

as corporations, partnerships, limited partnerships . . . and business trusts; (b) state common law regarding the duties owed between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises." *Id.* The Committee went on to explain that section 1332(d)(9) "is also intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise, such as a certificate of incorporation or a certificate of designations." *Id.*

Thus, the securities exception, properly construed, exempts from federal jurisdiction only those class actions whose subject matter is of principal concern to individual states, but to preserve federal jurisdiction over securities actions having significant interstate importance. The exception returns to state court actions brought "solely" to litigate the meaning of rights, duties and obligations set forth in the terms of non-federal securities, *i.e.*, rights and duties "created by" or "pursuant to" such securities. And it returns to state court litigation that concerns issues of corporate governance and business organization, *i.e.*, rights, obligations and duties (including fiduciary duties) "relating to" securities—matters traditionally and principally of state concern. But what does *not* return to state court are fiduciary duty claims that "relate" to a security principally (or at all) only in the sense that the holder of a security complains it was fraudulently induced to purchase or hold the security. These claims, all of which are premised on vindicating litigation rights by awarding damages as if the security had never been bought or had been sold promptly, do not "relate" to securities in the way the exception intended.[10]

---

[10]     None of the cases plaintiff cites in support of its view of the securities exception is binding on this Court and no circuit court has yet ruled on the exception, although the Second Circuit is currently considering the scope of the exception. *See Estate of Pew v. Cardarelli*, No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006), *appeal docketed*, No. 06-5703 (2d Cir. argued April 24, 2007). This Court also has yet to interpret the exception. More importantly, with the exception of *Cardarelli*, none of the decisions that has applied the exception arose on facts similar to those presented in this case—in which the plaintiff alleges a theory of fraudulent inducement or retention—and none should persuade this Court to adopt plaintiff's reading of the securities exception in the face of its text and the legislative history adduced above.

3.      *This Action Does Not "Solely" Concern Fiduciary Duty Claims*

In any event, the second and fourth causes of action are not "solely" fiduciary duty claims. The limiting term "solely" denotes exclusivity. *See, e.g.*, *Webster's Third New International Dictionary* 2168 (2002) (defining "solely" as "to the exclusion of alternate or competing things"). In its aiding and abetting claims, plaintiff names BSC, BSSC and BS&Co. as defendants. Nowhere does the complaint allege that any of these defendants owed any fiduciary duties to plaintiff (indeed, this is presumably why they are named only in the aiding and abetting claims), or that they breached any fiduciary duty. *See* Compl. ¶¶ 78-79, 82-84, 96-97, 100-101. Thus, the only "substantial[] assist[ance]," *id.* ¶¶ 79, 97, that these affiliates could have provided would be conduct by a non-fiduciary—conduct that by definition falls outside the narrowly construed exception.

**B.      The Exceptions for Putative Classes Consisting Largely of In-State Residents Do Not Apply**

Plaintiff contends that this Court should remand because the exceptions to CAFA jurisdiction in 28 U.S.C. § 1332(d)(3) or § 1332(d)(4) may "potentially apply here." Pl.'s Mem. at 21. This qualified, lukewarm assertion cannot justify remand or serve to shift plaintiff's burden to defendants.

Every circuit court to consider this issue has held that the party seeking remand bears the

burden of proving that an exception in (d)(3) or (d)(4) applies.[11]  Plaintiff has done nothing to discharge its burden.  For example, plaintiff does not argue—as it must to prevail—that the balance of prudential factors a court must consider before remanding under (d)(3) or (d)(4)(A)(1) weighs in favor of remand.  Nor does plaintiff attempt to prove that one-third of the members of the Putative Class are citizens of New York—as required for remand under (d)(3)—or that two-thirds are citizens of New York—as required for remand under (d)(4).  The declaration of Rajan Govindan attached to the Notice of Removal stated that fewer than one-third of the putative class members were New York residents on three sample dates:  August 1, 2006 (26.45%); April 30, 2007 (26.77%), and December 31, 2006 (25.22%).  Declaration of Rajan Govindan, dated August 30, 2007 (Ex. D), ¶ 3.D-F.  This analysis has now been extended and it has been determined that fewer than one-third of the putative class members (*i.e.*, holders of partnership interests on July 18, 2007 and investors who fully redeemed their interests during the class period) had identified themselves as residents of New York on the date the complaint was filed.  *See* Declaration of Rajan Govindan, dated October 24, 2007 (Ex. I), ¶ 4.B.  Accordingly, plaintiff has failed to carry its burden of showing that any of these exceptions applies.

---

[11]    *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813 (11th Cir. 2007) ("party moving for remand[] must show that the exceptions to federal jurisdiction apply in this class action"); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007) (under CAFA, party seeking remand bears burden to demonstrate applicability of statutory exceptions to jurisdiction because "'whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception'" (quoting *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003)); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) ("plaintiffs have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application"); *Hart v. Fedex Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006) ("the party seeking to take advantage of the home-state or local [controversy] exception to CAFA jurisdiction has the burden of showing that it applies").  In addition, district courts in two more circuits have reached the same conclusion.  *McMorris v. TJX Cos., Inc.*, 493 F. Supp. 2d 158, 165 (D. Mass. 2007); *Eakins v. Pella Corp.*, 455 F. Supp. 2d 450, 452 (E.D. N.C. 2006).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's Motion To Remand in its entirety.

Dated: October 26, 2007

/s/ Peter K. Vigeland
Charles C. Platt
Peter K. Vigeland
Daniel C. Richenthal
WILMER CUTLER PICKERING HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

Attorneys for Defendants
BEAR STEARNS ASSET MANAGEMENT;
BEAR, STEARNS SECURITIES CORP.;
THE BEAR STEARNS COMPANIES INC.: and
BEAR, STEARNS & CO. INC.

25

Dated: October 26, 2007

/s/ Edward J.M. Little
Edward J.M. Little
Jason A. Masimore
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6400

Attorneys for Defendant
RALPH CIOFFI

Dated: October 26, 2007

                                   /s/ Catherine L. Redlich

                                   Catherine L. Redlich
                                   DRISCOLL & REDLICH
                                   521 Fifth Avenue, Suite 3300
                                   New York, New York 10175
                                   (212) 986-4030

                                   Attorney for Defendant
                                   RAYMOND MCGARRIGAL

Dated: October 26, 2007

/s/ Nina Beattie
Nina Beattie
Theresa Trzaskoma
BRUNE & RICHARD LLP
80 Broad Street
New York, New York 10004
(212) 668-1900

Attorneys for Defendant
MATTHEW TANNIN

28