# EXHIBIT F

For the exclusive use of: _____     Memorandum No.: ____

## CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

# BEAR STEARNS
# HIGH-GRADE STRUCTURED CREDIT
# STRATEGIES, L.P.

*Limited Partnership Interests*

————————————

THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") OF BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P. (THE "PARTNERSHIP") DESCRIBED IN THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM (THE "MEMORANDUM") HAVE NOT BEEN REGISTERED WITH OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES AGENCY. THIS IS A PRIVATE OFFERING PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), RULE 506 THEREUNDER, AND APPLICABLE STATE SECURITIES LAWS. NEITHER THE SEC NOR ANY STATE AGENCY HAS PASSED UPON THE VALUE OF THESE SECURITIES, MADE ANY RECOMMENDATIONS AS TO THEIR PURCHASE, APPROVED OR DISAPPROVED THIS OFFERING, OR PASSED UPON THE ADEQUACY OR ACCURACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

————————————

## BEAR STEARNS ASSET MANAGEMENT INC.
*General Partner*
383 Madison Avenue
New York, New York  10179

**August 31, 2004**

## INTRODUCTION

Bear Stearns High-Grade Structured Credit Strategies, L.P. is a Delaware limited partnership (the "Partnership") formed on August 26, 2003. The primary objective of the Partnership is to seek high current income and capital appreciation relative to LIBOR. There can be no assurance that the Partnership will achieve this objective or that substantial losses will not be incurred. Bear Stearns Asset Management Inc., a corporation formed under the laws of the State of New York ("BSAM" or the "General Partner"), serves as the general partner of the Partnership. BSAM also acts as the investment manager (in such capacity, the "Investment Manager") to Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (the "Master Fund"), an exempted company incorporated under the laws of the Cayman Islands. BSAM is the asset management subsidiary of The Bear Stearns Companies and, as described further herein, an affiliate of Bear, Stearns & Co. Inc. ("Bear Stearns"), a broker-dealer subsidiary of The Bear Stearns Companies Inc., and of Bear Stearns Securities Corp., the Partnership's prime broker and wholly-owned subsidiary of Bear Stearns. All investment and trading decisions on behalf of the Master Fund will be made by the Investment Manager.

Mr. Ralph Cioffi, Mr. Matthew Tannin and Ray McGarrigal are primarily responsible for directing the Investment Manager's investments for the Master Fund. The Partnership intends to achieve its investment objective primarily through leveraged investments in investment-grade structured finance securities, although the Partnership intends to seek investment opportunities beyond the structured finance asset category. As part of its strategy, the Partnership intends to gain exposure, on a non-recourse leveraged basis, to investment-grade structured finance securities by means of the Master Fund's purchase of the equity securities and other securities issued by structured vehicles (such as collateralized debt obligations "CDOs") that invest, on a leveraged or unleveraged basis, primarily in investment-grade structured finance securities (such as CDOs). The Partnership will make investments in other structured finance assets including asset-backed securities (ABSs"), synthetic ABSs, mortgage-backed securities ("MBSs") and global structured asset securitizations. The Partnership will make investments (or otherwise take on risk) in both the traditional "cash" market and the derivatives market. In addition, the Partnership may invest in various derivatives, including primarily credit-default swaps, but also options, swaps, swaptions, futures and forward contracts (both listed and over-the-counter) on various financial instruments, equity securities and currencies. The Partnership will generally operate up to a Net Leverage (as defined herein) of its investments, excluding Repackaging Vehicle Junior Interests (as defined herein), of 10 to 1, though the General Partner may use greater leverage or less leverage at times in its discretion. Positions may be financed by various sources of funding, including margin, bank lines and the repurchase markets (which may be provided by Bear Stearns or by or through an affiliate thereof). As the Partnership's positions are expected to be highly leveraged, its Net Asset Value (as defined herein) may increase or decrease at a greater rate than if leverage were not used.

