UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
                                                   :

NAVIGATOR CAPITAL PARTNERS, L.P., on behalf of  :
itself and all others similarly situated,               :

                        Plaintiff,        :

                                     :     07 Civ. 07783 (AKH) (DFE)
       - against -                   :

                                     :

BEAR STEARNS ASSET MANAGEMENT, BEAR,     :     Oral Argument Requested
STEARNS SECURITIES CORP., THE BEAR        :
STEARNS COMPANIES INC., BEAR, STEARNS &    :     ECF
CO. INC., RALPH CIOFFI, RAYMOND           :
MCGARRIGAL AND MATTHEW TANNIN,       :

                                     :

                    Defendants,     :
       - and -                       :

BEAR STEARNS HIGH-GRADE STRUCTURED      :
CREDIT STRATEGIES, L.P.,                  :

                Nominal Defendant.  :
——————————————————— x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO REMAND

**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue, 26th Floor West
New York, NY 10017
(212) 894-7200

**SADIS & GOLDBERG LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................3

I.      DEFENDANTS' REMOVAL WAS IMPROPER UNDER SLUSA ...............................3

      A.      The Governing Legal Standard for Removal Under SLUSA ...................................3

      B.      The Complaint Does Not Allege Misrepresentations or Omissions of
             Material Fact "In Connection with the Purchase or Sale of a Covered
             Security" ...............................................................................................................3

             1.      Defendants' Efforts to Rewrite the Complaint Do Not
                    Alter The Complaint's Actual Allegations ...................................................5

             2.      The New "Facts" that Defendants Proffer Do Not Justify Removal ...........8

             3.      The "In Connection With" Requirement Is Not Met .................................10

             4.      The Derivative Claims Are Not Subject to SLUSA
                    Preemption and Thus Must Survive............................................................14

II.     THIS COURT DOES NOT HAVE DIVERSITY JURISDICTION UNDER
       CAFA.....................................................................................................................14

      A.      CAFA's Plain Language and the Clear Judicial Authority Exempt
             Fiduciary Duty Claims Like Those Presented Here from CAFA
             Jurisdiction............................................................................................................15

      B.      Though Unnecessary, Legislative History Supports Applicability of the
             Fiduciary Duties Exception Here............................................................................18

      C.      This Case "Solely" Concerns Fiduciary Duty Claims ...........................................19

III.    AN AWARD OF COSTS AND ATTORNEYS' FEES IS WARRANTED....................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Am. Tobacco Co. v. Patterson,*
456 U.S. 63 (1982)...................................................................................... 16

*Aslanidis v. U.S. Lines, Inc.,*
7 F.3d 1067 (2d Cir. 1993) ......................................................................... 16

*Blockbuster, Inc. v. Galeno,*
472 F.3d 53 (2d Cir. 2006) ......................................................................... 17

*Carmona v. Bryant,*
No. CV-06-78-S-BLW, 2006 WL 1043987 (D. Idaho Apr. 19, 2006) ............................. 15, 17

*Cordova v. Lehman Bros.,*
413 F. Supp. 2d 1309 (S.D. Fla. 2006) ..................................................... 13

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
395 F.3d 25 (2d Cir. 2005) ..................................................................... *passim*

*Enders v. Am.Patent Search Co.,*
535 F.2d 1085 (9th Cir. 1976) ................................................................... 17

*Estate of Pew v. Cardarelli,*
No. 5:05-CV-1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006) .................... 15, 16, 17

*Federal Ins. Co. v. Tyco Int'l Ltd.,*
422 F. Supp. 2d 357 (S.D.N.Y. 2006) ...................................................... 3, 8

*French v. First Union Sec.,* Inc.,
209 F. Supp. 2d 818 (M.D. Tenn. 2002)................................................... 12

*Gavin v. AT&T Corp.,*
464 F.3d 634 (7th Cir. 2006) *cert. denied,* 127 S. Ct. 1492 (2007)........... 11

*Genton v. Vestin Realty Mortgage II, Inc.,*
No. 06-CV-2517-BEN (WMC), 2007 WL 951838 (S.D. Cal. Mar. 9, 2007) ............. 15, 17

*Herndon v. Equitable Variable Life Ins. Co.,*
325 F.3d 1252 (11th Cir. 2003) ................................................................. 13

*In re Textainer P'ship Sec. Litig.,*
No. C 05-0969 (MMC), 2005 WL 1791559 (N.D. Cal. July 27, 2005) ............. 15, 17

*Indiana Elec. Workers Pension Trust Fund v. Millard,*
No. 07 Civ. 172 (JGK), 2007 WL 2141697 (S.D.N.Y. July 25, 2007) .................... 11

*Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care
Group, Inc.,*
No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 8, 2005)........................... 15, 17, 19

*Jamison v. Purdue Pharma Co.,*
251 F. Supp. 2d 1315 (S.D. Miss. 2003) ................................................... 8

*Lander v. Hartford Life & Annuity Co.*,
   251 F.3d 101 (2d Cir. 2001) ....................................................................... 13

*LaSala v. Bank of Cyprus Pub. Co.*,
   No. 06 Civ. 6674 (CSH), 2007 WL 2331049 (S.D.N.Y. Aug. 15, 2007)................ 11

*LaSala v. Lloyds TSB Bank*,
   No. 06 Civ. 4335 (CSH), 2007 WL 2758759 (S.D.N.Y. Aug. 15, 2007)................ 11

*LaSala v. UBS, AG*,
   No. 06 Civ. 1736 (CSH), 2007 WL 2331054 (S.D.N.Y. Aug. 15, 2007)..... 11, 12, 14

*Lasley v. New Eng. Variable Life Ins. Co.*,
   126 F. Supp. 2d 1236 (N.D. Cal. 1999) ...................................................... 13

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999) ................................................................... 16

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ...................................................................... 19

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005)............................................................................... 19

*Miedema v. Maytag Corp.*,
   450 F.3d 1322 (11th Cir. 2006) ............................................................... 17

*N.Y. Medscan LLC v. N.Y. Univ. Sch. of Med.*,
   430 F. Supp. 2d 140 (S.D.N.Y. 2006) ......................................................... 8

*New York v. U.S. Dept. of Transp.*,
   700 F. Supp. 1294 (S.D.N.Y. 1988) ......................................................... 17

