UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————

| | |
|---|---|
| x | |
| NAVIGATOR CAPITAL PARTNERS, L.P., on behalf of itself and all others similarly situated, : | |
| : | |
| : | |
| Plaintiff, : | |
| : | |
| - against - : | |
| : | |
| : | |
| BEAR STEARNS ASSET MANAGEMENT INC., : | No. 07 Civ. 07783 (AKH) |
| BEAR, STEARNS SECURITIES CORP., THE BEAR : | |
| STEARNS COMPANIES INC., BEAR, STEARNS & : | ECF Case |
| CO. INC., RALPH CIOFFI, RAYMOND : | |
| MCGARRIGAL, MATTHEW TANNIN, BARRY : | |
| COHEN, GERALD CUMMINS,  DAVID : | |
| SANDELOVSKY, GREGORY QUENTAL, SCOTT : | |
| LENNON, MICHELLE WILSON-CLARKE, AND : | |
| WALKERS FUND SERVICES LIMITED, : | |
| : | |
| Defendants, : | |
| : | |
| - and - : | |
| : | |
| : | |
| BEAR STEARNS HIGH-GRADE STRUCTURED : | |
| CREDIT STRATEGIES, L.P., : | |
| : | |
| Nominal Defendant. : | |
| : | |
| x | |

——————————————————————————

**PLAINTIFF NAVIGATOR CAPITAL PARTNERS L.P.'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS WALKERS FUND SERVICES LIMITED,
SCOTT LENNON AND MICHELLE WILSON-CLARKE'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

    A.    Entities and Parties At Issue ............................................................. 3

        1.    The Master Fund ................................................................. 3

        2.    The Partnership ................................................................... 5

        3.    Defendants Lennon and Wilson-Clarke................................ 6

        4.    Defendant Walkers............................................................. 7

    B.    The Relevant Conduct of the Walkers Defendants................................ 9

    C.    In Connection With The Master Fund's Bankruptcy Proceedings, New York Is Determined to be the Master Fund's Center of Main Interests................ 10

ARGUMENT .......................................................................................................... 12

I.    THE WALKERS DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN NEW YORK........................................................................ 12

    A.    Walkers Does Business in New York for Purposes of General Jurisdiction ........ 13

    B.    Lennon and Wilson-Clarke's Activities Relating to the Master Fund Subject Them to Jurisdiction in New York........................................................ 15

        1.    Jurisdiction Over the Walkers Defendants Exists Under C.P.L.R. § 302(a)(1) ....................................................... 15

        2.    Jurisdiction Over the Walkers Defendants Exists Under C.P.L.R. § 302(a)(3) ....................................................... 20

        3.    Exercising Jurisdiction Over the Walkers Defendants Satisfies Due Process ............................................................................. 22

        4.    The Complaint's Allegations Entitle Plaintiff to Jurisdictional Discovery as to the Walkers Defendants .................................. 24

II.    THE COMPLAINT ADEQUATELY ALLEGES DEMAND FUTILITY ..................... 24

III.    THE COMPLAINT STATES DERIVATIVE CLAIMS FOR BREACH OF FIDUCIARY DUTY AGAINST LENNON AND WILSON-CLARKE ........................ 25

    A.    Lennon and Wilson-Clarke's Breaches of Fiduciary Duty Arose From, at Least, Gross Negligence ........................................................... 25

    B.    Lennon and Wilson-Clarke's Breaches of Fiduciary Duty Are Not Exculpated........................................................................ 27

    C.    The Complaint's Breach of Fiduciary Duties Claims Against the Walkers Defendants Are Not Preempted by the Martin Act............................. 28

IV.    THE COMPLAINT ADEQUATELY ALLEGES AIDING AND ABETTING CLAIMS AGAINST THE WALKER DEFENDANTS................................. 28

i

|   | A. | The Complaint Adequately Alleges the Walkers Defendants' Actual Knowledge of the Management Defendants' Primary Violations | 28 |
|   | B. | The Complaint Adequately Alleges Specific Conduct by the Walkers Defendants | 31 |
|   | C. | The Complaint Adequately Alleges Proximate Causation | 32 |
| V. |   | THE COMPLAINT STATES CLAIMS AGAINST WALKERS | 33 |
|   | A. | The Complaint States Claims for Aiding and Abetting Breach of Fiduciary Duty Against Walkers | 34 |
|   | B. | Vicarious Liability Claims Against Walkers Are Not Foreclosed | 34 |
| CONCLUSION |   |   | 36 |

# TABLE OF AUTHORITIES

## Cases

*A.C.K. Sports, Inc. v. Doug Wilson Enterprises, Inc.*,
  661 F. Supp. 386 (S.D.N.Y. 1987) ................................................................. 16

*ABF Capital Management v. Askin Capital Management, L.P.*,
  957 F.Supp. 1308 (S.D.N.Y. 1997) ................................................................ 30

*Able Fund v. KPMG Accountants NV*,
  247 Fed. Appx. 504 (5th Cir. 2007) ............................................................... 18

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*,
  98 F. 3d 25 (2d Cir. 1996) ............................................................................. 16

*In re Allou Distributors, Inc.*,
  395 B.R. 246 (Bankr. E.D.N.Y. 2008) ..................................................... 32, 33

*In re AlphaStar Ins. Group Ltd.*,
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) ..................................................... 29, 32

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) ............................................................ 18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999) ........................................................................... 21

*In re Bear Stearns High-Grade Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) ........................................ 4, 11, 22, 33

*In re Bear Stearns High-Grade Credit Strategies Master Fund, Ltd.*,
  389 B.R. 325 (S.D.N.Y. 2008) ........................................................................ 11

*Beatie & Osborn LLP v. Patriot Scientific Corp.*,
  431 F. Supp. 2d 367 (S.D.N.Y. 2006) ............................................................ 20

*Big Apple Pyrotechnics and Multimedia, Inc. v. Sparktacular, Inc.*,
  No. 05 Civ. 9994 (KMW), 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007) .......... 12, 20

*Bildstein v. Atwater*,
  635 N.Y.S.2d 88 (2d Dep't 1995) ................................................................... 27

*Cauble v. Mabon Nugent & Co.*,
  594 F. Supp. 985 (S.D.N.Y. 1984) ................................................................. 26

*Chaiken v. VV Pub. Corp.*,
  119 F.3d 1018 (2d Cir. 1997) ......................................................................... 23

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
  No. 92-CV-5638 (JFK), 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) ............... 18

*Columbia Pictures Industries, Inc. v. Liberty Cable, Inc.*,
  919 F. Supp. 685 (S.D.N.Y. 1996) ........................................................... 26, 27

*Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*,
  150 F. Supp. 2d 566 (S.D.N.Y. 2001) ............................................................ 23

*Cyberscan Technology, Inc. v. Sema Ltd.*,
  No. 06 Civ. 526 (GEL), 2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006) .................................. 23

*Daou v. Early Advantage, LLC*,
  410 F. Supp. 2d 82 (N.D.N.Y. 2006) .................................................................................... 13

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
  747 F. Supp. 922 (S.D.N.Y. 1990) ...................................................................................... 18

*Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*,
  797 N.Y.S.2d 439 (1st Dep't 2005) ..................................................................................... 17

*DiStefano v. Carozzi North America, Inc.*,
  286 F.3d 81 (2d Cir. 2001) ........................................................................................... 12, 21

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) .................................................................................... 7

*Fashion Fragrance & Cosmetics v. Croddick*,
  No. 02-CV-6294 (WK), 2003 WL 342273 (S.D.N.Y. Feb. 13, 2003) ..................................... 13

*First Transcable Corp. v. Avalon Pictures, Inc.*,
  585 N.Y.S.2d 195 (1st Dep't 1992) ..................................................................................... 25

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
  479 F. Supp. 2d 376 (S.D.N.Y. 2007) .............................................................................. 12, 23

*Global Crossing Estate Representative v. Winnick*,
  No. 04 Civ. 2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ............................. 34, 35

*Goldenberg v. Lee*,
  No. 96-CV-5297 (RJD), 1999 WL 390611 (E.D.N.Y. April 15, 1999) .................................. 15

*Henneberry v. Sumitomo Corp. of America*,
  532 F. Supp. 2d 523 (S.D.N.Y. 2007) .................................................................................. 29

*Ingraham v. Carroll*,
  90 N.Y.2d 592 (N.Y. 1997) ................................................................................................. 24

*Jaisan, Inc. v. Sullivan*,
  No. 96 Civ. 4336 (WK), 1997 WL 86402 (S.D.N.Y. Feb. 28, 1997) ..................................... 21

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005) .................................................................................. 30

*Kingsepp v. Wesleyan University*,
  763 F. Supp. 22 (S.D.N.Y. 1991) ........................................................................................ 14

*Kwon v. Yun*,
  No. 05 Civ. 1142 (GEL), 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006) .................................. 19

*L.F. Rothchild v. Thompson*,
  433 N.Y.S.2d 6 (1st Dep't 1980) ......................................................................................... 18

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*,
  918 F.2d 1039 (2d Cir. 1990) ............................................................................................. 14

*Law Debenture v. Maverick Tube Corp.*,
  No. 06 Civ. 14320 (RJS), 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) ................................ 14

*Lemoine v. Cornell University*,
  769 N.Y.S.2d 313 (3rd Dep't 2003) ...................................................................... 27

*Local 8A-28A Welfare and 401(k) Retirement Funds v. Golden Eagles Architectural
  Metals Cleaning and Refinishing*,
  277 F. Supp. 2d 291 (S.D.N.Y. 2003) .................................................................. 12

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*,
  264 F.3d 32 (2d Cir. 2001) ............................................................................... 13

*In re Matsumura v. Benihana Nat. Corp.*,
  542 F. Supp. 2d 245 (S.D.N.Y. 2008) .................................................................. 29

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ............................................................................... 13

*Mohamad v. Rajoub*,
  No. 05 Civ. 8335 (LAP), 2008 WL 4444572 (S.D.N.Y. Sept. 29, 2008)............................. 24

*Mooney v. Vitolo*,
  301 F. Supp. 198 (S.D.N.Y. 1969) ...................................................................... 32