The Partnership will invest substantially all of its assets through a "master-feeder" structure, conducting all of its investment and trading activities indirectly through an investment in the Master Fund, a company formed to conduct trading activities on behalf of the Partnership and other entities managed by BSAM or its affiliates. The purpose of the Master Fund is to achieve trading and administrative efficiencies. No additional fees are payable by the Partnership in connection with the Partnership's investment in the Master Fund. The Partnership is responsible, as an investor in the Master Fund, for its *pro rata* share of the Master Fund's operating and overhead expenses. Although trading is currently anticipated to be only at the Master Fund level, the General Partner may also trade at the Partnership level in the future. References to the Partnership's or the Master Fund's investments and portfolio in this Memorandum refer to the combined investments and portfolio of the Partnership and the Master Fund, and references to the General Partner or the Investment Manager and its investment strategy and operations refer to Bear Stearns Asset Management Inc. as both General Partner of the Partnership and investment manager of the Master Fund, and its roles in connection with each respectively, unless the context suggests otherwise.

The Partnership offers suitable investors an opportunity to diversify a portion of the risk segments of their portfolios into an investment field in which profits can be recognized in a vehicle providing limited liability and administrative convenience.

*There can be no assurance that the Partnership will achieve its objectives or avoid substantial losses. No investor should make an investment in the Partnership with the expectation of sheltering income or receiving cash distributions. Potential investors are urged to consult with their personal tax advisers in connection with any investment in the Partnership.*

- 1 -

The Partnership may also enter into other transactions where the Partnership is paid to take on risks the managers believe to be negatively correlated with the principal credit risk inherent in the Partnership's principal investments. These investments are not hedges in the strict sense but the managers believe the risk/reward characteristics of these investments serve to decrease the overall volatility of the Partnership.

## Leverage and Credit Hedges

The Master Fund will borrow money to enable it to invest in securities whose market value exceeds 100% of the Net Asset Value of the Master Fund. As the Master Fund purchases primarily highly rated investment-grade assets, the Master Fund will be capable of using leverage to invest in securities (excluding Repackaging Vehicle Junior Interests) with an aggregate value of as much as fifteen times the Net Asset Value of the Master Fund. It is the intention of the Investment Manager, however, to limit Net Leverage to ten times the Net Asset Value. "Net Leverage" is defined as the total market value of the Master Fund's investments, excluding the Repackaging Vehicle Junior Interests, less the notional value of the Master Fund's credit default swap hedges, adjusted for the duration of these hedges, divided by the Net Asset Value of the Master Fund, excluding the market value of Repackaging Vehicle Junior Interests. The Master Fund will primarily use repurchase agreements to finance its direct purchases of CDOs and other ABSs, although the Master Fund may use other forms of financing or leverage, including total return swaps and other derivative transactions. The Master Fund may also borrow money to facilitate redemptions or for other liquidity purposes.

As mentioned above, the Master Fund will use credit-default swaps to hedge some of its credit exposure. A credit-default swap is a derivative contract where one party (the protection buyer) pays an annual premium to another party (the credit protection seller) in exchange for the right to receive a compensatory payment if a specified credit suffers a default or credit event. Credit default swaps will be used by the Master Fund to hedge credit exposure. A substantial portion of the Master Fund's credit default swap hedges may be general portfolio hedges that do not hedge a specific asset held by the Master Fund.

The Partnership will also use other instruments and strategies to hedge potential market volatility. These instruments and strategies include options, futures and short positions on various financial indices or individual securities where the managers believe there is an opportunity to limit volatility in a negative market scenario.

## Leverage of the Repackaging Vehicle Junior Interests

In addition to the leverage employed by the Master Fund in its direct investments in highly rated investment-grade assets, as measured by Net Leverage, the Master Fund will effectively be using leverage by purchasing Repackaging Vehicle Junior Interests to gain exposure to the highly rated investment-grade assets of the Repackaging Vehicle.

Traditional leverage used in repurchase agreement financing is sensitive to the market price volatility of the assets being financed. If the market price of the assets being financed deteriorates, the Master Fund may be required to post additional margin or, if sufficient margin is not available, may be required to sell a financed position. This form of financing is typically called "mark-to-market recourse financing" because the repurchase counterparty uses the mark-to-market price of the financed assets to determine whether to call for additional margin. Under the arrangements for such financing, the repurchase counterparty has recourse to the assets of the Master Fund used to secure the financing. The leverage inherent in the Repackaging Vehicle Junior Interests, by contrast, may be characterized as "non-mark-to-market" and " non-recourse," as the Repackaging Vehicle does not have the right, upon the deterioration of the market price of its assets, to require additional capital from, and generally has no recourse to the assets of, the holders of Repackaging Vehicle Junior Interests. The initial Repackaging Vehicle Junior Interest capital contribution required by a Repackaging Vehicle is determined by, among other factors, the ratings quality and diversity of the assets held by the Repackaging Vehicle. If the total par amount of assets purchased by a Repackaging Vehicle were divided by the initial capital contribution of the Repackaging Vehicle Junior Interests, the result would be a leverage ratio of approximately 44-to-1. This mathematical ratio is substantially greater than both the gross leverage and Net Leverage ratios targeted by the Master Fund for the portion of its investment portfolio that does not include the Repackaging Vehicle Junior Assets. The Investment Manager anticipates, however, that the risk-adjusted return of Repackaging Vehicle Junior Interests will generally exceed the risk-adjusted return on assets financed under repurchase agreements or other forms of financing.