*Pace v. Bidzos*,
   Nos. C 07-3742 PJH, C 07-3332 PJH,
   2007 WL 2908283 (N.D. Ca. Oct. 3, 2007)................................................... 3

*Paru v. Mut. of Am. Life Ins. Co.*,
   2006 WL 1292828 (S.D.N.Y. May 11, 2006) ............................................... 11

*Phillips v. Reckson Assocs. Realty Corp.*,
   No. 06-CV-5971, 2006 U.S. Dist. LEXIS 83288 (E.D.N.Y. Nov. 15, 2006)............ 3

*Ring v. AXA Fin., Inc.*,
   483 F.3d 95 (2d Cir. 2007) ..................................................................... 13

*Rowinski v. Salomon Smith Barney, Inc.*,
   398 F.3d 294 (3d Cir. 2005) ............................................................. 8, 11, 12

*Rubin v. U.S.*,
   449 U.S. 424 (1981)............................................................................... 16

*SEC v. Zandford*,
   535 U.S. 813 (2002)........................................................................... 10, 11

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   332 F.3d 116 (2d Cir. 2003) ................................................................... 11

*Strigliabotti v. Franklin Res., Inc.,*
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) .................................................................. 12

*Williams v. Texas Commerce Trust Co. of New York,*
    No. 05-1070-CV-W-GAF, 2006 WL 1696681 (W.D. Mo. June 15, 2006) ...................... 15, 17

**Statutes**

15 U.S.C. 78bb(f)(1) ............................................................................................... 8

28 U.S.C. §§ 1332(d)(9)(C) ..................................................................................... 14

SLUSA, 15 U.S.C. § 78bb ................................................................................. *passim*

Plaintiff Navigator Capital Partners, L.P. respectfully submits this Reply Memorandum of Law in further support of its Motion to Remand this action to the Supreme Court of the State of New York.

## PRELIMINARY STATEMENT

The putative concerns that Defendants express regarding the potential impact that this action could have upon the reeling sub-prime mortgage-backed securities markets are completely irrelevant to the issues being adjudicated on this Motion.  Here, the Court must determine whether Plaintiff is entitled to seek recovery in New York State Supreme Court for the hundreds of millions of dollars that Plaintiff and other limited partners lost when the Management Defendants[1] breached their fiduciary duties and the value of the Partnership collapsed to virtually nothing.  For the reasons stated herein and in Plaintiff's opening brief, Plaintiff respectfully submits that its claims were appropriately filed in New York State Supreme Court and should be remanded.

Defendants' speculative reference to amorphous "substantial effects on the market" for an "array of novel and complex financial products – most notably, tranches of mortgage-backed securities" (Def. Br. at 1) only confirms what Plaintiff demonstrated in its opening brief:  the mismanagement and omissions at issue in the Complaint concern the Partnership's highly leveraged exposure to the sub-prime mortgage market and transactions in structured finance securities backed by sub-prime mortgages, collateralized debt obligations ("CDOs"), and credit default swaps, each of which is indisputably ***not*** a "covered security" under any reading of SLUSA.  Despite Defendants' persistent efforts to transform this action into a case alleging fraud

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning attributed to them in Plaintiff's September 28, 2007 Memorandum of Law In Support of Its Motion to Remand ("Pl. Br.").

in connection with nationally listed equity or debt securities, Defendants cannot escape the plain fact that this case concerns the Management Defendants' breach of their fiduciary duties and mismanagement of the Partnership in connection with assessing, monitoring and hedging the risks associated with non-covered instruments (such as CDOs) exposed to the sub-prime mortgage market.

As discussed below in Point I, Defendants fail to identify a single alleged misrepresentation or omission in connection with purchases or sales of covered securities to support removal SLUSA. Instead, Defendants again point to the Master Fund's proportionately miniscule "holdings" of covered securities and disingenuously argue that these "holdings" are somehow "directly" connected to the wrongdoing alleged in the Complaint. In so doing, however, Defendants fail to reference any such allegation in the Complaint and instead urge this Court to expand the boundaries of SLUSA's "in connection with" requirement beyond any supportable reading.

In attempting to support their fallback argument for removal under CAFA, Defendants merely retreat from CAFA's plain language to the statute's putative "legislative history." There is no shelter there. Defendants simply ignore the multitude of cases expressly finding CAFA's "fiduciary duties" exception unambiguous. As set forth below in Point II, CAFA's plain language and the case law interpreting it compel the conclusion that the "fiduciary duties" exception applies to Plaintiff's claims.

Defendants have failed to satisfy their admitted burden of establishing a right to a federal forum. Accordingly, Plaintiff respectfully requests that the Court grant its Motion to Remand and award Plaintiff its costs and attorneys' fees resulting from Defendants' improper removal.

**ARGUMENT**

**I.    DEFENDANTS' REMOVAL WAS IMPROPER UNDER SLUSA**

    **A.    The Governing Legal Standard for Removal Under SLUSA**

It is undisputed that Defendants bear the burden of convincing this Court that this case has been properly removed, and that they must establish their right to a federal forum by competent proof.  (*See* Pl. Br. at 9.)  Defendants misapply general language from *Dabit* to erroneously suggest that the Court need not "resolv[e] any doubts against removability."  (Def. Br. at 7.)  Defendants overlook the fact that post-*Dabit* cases from this District and elsewhere continue to "resolv[e] any doubts against removability" where, as here, removal was pursuant to SLUSA and the general removal statute.  *See, e.g.*, *Phillips v. Reckson Assocs. Realty Corp.*, No. 06-CV-5971, 2006 U.S. Dist. LEXIS 83288, *12 (E.D.N.Y. Nov. 15, 2006) ("resolving 'any doubts against removability' . . . . this case cannot be removed under SLUSA") (quoting *Federal Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006)); *Pace v. Bidzos*, Nos. C 07-3742 PJH, C 07-3332 PJH, 2007 WL 2908283, *4-5 (N.D. Ca. Oct. 3, 2007) ("The removal statutes are construed restrictively, so as to limit removal jurisdiction. . . .  There is a strong presumption against removal jurisdiction.  Doubts as to removability are resolved in favor of remanding the case to state court.").