*Nader v. Kurt Getschaw and Phillip Getschaw, Inc.*,
  No. 99-CV-11556 (LAP), 2000 WL 1471553 (S.D.N.Y. Sept. 29, 2000) .............................. 18

*Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd.*,
  543 N.Y.S.2d 978 (1st Dep't 1989) ...................................................................... 17

*Parke-Bernet Galleries, Inc. v. Franklyn*,
  26 N.Y.2d 13 (N.Y. 1970) ........................................................................... 16, 19

*Patsy's Italian Restaurant, Inc. v. Banas*,
  575 F. Supp. 2d 427 (E.D.N.Y. 2008) .................................................................... 8

*Pension Committee of University of Montreal Pension Plan v. Banc of America
  Securities, LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) .................................................................. 32

*Pfizer Inc. v. Gilman*,
  No. 01 Civ. 8419 (DLC), 2002 WL 215653 (S.D.N.Y. Feb. 13, 2002) ............................... 17

*Purdue Pharma L.P. v. Impax Laboratories, Inc.*,
  No. 02 Civ. 2803 (SHS), 2003 WL 22070549 (S.D.N.Y. Sept. 4, 2003).......................... 14, 15

*Rahl v. Bande*,
  328 B.R. 387 (Bankr. S.D.N.Y. 2005)................................................................... 29

*In re Rhodia S.A. Sec. Litig.*,
  531 F. Supp. 2d 527 (S.D.N.Y. 2007) .................................................................. 18

*S.E.C. v. Vindman*,
  No. 06 Civ. 14233 (LTS)(THK), 2007 WL 1074941 (S.D.N.Y. April 5, 2007).................... 23

*Schoon v. Smith*,
   953 A.2d 196 (Del. 2008) ........................................................................ 25

*Steinberg v. Bombardier Trust*,
   No. 07-CV-1212 (WHP), 2008 WL 2787720 (S.D.N.Y. July 9, 2008) ................................... 18

*Teachers' Retirement Sys. v. Welch*,
   664 N.Y.S.2d 38 (1st Dep't 1997) ................................................................ 27

*The Rockefeller Univ. v. Ligand Pharmaceuticals, Inc.*,
   No. 08 Civ. 2755 (PKC), 2008 WL 2139148 (S.D.N.Y. May 19, 2008) ................................ 13

*Treeline Inv. Partners, LP v. Koren*,
   No. 07 CIV 1964, 2007 WL 1933860 (S.D.N.Y. July 3, 2007) ....................................... 17

*Vasquez v. Torres Negron*,
   434 F. Supp. 2d 199 (S.D.N.Y. 2006) ............................................................ 12

*Williams v. Sidley Austin Brown & Wood, L.L.P.*,
   832 N.Y.S.2d 9 (1st Dep't 2007) ................................................................ 30

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) ..................................................................... 13

## Rules & Regulations

C.P.L.R. § 301 ..................................................................................... 12, 13

C.P.L.R. § 302 ................................................................................... 12, 19, 23

C.P.L.R. § 302(a)(1) ............................................................................. 15, 23, 24

C.P.L.R. § 302(a)(3) ........................................................................... 20, 21, 22, 24

C.P.L.R. § 302(a)(3)(i) ............................................................................... 22

Fed. R. Civ. P. 8 ................................................................................... 29, 30

Fed. R. Civ. P. 8(a) ................................................................................... 29

Fed. R. Civ. P. 9(b) ............................................................................... 28, 29

Plaintiff Navigator Capital Partners, L.P., ("Navigator" or "Plaintiff") respectfully submits this Memorandum of Law in Opposition to the motion and supporting memorandum (the "Walkers Motion" or "Walkers Br.") of Defendants Walkers Fund Services Limited ("Walkers"), Scott Lennon ("Lennon"), and Michelle Wilson-Clarke ("Wilson-Clarke") (collectively, the "Walkers Defendants") to dismiss Navigator's First Amended Class Action and Verified Derivative Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Violating their fiduciary and contractual duties and obligations to the Partnership and its Limited Partners,[1] the Management Defendants used the Partnership and the Master Fund as ready purchasers of overpriced and risky subprime mortgage-backed structured finance securities primarily issued by vehicles that Management Defendants and other entities affiliated with The Bear Stearns Companies Inc. ("BSC") structured, controlled, and managed. (¶¶ 8-10, 174-96, 237-40). The Partnership Documents assured Limited Partners that investments between the Master Fund and other Bear Stearns affiliates would be made with the *prior* approval of Defendants Lennon and Wilson-Clarke as the "independent" directors of the Master Fund. (¶¶ 148, 177-78.) Rather than faithfully carrying out their duties to review and approve such related-party transactions pursuant to the Partnership Documents and the Investment Advisers Act -- the primary role that their employer, Defendant Walkers, placed them at the Master Fund to perform -- Lennon and Wilson-Clarke failed to timely approve numerous related-party transactions. Instead, Lennon and Wilson Clarke knowingly enabled the Management Defendants to engage in a consistent pattern of self-dealing, feeding the liquidity crisis that caused the Master Fund and the Partnership to collapse. (¶¶ 181-96, 304-17.)

---

[1] If not defined in this Preliminary Statement, capitalized terms have the meanings attributed to them below in the Statement of Facts.

The Complaint contains detailed allegations concerning Walkers failure to oversee the Independent Directors, as well as Lennon and Wilson-Clarke's willful and grossly negligent failure to review related-party transactions/principal trades and otherwise supervise the Master Fund.  For the reasons set forth herein, Plaintiff respectfully submits that the Complaint's claims against the Walkers Defendants should be sustained.

First, Walkers is subject to general jurisdiction in New York because it solicits business and engages in other conduct here.  Lennon and Wilson-Clarke are subject to jurisdiction because what little duties they performed were executed through systematic telephone and mail contacts with New York.  Additionally, Lennon and Wilson-Clarke are subject to jurisdiction because they committed torts in the Cayman Islands that injured property in New York.  (Point I, *infra*.)

Second, the Complaint adequately alleges demand futility in connection with the claims (Counts VI-IX) asserted derivatively on behalf of the Partnership.  (Point II, *infra*.)

Third, the Walkers Defendants' challenges to the Complaint's claim for breach of fiduciary duty against Lennon and Wilson-Clarke (Count VII) fail because the Complaint adequately alleges facts demonstrating Lennon and Wilson-Clarke's disregard of their duties that amounted to gross negligence, willfulness and/or bad faith.  As a result, neither Lennon nor Wilson-Clarke is protected by any exculpatory language in the Master Fund's formation documents.  Moreover, the Complaint's claims against Lennon and Wilson-Clarke are not preempted by New York's Martin Act.  (Point III, *infra*.)

Fourth, the Complaint's allegations in connection with:  (i) Counts IV and IX against the Walkers Defendants for aiding and abetting the Management Defendants' breaches of their fiduciary duties (Counts I and IV); and (ii) Count V against the Walkers Defendants for aiding and abetting the Management Defendants' fraud upon Limited Partners (Count III) demonstrate that the

Walkers Defendants had actual knowledge of the Management Defendants' relevant underlying misconduct.  (Point IV, *infra*.)

Fifth, Walkers cannot avoid liability for the claims against it (Counts IV, V, and IX) by hiding behind or disavowing its employees.  Walkers is liable both for its own acts and failures to act and for the tortious acts of its employees, Lennon and Wilson-Clarke.  (Point V, *infra*.)

## STATEMENT OF FACTS[2]

### A.    Entities and Parties At Issue

#### 1.    The Master Fund

The Master Fund was a hedge fund registered for tax purposes as an exempted company in the Cayman Islands on September 3, 2003, with its Registered Office at the offices of Defendant Walkers in the Cayman Islands.[3]  (¶¶ 65-67.)  As an "exempted company" under Cayman Islands Companies Law, the Master Fund was not permitted to conduct business with any person, firm or corporation internally in the Cayman Islands "except in furtherance of the business of the Company *carried on outside the Cayman Islands*."[4]

The business of the Master Fund occurred almost exclusively in New York.  (¶ 55.)  BSAM, the Master Fund's investment manager ("Investment Manager") and each of the Master Fund's Portfolio Managers, were all located in New York.  (¶¶ 29-32.)  The Master Fund's interests and

---

[2]  This Memorandum discusses only the entities, parties and allegations in the Complaint relevant to the Walkers Motion.  A more complete discussion of the facts and allegations in the Complaint is presented in Plaintiff Navigator Capital Partners, L.P.'s Memorandum of Law in Opposition to the Bear Stearns Defendants' Motion to Dismiss, dated December 3, 2008 ("Navigator's Opposition to Bear Stearns' Motion"), filed contemporaneously herewith.

[3]  *See* Memorandum & Articles of Association of Bear Stearns High-Grade Structured Credit Master Fund Ltd., Exhibit X to the Declaration of Michael A. Collora in Support of Defendants Walkers FS, Scott Lennon, and Michelle Wilson-Clarke's Motion to Dismiss the Varga and Navigator Amended Complaints, dated October 30, 2008 (the "Collara Decl."), ¶ 2.

[4]  *See* Collara Decl., Exhibit X, ¶ 6 (emphasis added).

assets were held in New York, and its prime broker was also located in New York.[5]  (¶ 37.)  The Master Fund had no employees in the Cayman Islands.  *See id.*

The Management Defendants caused the Master Fund to purchase large amounts of structured finance securities created, issued and managed by the Management Defendants themselves and by other Bear Stearns entities and employees.  (¶¶ 113-23, 264-69.)  In particular, the Management Defendants caused the Master Fund to become the largest customer for risky unrated junior or equity grade structured finance securities ("Repackaging Vehicle Junior Interests") created by Bear Stearns entities that they could not otherwise sell.  (¶¶ 113-23.)