*Suspensions of Trading.* For all securities or commodities traded on public exchanges, each exchange typically has the right to suspend or limit trading in all securities or commodities that it lists. Such a suspension could render it impossible for the Partnership to liquidate its positions and thereby expose it to losses. In addition, there is no guarantee that non-exchange markets will remain liquid enough for the Partnership to close out positions.

*Futures.* Futures markets are highly volatile and a high degree of leverage is typical of a futures trading account. As a result, a relatively small price movement in a futures contract may result in substantial losses to the Partnership. Moreover, most commodity exchanges limit fluctuations in futures contract prices during a single day by regulations referred to as "daily price fluctuation limits" or "daily limits." Such regulations could prevent the Partnership from promptly liquidating unfavorable positions and thus subject the Partnership to substantial losses.

*Hedging Transactions.* The Partnership may utilize a variety of financial instruments, such as derivatives, options, interest rate swaps, caps and floors, futures, and forward contracts, both for investment purposes and for hedging purposes. Hedging involves special risks including the possible default by the other party to the transaction, illiquidity, and, to the extent the General Partner's assessment of certain market movements is incorrect, the risk that the use of hedging could result in losses greater than if hedging had not been used. Nonetheless, with respect to certain investment positions, the Partnership may not be sufficiently hedged against market fluctuations, in which case an investment position could result in a loss greater than if the Partnership had been sufficiently hedged with respect to such position. Moreover, it should be noted that the Partnership's portfolio will always be exposed to certain risks that cannot be hedged, such as credit risk (relating both to particular securities and counterparties).

*Loans of Portfolio Securities.* The Partnership may lend its portfolio securities. By doing so, the Partnership attempts to increase income through the receipt of interest on the loan. In the event of the bankruptcy of the other party to a securities loan, the Partnership could experience delays in recovering the loaned securities. To the extent that the value of the securities the Partnership lent has increased, the Partnership could experience a loss if such securities are not recovered.

*Possible Lack of Diversification.* There are no absolute diversification or concentration constraints on the Partnership. If the Partnership's portfolio becomes relatively concentrated, the value of an investment in the Partnership may be subject to greater volatility and may be more susceptible to any single economic, political, or regulatory occurrence or the fortunes of a single company or industry than would be the case if the Partnership's investments were more diversified.

*Turnover.* The Partnership will not be restricted in effecting transactions by any limitation with regard to its portfolio turnover rate. In light of the Partnership's investment objectives and policies, the Partnership's portfolio turnover rate may be substantial, which would result in significant transaction costs.

### Restrictions on Voting Rights of the Partnership as Holder of Repackaging Vehicle Junior Interests

As the Partnership will be deemed an affiliate of BSAM under the operative documents of the Repackaging Vehicles, the Partnership will not generally be entitled to vote the Repackaging Vehicle Securities held by it in any vote under the collateral management agreement of the Repackaging Vehicle or with respect to any vote or consent on any removal of the Repackaging Vehicle Collateral Manager either for or without cause or any other amendment or modification of the indenture governing the Repackaging Vehicle Securities which increases the rights or decreases the obligations of the Repackaging Vehicle Collateral Manager, for so long as BSAM or any of its affiliates is the Repackaging Vehicle Collateral Manager. However, the Partnership will be entitled to vote the Repackaging Vehicle Securities held by it with respect to all other matters.

### Certain Risks Related to the General Partner

*Limited Operating History.* The Partnership commenced operations on October 1, 2003 and therefore has a limited operating history. In addition, the principals of the Investment Manager responsible for the Partnership's investments have managed a separate account with an investment objective and strategy substantially similar to that of the Partnership only since March 1, 2003. The Investment Manager therefore has only a limited record of