    **B.    The Complaint Does Not Allege Misrepresentations or Omissions of Material Fact "In Connection with the Purchase or Sale of a Covered Security"**

The essential issue facing this Court is whether Plaintiff's claims allege misrepresentations or omissions "in connection with the purchase or sale of a covered security." (Def. Br. at 8.)  Defendants strain to contort the Complaint's allegations into a form bearing some colorable connection to "covered securities."  The Complaint makes plain, however, that the alleged failures to disclose simply have nothing to do with the handful of equity (or corporate

debt) positions held by the Master Fund.[2]  As detailed in Plaintiff's opening brief, these small equity positions are irrelevant and entirely tangential to the claims in this case, as the disclosure failures all concern the Management Defendants' mismanagement of the Partnership and their failure to adequately assess, monitor and hedge the ***risks associated with non-covered instruments such as CDOs exposed to the sub-prime mortgage market***.  (*See*, *e.g*., Pl. Br. at 5-7, 11-15; Compl. ¶¶ 2-4, 12, 39-49, 58, 59, 66.)  Accordingly, Plaintiff's claims are not "in connection with" the purchase or sale of any covered security.

Defendants misread and miscast the Complaint in a failed effort to connect the alleged wrongdoing to covered securities in the hope that this Court will adopt the broadest imaginable construction of SLUSA.  Defendants' conclusory assertions without reference to any of the Complaint's allegations expose the futility of this exercise.  *See*, *e.g.*, Def. Br. at:

- 11 ("Thus, the Action not only 'alleg[es]' a number of 'misrepresentation[s] or omission[s] of a material fact in connection with the purchase or sale of a covered security,' its allegations are directly connected to *actual* investments in covered securities.") (citing nothing);

- 12 ("the subject matter of one of the complaint's key allegations is tied to the covered securities held by the Master Fund") (citing nothing);

- 14-15 ("plaintiff directly alleges misrepresentations about the equity hedges and corporate debt held by the Master Fund") (citing nothing); and

- 15 ("the alleged fraud *directly involved* – temporally and in terms of subject matter – the purchase or sale of covered securities") (citing nothing).

These wishful conclusions do not withstand scrutiny.

---

[2] Defendants do not contend that the Master Fund's "positions in corporate debt" served as hedges.  (*See*, *e.g.*, Def. Br. at 5.)  Rather, Defendants argue that the mere presence of these corporate debt holdings is sufficient to bring the Action within SLUSA.  (Def. Br. at 13-14.)  As discussed herein, Defendants are wrong.

1.     **Defendants' Efforts to Rewrite the Complaint Do Not Alter
The Complaint's Actual Allegations**

Lacking any actual allegations (or other facts) upon which to justify removal, Defendants

engage in two primary distortions of the Complaint.  Defendants first pretend that the claims in

this case are not centered on the Management Defendants' inadequate monitoring and hedging

activities in connection with the Partnership's highly leveraged exposure to the sub-prime

mortgage market.  In this transparent effort to divorce the Complaint's allegations from the

Management Defendants' failure to adequately monitor and hedge the Partnership's sub-prime

exposure, Defendants contend that certain paragraphs of the Complaint – taken in isolation –

allege omissions and misrepresentations with respect to "'hedging,' without any qualification as

to type of investments."  (Def. Br. at 9.)[3]  A fair review of the Complaint makes abundantly clear

that the "type of investments" that were inadequately hedged are sub-prime mortgage-backed

securities, such as CDOs.

For instance, Defendants misleadingly quote Paragraph 3 -- which they describe as a "key

paragraph" and the "gravamen" of the first cause of action. (Def. Br. at 2.)  In doing so,

Defendants ignore the immediately preceding paragraph which places these "key" allegations in

their true context.  Paragraph 2 alleges that the Management Defendants:

> completely abdicated their responsibilities to the Partnership and
> its investors by neglecting to manage the Fund in a manner that
> would minimize risk and control losses ***in connection with sub-
> prime mortgage-backed securities***, and committed serious
> disclosure violations by failing to inform investors that they had
> not fulfilled ***those responsibilities***.

¶2 (emphasis added).  Directly tied to the above, Paragraph 3 then alleges that:

---

[3] In the same breath, Defendants contend that such wrongdoing constitutes "omissions or misrepresentations about hedging." (*Id.*)  Yet, the paragraphs that Defendants reference for this proposition discuss failures to hedge ***not*** misrepresentations or omissions about hedging.  (Def. Br. at 9) (citing ¶¶ 6, 7, 47, 54).)

> ***In that regard***, the Management Defendants systematically and
> continuously failed to disclose to investors that they:  (a) were not
> sufficiently monitoring and adequately assessing the credit risk
> inherent in the Partnership's investments; (b) were not determining
> the frequency and severity of defaults of the underlying assets of
> each of the structured finance securities invested in by the
> Partnership; (c) were not developing and implementing credit
> enhancement mechanisms which would cause cash flow to be
> diverted away from the Partnership's riskier investments under
> certain market conditions; and (d) were not otherwise adequately
> engaging in hedging techniques to minimize risk.  Based upon
> ***these*** non-disclosures, the Management Defendants have breached
> their fiduciary duties to Plaintiff and other investors in the
> Partnership.  In addition, based upon the underlying wrongdoing,
> the Management Defendants have breached their fiduciary duties
> to the Partnership."

¶3 (emphasis added).

Numerous other paragraphs similarly make plain that the wrongdoing alleged in the

Complaint concerns the Management Defendants' failure to adequately assess, monitor and

hedge the ***risks associated with non-covered instruments exposed to the sub-prime mortgage***

***market, such as CDOs***.  *See*, *e.g.*:

> ¶41    ("***In this case***, BSAM invested the Partnership's money in ***CDOs that were***
> ***backed by sub-prime mortgages***, which are riskier than traditional, credit-worthy
> mortgages because the borrowers have poor credit or heavy debt loads.  The
> market value of these investments depended upon the flow of principal and
> interest paid by sub-prime borrowers whose mortgages served as the underlying
> collateral for the mortgage securities.") (emphasis added);

> ¶42    ("In many cases, the ***Defendants, themselves, were directly involved in the***
> ***formation of*** the ***CDOs that were purchased by the Partnership.  Thus,***
> ***Defendants were keenly aware of the operations of the underlying financial***
> ***instruments in which the Partnership invested***.") (emphasis added);

> ¶43    ("***Despite this awareness***, the Management Defendants continued to cause the
> Partnership to invest in high-risk instruments, ***even as the sub-prime market was***
> ***collapsing*** through increasing defaults and delinquencies, ***as described below***.")
> (emphasis added);

> ¶47    ("Despite the deteriorating market conditions, the Management Defendants
> ***continued to invest the Partnership's money in risky sub-prime mortgage-***

6

> ***backed securities, while at the same time failing to implement hedging and
> other strategies to minimize risk effectively***.") (emphasis added);

¶48    ("Notably, BSC took steps in January 2007 to reduce its own ***exposure to the
worsening sub-prime mortgage-backed securities market***.") (emphasis added).