Each and every time the Management Defendants caused the Master Fund to purchase securities, such as the Repacking Vehicle Junior Interests, from Bear Stearns entities, the transaction was subject to the "principal trade" provision in Section 206(3) of the Investment Advisers Act of 1940 (the "Investment Advisers Act") which prohibits an investment adviser or affiliated entity from selling any security to a client without prior disclosure and consent.  (¶¶ 51, 148, 177, 305, 346.)  Thus, to comply with the Investment Advisers Act, the Management Defendants promised Limited Partners that there would be a process whereby each principal trade or other related party transaction between the Master Fund and any other Bear Stearns entity was subject to evaluation and approval by two "unaffiliated," or "independent" directors of the Master Fund appointed by the Management Defendants.  (¶¶ 8, 147-49.)  The procedure was created to enable the Master Fund to transact with Bear Stearns entities without notifying its investors of each and every transaction. (¶ 161.)  In this sense, the independent directors served as a proxy for Limited Partners' informed consent.  At all times relevant to the allegations in the Complaint, the Management Defendants transacted all business on behalf of the Master Fund and directed all of its investments from

---

[5]  *See In re Bear Stearns High-Grade Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007).

Defendant BSC's former world headquarters at 383 Madison Avenue, New York, New York. (¶ 29.)

### 2.      The Partnership

Facts pertaining to the Partnership are set forth in Sections A and B of the Statement of Facts of Navigator's Opposition to the Bear Stearns Defendants' Motions to Dismiss.  Set forth below are additional facts relevant to the Walkers Defendants' Motion.

Limited partnership interests were offered through a Confidential Private Placement Memorandum, dated August 2006 (the "PPM").  The PPM was distributed to U.S. investors (Navigator received it in New York) and outlined in fair detail the terms of the Partnership.  The PPM also outlined for investors the procedures through which principal trades and related-party transactions would be reviewed by unaffiliated directors to comply with the Investment Advisers Act.  (¶¶ 8, 147-49.)  Specifically, the PPM provided:

> Members of the Board of Directors who are not affiliated with the Investment Manager or their delegates or other authorized representatives of the Master Fund will have the responsibility for approving any transactions between the Master Fund and the Investment Manager involving significant conflicts of interest (including principal trades).
>
> More particularly, Directors unaffiliated with the Investment Manager or any delegate designated by such Directors will be responsible for approving any principal transactions for which Master Fund consent is required pursuant to Rule 206(3) of the Advisors Act.[6]

The PPM further provided:

> The Subscription Agreement of each Limited Partner provides that each Limited Partner consents and agrees that if any transaction, including any transaction effected between the Master Fund and the Investment Manager or its affiliates, is subject to the disclosure and consent requirements of Section 206(3) of the Advisers Act, such requirements will be satisfied with respect to the Master Fund

---

[6]  *See* Declaration of Marjorie E. Sheldon, dated October 30, 2008 ("Sheldon Decl.") (Docket No. 57), Exhibit E at 36.

and all Limited Partners if disclosure is given to, and consent obtained from, the independent Master Fund directors or such other advisory party.[7]

In addition, the PPM named defendants Barry Cohen, David Sandelovsky and Gerald Cummins, each of whom was a managing director of BSAM, as the "affiliated" directors (the "Affiliated Directors") of the Master Fund and Defendants Lennon and Wilson-Clarke as its "unaffiliated" directors (sometimes referred to as the "Independent Directors") as of August 2006. (¶¶ 42-47.)  Pursuant to the PPM, the Affiliated Directors and Lennon and Wilson-Clarke were ultimately responsible for overseeing the operations of the Master Fund.  (¶¶ 50-52.)  The PPM identified Lennon and Wilson-Clarke to all investors as the parties responsible for conducting the independent review and approval of all principal trades and related party transactions between the Master Fund and any Bear Stearns entity (the "Principal Trades").  (¶¶ 42-44, 119, 147-49.)  Lennon and Wilson-Clarke were named to replace the prior unaffiliated directors who had systematically failed to review most Principal Trades.  (¶ 182.)

The PPM was issued by BSAM as general partner from 383 Madison Avenue and was distributed to investors in New York, including Navigator.  (¶ 71-75.)  Moreover, at all relevant times the Affiliated Directors were based at 383 Madison Avenue.  (¶¶ 29, 35.)  Lennon and Wilson-Clarke were well aware they were named as the unaffiliated directors in the PPM and knew the PPM was being distributed from 383 Madison Avenue to investors in New York.  (¶ 44.)  They were also aware that the Affiliated Directors were located at 383 Madison Avenue.

### 3. Defendants Lennon and Wilson-Clarke

Defendant Lennon is a resident of the Cayman Islands who was at all relevant times a Senior Vice President of Defendant Walkers.  (¶ 42.)  Defendant Wilson-Clarke is a citizen of the

---

[7] *See* Sheldon Decl., Exhibit E at 29.

United States and resident of the Cayman Islands who was at all relevant times a Vice President of Defendant Walkers.  (¶ 43.)

Beginning in August 2006, Lennon and Wilson-Clarke were responsible for evaluating all Principal Trades that otherwise would have been subject to the requirements of the Advisers Act. (¶¶ 52-53, 148-149.)  Because Lennon and Wilson-Clarke were in the Cayman Islands and all Master Fund business was conducted by the Management Defendants in New York, they could not perform the services for which they were retained unless they made periodic trips to New York or remained in nearly daily contact by telephone or mail with 383 Madison Avenue.  (¶ 55.)

### 4.      Defendant Walkers

Defendant Walkers is a Cayman Islands company with its principal office located at Walker House, 87 Mary Street, George Town, Grand Cayman, Cayman Islands.  (¶ 55.)  Walkers is part of The Walkers Group which, according to its website, is a global provider of a full-range of legal and management services to offshore investment funds with offices in the Cayman Islands, the British Virgin Islands, Dubai, Hong Kong, Jersey and London.[8]  The Walkers Group describes itself as having a "global presence" and providing services to "leading FORTUNE 100" corporations.[9]

Walkers has a long and lucrative history with the Bear Stearns entities.  (¶¶ 55, 304, 198-99.)  During the relevant period, Walkers provided directorial and oversight services to at least nine BSAM hedge funds other than the Master Fund, and Walkers affiliates served as legal counsel to at

---

[8]  *See* http://www.walkers.com.ky/.  This Court is entitled to take judicial notice of the public contents of Walkers' website.  *See, e.g, Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination").

[9]  *See id.*

least sixteen Bear Stearns managed hedge funds.  *Id.*  Moreover, Lennon and Wilson-Clarke served as directors for other funds advised by BSAM and other Bear Stearns entities.[10]  *Id.*

Walkers was retained by the Management Defendants on behalf of the Master Fund and its investors to provide the Master Fund with unaffiliated directors.  (¶ 55.)  Walkers knew the directors it provided would be named in the PPM distributed to U.S. investors and knew that the Master Fund was partially owned by U.S. investors.  *Id.*  Moreover, Walkers knew that Lennon and Wilson-Clarke were intended (indeed, would be required) to perform duties through daily contact with the Management Defendants in New York.  *Id.*  Walkers was compensated for services rendered to the Master Fund *pro rata* from the U.S. limited partners' capital accounts.  (¶ 56.)

In addition to its relationship with the Bear Stearns entities, Walkers conducts additional activities in New York, including soliciting business.  For example, on November 6, 2008, less than a month ago, the Walkers Group hosted an invitation-only conference in New York for its clients regarding protecting and growing hedge fund business in today's volatile markets.[11]  Defendant Lennon was a featured speaker at the conference.  According to an article on Cayman Net News' website, many of New York's premier financial institutions were in attendance.[12]  Mark Lewis, a partner at Walkers, explained the unsurprising reasons why Walkers chose to hold their conference in New York:

> New York is absolutely crucial in that it is the centre of the US investment management industry.  Although there are significant fund manager operations in San Francisco and Chicago, by hosting the seminar in New York it gave us

---

[10]  *See* Sheldon Decl., Exhibit E, at 34.

[11]  Details about the conference (including a .pdf of the invitation) are available on Walkers' website at www.walkers.com.ky/pressroom.php?pr_id=654&category=Events.  As stated in note 8, *supra*, the Court can take judicial notice of the website's contents.

[12]  A copy of the article is available Cayman Net News' website at www.caymannetnews.com/news-11559--5-5---.html.  This Court can likewise take judicial notice of the Cayman Net News article.  *See, e.g., Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet").

> unique access to the greatest concentration of Portfolio Managers in the
> Northeastern United States.  New York is also the location of many of our key
> clients, which are banks, financial institutions and law firms.

In other words, Walkers selected New York for the conference because it acknowledges

New York as the center of the U.S. investment management industry and the location of

many of its key clients.

### B.    The Relevant Conduct of the Walkers Defendants

Beginning no later than August 2006, approximately a year before the collapse of the Master

Fund and the Partnership, Lennon and Wilson-Clarke were appointed to be the unaffiliated directors

in charge of reviewing all Principal Trades and supervising the Master Fund.  (¶ 50-51.)  Walkers

was retained to arrange the services of Lennon and Wilson-Clarke.  (¶¶ 50-51, 55.)  From the date

of their appointment in August 2006 until the end of their service, Lennon and Wilson-Clarke

consistently failed to review the Master Fund's Principal Trades.  (¶¶ 181-96.)  The willful and

grossly negligent failure of Lennon and Wilson-Clarke to review the Principal Trades and otherwise

supervise the Master Fund enabled the Management Defendants to continue their pattern of self-

dealing and unapproved investments in illiquid securities that caused the Master Fund to collapse.

(¶¶ 304-17.)  Specifically, the Complaint alleges that Lennon and Wilson-Clarke, among other

things:

- Approved at least 165 transactions that did not adhere to the procedures created
  by the Management Defendants to comply with the Investment Advisers Act (¶¶
  199, 308);

- Approved 87 transactions in March 2007 alone, less than half of which complied
  with the procedures created by the Management Defendants, including 21
  transactions that were approved after the transaction had already closed (¶ 196);

- Failed to reject a single transaction between the Master Fund and any Bear
  Stearns entity during their service as Independent Directors (¶ 199);

- Knew of the Management Defendants' misrepresentations to limited partners,
  including, but not limited to, those made in monthly statements, financial
  statements, and during telephone conferences (¶ 16);

- Knowingly permitted the Management Defendants to cause the Master Fund to engage in harmful Principal Trades without the required approvals (¶¶ 181-96, 310-17, 396);

- Facilitated the breaches of fiduciary duty that directly caused injuries to Limited Partners, the Class, and the Partnership (¶¶ 54, 306-17);

- Failed to fulfill duties to prevent or expose a number of areas in which the Management Defendants mismanaged the Master Fund (¶¶ 180, 308-17);

- Were aware of problems with the previous independent directors yet failed to critically review Principal Trades (¶¶ 182-83, 305-06);

- Permitted the Master Fund to become the primary purchaser of Bear Stearns entities' otherwise illiquid securities and risky securities (¶¶ 123, 307); and

- Ignored the Management Defendants' wrongdoing (¶ 311.)