(*See also, e.g.,* ¶¶ 4, 12, 39-40, 44-46, 49, 58, 59, 66; Pl. Br. at 5-7; Entwistle Decl., dated

September 28, 2007, Exs. 3-4.)

To effectuate their second principal distortion of the Complaint, Defendants repeatedly

(and incorrectly) contend that the Complaint's allegations concerning the Management

Defendants' failure to adequately hedge "directly" involve equity securities.  (Def. Br. at 9, 11,

14-15.)  In this regard, Defendants erroneously contend that the Management Defendants'

misrepresentations of their monitoring and hedging are "tie[d] directly to covered securities."

(Def. Br. at 9.)  Relying upon a disingenuous rewrite of Paragraph 51, Defendants would make it

appear for purposes of this motion that traditional equities were a meaningful part of hedging

strategies with respect to risks related to sub-prime mortgage-backed securities.[4]  Paragraph 51

states (in full) that:

> Defendants further stated in the [August 2005 AIMA] Response
> that "[t]he Fund generally invests, on a leveraged basis, in
> investment-grade structured finance securities rated AA or higher.
> In addition, various derivatives, primarily credit-default swaps, but
> also options, swaps, swaptions, futures and forward contracts,
> equity securities and currencies, may be used for hedging
> purposes."  Thus, Defendants assured investors that risk would be
> minimized through the use of these strategies.

---

[4] Defendants similarly assert that a "core allegation[]" of the Complaint is that "the Management Defendants failed
to monitor and hedge as they had promised, and then concealed that failure from investors."  (Def. Br. at 8; *see also
id.* at 4 ("The [C]omplaint contains many allegations that the Management Defendants failed to 'hedge' as promised
. . . ." (citing Compl. ¶¶ 6, 7, 47, 67)); Def. Br. at 9.)  The wrongdoing complained of, however, is, *inter alia*, that
the Management Defendants failed to adequately hedge the risks associated with the Partnership's exposure to the
sub-prime mortgage market – not as Defendants appear to suggest, that the Management Defendants failed to
specifically use ***equity securities*** (or any other particular device) to hedge those risks.  Such a ridiculous reading
cannot be accepted.  The laundry lists of potential hedging mechanisms mentioned in the offering documents upon
which Defendants rely (at 9-10) similarly undercut Defendants' attempt to equate "equity securities" with the
hedging of sub-prime risks and provide no support for removal.

Paragraph 51 plainly does not state that *each and every one* of these strategies would be used to minimize the risks associated with the Partnership's sub-prime exposure.[5]

Moreover, as set forth in Plaintiff's opening brief (at 12), there is no allegation that Defendants actually used any equity positions to hedge any of the Partnership's investments with sub-prime exposure, and, as discussed below, Defendants still do not contend that they did so. Moreover, Defendants do not dispute that to the extent that sub-prime related risks were hedged at all, "[t]hese *hedges were concentrated in the triple-B and single-A tranches of the ABX indices*" and/or were "*through the use of credit default swaps*."  (Pl. Br. at 12 (quoting ¶¶49, 59, and the Preliminary Performance Profiles attached as Exhibits 3 and 4 to the September 28, 2007 Entwistle Declaration).)  As Defendants acknowledge, hedging products and indices such as the credit default swaps and the ABX indices are not covered securities.  (Def. Br. at 1, 8.)

## 2.    The New "Facts" that Defendants Proffer Do Not Justify Removal

Defendants contend that the Partnership "in fact invested tens of millions of dollars through the Master Fund in covered securities to hedge its investments."  (Def. Br. at 10; *see also id.* at 4-5, 11.)  The "investments" to which Defendants refer are merely unidentified "structured finance securities," and this assertion rests solely upon Defendant Matthew Tannin's "belie[f]" that "the equity positions identified in the [August 28, 2007] Ervin Declaration were held as

---

[5] In any event, to the extent there is any ambiguity – though there is not – it should be construed in Plaintiff's favor. *See, e.g., Federal Ins.*, 422 F. Supp. 2d at 391 ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff.") (quoting *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1318 (S.D. Miss. 2003)).  *Cf. N.Y. Medscan LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp. 2d 140 (S.D.N.Y. 2006) ("Again, defendants selectively refer to allegations in the complaint, ignoring the complete picture painted by plaintiffs."); *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 305 (3d Cir. 2005) ("[T]he question is not whether a plaintiff pleads or omits certain key words or legal theories, but rather whether *a reasonable reading of the complaint* evidences allegations of 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'") (emphasis added; quoting 15 U.S.C. 78bb(f)(1)).

hedges against risks associated with long positions that the Master Fund held in structured finance securities."  (Tannin Decl. ¶ 4; Def. Br. at 4-5, 10-11.)

  The Tannin Declaration conspicuously and tellingly fails to state that these equity positions served to hedge against risks in structured finance securities *backed by sub-prime mortgages*.  Nor do Defendants contend that these equity positions hedged any of the Partnership's investments *with sub-prime exposure*. [6]  Given that the term "structured finance securities" encompasses all sorts of (non-covered, non-mortgage related) instruments, this silence is telling, and confirms Defendants' failure to meet their burden of establishing the right to a federal forum by competent proof.[7]

  The obvious conclusion is that Defendants are unable to connect equity securities to sub-prime mortgage-related risks, especially given that Plaintiff's opening brief detailed how the Complaint makes plain that the "claims in this case are based on the Management Defendants' inadequate monitoring and hedging activities in connection with the Partnership's highly leveraged *exposure to the sub-prime mortgage market*."  (Pl. Br. at 11 (observing that "the investments at the heart of this case are [] *CDOs and other structured finance securities backed by sub-prime mortgages*") (emphasis added).  *See also id*. at 5-7; 13 ("Plaintiff's claims undeniably rest on non-covered securities[,] *e.g.*, *structured finance securities backed by sub-prime mortgages*") (emphasis added); 14-15.)