Walkers was retained on behalf of the Partnership and paid to provide services to the Master Fund and knew that the directors it provided were responsible for reviewing Principal Trades. (¶ 55, 399.)  Walkers completely failed to monitor Lennon and Wilson-Clarke to ensure they were performing the review and oversight functions central to the Master Fund's investment activities. (¶¶ 306, 401.)

**C.    In Connection With The Master Fund's Bankruptcy Proceedings, New York Is Determined to be the Master Fund's Center of Main Interests**

On July 31, 2007, the Cayman Grand Court appointed provisional liquidators for the Master Fund.[13]  The same day, the provisional liquidators filed a petition in the United States Bankruptcy Court, Southern District of New York, for entry of an order recognizing the liquidation in the Cayman Islands as a foreign main proceeding or, in the alternative, as foreign non-main proceeding pursuant to Chapter 15 of the Bankruptcy Code.  On September 5, 2007, the Honorable Burton R. Lifland denied the petition, ruling that the Cayman Island proceeding should not be recognized as either a foreign main or non-main proceeding because the Master Fund had no meaningful connection to the Cayman Islands.

As grounds for his decision, Judge Lifland ruled that recognition of the Cayman Islands proceeding was inappropriate where the Master Fund's "center of main interest" was New York and the Master Fund lacked an "establishment" ("defined as 'any place of operations where the debtor carries out a nontransitory economic activity'") in the Cayman Islands.  *Id*.  Specifically, Judge Lifland made the factual determination that the Master Fund's only connection to the Cayman Islands was its registration, it had no employees or managers in the Cayman Islands, its investment manager was located in New York, its administrator was in the United States, all of its liquid assets were in the United States, and its principal interests, assets and management were located in New York.  *Id*. at 130.  In addition, Judge Lifland found that the Master Fund conducted no non-transitory economic activity in the Cayman Islands, except for those activities necessary to its offshore business.  *Id*. at 129-130.  Finally, Judge Lifland found that the Master Fund had no assets in the Cayman Islands other than those deposited *after* the insolvency.  *Id*. at 130, n.6.

In short, Judge Lifland found the High-Grade Master Fund's "real seat" and "center of main interests" was New York.  (*Id*.)  He found that the Master Fund's presence in the Cayman Islands closely approximated a traditional "letterbox" company -- a company set up in a tax haven having no physical presence there other than its mailing address.  On May 27, 2008, the Honorable Robert W. Sweet of the United States District Court, Southern District New York, affirmed Judge Lifland's ruling.[14]  In affirming, Judge Sweet found that "the pleadings and facts elicited at hearings before the Bankruptcy Court place the conduct of the Funds' business, their assets, management company and sponsors in New York."  *Id*. at 337.

---

[13]  *See In re Bear Stearns High-Grade,* 374 B.R. at 127.

[14]  *See In re Bear Stearns High-Grade Credit Strategies Master Fund, Ltd.*, 389 B.R. 325 (S.D.N.Y. 2008).

**ARGUMENT**

**I.     THE WALKERS DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN NEW YORK**

It is well settled that prior to discovery, Navigator need only "make a *prima facie* showing of jurisdiction through the complaint's allegations and affidavits in order to defeat a motion to dismiss." *Local 8A-28A Welfare and 401(k) Retirement Funds v. Golden Eagles Architectural Metals Cleaning and Refinishing*, 277 F. Supp. 2d 291, 293 (S.D.N.Y. 2003); *see also Vasquez v. Torres Negron***,** 434 F. Supp. 2d 199, 201 (S.D.N.Y. 2006) ("To defeat the motion to dismiss for lack of personal jurisdiction, plaintiff need only make a *prima facie* showing that jurisdiction exists") (emphasis added).  In evaluating the Complaint's jurisdictional allegations, the Court must construe all pleadings and affidavits in the light most favorable to Navigator and all doubts must be resolved in Navigator's favor.  *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ("We construe the pleadings and affidavits in the light most favorable to [plaintiff], resolving all doubts in his favor").

New York law offers two bases for the exercise of personal jurisdiction over out-of-state defendants:  (i) "general jurisdiction" under C.P.L.R. § 301 over a defendant that "does business in New York . . . with a fair measure of permanence and continuity," and (ii) "specific jurisdiction" under C.P.L.R. § 302 over a defendant who in person or through an agent either "transacts any business within the state or contracts anywhere to supply goods or services in the state" or "commits a tortious act without the state causing injury to person or property within the state."  *See Big Apple Pyrotechnics and Multimedia, Inc. v. Sparktacular, Inc.*, No. 05 Civ. 9994 (KMW), 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007); *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 479 F. Supp. 2d 376, 385 (S.D.N.Y. 2007) ("Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the

defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state'").

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001). The exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice and be reasonable under the circumstances of the case. *See*, *e.g.*, *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

### A.  Walkers Does Business in New York for Purposes of General Jurisdiction

C.P.L.R. § 301 provides "general jurisdiction" over a party found to be "doing business" in New York. *See*, *e.g.*, *The Rockefeller Univ. v. Ligand Pharmaceuticals, Inc.,* No. 08 Civ. 2755 (PKC), 2008 WL 2139148, at *2 (S.D.N.Y. May 19, 2008). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction . . . if it does business in New York, 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). "These are elastic terms that befit the infinite variety of ways in which business may be conducted." *Daou v. Early Advantage, LLC*, 410 F. Supp. 2d 82, 90-91 (N.D.N.Y. 2006) (quoting C.P.L.R. § 301 cmt. C301:8(b)).

While the standard is "imprecise," New York courts generally focus on whether the defendant has offices in New York, solicits business in New York, maintains bank accounts or other property in New York, and has employees or agents in New York. *See Fashion Fragrance & Cosmetics v. Croddick*, No. 02-CV-6294 (WK), 2003 WL 342273, at *3 (S.D.N.Y. Feb. 13, 2003); *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.

1990).  As the Walker Defendants note, the Complaint does not allege that Walkers maintains offices, employees or bank accounts in New York.

However, Walkers does solicit business in New York, and courts in this circuit recognize the "solicitation plus" basis for general jurisdiction.  *See*, *e.g.*, *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *4 (S.D.N.Y. Oct. 15, 2008) ("The Second Circuit has also recognized a theory of general jurisdiction under § 301 known as 'solicitation plus'").  A foreign corporation is subject to jurisdiction under the "solicitation plus" theory "[w]hen there are activities of substance [in the forum state] in addition to solicitation."  *Kingsepp v. Wesleyan University*, 763 F. Supp. 22, 26 (S.D.N.Y. 1991).  "Under this solicitation-plus rule, once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'"  *Purdue Pharma L.P. v. Impax Laboratories, Inc.*, No. 02 Civ. 2803 (SHS), 2003 WL 22070549, at *2 (S.D.N.Y. Sept. 4, 2003) (internal citations omitted).

Without question, Walkers actively and substantially solicits business from financial institutions in New York.  For example, just a month ago on November 6, 2008, The Walkers Group hosted an invitation-only conference in New York regarding conducting hedge fund business in volatile markets.  Defendant Lennon was a featured speaker at the conference.  Many of New York's premier financial institutions were in attendance, and The Walkers Group chose to hold the conference in New York as the center of the U.S. investment management industry and the admitted location of many of its key clients.  (*Id.*)  In addition, The Walkers Group maintains a website accessible in New York that touts its provision of services to "leading FORTUNE 100 companies," many of which have a presence in New York.

In addition to the regular New York conduct referenced above, Walkers has provided advisory and fund services to at least nine BSAM hedge funds other than the Master Fund, and its

14

affiliated law firm was legal counsel to at least sixteen Bear Stearns hedge funds managed by Bear Stearns' in New York.  (¶ 55.)

Plainly, regardless of its physical presence outside New York, Walkers is subject to this Court's general jurisdiction due to its extensive pattern of providing services to financial companies and hedge funds located in New York while actively soliciting business in New York.  *See Purdue Pharma*, 2003 WL 22070549, at *1-2 (company with no assets, offices, employees, or bank accounts in New York was subject to general jurisdiction under "solicitation plus" rule where it solicited business in New York through website, a small number of sales calls, and attendance at conferences hosted by financial institutions).

### B.   Lennon and Wilson-Clarke's Activities Relating to the Master Fund Subject Them to Jurisdiction in New York

Defendants Lennon and Wilson-Clarke are subject to jurisdiction under New York's long-arm statute because they provided services by telephone and mail to New York in connection with performing their duties as the Independent Directors of the Master Fund -- approving transactions in a manner that clearly projected them into the center of business transactions exclusively centered in New York.  Moreover, they are subject to jurisdiction because they committed tortious acts outside the state causing injuries to property and persons in New York.

### 1.   Jurisdiction Over the Walkers Defendants Exists Under C.P.L.R. § 302(a)(1)

Section 302(a)(1) of the C.P.L.R. allows courts in New York to exercise jurisdiction over any non-domiciliary who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  "[T]he standard for 'transacting business' is considerably less than the requirements under the 'doing business' test," provided jurisdiction is conferred only as to those causes of action arising from the conduct. *Goldenberg v. Lee*, No. 96-CV-5297 (RJD), 1999 WL 390611, at *3 (E.D.N.Y. April 15, 1999).

*See also A.C.K. Sports, Inc. v. Doug Wilson Enterprises, Inc.*, 661 F. Supp. 386, 390 (S.D.N.Y. 1987) ("The standard for transacting business is somewhat more liberal than the test for doing business").