---

[6] The Tannin Declaration's silence as to the debt securities identified in the October 25, 2007 Ervin Declaration confirms that the "positions in corporate debt" upon which Defendants now rely have nothing whatsoever to do with hedging.

[7] While Plaintiff believes that there are ample grounds compelling remand based on the existing record, in the event that the Court is inclined to credit Defendants' untested factual arguments, Plaintiff respectfully requests that it be afforded the opportunity to test and explore the factual assertions underpinning those arguments, including by deposing Mr. Tannin as to the substance of his carefully crafted Declaration.

### 3.    The "In Connection With" Requirement Is Not Met

Given the plain language of the Complaint and the emptiness of the Tannin Declaration,

Defendants are forced to make the untenable assertion that "this Action would be removable

under SLUSA even if . . . *none* of the covered securities were used for hedging, but were simply

held as investments in the Master Fund."  (Def. Br. at 13-14.)  As an initial matter, Defendants

do not dispute the fact that "the equity positions held by the Master Fund were insignificant in

comparison to the Master Fund's overall assets (which predominantly consisted of mortgage-

backed instruments)."  (Pl. Br. at 11-12.)  Nor do Defendants dispute that "[t]heir insignificance

is even clearer when compared to the ***$9.682 billion*** in gross long positions the Partnership had

through March 31, 2007."  (*Id.* at 11, n.7.)[8]

Accordingly, Defendants seek refuge in their observation that "the Supreme Court held in

*Dabit* that the fraud of which a plaintiff complains need only 'coincide' with the purchase or sale

of a covered security.'"  Def. Br. at 14 (quoting *Dabit*, 547 U.S. at 85, and also citing *Zandford*,

535 U.S. 819, 820).[9]  The *Dabit* court, however, had no occasion to address the contours of

"coincide", as the misconduct complained of there – "fraudulent manipulation of stock prices –

---

[8] The "positions in corporate debt" to which Defendants now point – none of which served as a hedge – are similarly dwarfed in comparison to the Partnership's nearly ten billion dollars in gross long positions.

[9] Allegations and claims regarding Defendants' ***failure*** to make hedging transactions – transactions that ***never happened*** – by definition cannot "coincide" with the purchase or sale of a security.  Indeed, the Second Circuit plainly stated in *Dabit* that a claim based on the "absence" of transactions "by its very nature, does not allege fraud that 'coincides' with the sale or purchase of a security."  *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 61-62 (2d Cir. 2005) (claim regarding lost commissions lost not preempted by SLUSA because it "relies not on the purchase or sale of any security in connection with the fraud, but on the absence of any such transactions" and "it is clear that such a claim, by its very nature, does not allege fraud that 'coincides' with the sale or purchase of a security.") (citing *SEC v. Zandford*, 535 U.S. 813, 825 (2002)).  This portion of the Second Circuit's decision was undisturbed by the Supreme Court.  *See Dabit*, 547 U.S. at 77 n.3 (noting that the Second Circuit "concluded that *Dabit*'s lost commission claims escaped pre-emption under SLUSA because they did not 'allege fraud that 'coincide[s]' with the sale or purchase of a security'" and that "that determination is not before this Court for review").

unquestionably qualifie[d] as fraud 'in connection with the purchase or sale' of [covered] securities as the phrase is defined in [*Zandford*] and [*O'Hagan*]." *Dabit*, 547 U.S. at 89.[10]

Defendants erroneously contend that "such 'coincidence' plainly exists here, both temporally and in terms of subject matter." (Def. Br. at 14; *see also id.* at 15.) Recent cases in this District applying *Dabit* and construing the meaning of "coincide," however, have held that where, as here, the alleged conduct giving rise to the claim is too far removed from a [covered] securities transaction, the 'in connection with' requirement is not met." *LaSala v. UBS, AG*, No. 06 Civ. 1736 (CSH), 2007 WL 2331054, at *24, 27 (S.D.N.Y. Aug. 15, 2007) ("[B]ecause the conduct . . . in which the Bank is implicated here is too far removed from a securities transaction to be said to have 'coincided' with it, Count 1 of the complaint [aiding and abetting breach of fiduciary duty] is not preempted by SLUSA."). *See also Indiana Elec. Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172 (JGK), 2007 WL 2141697, at *6 (S.D.N.Y. July 25, 2007) ("An alleged fraud is 'in connection with' a purchase or sale of securities under SLUSA if the fraud 'coincides' with or is 'more than tangentially related' to the transaction.") (citations omitted).[11]

---

[10] As the Court in *Rowinski* observed, "*Zandford*'s 'broad' interpretation" of the "in connection" requirement "is not boundless. It 'does not transform every breach of fiduciary duty into a federal securities violation.'" 398 F.3d at 301 (quoting *Zandford*, 535 U.S. at 825 n.4). *See also Paru v. Mut. of Am. Life Ins. Co.*, 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006) (noting "the Second Circuit's determination that while SLUSA preemption may be broad, it is not unlimited") (citing *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003)).

[11] *LaSala v. UBS* was one of a trio of related cases, each of which supports remand here. *See LaSala v. Lloyds TSB Bank*, No. 06 Civ. 4335 (CSH), 2007 WL 2758759, at *28 (S.D.N.Y. Aug. 15, 2007) ("I hold that because the conduct alleged to have been aided and abetted by Lloyds is too far removed from a securities transaction to be said to 'coincide' with it, this claim also is not preempted by SLUSA."); *LaSala v. Bank of Cyprus Pub. Co.*, No. 06 Civ. 6674 (CSH), 2007 WL 2331049, at *26 (S.D.N.Y. Aug. 15, 2007) ("[A]ny connection to securities is simply too attenuated. Count I therefore does not fall within SLUSA's substantive reach."). Notwithstanding Defendants' attempt to distinguish *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006) *cert. denied*, 127 S. Ct. 1492 (2007) – another post-*Dabit* case construing the "in connection with" requirement and militating in favor of remand – that court's construction and application of the "in connection with" requirement is relevant here. Even Defendants must accept that "coincidence" is not boundless.