Without question, Walkers contracted with BSAM as Investment Manager to provide Lennon and Wilson-Clarke's services in New York -- even if Lennon and Wilson-Clarke allegedly provided their services only by telephone, mail, and e-mail. Lennon and Wilson-Clarke were retained to review Principal Trades that were originated and occurred entirely in New York. Each Principal Trade that Lennon and Wilson-Clarke was required to review was initiated by the Management Defendants located exclusively at 383 Madison Avenue with Bear Stearns entities located at 383 Madison Avenue, using a prime broker located in New York. Moreover, all Master Fund assets subject to the transactions were located and held in New York. *See In re Bear Stearns High-Grade*, 374 B.R. at 129-130.

The Walkers Defendants' principal argument against personal jurisdiction over the Independent Directors is that Lennon and Wilson-Clarke purportedly did not physically travel to New York. (Walkers Br. at 23.) This argument fails as a matter of law. The New York Court of Appeals has "emphasize[d] that one need not be physically present in order to be subject to the jurisdiction of our courts under C.P.L.R. 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State." *Parke-Bernet Galleries, Inc. v. Franklin*, 26 N.Y.2d 13, 17 (N.Y. 1970). Similarly, the Second Circuit Court of Appeals has "question[ed] whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." *See also Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F. 3d 25, 30 (2d Cir. 1996).

It is well settled that physical presence is not required if a defendant uses telephone or mail communications to "project" itself into business transactions occurring within the state. *See Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 797 N.Y.S.2d 439, 443-44 (1st Dep't 2005) ("electronic communications, telephone calls or letters . . . may be sufficient if used by the defendant deliberately to project itself into business transactions occurring within New York State"). *See also Treeline Inv. Partners, LP v. Koren*, No. 07 CIV 1964, 2007 WL 1933860, at *3 (S.D.N.Y. July 3, 2007).

Here Lennon and Wilson-Clarke clearly "projected themselves" into transactions in New York by telephone and mail. It is uncontroverted that none of the Principal Trades were executed in the Cayman Islands -- indeed the Master Fund, as an exempted company, was prohibited from doing business there. (Collera Decl. Ex. X at 6.) Moreover, none of information Lennon and Wilson-Clarke needed to evaluate the Principal Trades was available in the Cayman Islands -- it all had to be provided to them by BSAM's employees in New York via telephone and mail. Moreover, Lennon and Wilson-Clarke provided their "approvals" to the Management Defendants in New York by telephone and mail. In short, Lennon and Wilson-Clarke could not have performed the duties for which they were retained without nearly daily contact with BSAM employees in New York by telephone or mail. In fact, Lennon and Wilson-Clarke approved at least 165 transactions initiated by the Management Defendants in New York. Such a pattern of contacts is more than sufficient to find that they projected themselves into business transactions in New York. *See*, *e.g.*, *Pfizer Inc. v. Gilman*, No. 01 Civ. 8419 (DLC), 2002 WL 215653, at *3-4 (S.D.N.Y. Feb. 13, 2002) (non-domiciliary who engaged in 22 securities transactions by telephone and mail through broker in New York was subject to jurisdiction); *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd.*, 543 N.Y.S.2d 978, 979 (1st Dep't 1989) (non-domiciliary who participated in 93

telephone calls with attorneys in New York was subject to jurisdiction); *L.F. Rothchild v. Thompson*, 433 N.Y.S.2d 6, 7 (1st Dep't 1980) (non-domiciliary who engaged in 25 securities transactions by telephone and mail in four months with broker in New York was subject to jurisdiction).

The Walkers Defendants seeks to minimize the significance of Lennon and Wilson-Clarke's telephone and mail contacts with New York by collecting cases where jurisdiction premised on communications was rejected.  (Walkers Br. at 21-22.)  But their cases stand for the unremarkable proposition that communications with the forum state that are incidental to the services outside the forum are not grounds for jurisdiction.[15]  Far from incidental, Lennon and Wilson-Clarke's communications with the Management Defendants in New York were required for them to perform their role.  Moreover, the transactions originated in New York and the review procedure was designed to satisfy the requirements of U.S. law.[16]  Plainly, Defendants Lennon and Wilson-Clarke cannot avoid answering for their conduct because they arranged to evaluate the New York

---

[15]  The Walkers Defendants rely on *Steinberg v. Bombardier Trust*, No. 07-CV-1212 (WHP), 2008 WL 2787720, at *3 (S.D.N.Y. July 9, 2008) (telephone calls and electronic mail messages between a defendant Canadian investor and a trading advisor in New York incidental to an investment outside the U.S. were insufficient to project defendant into New York without any allegations defendant did business, solicited business, or derived revenue in New York); *Nader v. Kurt Getschaw and Phillip Getschaw, Inc.*, No. 99-CV-11556 (LAP), 2000 WL 1471553, at *4 (S.D.N.Y. Sept. 29, 2000) (telephone calls incidental to an automobile restoration were insufficient to project defendant into New York where it otherwise had no contact with New York); *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 747 F. Supp. 922, 928-29 (S.D.N.Y. 1990) (no jurisdiction over director because his corporation could be reached by long arm statute and he sent a single letter to a law firm in New York); *Able Fund v. KPMG Accountants NV*, 247 Fed. Appx. 504, 507 (5th Cir. 2007) (telephone calls and emails with a co-defendant in Texas did not support jurisdiction where they did not provide the basis for the tort and no plaintiff resided in or was injured in Texas).

[16]  The Walker Defendants' collection of cases (Walkers Br. at 22 n.11) dismissing foreign directors because of insufficient minimum contacts are irrelevant to the instant case where Defendants Lennon and Wilson-Clarke had a central role in specifically approving the transactions in New York.  *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (no allegations that the foreign directors conducted business concerning the product at issue); *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 442 (S.D.N.Y. 2007) (no allegations that the foreign directors effectuated or authorized the subject transactions); *Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 92-CV-5638 (JFK), 1992 WL 296406, at *4 (S.D.N.Y. Oct. 7, 1992) (no allegations that foreign director engaged in business on behalf of company at issue).  The Walkers Defendants miss the point that Navigator's jurisdictional allegations are not predicated on the status of Defendants Lennon and Wilson-Clarke as directors.  Rather, jurisdiction is appropriately based upon on their specific responsibility to review the New York transactions that were ultimately harmful to the Partnership and Limited Partners.

transactions from the Cayman Islands.  *See Parke-Bernet Galleries,* 26 N.Y.2d at 19 ("The mere fact that the defendant was able to arrange to conduct his extensive and purposeful activity in New York without having to physically come here does not enable him to avoid the jurisdiction of our courts").

The Walkers Defendants argue that the Complaint's allegations concerning Lennon and Wilson-Clarke's systematic communications with New York are somehow conclusory.  (Walkers Br. at 23.)  This argument also fails.  The Complaint specifically alleges that Lennon and Wilson-Clarke communicated with New York to approve at least 165 principal trades and related party transactions, including 87 by mail in March 2007 alone.[17]  (¶¶ 196, 199) Navigator also alleges that the Affiliated Directors were in New York.  The Walker Defendants merely ignore these allegations.  If Lennon and Wilson-Clarke deny they were in routine contact with New York, they must admit a total failure to perform the services for which Walkers was retained.[18]

Finally, Walkers cannot avoid specific jurisdiction by attempting to separate itself from the conduct of Lennon and Wilson-Clarke.  C.P.L.R. § 302 conveys jurisdiction over any defendant transacting business in New York "in person *or through an agent*."  It is plain that Lennon and Wilson-Clarke engaged in conduct creating jurisdiction under C.P.L.R. § 302 and jurisdiction extends to Walkers as their employer and principal.  The Complaint alleges that Walkers was retained to provide Lennon and Wilson-Clarke as Independent Directors to the Master Fund (¶ 304) and that it maintained a lucrative practice of providing professionals to Bear Stearns entities.  (¶ 198.)  Lennon and Wilson-Clarke were Vice Presidents of Defendant Walkers (¶¶ 42-43), and

---

[17]  The Walkers Defendants' reliance on *Kwon v. Yun*, No. 05 Civ. 1142 (GEL), 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006) is misplaced.  (Walkers Br. at 23-25.)  Again, the Walkers Defendants cite a case where incidental email contacts with New York were insufficient to confer jurisdiction.  Here, Lennon and Wilson-Clarke's frequent telephone and mail contacts with New York were central and indispensible to their ability to evaluate the Principal Transactions they were retained to review.

Walkers knew they would be required to review transactions in New York through regular contact by phone and mail with New York.  (¶ 55.)  Walkers cannot reasonably argue that Lennon and Wilson-Clarke were not its employees and agents acting for its benefit and the cases it cites trying to disavow Lennon and Wilson-Clarke are inapposite.[19]

### 2. Jurisdiction Over the Walkers Defendants Exists Under C.P.L.R. § 302(a)(3)

Section 302(a)(3) of the C.P.L.R. allows courts in New York to exercise jurisdiction over any non-domiciliary who in person or through an agent "commits a tortious act without the state causing injury to person or property within the state," provided he "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from … services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from … international commerce." C.P.L.R. § 302(a)(3).

As discussed in Points III and IV, *infra*, Navigator's Amended Complaint sufficiently alleges that the Walkers Defendants committed the torts of aiding and abetting the Management Defendants' breach of fiduciary duty and aiding and abetting the Management Defendants' common-law fraud, and that Lennon and Wilson-Clarke committed the tort of breach of fiduciary duty.  Any of these torts can be the basis for jurisdiction provided the remaining requirements of C.P.L.R. § 302(a)(3) are alleged.  Navigator has alleged sufficient facts to overcome the Walkers Defendants' two challenges to jurisdiction under Section 302(a)(3).

---

[18]  To the extent this Court conditions jurisdiction on the Walker Defendants' physical presence in New York, Navigator should be permitted limited discovery on the issue as discussed in Section I.B.4, *infra*.

[19]  *See* (Walkers Br. at 24 n.13) (citing *Big Apple Pyrotechnics*, 2007 WL 747807, at *2 (no jurisdiction where it was undisputed that co-defendant was not an employee of non-domiciliary corporation, corporation had no knowledge of his actions, and neither consented nor had control over his actions)); *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006) (no jurisdiction absent allegations that putative agent was acting in part for benefit of non-domiciliary corporation).