11

Even though *LaSala v. UBS* and *Millard* speak directly to the issues facing this Court, Defendants make no effort to distinguish these two recent, on point cases from this District, stating only that they are "inapposite" and "were not decided on 'in connection with' or 'covered security' grounds." (Def. Br. at 15, n.6.) *LaSala v. UBS*, however, squarely addressed the proper construction of "coincide" in light of *Dabit* and ruled on the "in connection with" requirement, "so that the Court of Appeals will be aware of this Court's opinion on all issues if it decides to reverse the *forum non conveniens* dismissal." 2007 WL 2331054, at *18. In any event, the *LaSala* court's thorough review of SLUSA analysis in this Circuit and its careful reasoning and application of the "in connection with" requirement is highly pertinent authority that Defendants cannot avoid.[12]

Defendants also argue that "SLUSA does not limit removal to actions in which 'most' of the securities at issue are covered." (Def. Br. at 12.) Citing only a Third Circuit case (*Rowinski*), Defendants contend that "even the purchase or sale of one covered security ***may*** bring an action within SLUSA, so long as the plaintiff alleges one material misrepresentation or omission in connection with the purchase or sale of ***that*** security." (Def. Br. at 12 (emphasis altered).) Regardless of whether that proposition may theoretically be true, it has no applicability here. No misrepresentation or omission is alleged concerning the purchase or sale of any equity or corporate debt security. Rather, the wrongdoing complained of involves only non-covered

---

[12] Contrary to Defendants' suggestion (at 15, n.6), *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1100 (N.D. Cal. 2005) ("The fraud in question . . . must have more than some tangential relation to the securities transaction.") (citations omitted) and *French v. First Union Sec.*, Inc., 209 F. Supp. 2d 818, 824 (M.D. Tenn. 2002) ("[I]n order for a breach to be 'in connection with' securities sales, the breach of the fiduciary duty must do more than simply implicate securities.") (citations omitted), remain good law and further demonstrate that remand is appropriate here. Indeed, *LaSala v. UBS* cited both with approval. 2007 WL 2331054, at *24. Moreover, as in *Strigliabotti*, Plaintiff's claims here simply do "not turn on the purchase or sale of [covered] securities". 398 F. Supp. 2d at 1100.

mortgage-related instruments such as credit default swaps, CDOs and other structured finance securities backed by sub-prime mortgages.

In any event, as the Second Circuit recently confirmed in *Ring v. AXA Fin., Inc.*, 483 F.3d 95 (2d Cir. 2007), the mere presence of a "covered security" is insufficient to bring an action within SLUSA's reach.  *Id*. at 101-02.  Defendants misinterpret *Ring*, erroneously contending that it stands for "the unremarkable proposition that if an action's allegations concern only non-covered securities, the action does not fall under SLUSA."  (Def. Br. at 14.)  To the contrary, in distinguishing the facts presented in *Ring* from those in *Lander v. Hartford Life & Annuity Co.*, 251 F.3d 101 (2d Cir. 2001), the Second Circuit explained that the putative class members "do differ from the *Lander* plaintiffs in one important respect:  while putative *Ring* class members may have purchased covered securities . . . they also purchased a CTR, a classic insurance product.  In contrast, the only and entire product at issue in *Lander* was a covered security." *Ring*, 483 F.3d at 101.  Nevertheless, the Second Circuit found that "it is entirely consistent with SLUSA to disaggregate in determining whether the plaintiff has alleged fraud in connection with a 'covered security.'"  *Id*.[13]

Hoping to avoid the controlling principles set forth in *Ring*, Defendants assert – again citing to nothing – that "Here, unlike in *Ring*, plaintiff directly alleges misrepresentations about

---

[13] Disregarding the controlling law on "disaggregation" set forth in *Ring*, Defendants rely (at 13) upon several unavailing out of Circuit cases, including *Herndon v. Equitable Variable Life Ins. Co.,* 325 F.3d 1252 (11th Cir. 2003), which the Second Circuit refused to follow because it "contains no analysis and is thus unpersuasive".  *Ring*, 483 F.3d at 101 n.4.  *Cordova v. Lehman Bros.*, 413 F. Supp. 2d 1309 (S.D. Fla. 2006), relied upon *Herndon* and is similarly unpersuasive.  *Lasley v. New Eng. Variable Life Ins. Co.*, 126 F. Supp. 2d 1236 (N.D. Cal. 1999) adds nothing, as the *Lasley* plaintiffs alleged fraud "arising out of defendants' marketing of life insurance products," but their complaint "also involve[d] variable [products] as demonstrated by the inclusion of 'variable life insurance' in the complaint's definition of 'life insurance products.'"  *Id*. at 1238-1239.

the equity hedges and the corporate debt held by the Master Fund." (Def. Br. at 15.) That is

plainly wrong, and Defendants' lack of citation for this assertion speaks volumes.[14]

<div align="center">

**4.    The Derivative Claims Are Not Subject to SLUSA Preemption
and Thus Must Survive**

</div>

It is undisputed that Counts III and IV of the Complaint are not subject to preemption and

dismissal under SLUSA because these derivative claims do not sound in fraud. (*See* Pl. Br. at

16; Def. Br. at 6, 17.) Nor is there any dispute that the "requirements that must be satisfied for

SLUSA preemption to apply are, under the law of this Circuit, applied to each claim in the

complaint rather than to the whole action." (Pl. Br. at 16 (quoting *LaSala v. UBS*, 2007 WL

2331054, at *25).) Accordingly, regardless of how SLUSA is applied to the direct claims, the

derivative claims survive and should be remanded.[15]

## II.    THIS COURT DOES NOT HAVE DIVERSITY JURISDICTION UNDER CAFA

Defendants have not stated any persuasive grounds for why the express statutory

exception to CAFA jurisdiction in 28 U.S.C. §§ 1332(d)(9)(C) (the "fiduciary duties" exception)

does not apply here. Failing to cite a single case supporting their unduly narrow interpretation of

28 U.S.C. §1332(d)(9)(C), Defendants instead rely exclusively on legislative history to argue that

this CAFA exception is inapplicable to Plaintiff's fiduciary duty claims. In doing so, Defendants

---

[14] Defendants also incorrectly contend that Plaintiff suggests that SLUSA does not apply because Plaintiff "did not itself purchase the securities that are the subject of its allegations." (Def. Br. at 16.) Rather, Plaintiff demonstrates unambiguously that the securities that are the subject of its allegations – CDOs and other mortgage-backed securities (along with the Partnership Interests) – are not covered securities, and no misrepresentations or omissions are alleged in connection with the purchase or sale of any covered security.