The Walkers Defendants first incorrectly assert their torts did not cause harm to property or person in New York.  (Walkers Br. at 25-28.)  "Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury test,' which asks them to locate the original event which caused the injury."  *DiStefano*, 286 F.3d at 84.  "In the case of fraud or breach of fiduciary duty committed [outside the] state, the critical question is … where the first effect of the tort was located that ultimately produced the final economic injury."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999).

In *Bank Brussels*, the court found that movement of funds in New York based on fraudulent information was the "first effect" of the tort even though the misrepresentations occurred in Puerto Rico.  *See id*.  The Complaint alleges that the Walkers Defendants' torts allowed the Management Defendants in New York to cause the Master Fund to purchase risky structured finance securities from Bear Stearns entities in New York at inflated prices.  Moreover, all the Master Fund assets used for and acquired through the transactions were maintained in New York, and the transactions also allowed the Management Defendants in New York to harm the Master Fund's portfolio -- ultimately contributing to its collapse.  (¶¶ 21, 25, 55, 199, 305, 317, 399-401)  Under *Bank Brussels'* "first effect" test, the effects were first felt in New York, and the situs of the injury was clearly New York.[20]

The Walkers Defendants' claim that the "first effect" of the torts was the Cayman Islands as the Master Fund's place of registration.  (Walkers Br. at 26-27.)  They are plainly incorrect.  As discussed herein, the Master Fund had no offices or employees in the Cayman Islands, held no

---

[20]  The Walker Defendants assertion that the situs of the injury is "where the critical events associated with the dispute took place" is incorrect.  (*See* Walkers Br. at 26.)  Walkers relies on two cases, *Jaisan, Inc. v. Sullivan*, No. 96 Civ. 4336 (WK), 1997 WL 86402 (S.D.N.Y. Feb. 28, 1997) and *United Bank of Kuwait, PLC v. James M.*

assets there, and never even had monies deposited in the Cayman Islands until *after* it was insolvent. *See In re Bear Stearns High-Grade,* 374 B.R. at 129-130.  Indeed, as Judge Lifland correctly recognized, the Master Fund was akin to a "letterbox" company set up for tax purposes[21] and its "real seat" and "center of main interests" was New York.[22]  The situs of the injury is where the Master Fund felt the "first effect," which logically cannot be where the Master Fund had no actual presence.

Nor are the Walkers Defendants correct that they fail to satisfy either of the final prongs of C.P.L.R. § 302(a)(3).  (Walkers Br. at 27.)  Navigator has demonstrated that the Walkers Defendants regularly do business and solicit business in New York.  Walkers had a lucrative arrangement to provide services to at least nine other BSAM hedge funds operating from New York, and the PPM states that Defendants Lennon and Wilson-Clarke acted as directors for other BSAM funds.  (¶ 304.)  Moreover, Walkers solicits business through conferences in New York and has acknowledged that many of its key clients are located in New York.  The Walkers Defendants' conduct satisfies all of the disjunctive conditions of C.P.L.R. § 302(a)(3)(i).

### 3.    Exercising Jurisdiction Over the Walkers Defendants Satisfies Due Process

Finally, "after a federal court in diversity decides whether state law gives rise to personal jurisdiction, it must also determine whether the exercise of jurisdiction would comport with due

---

*Bridges, Ltd.*, 766 F. Supp. 113 (S.D.N.Y. 1991).  Both of these cases pre-date the Second Circuit's decision in *Bank Brussels*, which established the "first effect" test.

[21]   *See id*. at 130 n.6.

[22]   *See id*. at 129-130.  The Walkers Defendants' cases (*see* Walkers Br. at 26-27) do not support their claim that the situs of the injuries is the Cayman Islands.  Instead, they stand for the uncontroversial proposition that the "first effect" of a tort is not automatically New York merely because the plaintiff resides here.  *See Whitaker v. Fresno Telsat, Inc.*, 87 F. Supp. 2d 227, 233 (S.D.N.Y. 1999) (situs of fraudulent transaction designed to avoid paying fee was not New York merely because plaintiff resided there); *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*, No. 03 Civ. 2936 (MBM), 2004 WL 1620874, at *7 (S.D.N.Y. July 20, 2004) (situs of conversion was not New York merely because funds were owed to New York plaintiff); *Ljungkvist v. Rainey Kelly Campbell Roalfe/Young & Rubicam, Ltd.*, No. 01 Civ. 1681 (HB), 2001 WL 1254839, at *4 (S.D.N.Y. Oct. 19, 2001) (situs of tort was not New York merely because funds were withheld from New York plaintiff).

process." *Cyberscan Technology, Inc. v. Sema Ltd.*, No. 06 Civ. 526 (GEL), 2006 WL 3690651, at *6 (S.D.N.Y. Dec. 13, 2006).  "Jurisdiction satisfies the Due Process clause of the Fourteenth Amendment as long as a defendant has minimum contacts with the forum state such that assertion of jurisdiction comports with traditional notions of fair play and substantial justice." *S.E.C. v. Vindman*, No. 06 Civ. 14233 (LTS)(THK), 2007 WL 1074941, at *2 (S.D.N.Y. April 5, 2007).  *See also Frontera Resources*, 479 F. Supp. 2d at 380 (Plaintiff "must also satisfy the constitutional due process requirement that non-residents defendants have certain minimum contacts with the jurisdiction such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'").

"Whether it is 'reasonable' to exercise jurisdiction in a particular case depends on (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997).

Because the scope of specific jurisdiction under Section 302 does not extend as far as the federal Constitution permits, satisfying the Section 302(a)(1) criteria generally satisfies due process. *See Cyberscan Technology*, 2006 WL 3690651, at *6 (internal citation omitted).  *See also Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001) ("The New York long arm statute, C.P.L.R. § 302, does not extend to the full limits permitted by the Due Process Clause of the Fourteenth Amendment").  Similarly, subdivision 302(a)(3) was not designed to encompass the full limits of permissible jurisdiction.  The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision well within

constitutional bounds." *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (N.Y. 1997) (internal quotations and brackets omitted).  As a result, because the Walkers Defendants' conduct meets the conditions of sections 302(a)(1) and 302(a)(3) of the C.P.L.R., this Court's jurisdiction over them comports with due process requirements.[23]

### 4.   The Complaint's Allegations Entitle Plaintiff to Jurisdictional Discovery as to the Walkers Defendants

For the foregoing reasons, Navigator has made a *prima facie* showing that the Walkers Defendants are subject to the personal jurisdiction in New York.  However, if the Court has any doubt, Navigator respectfully requests leave to take limited discovery regarding any jurisdictional questions.  "To secure such jurisdictional discovery, a plaintiff need only make legally sufficient allegations of jurisdiction."  *Mohamad v. Rajoub*, No. 05 Civ. 8335 (LAP), 2008 WL 4444572, at *2 (S.D.N.Y. Sept. 29, 2008).  Navigator's jurisdictional allegations are more than adequate to entitle it to discovery if the Court cannot conclude it has jurisdiction over the Walkers Defendants based upon the current record.

## II.   THE COMPLAINT ADEQUATELY ALLEGES DEMAND FUTILITY

The Walkers Defendants contend that Navigator's derivative claims against them on behalf of the Partnership (Counts VII and IX) should be dismissed because the Complaint fails to allege demand futility.  (Walkers Br. at 28.)  For the reasons set forth in Point III of Navigator's Opposition to Bear Stearns' Motion, Navigator has alleged demand futility with sufficient particularity.

---

[23] Moreover, Wilson-Clarke is a citizen of the United States.

III.    **THE COMPLAINT STATES DERIVATIVE CLAIMS FOR BREACH OF FIDUCIARY DUTY AGAINST LENNON AND WILSON-CLARKE**

The Walkers Defendants seek dismissal of the Derivative claims for breach of fiduciary duty against Lennon and Wilson-Clarke (Count VII) on the grounds that:  (i) the conduct alleged in the Complaint is at most negligence, subject to exculpation clauses in the Master Fund's Articles of Incorporation; and (ii) Navigator's claims are preempted by New York's Martin Act.[24]  (Walkers Br. at 29-34.)  Both of these arguments fail.

A.     **Lennon and Wilson-Clarke's Breaches of Fiduciary Duty Arose From, at Least, Gross Negligence**

The Walkers Defendants' principal argument to dismiss Count VII of the Complaint against Lennon and Wilson-Clarke for breach of fiduciary duty is that the Complaint fails to allege that Lennon and Wilson-Clarke knew of the Management Defendants' mismanagement of the Master Fund.  (Walkers Br. at 30.)  Walkers contends that Lennon and Wilson-Clarke could not have acted grossly negligently, willfully, or in bad faith if, *arguendo*, they were ignorant of the Management Defendants' mismanagement.  (*Id*.)  The Walkers Defendants' arguments fail on a number of grounds.

"The Second Circuit define[s] the standard of gross negligence to be:  indifference to present legal duty and utter forgetfulness of legal obligations, so far as other persons may be affected."

---

[24]  The Walkers Defendants posit a straw-man argument that the Complaint incorrectly alleges that the Walkers Defendants owed fiduciary duties under the Partnership Documents.  (Walkers Br. at 29 n.17.)  Navigator alleges that the Walkers Defendants owed a fiduciary duty by virtue of their appointment as directors and *that it was the scope of their responsibilities that was governed by the duties they undertook pursuant to the Partnership Documents*.  (*See*, *e.g.*, ¶¶ 7; 25; 50; 52-53; 148-149; 174).  Both Delaware and New York law recognize that directors owe a fiduciary duty to shareholders.  *See*, *e.g.*, *Schoon v. Smith*, 953 A.2d 196, 206 (Del. 2008) ("directors owe fiduciary duties of care and loyalty to the corporation and its shareholders.  These duties stem in part from the quasi-trustee and agency relationship directors have to the corporation and stockholders that they serve"); *First Transcable Corp. v. Avalon Pictures, Inc.*, 585 N.Y.S.2d 195, 197 (1st Dep't 1992) (recognizing fiduciary duties owed by directors to shareholders).  The limited partners were *pro rata* owners of interests in the Master Fund through the Partnership, thus the Partnership and its limited partners were owed fiduciary duties.  The Walkers Defendants' assertion that Navigator alleges Lennon and Wilson-Clarke owed obligations under the Investment Advisers Act is similarly misleading.  (Walkers Br. at 29-30 n.17.)  Navigator alleges that the Walkers Defendants were retained by BSAM to nominally comply with the Advisors Act.