[15] Defendants erroneously contend that Plaintiff has "waived" argument on the applicability of the Delaware carve out. (Def. Br. at 18, n.9.) As explained in Plaintiff's opening brief, the only way the Delaware carve out could apply here is if the Court were somehow to find that the Partnership Interests are "covered securities" and specifically "equity securities" (though they plainly are neither), and that all the other substantive requirements for SLUSA removal have been met (though they have not). Only in the event that those preconditions come to pass would Plaintiff seek to press an argument as to the applicability of the Delaware carve out.

<div align="center">14</div>

ignore basic principles of statutory construction and the clear weight of judicial authority holding

that this exception precludes CAFA jurisdiction over breach of fiduciary duty cases such as this.

### A.   CAFA's Plain Language and the Clear Judicial Authority Exempt Fiduciary Duty Claims Like Those Presented Here from CAFA Jurisdiction

Defendants ignore the multiple judicial decisions cited by Plaintiff which uniformly hold

that section 1332(d)(9)(C) exempts breach of fiduciary duty claims like those present here from

federal jurisdiction under CAFA.  (Pl. Br. 18 (citing *Estate of Pew v. Cardarelli*, No. 5:05-CV-

1317, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006); *In re Textainer P'ship Sec. Litig.*, No. C 05-

0969 (MMC), 2005 WL 1791559, at *6-7 (N.D. Cal. July 27, 2005); *Carmona v. Bryant*, No.

CV-06-78-S-BLW, 2006 WL 1043987, at *3 (D. Idaho Apr. 19, 2006); *Genton v. Vestin Realty*

*Mort. II, Inc.*, No. 06-CV-2517-BEN (WMC), 2007 WL 951838, *2 (S.D. Cal. Mar. 9, 2007);

*Williams v. Texas Commerce Trust Co. of N.Y.*, No. 05-1070-CV-W-GAF, 2006 WL 1696681, at

*5 (W.D. Mo. June 15, 2006); *Indiana State Dist. Council of Laborers and Hod Carriers*

*Pension Fund v. Renal Care Group, Inc.*, No. Civ. 3:05-0451, 2005 WL 2000658, at *2 (M.D.

Tenn. Aug. 8, 2005)).  Defendants' evasive blanket assertion that these cases are not binding on

this Court is nothing more than a cop-out.  (Def. Br. 22 n.10).  This silence is understandable

given that courts considering section 1332(d)(9)(C) have uniformly held that it precludes CAFA

jurisdiction over breach of fiduciary duty claims such as those alleged in this action.

Defendants concede that *Pew* involved facts similar to those presented in this Action.

(Def. Br. 22 n.10).  The Court in *Pew* squarely rejected the same contention Defendants make

here – *i.e.*, that breach of fiduciary duty claims are premised on misrepresentations and

omissions made to owners of securities and thus fall outside the section 1332(d)(9)(C) exception

to CAFA jurisdiction.  *See Pew*, 2006 WL 3524488, at *6 (rejecting CAFA jurisdiction and

noting that states still maintain a significant role in the regulation of business entities and

securities that are not nationally traded).  Tellingly, the Court in *Pew* did not find section 1332(d)(9)(C) to be ambiguous on this point, and expressly stated that "there is nothing in the legislative history that undermines the Court's analysis."  *Id.* at *6 n.12.[16]  Defendants' have offered no convincing reason why the *Pew* holding from this Court's sister district should not apply with equal force here.

In a fruitless attempt to overcome these clear judicial authorities, Defendants resort to selected passages from Congressional committee reports to argue that section 1332(d)(9)(C) does not apply to Plaintiff's breach of fiduciary duty claims.  (Def. Br. 21-23).  As an initial matter, Defendants' hasty retreat to "legislative history" defies the basic principle of statutory construction that the starting point for interpreting a statute is the language of the statute itself. *See, e.g.*, *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("in all cases involving statutory construction, 'our starting point must be the language employed by Congress,' . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." (citations omitted); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (same).  When the language of a statute is unambiguous that is the end of the inquiry, and no examination of legislative history is required.  *See, e.g.*, *Rubin v. U.S.*, 449 U.S. 424, 430 (1981) ("[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete"); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("judicial review must end at the statute's unambiguous terms").

---

[16] In *Pew*, the Court did not consult legislative history to reach its decision.  Rather, the Court simply observed that the legislative history confirmed the Court's reading of the statute's plain language.  *Id.*

Defendants do not explain how the plain language of section 1332(d)(9)(C) contains any ambiguity that would even warrant a consideration of legislative history.[17]  Indeed, none of the courts that issued the decisions noted above and in Plaintiff's opening brief (Pl. Br. at 18-19) needed to consult CAFA's legislative history to conclude that section 1332(d)(9)(C) exempts breach of fiduciary duty claims from CAFA jurisdiction.  *See*, *e.g.*, *Pew*, 2006 WL 3524488, at *6 ("the Court does not consider section 1332(d)(9)(C) to be ambiguous"); *Indiana State Dist. Council*, 2005 WL 2000658, at *2 ("this court does not find the wording of this exception [§1332(d)(9)(C)] ambiguous in the least"); *Carmona*, 2006 WL 1043987, at *1 ("[t]he plain language of subsection (C) covers this case"); *Genton*, 2007 WL 951838, at *3 (same); *Textainer*, 2005 WL 1791559, at *6-7 (no consideration of legislative history); *Williams*, 2006 WL 1696681, at *5 (same).  Accordingly, there is no need for this Court to do so here.[18]

Defendants' encourage the Court to reject what they misleadingly term "plaintiff's construction" of section 1332(d)(9)(C) in light of contrary legislative intent.  (Def. Br. 18-19).  As noted above, Plaintiff's "construction" is informed by the decisions of Courts that have considered this exception.  Unlike the legislative history to which Defendants resort, the judicial holdings on section 1332(d)(9)(C) carry the weight of law.