*Columbia Pictures Industries, Inc. v. Liberty Cable, Inc.*, 919 F. Supp. 685, 690 (S.D.N.Y. 1996).
*See also Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 993 (S.D.N.Y. 1984) (gross negligence is "the thoughtless disregard of consequences which may ensue from an act, and an indifference to the rights of others").  The Complaint's allegations that Lennon and Wilson-Clarke were totally indifferent to their duties state a claim for breach of fiduciary duty.

As a threshold matter, the Walker Defendants defeat their own argument by citing allegations in the Complaint that actually demonstrate that Lennon and Wilson-Clarke knew of the Management Defendants' mismanagement.  (*See* Walkers Br. at 29-30, citing ¶¶ 306, 187, 199.) These paragraphs allege, among other things, that Lennon and Wilson-Clarke approved Principal Trades with the knowledge that the approval requests from the Management Defendants were incomplete or were sought retroactively.  (*See* ¶ 187 ("even where approvals were obtained … the Management Defendants did not provide enough information for the Independent Directors to meaningfully analyze the proposed transaction"); ¶ 199 (Lennon and Wilson-Clarke "approved at least 165 related-party transactions where the approval request was incomplete or submitted after the transaction"); ¶ 306 (they "approved at least 165 related-party transactions where the approval request was incomplete or was submitted after the transaction was already completed").)  These allegations demonstrate not only that Lennon and Wilson-Clarke knew that the Management Defendants were violating the terms of the PPM, but also evince a wholesale indifference to their duties.  This, alone, demonstrates Lennon and Wilson-Clarke's willful and patent disregard for their obligations under the Partnership Documents.

Moreover, the Complaint specifically alleges that Lennon and Wilson-Clarke breached their fiduciary duties "by, willfully, in bad faith, and/or acting with gross negligence, among other things: (i) failing to meaningfully supervise and oversee the Management Defendants' activities with

respect to the Master Fund (¶¶ 50-53); (ii) abdicating their authority over the Master Fund's operations to the Management Defendants (¶¶ 187-88, 196, 199); (iii) enabling the Management Defendants to manage the Master Fund in a manner inconsistent with the best interests of the Partnership (¶¶ Id, 312-17); (iv) failing to cause the Management Defendants to obtain the necessary approvals for related-party transactions; and (v) failing … to review and approve all related-party transactions." (¶¶ *Id.*, 306, 309-10, 431.) The fact that Lennon and Wilson-Clarke failed to even attempt to carry out the basic responsibilities entrusted to them was grossly negligent. (¶ 309.) *See Columbia Pictures Indus., Inc. v. Liberty Cable, Inc.*, 919 F. Supp. 685, 690 (S.D.N.Y. 1996) (indifference to legal duties is grossly negligent).

### B.     Lennon and Wilson-Clarke's Breaches of Fiduciary Duty Are Not Exculpated

The Walkers Defendants acknowledge they are not exculpated for conduct evincing "bad faith, gross negligence or willful misconduct." (Walkers Br. at 32.) As demonstrated above, the Complaint more than sufficiently alleges that Lennon and Wilson-Clarke's wholesale failure to perform their fiduciary duties sounds in willfulness, gross negligence and bad faith. The cases upon which the Walkers Defendants rely do not rebut the Complaint's allegations of gross negligence, willfulness and bad faith. (Walkers Br. at 33-34.) Rather, those authorities stand only for the uncontroversial proposition that conclusory allegations are insufficient. *See Teachers' Retirement Sys. v. Welch*, 664 N.Y.S.2d 38 (1st Dep't 1997) (finding without discussion that allegations beyond mere negligence were conclusory); *Bildstein v. Atwater*, 635 N.Y.S.2d 88 (2d Dep't 1995) (same); *Lemoine v. Cornell University*, 769 N.Y.S.2d 313 (3rd Dep't 2003) (same).

For the reasons discussed herein and set forth in Point V.B. of Navigator's Opposition to the Bear Stearns Defendants' Motion, Lennon and Wilson-Clarke's breaches of fiduciary duty are not exculpated.

### C.     The Complaint's Breach of Fiduciary Duties Claims Against the Walkers Defendants Are Not Preempted by the Martin Act

The Walkers Defendants also contend that the Complaint's derivative claim against them for breach of fiduciary against Lennon and Wilson-Clarke (Count VII) is preempted by New York's Martin Act.  (Walkers Br. at 34.)  For the reasons set forth in Point V.A. of Navigator's Opposition to the Bear Stearns Defendants' Motion, Navigator's claims are not preempted. [25]

## IV.    THE COMPLAINT ADEQUATELY ALLEGES AIDING AND ABETTING CLAIMS AGAINST THE WALKER DEFENDANTS

As a threshold matter, the Walkers Defendants argue that the Complaint's aiding and abetting breaches of fiduciary duty claims are insufficiently particularized because they purportedly attribute to Lennon and Wilson-Clarke's conduct that occurred before they became the unaffiliated Master Fund directors in August 2006.  (Walkers Br. at 35-36.)  The Complaint, however, contains temporal allegations with respect to the beginning date of the conduct of Lennon and Wilson-Clarke that are plain (¶¶ 42-43) ("Beginning in or about August 2006"); (¶ 198) ("on or about the date of the 2006 PPM"), and Navigator does not seek to hold them liable for the related misconduct of their predecessors.

### A.     The Complaint Adequately Alleges the Walkers Defendants' Actual Knowledge of the Management Defendants' Primary Violations

The Walker Defendants incorrectly conflate the Complaint's aiding and abetting breach of fiduciary duty claims against them (Counts IV and IX) with its aiding and abetting fraud claims (Count V) in an attempt to subject the fiduciary duty claims to the heightened pleading standards of Fed. R. Civ. P. 9(b).  (Walkers Br. at 38).  The Complaint's aiding and abetting breach of fiduciary duty claims against the Walkers Defendants do not sound in fraud.  Instead, these claims are based

---

[25]  In a footnote, the Walkers Defendants suggest that the Complaint's breach of fiduciary duty in Count VII claim fails under Cayman Islands law.  The Walkers Defendants, however, do not contend that Cayman Islands' law applies.  (Walkers Br. 29 n.16.)

upon the Walker Defendants' grossly negligent failure to monitor the Master Fund's operations or review the Principal Trades.  (¶¶ 396, 446.)  Thus, the more liberal pleading standards of Fed. R. Civ. P. 8 apply to the Complaint's aiding and abetting breach of fiduciary duty claims stated in Counts IV and IX.[26]

Indeed, courts in this district have specifically held that breaches of fiduciary duty claims against directors and officers alleged to have caused a company to enter into unfavorable transactions for their own enrichment are subject only to the pleading requirements of Fed. R. Civ. P. 8.  *See*, *e.g.*, *Rahl v. Bande*, 328 B.R. 387, 413 (Bankr. S.D.N.Y. 2005)  (allegations D&O defendants breached fiduciary duties by deepening company's insolvency to enhance personal wealth and causing company to enter into unfavorable transactions need only comply with Fed. R. Civ. P. 8(a)).[27]  The Walkers Defendants' cases are not to the contrary.

The Walkers Defendants also incorrectly contend that the Complaint fails to plead that they had "actual knowledge" of the Management Defendants' underlying breaches of fiduciary duty in connection with Counts IV and IX.  (Walkers Br. at 38-39.)  The Complaint, however, specifically alleges, among other things, that:  (i) "the Management Defendants breached their fiduciary and contractual duties … with the knowing participation of … the Director Defendants, and Walkers" (¶ 25); (ii) the Management Defendants "knowingly entered into numerous impermissible transactions that were not at arm's-length and that [Lennon and Wilson-Clarke] knew that they were responsible

---

[26]  *See Henneberry v. Sumitomo Corp. of America*, 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007) ("Rule 9(b)'s heightened requirements do not apply to a breach of 'fiduciary obligations to act in the best interest of [a] Company and its shareholders', in which case the more liberal pleading requirements of Rule 8 apply").

[27]  The cases upon which the Walker Defendants rely (Walkers Br. at 38-39) stand only for the proposition that aiding and abetting breach of fiduciary duty claims that sound in fraud are subject to heightened pleading.  *See In re Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) (claim for aiding and abetting breach of fiduciary duties predicated on alleged "false omissions and representations to deceive" were subject to Rule 9(b) where plaintiff failed to address argument that claims sounded in fraud); *In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231, 259 (Bankr. S.D.N.Y. 2008) (all claims in case subject to Rule 9(b) given "overarching nature of the fraud theory").

for approving such transactions, but failed to do so" (¶ 192); and (iii) the Walkers Defendants "had actual knowledge of the breaches of fiduciary duties" (¶ 395).  Moreover, as discussed in Section III.A., *supra*, Lennon and Wilson-Clarke knew that the Management Defendants failed to seek the required prior approval for numerous related-party transactions and, in other cases, sought such approval retroactively.  (¶ 196.)  The Complaint sufficiently alleges actual knowledge of the underlying breaches of fiduciary duties -- particularly under Fed. R. Civ. P. 8's liberal pleading requirement, which necessitates only a short plain statement showing entitlement to relief.

The Complaint also adequately alleges that the Walkers Defendants had "actual knowledge" of the Management Defendants' underlying fraud in connection with Count V.  (¶¶ 407-08.)  "The knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud."  *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005).  The Complaint also alleges that the Walkers Defendants knowingly participated in misstatements to investors in monthly reports, financial statements and telephone conferences.  (¶ 16.)  *See Williams v. Sidley Austin Brown & Wood, L.L.P.*, 832 N.Y.S.2d 9, 11 (1st Dep't 2007) (aiding and abetting fraud was sufficiently supported by allegations, *inter alia*, that defendant had actual knowledge that opinion letters contained false representations).