---

[17] Contrary to Defendants' suggestion otherwise, the term "relates" as used in section 1332(d)(9)(C) has a clear meaning.  Simply put, Plaintiff's breach of fiduciary duty claims "relate" to Plaintiff's ownership of the limited partnership interests in the sense that Plaintiff would be unable to bring its claims without such ownership.  Defendants' abstract examination of the metaphysical meaning of the term "relates" is unnecessary here, and Defendants' citation to *Enders v. Am.Patent Search Co.*, 535 F.2d 1085, 1090 (9th Cir. 1976), which considered the scope of federal patent jurisdiction, is inapposite.

[18] In any event, the purported legislative intent bearing upon the scope of the "fiduciary duties" exception simply does not have the weight of law since it is not supported by the text of the statute itself.  *See*, *e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (rejecting Senate Committee Report language on plaintiff's burden of proof under CAFA given absence of such language in CAFA itself); *New York v. U.S. Dept. of Transp.*, 700 F. Supp. 1294, 1304 (S.D.N.Y. 1988) (rejecting attempt to enforce two sentences in Senate Report since they were not part of statutory text itself); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006) ("'a committee report [on the burden of proof under CAFA] cannot serve as an *independent statutory source having the force of law*'") (emphasis in original; citations omitted).

17

**B.      Though Unnecessary, Legislative History Supports Applicability of the Fiduciary Duties Exception Here**

Although there is no need to examine CAFA's legislative history in light of the statute's plain language, such an exercise only confirms that the "fiduciary duties" exception applies. Consistent with the Senate Committee language that Defendants cite, Plaintiff's claims are in fact based on (i) "state common law regarding the duties owed between and among owners and managers of [a] business enterprise[]," and (ii) "the rights arising out of the terms of the securities issued by [the] business enterprise[]."  (Def. Br. at 22 (quoting S. Rep. No. 109-14, at 45)).

First, the Complaint's Delaware breach of fiduciary duty claims concern duties that the Management Defendants owed to Plaintiff and to other Limited Partners, each of whom is a part owner of the Partnership.  Second, Plaintiff's breach of fiduciary duty claims are based on rights that exist pursuant to the terms of their Limited Partnership interests and the formative documents under which they were issued.  Litigating Plaintiff's claims will necessarily involve an examination of the terms of their Limited Partnership interests, as well as Delaware law on the scope of the fiduciary duties owed to Plaintiff and to other Limited Partners.  Thus, Plaintiff's claims are based on duties that arise out of the terms of the Limited Partnership interests, as well as duties which relate to, or are pursuant to those interests.[19]  The "fiduciary duties" exception to CAFA jurisdiction applies to this Case even when one resorts to the legislative history without reading the statute – as Defendants appear to encourage here.

---

[19] As noted in Plaintiff's moving papers, the plain language of section 1332(d)(9)(C) is not limited to claims based on fiduciary duties created by the terms of a particular security.  The exception also includes fiduciary duties that "relate to" and are "pursuant to" a security under the Securities Act.  (Pl. Br. at 19-20.)  Defendants' reliance on the Senate Committee Report ignores this plain statutory language.

### C.      This Case "Solely" Concerns Fiduciary Duty Claims

Defendants' assertion that this case does not "solely" concern fiduciary duty claims is unavailing.[20]  Plaintiff's aiding and abetting breach of fiduciary duty claims against Defendants BSC, BSSC, and BS&Co. solely relate to the Management Defendants' breach of their fiduciary duties to the Partnership and Plaintiff.  By definition, such aiding and abetting claims are entirely contingent upon a finding that the Management Defendants owed a fiduciary duty to Plaintiff and/or the Partnership.  *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (existence of a fiduciary duty one of the threshold elements of aiding and abetting breach of fiduciary duty claim).  The aiding and abetting claims therefore cannot exist independent of the underlying breach of fiduciary duty claims brought against the Management Defendants.  The fact that Defendants BCS, BSSC, and BS&Co. may be non-fiduciaries is irrelevant.  For purposes of the "fiduciary duties" exception, all that matters is that Plaintiff's aiding and abetting claims solely depend on their breach of fiduciary duty claims.  All of Plaintiff's claims concern the existence, scope, and breach of the Management Defendants fiduciary duties, and are therefore covered under the "fiduciary duties" exception.

## III.     AN AWARD OF COSTS AND ATTORNEYS' FEES IS WARRANTED

Defendants' removal of this action was objectively unreasonable, entitling Plaintiff to its attorneys' fees and costs.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  For the reasons set forth in Plaintiff's earlier Memorandum (Pl. Br. at 22), Plaintiff respectfully requests that the Court exercise its discretion to award Plaintiff its attorneys' fees and costs.

---

[20] Defendants erroneously contend that Plaintiff's breach of fiduciary duty claims are actually fraudulent inducement claims in substance.  (Def. Br. at 19).  As master of its Complaint, Plaintiff has undeniably and exclusively, asserted breach of fiduciary duty claims against the Management Defendants.  Defendants cannot override Plaintiff's choice of claims by attempting to read into the Complaint causes of action that simply do not appear.  *See Indiana State Dist. Council*, 2005 WL 2000658, at *2 (rejecting argument that complaint contained "imbedded federal question" which conferred jurisdiction)

## CONCLUSION

For the reasons set forth herein and in Plaintiff's opening memorandum of law, this case should be remanded to New York State Supreme Court and Plaintiff should be awarded its costs and attorneys' fees resulting from Defendants' improper removal of this action.

Dated:  November 9, 2007

<div style="margin-left: 40%;">

Respectfully Submitted,


By: /s/ Andrew J. Entwistle
    Andrew J. Entwistle
    Vincent R. Cappucci
    Stephen D. Oestreich
    Robert N. Cappucci
    Jonathan H. Beemer
    Michael H. Rosner
    **ENTWISTLE & CAPPUCCI LLP**
    280 Park Avenue, 26th Floor West
    New York, New York 10017
    (212) 894-7200

    Douglas R. Hirsch
    **SADIS & GOLDBERG LLP**
    551 Fifth Avenue, 21st Floor
    New York, New York 10176
    (212) 947-3793

    *Attorneys for Plaintiff*
    NAVIGATOR CAPITAL PARTNERS, L.P.

</div>