Scienter for purposes of an aiding and abetting fraud claim can be pleaded by alleging "sufficient facts to support a 'strong inference' of fraudulent intent."  *ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308, 1331 (S.D.N.Y. 1997).  This can be accomplished by alleging facts showing motive for participating in a fraudulent scheme and a clear opportunity to do so or by identifying circumstances indicative of conscious misbehavior.  *See id*. Here the Complaint alleges that the Walkers Defendants enjoyed a lucrative business relationship with BSAM -- including providing services to at least nine BSAM hedge funds -- and that Lennon

and Wilson-Clarke failed to reject a single Principal Trade for fear of upsetting the relationship.

(¶¶ 198-99.)  The Complaint also alleges that Lennon and Wilson-Clarke knew they were appointed

because the prior "independent" directors had failed adequately to review Principal Trade (¶¶ 304-

06), but this heightened awareness did not heighten Lennon and Wilson-Clarke's vigilance.  Instead,

they also failed to review Principal Trades or approved trades based on incomplete or untimely

requests (¶¶ 187, 199, 306).  Coupled with Navigator's allegations that the Walkers Defendants had

actual knowledge of the Management Defendants' fraud and participated in misstatements, these

allegations sufficiently show motive, opportunity, and conscious behavior sufficient to raise the

requisite inference of scienter.

### B. The Complaint Adequately Alleges Specific Conduct by the Walkers Defendants

The Walkers Defendants incorrectly assert that the Complaint's claims for aiding and

abetting breach of fiduciary duty (Count IV and IX) and aiding and abetting fraud (Count V) claims

against them must be dismissed because the Complaint purportedly fails to plead underlying

breaches of fiduciary duty (Counts I and VI) and/or fraud (Count III) claims against the

Management Defendants.  (Walkers Br. at 41.)  For the reasons set forth in Points I, II, III and VII

of Navigator's Opposition to the Bear Stearns Defendants' Motion, the Complaint adequately

pleads each of these underlying claims.

The Walker Defendants protest that Navigator fails sufficiently to plead the time period

covering the Walker Defendants' actual knowledge of the Management Defendants' wrongful

conduct.  (Walkers Br. at 41-42.)  The Complaint concretely alleges that the Walker Defendants'

involvement commenced in August 2006 when Lennon and Wilson-Clarke were appointed as the

"independent" outside directors of the Master Fund in the PPM.[28]  Because the Complaint alleges

specific wrongful conduct by the Walkers Defendants consisting of failing to perform their

obligations to review Principal Trades -- a duty belonging to Lennon and Wilson-Clarke alone -- the

cases cited by the Walkers Defendants regarding particularized allegations have little relevance and

do not support dismissal.  *See Mooney v. Vitolo*, 301 F. Supp. 198, 201 (S.D.N.Y. 1969) (allegations

lumping together directors during a series of dates concerning several acts was insufficiently

specific); *In re AlphaStar*, 383 B.R. at 271 (complaint violated group pleading rule where it alleged

an ongoing cover-up against six directors that joined and left the corporation at different times

during the 4 year cover-up); *Pension Committee of University of Montreal Pension Plan v. Banc of*

*America Securities, LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) (allegations insufficient where

plaintiff failed to allege specific time of misstatements that coincided with directors' service).

### C.       The Complaint Adequately Alleges Proximate Causation

"New York law provides that proximate causation is present where it was reasonably

foreseeable that the damage incurred would follow from the wrongful act."  *In re Allou Distributors,*

*Inc.*, 395 B.R. 246, 296 (Bankr. E.D.N.Y. 2008).

As alleged repeatedly and throughout the Complaint, under the Investment Advisers Act and

the Partnership Documents, the Management Defendants were prohibited from causing the Master

Fund to enter into Principal Trades with Bear Stearns without obtaining the Independent Directors'

prior approval.  (¶ 413.)  The Independent Director approval process was intended to prevent the

Management Defendants from harming the Master Fund and the Partnership through transactions

fraught with conflicts of interest that enriched the Management Defendants to the detriment of the

Master Fund, the Partnership and Limited Partners.  (¶¶ 147, 149.)  In August 2006, when Lennon

---

[28]  *See, e.g.*, ¶¶ 42-43 ("Beginning in or about August 2006"); ¶ 181 ("by the date of the August 2006 PPM); ¶ 197 ("on or about the date of the 2006 PPM").

and Wilson-Clarke were appointed as the sole unaffiliated directors tasked with reviewing Principal Trades, they knew that the previous unaffiliated directors had failed to adequately review Principal Trades.  (¶¶ 42-43, 304.)

Lennon and Wilson-Clarke completely abdicated their duties to review Principal Trades and to supervise the Master Fund's operations.  (¶ 309.)  Among other things, Lennon and Wilson-Clarke approved at least 165 Principal Trades without meaningful review and failed to reject a single transaction during their tenure.  (¶¶199, 306.)  The Complaint adequately alleges facts demonstrating that the injuries to Limited Partners and the Partnership were a direct or, at least, reasonably foreseeable result of Lennon and Wilson-Clarke's failure to review and approve Principal Trades as required by the Partnership Documents and Investment Advisors Act -- the very reason for which they were appointed.  (¶ 198.)  *See In re Allou*, 395 B.R. at 296.

## V.   THE COMPLAINT STATES CLAIMS AGAINST WALKERS

Walkers contends that the Complaint fails to allege any misconduct that Walkers committed that could serve as the basis for the Complaint's claims against Walkers for aiding and abetting the Management Defendants' breaches of fiduciary duties (Counts IV and IX), or aiding and abetting the Management Defendants' fraud.  (Walkers Br. at 48).  Rather, Walkers argues that each of the Complaint's claims against it is premised on a theory of *respondeat superior*, or vicarious liability, which cannot ground a cause of action against Walkers.  These arguments ignore numerous of the Complaint's allegations.[29]

---

[29]  Walkers suggests that Cayman Islands law should apply to all the Complaint's claims against Walkers because Walkers is a Cayman Islands Company with no offices in New York, that provided directors Lennon and Wilson-Clarke to Cayman Islands funds including the Master Fund, and the conduct triggering Walker's liability allegedly occurred in the Cayman Islands.  (Walkers Br. at 45 n.32.)  But, as discussed in Point I.D.2, *supra*, under New York's choice of law rules, the law of the forum that was the situs of the injury applies.  Here the situs of Walkers' actionable conduct is New York.  The 'first effect' of the torts was felt by the Master Fund in New York and, as Judge Lifland noted, the Master Fund never had any genuine substantive connection to the Cayman Islands.  *See In re Bear Stearns High-Grade*, 374 B.R. at 129.

### A.      The Complaint States Claims for Aiding and Abetting Breach of Fiduciary Duty Against Walkers

Count IV of the Complaint alleges that "Walkers had actual knowledge of the breaches of fiduciary duties" and "substantially assisted … in those breaches." (¶ 395.)  Specifically, the Complaint alleges that Walkers was retained on behalf of the Partnership and paid to provide services to the Master Fund, including directors it knew were responsible for reviewing Principal Trades. (¶¶ 304-17, 399.)  The Complaint further alleges that Walkers completely failed to monitor Lennon and Wilson-Clarke to ensure they were performing the review functions central to the Master Fund's investment activities. (¶ 401.)  Finally, the Complaint alleges that Walkers "participated in and facilitated the Management Defendants' breaches of fiduciary duty by failing to supervise Lennon and Wilson-Clarke." (*Id.*)  Each of these allegations addresses Walker's *own* conduct in connection with the mismanagement and self-dealing that shut the Master Fund and the Partnership down.  Walkers' failure to supervise Lennon and Wilson-Clarke's vital activities enabled the Management Defendants to systematically engage in harmful evaluated Principal Trades.  This same misconduct by Walkers underlies each of the Complaint's claims against it. (¶¶ 399-401, 412-414.)

### B.      Vicarious Liability Claims Against Walkers Are Not Foreclosed

Even assuming, *arguendo*, that the Complaint's claims against Walkers' were based on vicarious liability for the conduct of Lennon and Wilson-Clarke, which they are not, Walker's reliance on *Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) to absolve itself of vicarious liability is misplaced. (Walkers Br. at 47-48.)  *Global Crossing* only stands for the proposition that an ordinary corporate shareholder does not become a fiduciary of another corporation by placing a designated employee on the corporation's board.  *See id.* at *20.  Moreover, in *Global Crossing* the defendant was not retained

and compensated by the corporation to provide its employees to act as board members.  Here BSAM directly retained Walkers, not Lennon and Wilson-Clark.  (¶¶ 304, 399, 442, 449.)  The circumstances here, where Walkers earned fees for placing professional directors at the Master Fund, do not implicate concerns that vicarious liability would create a reluctance among corporations to seek board representation.  *See id.*, at *21 ("the notion that a stockholder could become a fiduciary by attribution ( ) would . . . give investors in a corporation reason for second thoughts about seeking representation on the corporation's board of directors").

At bottom, Navigator has alleged colorable claims against Walkers and *Global Crossing* instructs that the Court should carefully consider the plausibility of such claims:

> at pleadings stage, the Court's function is not to evaluate the specific facts alleged to determine whether they are alone sufficient to support judgment for the plaintiff; it is only to determine whether the complaint provides the defendant with fair notice of what the plaintiff's claims are, the grounds upon which they rely, and makes it plausible that the plaintiff will develop, through discovery, a factual record that could support relief.

*Id.*, at *19.

## CONCLUSION

For the reasons set forth herein, Navigator respectfully requests the Court deny the Walker

Defendants' motion to dismiss in its entirety.

Dated:  December 3, 2008

By: _____/s/_____

    Andrew J. Entwistle
    Vincent R. Cappucci
    Stephen D. Oestreich
    Johnston de F. Whitman, Jr.
    Jonathan H. Beemer
    Joshua K. Porter
    **ENTWISTLE & CAPPUCCI LLP**
    280 Park Avenue, 26th Floor West
    New York, New York 10017
    Telephone:  (212) 894-7200
    Facsimile:  (212) 894-7272

    Douglas R. Hirsch
    **SADIS & GOLDBERG LLP**
    551 Fifth Avenue, 21st Floor
    New York, New York 10176
    Telephone:  (212) 947-3793
    Facsimile:  (212) 947-3796

    *Attorneys for Plaintiff and the Class*