UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAVIGATOR CAPITAL PARTNERS L.P., on behalf of itself and others similarly situated,<br><br>       Plaintiff,<br><br>   -against-<br><br>BEAR STEARNS ASSET MANAGEMENT INC., ET AL.,<br><br>       Defendants,<br><br>    -and-<br><br>BEAR STEARNS HIGH-GRADE STRUCTURED CREDIT STRATEGIES, L.P.,<br><br>       Nominal Defendant. | No 07 Civ. 07783 (AKH)<br>ECF Case |
| GEOFFREY VARGA and WILLIAM CLEGHORN, ET AL,<br><br>       Plaintiff,<br><br>   -against-<br><br>BEAR STEARNS ASSET MANAGEMENT INC., ET AL,<br><br>       Defendants,<br><br>    -and-<br><br>THE BEAR STEARNS COMPANIES, INC., ET AL.,<br><br>       Nominal Defendant. | No. 08 Civ. 03397 (AKH) |

## DEFENDANTS WALKERS FS, SCOTT LENNON AND MICHELLE WILSON-CLARKE'S COMBINED MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
(212) 504-6000

*Attorneys for Defendants Walkers Fund Services Limited, Scott Lennon and Michelle Wilson-Clarke*

Dated:  December 19, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ..........................................................................................................................5

POINT I      PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISCONDUCT BY THE WALKERS DEFENDANTS................................................................5

        A.     The Amended Complaints Sound in Fraud.................................................5

        B.     Plaintiffs Fail To State A Claim For Aiding and Abetting Fraud and Aiding and Abetting Breach of Fiduciary.............................................9

              1.     Plaintiffs Fail To Plead Actual Knowledge ...................................11

              2.     Plaintiffs Fail To Plead Substantial Assistance ............................14

        C.     Plaintiffs Fail To State A Claim for Unjust Enrichment............................15

POINT II     PLAINTIFFS' BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING FRAUD, AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIMS AGAINST WALKERS FS MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM ...........................17

POINT III    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PRECLUDED BY THE FUND GOVERNING DOCUMENTS AND ARE PREEMPTED BY THE MARTIN ACT................................................................................................20

        A.     Plaintiffs Fail to Plead Gross Negligence ..................................................20

        B.     Plaintiffs Claims Are Preempted by the Martin Act...................................23

POINT IV    THE WALKERS DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION .......................................................................................23

        A.     The Walkers Defendants Do Not Do Business in New York....................24

        B.     The Walkers Defendants Did Not Transact Business In New York..........26

              1.     Lennon And Wilson-Clarke Did Not Transact Business In New York.........................................................................................26

              2.     Lennon And Wilson-Clarke Were Not Agents Of Walkers FS For Purposes Of Jurisdiction. ...........................................28

              3.     The Alleged "Connections" Between The Various Walkers Entities Does Not Subject Walkers FS To Specific Jurisdiction.......................................................................................30

              4.     The Walkers Defendants Did Not Contract To Provide Services In New York ...............................................................32

C.    The Walkers Defendants Did Not Commit a Tortious Act Outside
New York That Caused Injuries in New York...........................................33

POINT V    PLAINTIFFS LACK STANDING TO PURSUE DERIVATE CLAIMS ...........35

CONCLUSION.......................................................................................................................35

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

Aboud v. Rapid Rentals, Inc.,
No. 97 Civ. 1742, 1998 WL 132790 (S.D.N.Y. Feb. 2, 2006) ................................................31

Acito v. IMCERA Group, Inc.,
47 F.3d 47 (2d Cir. 1995) ......................................................................................................12

Allojet PLC v. Vantage Assocs.,
No. 04 Civ. 05223, 2005 WL 612848 (S.D.N.Y. March 15, 2005)........................................25

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
171 F.3d 779 (2d Cir. 1999)........................................................................................27, 32, 34

Bell Atlantic Corp. v. Twombly,
127 S. Ct. 1955 (2007)...........................................................................................2, 7, 12, 15

Best Van Lines, Inc. v. Walker,
490 F.3d 239 (2d Cir. 2007)..................................................................................................2, 6

Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.,
No. 05 Civ. 9994, 2007 WL 747807 (S.D.N.Y. March 9, 2007)...................................... 28-29

Bildstein v. Atwater,
222 A.D.2d 545 (2d Dep't 1995) ...........................................................................................22

Burke v. Spear,
277 F.2d 1 (2d Cir.1960).......................................................................................................20

Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.,
81 N.Y.2d 821 (1993) ...................................................................................................... 20-21

Cromer Fin. Ltd. v. Berger,
137 F. Supp. 2d 452 (S.D.N.Y. 2001)....................................................................................27

Cruse v. Equitable Sec. of New York, Inc.,
678 F. Supp. 1023 (S.D.N.Y. 1987)........................................................................................8

Curley v. AMR Corp.,
153 F.3d 5 (2d Cir. 1998) .......................................................................................................20

Fezzani v. Bear, Stearns & Co. Inc.,
No. 99 Civ. 0793, 2008 WL 4369719 (Sept. 23, 2008)..........................................................15

**PAGE(S)**

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007)...............................................................11, 14

Gabriel Capital v. Natwest Finance, Inc.,
  94 F. Supp. 2d 491 (S.D.N.Y. 2006).......................................................................14

Global Crossing Estate Representative v. Winnick,
  No. 04 Civ. 2558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ............................18

Globis Partners, L.P. v. Plumtree Software, Inc., Civ. No. 1577-VCP, 2007 WL 4292024
  (Del. Ch. Nov. 30, 2007)..........................................................................................22

Granite Partners, L.P. v. Bear, Stearns & Co.,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998)...............................................................15, 16

Henneberry v. Sumitomo Corp. of America,
  532 F. Supp. 2d 523 (S.D.N.Y. 2007)................................................................. 9-10

In re Adelphia C'ns Corp. Sec. and Derivative Litig,
  No. 03 MD 1529, 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)  ................... 12-13

In re Doral Fin. Corp. Sec. Litig.,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008)......................................................................13

In re Global Crossing, Ltd. Sec. Litig.,
  No. 02 Civ. 0910, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005) ....................... 18-19

In re Global Crossing, Ltd. Secs. Litig.,
  No. 02 Civ. 0910, 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005) ................... 18-19, 29

In re Initial Public Offering Secs. Litig.,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003)...............................................................2, 7, 9

In re J. P. Morgan Chase Sec. Litig.,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)......................................................................13

In re Parmalat Sec. Litig.,
  501 F. Supp. 2d 560 (S.D.N.Y. 2007)...............................................................6, 19, 29

In re Sumitomo Copper Litig.,
  120 F. Supp. 2d 328 (S.D.N.Y. 2000)......................................................................30

In re Ultrafem Sec. Litig.,
  91 F. Supp. 2d 678 (S.D.N.Y. 2000).....................................................................2,10

Ivoclar Vivodent, Inc. v. Ultident, Inc.,
  No. 04-cv-0984, 2005 WL 1421805 (W.D.N.Y. June 15, 2005)............................34

**PAGE(S)**

Jaisan, Inc. v. Sullivan,
    No. 96 Civ. 4336, 1997 WL 86402  (S.D.N.Y. Feb. 28, 1997) ...............................................32

JPMorgan Chase Bank v. Winnick,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005)........................................................................................11

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001)........................................................................................................12

Karabu Corp. v. Gitner,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998).........................................................................................30

Kolbeck v. LIT Am., Inc.,
    939 F. Supp. 240 (S.D.N.Y. 1996).............................................................................................11

Kraus v. Forex Exchange Mkt., Inc.
    356 F. Supp. 2d 332 (S.D.N.Y. 2005)...........................................................................5, 7, 10-11

Ladmen Partners, Inc. v. Globalstar, Inc.,
    No. 07 Civ. 0976, WL 4449280 ( S.D.N.Y. Sept. 30, 2008) .....................................................5

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
    918 F.2d 1039 (2d Cir. 1990).............................................................................................. 24-26

Law Debenture v. Maverick Tube Corp.,
    No. 06 Civ. 14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) .........................................25

Lemoine v. Cornell Univ.,
    2 A.D.3d 1017 (3d Dep't 2003) ................................................................................................22

Lerner v. Fleet Bank, N.A.,
    459 F.3d 273 (2d Cir. 2006).......................................................................................................11

Louros v. Cyr,
    175 F. Supp. 2d 497 (S.D.N.Y. 2001).......................................................................................30

Maersk v. Neewra,
    554 F. Supp. 2d 424 (S.D.N.Y. 2008).......................................................................................30

Mayes v. Leipziger,
    674 F.2d 178 (2d Cir. 1982).......................................................................................................27

Matsumura v. Benihana Nat'l Corp.,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008).........................................................................5, 9-10, 12

**PAGE(S)**

Mayatextil v. Liztex,
  No. 92 Civ. 4528, 1995 WL 131774 (S.D.N.Y. Mar. 23, 1995) ...................................... 31-32

Midland Grange No. 27 Patrons of Husbandry v. Walls,
  No. 2155-VCN, 2008 WL 616239 (Del. Ch. Feb. 28, 2008).................................................21

Mina Inv. Holdings Ltd v. Jerkewitz,
  51 F. Supp. 2d 486 (S.D.N.Y. 1999)..................................................................................16

O'Brien v. National Prop. Analysts Partners,
  719 F. Supp. 222 (S.D.N.Y. 1989)................................................................................2, 12

Paget-Brown Co. Ltd v. Omni Sec. Ltd.,
  [1999] C.I.L.R. 184, 193 [Cayman Islands Court of Appeal] .................................................18

Parke-Bernet Galleries v. Franklyn,
  26 N.Y.2d 13 (1970) ....................................................................................................28

Pension Comm. of Univ. of Montreal v. Banc of Am. Sec., LLC,
  446 F. Supp. 2d, 163 (S.D.N.Y. 2006).........................................................................9, 11, 22

Pension Comm. of the Univ. of Montreal v. Banc of Am. Sec., LLC,
  No. 05 Civ. 9016, 2007 WL 528703 (Feb. 20, 2007) ............................................................14

Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC,
  317 F. Supp. 2d 301 (S.D.N.Y. 2003)..................................................................................15

Rombach v. Chang
  355 F.3d 164 (2d Cir. 2004)..............................................................................................5

Scholastic, Inc. v. Stouffer,
  No. 99 civ 11480, 2000 WL 1154252 (S.D.N.Y. Aug. 14, 2000) ...........................................30

Self Int'l HK Ltd. v. LaSalle Nat'l Bank, Chicago,
  No. 01 Civ. 4291, 2002 WL 500372 (S.D.N.Y. March 29, 2002)...........................................32

Sobek v. Quattrochi,
  No. 03 Civ. 10219, 2004 WL 2809989 (S.D.N.Y. Dec. 8, 2005)..............................................2

Teacher's Ret. Sys. of Louisiana v. Welch,
  244 A.D.2d 231 (1st Dep't 1997) ......................................................................................22

Thomas Lee Equity Fund V, L.P. v. Grant Thornton LLP,
  No. 07 Civ. 8663, 2008 WL 3166536 (S.D.N.Y. Aug. 6, 2008) .......................................12, 14

Traub v. Robertson American Corp.,
  368 N.Y.S.2d 958 (1975)................................................................................................29

**PAGE(S)**

U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.,
    152 F. Supp. 2d 443 (S.D.N.Y. 2001)........................................................................8

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
    751 F.2d 117 (2d Cir. 1984)..............................................................................31

Williams & Sons Erectors, Inc. v. South Carolina Steel Corp.,
    983 F.2d 1176 (2d Cir. 1993)......................................................................... 20-21

**STATUTES & OTHER AUTHORITIES:**

N.Y.C.P.L.R. § 302.......................................................................................................28

Defendants Scott Lennon ("Lennon"), Michelle Wilson-Clarke ("Wilson-Clarke") and their employer Walkers Fund Services Limited ("Walkers FS") (collectively the "Walkers Defendants"), respectfully submit this combined memorandum of law in further support of their Motions to Dismiss the Varga and Navigator Amended Complaints pursuant to Federal Rules of Civil Procedure 12(b)(1),(2), (6) and 9(b).[1]

## PRELIMINARY STATEMENT

The Varga Plaintiffs' and Navigator Plaintiff's (collectively "Plaintiffs") Responses to the Walkers Defendants' Combined Motion to Dismiss ("Varga Br." and "Nav. Br.," respectively and collectively the "Plaintiffs' Oppositions") confirm that the Navigator and Varga amended complaints (collectively the "Amended Complaints") must be dismissed with prejudice. As detailed in the Walkers Defendants' Opening Brief ("Walkers Br."), the Court lacks personal jurisdiction over the Walkers Defendants. Moreover, the Amended Complaints – only a fraction of which even address the Walkers Defendants' alleged one year involvement in the other defendants' purportedly multi-year scheme – fail to state a claim against any of the Walkers Defendants. Despite the Varga Plaintiffs' 639 paragraphs of allegations and 75 pages of opposition brief, and the Navigator Plaintiff's 454 paragraphs of allegations and 36 pages of opposition brief, the Plaintiffs have not articulated a claim against the Walkers Defendants with the specificity required by the Federal Rules of Civil Procedure. This is because they cannot.

Contrary to Plaintiffs' repeated assertions, the Amended Complaints, including the claims against the Walkers Defendants, plainly sound in fraud and thus all of their claims - including breach of fiduciary duty, aiding and abetting and unjust enrichment - are subject to the heightened pleading requirements of Rule 9(b). The vague and repetitive allegations in the

---

[1] Defined terms used herein have the same meaning as in the Opening Brief.

Amended Complaints simply do not contain the requisite "who, what, where, when, and how" that Rule 9(b) requires.  See In re Initial Public Offering Secs. Litig. ("IPO"), 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003).  Even if Rule 9(b) did not apply, the Amended Complaints – which substitute volume and repetition for substance – simply fail to "nudge[] [Plaintiffs'] claims across the line from conceivable to plausible."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (citations, internal quotation marks and footnote omitted).  Therefore, dismissal is required even under the less demanding standards imposed by Rule 8(a).

In addition, Plaintiffs' Oppositions ignore applicable precedent, misstate the law and rely on allegations not found in the Amended Complaints in a misguided effort to maintain claims against the Walkers Defendants.[2]  Moreover, Plaintiffs fail to refute, and in many cases are forced to concede, the Walkers Defendants' arguments.  Each of Plaintiffs' claims should be dismissed for the following reasons:

First, Plaintiffs' aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims fail to comply with the particularity requirements of Rule 9(b).  Plaintiffs have fundamentally failed to specifically allege any element of their claims including:

- *a primary wrong;*

- *which specific transactions were improperly or untimely approved;*

- *how the transactions were allegedly "toxic," when the transactions occurred, who was involved or how the information the Walkers Defendants purportedly received was insufficient or untimely;*

---

[2]   Apparently recognizing the deficiencies in their Amended Complaints, Varga and Navigator both attempt to add new allegations not found in their Amended Complaints.  The Court need not credit these new allegations as "[a]dditional facts submitted in a plaintiff's opposition to a motion to dismiss cannot be considered by the Court."  Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989, at *5 (S.D.N.Y. Dec. 8, 2005).  See also O'Brien v. National Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

- *that the Walkers Defendants had actual knowledge or should have or could have known of the defendants' alleged fraudulent conduct;*

- *how the Walkers Defendants obtained any such knowledge;*

- *that the Walkers Defendants provided substantial assistance to the other defendants in the allegedly fraudulent scheme;*

- *that the Walkers Defendants benefited from any such participation;*

- *the Walkers Defendants' knowledge of the Funds' actual financial condition during the relevant time period;*

- *how the Walkers Defendants obtained any such knowledge;*

- *that the Walkers Defendants had scienter;*

- *that the Walkers Defendants had a motive to participate in the alleged scheme; or*

- *that any alleged injury was foreseeable to the Walkers Defendants. (See Point I.A.)*

Second, Plaintiffs' claims against Walkers FS separately fail as a matter of law. The sparse allegations that Walkers FS knew of Lennon and Wilson-Clarke's purported misconduct are insufficient to establish liability for aiding and abetting and the Varga Plaintiffs' claim that Walkers FS is vicariously liable because Lennon and Wilson-Clarke were acting as the agents of Walkers FS in their capacity as directors of the Funds also fails as a matter of law. (See Point I.B.)

Third, the Varga Plaintiffs have failed to state a claim for unjust enrichment because they failed to allege how the Walkers Defendants were enriched at Plaintiffs' expense. (See Point I.C.)

Fourth, Plaintiffs have failed to state claims against Walkers FS because they have not established that Walkers FS is liable – vicariously or otherwise - for the alleged actions of Lennon and Wilson-Clarke.  (See Point II.)

Fifth, Plaintiffs' breach of fiduciary duty claims are based on the Walkers Defendants' alleged negligence and are therefore precluded by the Fund governing documents. Moreover, these claims are preempted by the Martin Act.  (See Point III.)

Sixth, this Court lacks personal jurisdiction over any of the Walkers Defendants. (See Point IV.)

Finally, Plaintiffs lack standing to pursue their derivative claims because of their failure to make a demand.  (See Point V.)

For all of these reasons, as well as those set forth in the Walkers Defendants' Opening Brief, and the arguments set forth in The Bear Stearns' Defendants' Memorandum of Law In Support Of Their Motion To Dismiss The Complaints in Navigator, FIC and Varga (the "Bear Stearns Opening Brief") and Bear Stearns' Reply Memorandum of Law (the "Bear Stearns Navigator Reply" and the "Bear Stearns Varga Reply"), which the Walkers Defendants incorporate by reference, the Amended Complaints should be dismissed with prejudice.

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISCONDUCT BY THE WALKERS DEFENDANTS

**A.    The Amended Complaints Sound in Fraud**

The Walkers Defendants' Opening Brief established that claims asserted by the Plaintiffs against the Walkers Defendants are all subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure[3] because all of them incorporate allegations of fraudulent conduct and therefore "sound in fraud," regardless of whether fraud is an element of each particular claim.  Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (noting that the wording of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud.").  "The ultimate question is whether, at its core, the complaint is predicated on allegations of fraudulent conduct."  Ladmen Partners, Inc. v. Globalstar, Inc., No. 07 Civ. 0976, 2008 WL 4449280, Slip Op at * 11 ( S.D.N.Y. Sept. 30, 2008).  Because allegations of fraudulent conduct permeate both Amended Complaints and are specifically incorporated into the claims asserted against the Walkers Defendants, these claims are all subject to the heightened pleading requirements of Rule 9(b). See In re Ultrafem Sec. Litig., 91 F. Supp. 2d 678, 690 (S.D.N.Y. 2000) (applying Rule 9(b) where "plaintiffs [made] little, if any, effort to differentiate their asserted negligence claims from the fraud claims which permeate the Complaint."), Kraus v. Forex Exchange Mkt., Inc. 356 F. Supp. 2d 332, 339 n. 49 (S.D.N.Y.

---

[3] Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008).  Rule 9(b) is satisfied only if the complaint sets forth: (1) precisely what statements were made in what documents or what omissions were made, (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making same), (3) the content of the statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.  Id.

2005) (applying Rule 9(b) when, <u>inter alia</u>, the plaintiff's breach of fiduciary duty claim incorporated all of plaintiffs' fraud allegations), <u>In re Parmalat Sec. Litig.</u>, 501 F. Supp. 2d 560, 573 (S.D.N.Y. 2007) (applying Rule 9(b) to breach of fiduciary duty claim).

Contrary to the Navigator Plaintiff's contention (Nav. Br. at 28), there can be no doubt that their complaint sounds in fraud in its entirety. The Navigator Complaint ("Nav. Compl.") is riddled with allegations of fraud throughout.  (<u>See</u> <u>e.g.</u>, Nav. Compl. ¶¶ 16, 25, 28 173, 406-408, 415-416)  They claim that defendants engaged in a scheme "through which the Partnership invested, as a ready purchaser of overpriced and risky subprime mortgage-backed structured finance securities primarily issued by the Management Defendants" (Nav. Compl. ¶ 2), and purportedly concealed their alleged misconduct by "inflating the Partnership's NAV by assigning phony process and values to illiquid assets." (<u>Id</u>. ¶ 11).   Plainly, Navigator's allegations sound in fraud.   Similarly, the plain language of the Varga Complaint ("Varga Compl.") confirms that it too sounds in fraud in its entirety, and thus Rule 9(b) applies to all of its claims.   Indeed, the introductory paragraphs of the Varga Complaint state the "action seeks recovery of more than $1.5 billion of losses sustained by investors. . . as a result of a sophisticated <u>fraud</u>" and "[t]he Bear Stearns Defendants' <u>fraud</u> resulted in the highly publicized collapse in July 2007." (Varga Compl. ¶¶ 1, 2).   Moreover, with respect to the Walkers Defendants, the Varga Complaint states that "Walkers Fund Services Limited, Scott Lennon and Michelle Wilson-Clarke each materially participated in and facilitated the Bear Stearns Defendants' <u>fraud</u>." (Id. ¶ 4).   Since neither of the Amended Complaints make any effort to distinguish their fraud allegations, and in fact both incorporate all of their preceding factual allegations – including those that describe the purportedly fraudulent scheme at the heart of their claims – into their claims for relief against the Walkers Defendants, Rule 9(b) applies to all of

their claims.  (Nav. Compl. ¶¶ 391, 404, 427, 441, Varga Compl. ¶¶ 617, 623, 629); Kraus, 356 F. Supp. 2d at 339 n. 49.[4]

Plaintiffs' contention that the allegations in the Amended Complaints (with respect to the Walkers Defendants) satisfy either Rule 8(a) or Rule 9(b) is unavailing.  (Nav. Br. at 29, Varga Br. at 56, 70).   Nowhere do Plaintiffs provide any factual detail concerning precisely what related-party transactions were improperly approved or not approved, what documents contain requests for approval and whether approval was granted, the date approval was requested, the date approval was granted, the date the transaction settled, and who was involved with the requests.  These deficiencies are fatal to the Amended Complaints.  See IPO, 241 F. Supp. 2d at 327.  ("The additional requirements of Rule 9(b) were well described by Judge Frank Easterbrook when he wrote that  '[particularity] means the who, what, when, where, and how: the first paragraph of any newspaper story.'")

Instead, Plaintiffs repeatedly hang their hats on one or two conclusory statements or statistics as an apparent substitute for the requisite factual detail.  For instance, the Navigator Plaintiff repeatedly asserts in its complaint and opposition brief that in 2006 Lennon and Wilson-Clarke allegedly approved at least 165 related-party transactions (not one of which is identified) where the approval request was incomplete or submitted after the fact, and approved 87 (again unidentified) transactions in March 2007, less than half of which allegedly complied with

---

[4] Moreover, even under the more liberal pleading standards of Rule 8(a), which Plaintiffs erroneously contend applies to certain of their claims, the Amended Complaints are still subject to dismissal.  To satisfy "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1958 (2007) (citations, internal quotation marks and footnote omitted).  "Because the Plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1960.

applicable procedures.   (See Nav. Compl. ¶¶ 165, 196, 306, 346, Nav. Br. at 9, 26, 33).

Similarly, the Varga Plaintiffs repeatedly state in the complaint and their opposition brief that in

2006 almost 80% of the related-party transactions consummated were done without prior

approval. (Varga Compl. ¶¶ 86, 261, 416, Varga Br. at 3, 10, 50, 57 n. 35, 65).   However, simply

adding up the number of transactions Plaintiffs allege to be relevant to their claims does not

provide the requisite "who, what and when" facts necessary to avoid dismissal pursuant to Rule

9(b).   See Cruse v. Equitable Sec. of New York, Inc., 678 F. Supp. 1023, 1029 (S.D.N.Y. 1987)

(finding insufficient particularity under Rule 9(b) where complaint alleges offers no "further

information concerning transactions" after one paragraph that alleges 41 illegal call options");

See also U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 455

(S.D.N.Y. 2001) (finding insufficient particularity under Rule 9(b) where plaintiff made

conclusory allegations instead of specifying "the dates on which the purported. . . transactions

were made").

       In addition, the Varga Plaintiffs' conclusory allegation that Lennon and Wilson-

Clarke "failed to monitor and independently evaluate the audit and other work performed by the

Deloitte Defendants"   (Varga Compl. ¶ 409)   is devoid of any specificity.   Indeed, the Varga

Plaintiffs fail to specify a single audit, financial statement, or document generated by the Deloitte

Defendants that the Walkers Defendants failed to evaluate.[5]   The Varga Plaintiffs similarly fail to

identify a specific manager mark or NAV that the Walkers Defendants allegedly failed to review,

---

[5] The Varga Plaintiffs' suggestion that their Amended Complaint adequately alleges that the Walkers
Defendants aided and abetted the Deloitte Defendant's purported misconduct (Varga Br. at 9) is highly
misleading.   In fact, all that the Varga Plaintiffs do is point to allegations captioned "The Deloitte
Defendants' Unique Role in the Fraud" (Id. citing Varga Compl. ¶¶ 242-330).   None of these allegations
even mentions, much less details the alleged role of the Walkers Defendants.   (Varga Br. at 9, Varga
Compl. ¶¶ 242-330.)

how the Walkers Defendants would have conducted such an evaluation (i.e. what they could have or should have looked at to evaluate the quality of the audits), or what this undescribed "evaluation" would have shown.  Nor does it detail how or with what information the Walkers Defendants could have analyzed the proprietary models used by BSAM to price securities, or the source of the information (if any existed) that would have contradicted or called into question the NAV or manager marks.  Absent such basic factual detail, Plaintiffs' conclusory allegations of misconduct must be rejected.  Cf. Pension Comm. of Univ. of Montreal v. Banc of Am. Sec., LLC, 446 F. Supp. 2d, 163, 184 (S.D.N.Y. 2006) (holding plaintiffs pleaded with sufficient particularity that the monthly NAV statements were misleading where plaintiff's complaint explained how the NAV statements were fraudulent using specific examples of stocks that were assigned false values by defendants); IPO, 241 F. Supp. 2d at 327.

**B.**     **Plaintiffs Fail To State A Claim For Aiding and Abetting Fraud and Aiding and Abetting Breach of Fiduciary**

The Walkers Defendants' Opening Brief established that the Plaintiffs' aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims should be dismissed because they are not pleaded with the particularity required by Rule 9(b).  Moreover, the Amended Complaints fail to state a claim pursuant to Rule 12(b)(6) because they fail to plead essential elements of their claims - actual knowledge of or substantial assistance with the alleged fraud.

It is well-established that claims for aiding and abetting are subject to the heightened pleading standards of Rule 9(b), not Rule 8(a), where, as here, the causes of action bear a close legal relationship to fraud.[6]  Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d

---

[6]  Henneberry v. Sumitomo Corp. of America, cited by the Navigator Plaintiff, actually supports the Walkers Defendants' position that Rule 9(b) applies.  In Henneberry, the court stated that "heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the

241, 251 (S.D.N.Y. 2008) (aiding and abetting breach of fiduciary duty and breach of fiduciary duty claims subject to Rule 9(b)); see also Kraus 356 F. Supp. 2d at 339 n. 49 (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim). The Varga Plaintiffs concede that their aiding and abetting claims are subject to Rule 9(b), but argue that their vague and conclusory allegations against the Walkers Defendants are sufficient to comply with the heightened Rule 9(b) standard. (Varga Br. at 56)

Their contentions that Rule 8(a) should apply notwithstanding, it is also evident that the Navigator Plaintiff's aiding and abetting breach of fiduciary duty claim against the Walkers Defendants sounds in fraud. The Navigator Plaintiff alleges that the Walkers Defendants aided and abetted the Management Defendants' breaches of fiduciary duty which are premised on the Management Defendants' alleged fraud. The Navigator Plaintiff's allegations against the Management Defendants for breach of fiduciary duty include inter alia: failing to "inform Limited Partners that the Management Defendants were engaging in conduct and using Partnership assets in a manner inconsistent with its purpose," failing to "provide truthful and accurate information that Limited Partners required to exercise their rights to redeem their respective Interests, and/or to petition for the removal of the General Partner," and further that the Management Defendants breached their duties by engaging in "misrepresentations and non-disclosures." (Nav. Compl. ¶ 381). Such allegations of misrepresentations, untruthfulness and omissions are "classic fraud allegations." Ultrafem Inc. Secs. Litig., 91 F. Supp. 2d 678, 691

---

defendant's fraudulent conduct." The court held that Rule 9(b) applied to plaintiff's breach of fiduciary duty claims because they were "premised on the same statements that give rise to his negligent misrepresentation and his fraudulent misrepresentation claims." 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007). Here all of the Navigator Plaintiffs' claims – aiding and abetting fraud, aiding and abetting breach of fiduciary duty and breach of fiduciary duty - are based on the same set of conclusory allegations that the Walkers Defendants failures to, inter alia, approve related party trades enabled the Management Defendants to engage in fraud.

(S.D.N.Y. 2000) ("allegations of misrepresentations and omissions made with intent to defraud upon which plaintiffs relied are classic fraud allegations").  Moreover, the Navigator Plaintiff has made no effort to meaningfully distinguish the fraud allegations littered throughout the Navigator Complaint from the rest of their allegations, thus Rule 9(b) applies to their aiding and abetting claims.  (Nav. Compl. ¶¶ 391, 404, 441) Kraus 356 F. Supp. 2d at 339 n. 49.

### 1.    Plaintiffs Fail To Plead Actual Knowledge

The Walkers Defendants' Opening Brief established that Plaintiffs must, but have failed to, plead that the Walkers Defendants had actual knowledge of the primary violator's alleged wrongdoing to state a claim for aiding and abetting fraud[7] or aiding and abetting breach of fiduciary duty.[8]  See Walkers Br. at 39; Pension Comm., 446 F. Supp. 2d at 201; Lerner v. Fleet Bank, N.A., 459 F.3d 273, 274 (2d Cir. 2006); Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996).  Plaintiffs' Oppositions do not refute this.  Rather, Plaintiffs resort to restating the same unsupported, conclusory allegations offered in the Amended Complaints, as well as the general allegations that "(i) "the Management Defendants breached their fiduciary and contractual duties . . . with the knowing participation of . . . the Director Defendants, and Walkers"; (ii) the Management Defendants "knowingly entered into numerous impermissible transactions that were not at arm's-length and that [Lennon and Wilson-Clarke] knew that they were responsible for approving such transactions, but failed to do so;" and (iii) the Walkers

---

[7] As set forth in the Walkers Defendants' Opening Brief, in order to establish liability for aiding and abetting a fraud, the plaintiff must show "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006), quoting JPMorgan Chase Bank v. Winnick, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005).

[8] In addition, as set forth in the Walkers Defendants' Opening Brief, and discussed more fully in the Bear Stearns Reply, Plaintiffs' aiding and abetting claims fail because Plaintiffs have not established a "primary wrong," either a fraud or breach of fiduciary duty, on the part of the other defendants.  See Fraternity Fund v. Beacon Hill Asset Mgmt., 479 F. Supp. 2d 349, 360 (S.D.N.Y. 2007); Bear Stearns Varga Reply at Points I, II and Bear Stearns Nav. Reply at Points II, III.

Defendants "had actual knowledge of the breaches of fiduciary duties."  (Nav. Br. at 29-30).

Sprinkling a complaint with terms like "knowing" and "knowingly" does not substitute for

factual allegations that support a plausible inference of knowledge.  See Matsumura at 251

("conclusory allegations or legal conclusions masquerading as factual conclusions will not

suffice to prevent a motion to dismiss."), see also Twombly, 127 S.Ct. 1955, 1958 *2007).

Nowhere does either Amended Complaint identify a single document, statement, meeting, or

anything else from which the Walkers Defendants purportedly learned that the Management

Defendants or the Deloitte Defendants had breached any duty to Plaintiffs or the Funds'

shareholders.  This is fatal to their claims.  Thomas Lee Equity Fund V, L.P. v. Grant Thornton

LLP, No. 07 Civ. 8663, 2008 WL 3166536, at * 10 (S.D.N.Y. Aug. 6, 2008) (In order to survive

a dismissal, "the complaint must allege facts giving rise to a 'strong inference' of defendant's

actual knowledge of the fraud.");  Lerner, 459 F.3d at 293 (plaintiffs alleged in detail that the

defendants knew that their co-defendant had engaged in improper conduct that would warrant

discipline by the Appellate Division, but those facts did not give rise to a "strong inference" - as

required by FRCP 9(b) - of actual knowledge of his looting of client funds).

        Generalized and conclusory allegations such as those offered by Plaintiffs here

are insufficient to create a strong inference that defendants had actual knowledge of the

wrongdoing at issue.  O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 22, 228 n.9

(S.D.N.Y. 1989).[9]  Here, as in Lerner, Plaintiffs have failed to allege facts giving rise to a "strong

---

[9] Plaintiffs' insistence that they established a plausible inference of the Walkers Defendants' actual knowledge merely by alleging that Walkers were motivated to receive fees from or had a "lucrative business relationship" with the Bear Stearns Defendants is contrary to settled law.  (Nav. Br. at 30, Varga Br. at 65).  The mere allegation of receipt of fees or compensation is insufficient to plead scienter much less actual knowledge.  Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (motives possessed by most corporate directors or officers will not suffice to "establish scienter"), Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) (an allegation that defendants were motivated by a desire to maintain or increase compensation is insufficient because such a desire can be imputed to all corporate officers.), see

inference" of actual knowledge of any wrongdoing.  Further, Plaintiffs' reliance on Thomas Lee Equity Fund, and Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt, is misplaced.  As Plaintiffs acknowledge, these cases involved identifiable "red flags" which the court found were sufficient to demonstrate actual knowledge of the fraud alleged.  See Thomas Lee Equity Fund, 2008 WL 3166536, at * 10 (plaintiffs supported their claim of actual knowledge by setting forth "numerous red flags" that purportedly alerted defendant to fraud and alleging that, in connection with its audits of the company, defendant discovered numerous "suspicious and recurring" transactions designed to hide receivables); Fraternity Fund Ltd., 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007) (allegations tended to show that either defendant knew the market values were false or was aware of the possibility that they were false).  Unlike plaintiffs in Thomas Lee Equity Fund, and Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt, Plaintiffs here identify no red flags.  Instead, they argue that "the sheer number, size and increasing occurrence of [the] related transactions" demonstrates that Lennon and Wilson-Clarke had actual knowledge of the Bear Stearns' Defendants' wrongdoing.  (Varga Br. at 60).  Other than vague statistics, most of which related to time-periods before the Walkers Defendants became directors of the Funds, Plaintiffs provide no details concerning the number or size of these transactions or any fact to suggest that the activities of the Funds changed in a way that would or could have alerted the Walkers Defendants to the other Defendants' purported misconduct.  See Montreal Pension Fund, 446 F.

---

also In re Adelphia Commc'ns Corp. Sec. and Derivative Litig, No. 03 MD 1529 2007 WL 2615928 * 3 (S.D.N.Y. 2007) (the standard desire for profit, common to all businesses, is insufficient to establish the motive.), In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461, 464 n. 1 (S.D.N.Y. 2008); (rejecting allegations of motive which "come down to the allegation that PwC received fees from Doral for auditing, consulting, and tax services and wished to continue to receive fees"); In re J. P. Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (generalized allegations of intent to maintain lucrative business relationships . . . do not set forth a motive for scienter purposes.  Moreover, the Varga Plaintiffs' circular argument that the Walkers Defendants were motivated to participate in the alleged fraud to hide their own wrongdoing (Varga Br. at 66) is nonsensical given that the Walkers Defendants' involvement with the Funds was brief and did not begin until August 2006, two to three years after the Plaintiffs allege the fraudulent scheme commenced.

Supp. 2d at 188, 204 (dismissing aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims against hedge fund directors where plaintiffs had not shown actual knowledge because they failed to allege that, the directors "ignored red flags or failed to review any particular information that would have revealed the fraud."); compare Thomas Lee Equity Fund, 2008 WL 3166536 at * 10.  Accordingly, Plaintiffs have failed to allege actual knowledge, thus their claims for aiding and abetting should be dismissed.

### 2.    Plaintiffs Fail To Plead Substantial Assistance

As demonstrated in the Walkers Defendants' Opening Brief, the Amended Complaints fail to allege that the Walkers Defendants participated in or substantially assisted the other defendants purported misconduct.  The Amended Complaints simply do not allege any facts supporting a claim that the Walkers Defendants "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling the [fraud or breach of fiduciary duty] to occur."  Lerner, 459 F.3d at 295.  Moreover, Plaintiffs failed to "allege that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated."  Fraternity Fund Ltd., 479 F.Supp. at 370-71 (emphasis added); Pension Comm. of the Univ. of Montreal v. Banc of Am. Sec., LLC, No. 05  Civ. 9016, 2007 WL 528703 * 8 (S.D.N.Y. Feb. 20, 2007) (dismissing aiding and abetting claims because conclusory allegations that alleging that even though the fraudulent scheme "'may only have been possible because of [the defendant's] actions, or inaction, [] that does not make [the defendants'] conduct a proximate cause of the scheme.").[10]

---

[10] Contrary to the Varga Plaintiffs' assertion, Gabriel Capital v. Natwest Finance, Inc., 94 F. Supp. 2d 491, 512 (S.D.N.Y. 2006) does not have analogous facts.  In that case, the court found that plaintiffs pleaded proximate causation where the defendant accused of aiding and abetting had heard the primary violator making misrepresentation to investors, knew they were fraudulent, and stood silently by.

In their Oppositions, Plaintiffs are unable to rehabilitate their meager and unsupported allegations. To the contrary, Plaintiffs merely contend that their wholly conclusory allegations that the Walkers Defendants' supposed failure to prevent the other Defendants' alleged misconduct constitute both "substantial assistance" and proximate causation (Nav. Br. at 32-34, Varga Br. at 62, 66). Plaintiffs are wrong on both counts. First, Plaintiffs do not – and cannot – cure the complete absence of concrete <u>factual</u> allegations supporting this bald conclusion. The Amended Complaints do not explain how the Walkers Defendants could have prevented the alleged frauds or breaches of fiduciary duty that occurred two to three years before they became Independent Directors. (Walkers Br. at 35-36). Nor do Plaintiffs identify any allegation of specific misconduct knowingly permitted by the Walkers Defendants. <u>See</u> <u>Fezzani</u> <u>v. Bear, Stearns & Co. Inc.</u>, No. 99 Civ. 0793, 2008 WL 4369719, at * 13 (Sept. 23, 2008) (holding that plaintiffs' "bare conclusions" of substantial assistance cannot survive a motion to dismiss an aiding and abetting claim). Accordingly, the Amended Complaints fail to allege any facts demonstrating substantial assistance or proximate cause and Plaintiffs' claims for aiding and abetting should be dismissed.

## C.   <u>Plaintiffs Fail To State A Claim for Unjust Enrichment</u>

As demonstrated in the Walkers Defendants' Opening Brief, the Varga Complaint does not state a claim for unjust enrichment.[11] Here, the Varga Plaintiffs do little more than recite the elements of unjust enrichment under New York Law and blindly assert that these elements have been met. (Varga Br. at 69). Then, once again, the Varga Plaintiffs (wrongly, and

---

[11] In order to survive a motion to dismiss, the Varga Plaintiffs must demonstrate that the Walkers Defendants have "received a benefit of money or property belonging to the plaintiff." <u>Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC</u>, 317 F. Supp. 2d 301, 334 n.24 (S.D.N.Y. 2003) (plaintiffs failed to show defendants "received profits to which they were not entitled"), quoting <u>Granite Partners, L.P. v. Bear, Stearns & Co.</u>, 17 F. Supp. 2d 275, 313 (S.D.N.Y. 1998).

without legal authority) contend that they are only required to plead this claim pursuant to Rule 8(a). (Id. at 70). For the reasons discussed above in Point I.A, the Varga Plaintiffs' unjust enrichment claim is subject to, but fails to meet, the heightened pleading standard of Rule 9(b). Indeed, it does not even satisfy Rule 8(a)'s requirement that their allegations must do more than provide a "formulaic recitation of a cause of action's elements." Twombly, 550 U.S. 544.

In their Opposition, the Varga Plaintiffs contend that they have adequately alleged a claim for unjust enrichment by alleging that "[a]s a result of the fraudulent and improper scheme described above and participated in by all Defendants, the High-Grade and High-Grade Enhanced Funds have been rendered worthless, yet Defendants, individually and collectively, have reaped substantial fees and bonuses." (Varga Br. at 69). They are wrong. While they allege that the Walkers Defendants "have reaped substantial fees and bonuses," (Varga Compl. ¶ 637; Varga Br. at 69), they fail to describe how these alleged fees and bonuses actually constitute unjust enrichment – in other words, why the Walkers Defendants were not entitled to receive these fees for work done and why the retention of such benefits would be "unjust." See Mina Inv. Holdings Ltd v. Jerkewitz, 51 F. Supp. 2d 486 (S.D.N.Y. 1999) (plaintiffs' unjust enrichment claims dismissed where plaintiffs failed to provide explanation of the nature of the enrichment, how it was at plaintiffs' expense and why good conscience required restitution). This claim also fails to meet the requirements for pleading an unjust enrichment claim because under New York law it is "clear that the payments made pursuant to the express terms of a contract cannot be recovered via unjust enrichment theory." Granite Partners, 17 F. Supp. 2d at 311 (unjust enrichment claims against broker defendants for receipt of monies from four transactions dismissed because the sales of securities to the Funds and the liquidation of those securities were done pursuant to contracts). Because the Varga Plaintiffs have failed to allege the necessary elements of unjust enrichment, this claim should be dismissed.

## POINT II

**PLAINTIFFS' BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING FRAUD, AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIMS AGAINST WALKERS FS MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM**

As demonstrated in the Walkers' Defendants Opening Brief, and as the Opposition Briefs fail to rebut, the Amended Complaints fail to state any claims against Walkers FS – either under a vicarious liability theory or otherwise – for breach of fiduciary duty, aiding and abetting fraud, or aiding and abetting breach of fiduciary duty. Accordingly, all of the claims against Walkers FS should be dismissed.

The Navigator Plaintiff argues that they properly alleged liability for aiding and abetting breach of fiduciary duty against Walkers FS with their conclusory statements that Walkers FS "had actual knowledge of the breaches of fiduciary duties," "substantially assisted" in those breaches and that they failed to monitor and supervise Lennon and Wilson-Clarke. (Nav. Br. at 34, Nav. Compl. ¶¶ 395, 401). As established in section I.A. supra, the Navigator Plaintiff must meet the heightened particularity requirements of Rule 9(b). These conclusory statements fail to meet the requirements of Rule 9(b) and, accordingly, the Navigator Plaintiffs claims against the Walkers Defendants should be dismissed.

The Varga Plaintiffs assert that they have stated claims against Walkers FS either vicariously or under a theory that Lennon and Wilson-Clarke were acting as the agents of Walkers FS under Cayman Island and New York law. Both arguments fail. The Varga Plaintiffs argue that Walkers FS is vicariously liable for the alleged torts of Lennon and Wilson-Clarke under the law of the Cayman Islands. (Varga Br. at 71-73). However, the Varga Plaintiffs'

attempt to distinguish <u>Paget-Brown Co. Ltd v. Omni Sec. Ltd.</u>[12] from the present case, completely misstates the facts and holding in that case. Varga first claims that the plaintiff in <u>Paget-Brown</u> did not allege that the board member had acted in his capacity as an employee of Paget Brown, or that he acted in furtherance of Paget-Brown's interests. In fact, that is exactly what the plaintiff claimed, just as the Varga Plaintiffs do here. <u>See</u> <u>Paget Brown</u>, at 184 (plaintiff claimed the company that appointed the director was vicariously liable for the negligence of the outside director it appointed to the board of another company, and alleged the defendant company was negligent in supervising its "employee" in his work as the other company's director). Quite simply, <u>Paget-Brown</u>, holds that a company that appoints a director to the board of another company is not vicariously liable for the alleged torts the director commits in the course of those directorial duties. <u>Paget-Brown</u> at 185 (holding the director is "obligated to ignore the interests of his employer" in connection with his duties as a director of another company).

The Varga Plaintiffs' argument that Walkers FS is vicariously liable for the alleged torts of Lennon and Wilson-Clarke under New York law also fails. (Varga Br. at 73-74). Contrary to Plaintiffs' assertions, the <u>Global Crossing</u> cases[13] do not support their claims and indeed mandate their dismissal.[14] <u>Global Crossing I</u>, plainly holds that where, as here, a corporation appoints one of its employees to serve as a director of another corporation, those directors are not agents of the company that appointed them. <u>Global Crossing I</u>, at *3 ("when

---

[12] [1999] C.I.L.R. 184, 193 [Cayman Islands Court of Appeal].

[13] <u>In re Global Crossing, Ltd. Sec. Litig.</u>, No. 02 Civ 0910, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005) ("<u>Global Crossing I</u>"); <u>In re Global Crossing, Ltd. Secs. Litig.</u>, No. 02 Civ. 0910 (GEL), 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005) ("<u>Global Crossing II</u>"); <u>Global Crossing Estate Representative v. Winnick</u>, No. 04 Civ. 2558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ("<u>Global Crossing III</u>").

[14] And is, indeed, the only decision applying New York law that has addressed this issue. <u>Global Crossing III</u>, 2006 WL 2212776, at *20.

acting as directors, the [individual defendants] had [] duties to act on behalf of the shareholders of [the company on whose board they sat], not on behalf of the entities that appointed them."); see also Global Crossing II, at *6 ("[P]laintiffs point to no case where a corporation has been held liable on a theory of respondeat superior for the actions of its employees in their capacities as independent directors sitting on the board of a different corporation.").  Nor does the fact that Walkers FS may have appointed Lennon or Wilson-Clarke alone establish that "they acted as agents, or acted under the control" of Walkers FS, as they must have for vicarious liability. Global Crossing I. at *4; see Varga Br. at 74.  There are no additional factual allegations to suggest that Lennon and Wilson-Clarke were acting on behalf of or under the control of Walkers FS when they performed their directorial duties; to the contrary, they were acting in their capacity as Independent Directors of the Funds.  See In re Parmalat Sec. Litig., 474 F. Supp. 2d at 553 ("[D]irectors have fiduciary duties to act on behalf of the companies on the boards of which they serve, not on behalf of the entities who appointed them. . . . the logical conclusion from that proposition is that the [directors in Global Crossing II] were not acting within the scope of their authority as agents of [the appointing company] when they [acted] in their capacities as directors.") (discussing Global Crossing II).  As such, there is no basis to hold Walkers FS vicariously liable for the alleged acts of Lennon and Wilson-Clarke in their capacity as Independent Directors of the Funds.  Accordingly, all of Plaintiffs' claims against Walkers FS should be dismissed.

## POINT III

## PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PRECLUDED BY THE FUND GOVERNING DOCUMENTS AND ARE PREEMPTED BY THE MARTIN ACT

**A.    Plaintiffs Fail to Plead Gross Negligence**

The Walkers Defendants' Opening Brief demonstrated that Plaintiffs' breach of fiduciary duty claims against Lennon and Wilson-Clarke should be dismissed because these claims are expressly prohibited by the Master Fund Articles of Association ("Articles of Association"), unless they acted with gross negligence, which Plaintiffs have failed to plead. Plaintiffs concede that conclusory allegations are insufficient and that they must plead gross negligence - not mere negligence - but contend that their vague and conclusory allegations are sufficient. (Nav. Br. at 27, Varga Br. at 47). As established in Section I.A. <u>supra</u>, both Amended Complaints sound in fraud, thus Rule 9(b) applies to Plaintiffs' breach of fiduciary duty claims as well.

As established in the Walkers Defendants' Opening Brief, allegations of failures to act do not rise to the level of gross negligence. (Walkers Br. at 32-33). Indeed, the Second Circuit has stated that for gross negligence, the "act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998). Moreover, gross negligence may be defined as, "very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as the other person may be affected." <u>Burke v. Spear</u>, 277 F.2d 1, 2 (2d Cir.1960). [G]ross negligence encompasses conduct that involves reckless indifference to the rights of others, <u>Williams & Sons Erectors, Inc. v. South Carolina Steel Corp.</u>, 983 F.2d 1176, 1184 (2d Cir. 1993), or "'smacks' of

intentional wrongdoing." <u>Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.</u>, 81 N.Y.2d 821, 824 (1993); <u>see also</u> <u>Midland Grange No. 27 Patrons of Husbandry v. Walls</u>, C.A. No. 2155-VCN, 2008 WL 616239, at *9 (Del. Ch. Feb. 28, 2008) (citations omitted, quotations omitted) (gross negligence is "a reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason.").

Plaintiffs have failed to plead any non-conclusory facts demonstrating gross negligence.  The Navigator Plaintiff alleges that Lennon and Wilson-Clarke "willfully, in bad faith and/or acting with gross negligence:" "failed to meaningfully supervise" and "fail[ed] to cause the Management Defendants" to obtain approvals for related party transactions.  (Nav. Br. at 26-27).[15]  Similarly, the Varga Plaintiffs repeat their unspecified allegations regarding improper approval of trades, as well as the conclusory allegations that: Lennon and Wilson-Clarke "failed to ensure" the quality and nature of the investments, "failed to question" the NAVs, or BSAM's assertions and "failed to monitor and [] evaluate" work performed by the Deloitte Defendants." (Varga Br. at 50).[16]  Plaintiffs have merely alleged that Lennon or Wilson-Clarke failed to discover the misdeeds of others, and as explained in Point I.A., supra, Plaintiffs

---

[15]  Contrary to the Navigator Plaintiff's assertion, the Walkers Defendants do not cite to allegations that demonstrate Lennon and Wilson-Clarke had knowledge of the Management Defendants' alleged mismanagement.  (Nav. Br. at 26).  The Walkers Defendants' Opening Brief cites to Navigator's vague and conclusory allegations that fail to allege any factual basis for Lennon or Wilson-Clarke's knowledge of other defendants' alleged misdeeds, or Lennon or Wilson-Clarke's  intentional failure to act in the face of a known duty to act.  (Walkers Br. at 29-30).

[16]  As set forth in the Walkers Defendants' Opening Brief, the Varga Plaintiffs have failed to connect the Walkers Defendants' role in the alleged "scheme" to thwart the Removal Petitions with any loss suffered by the Plaintiffs in connection with their investments.  In the absence of a connection, the Varga Plaintiffs cannot demonstrate how these alleged acts could have caused any harm to Plaintiffs, because these events occurred long after both the alleged collapse of the Funds and all of the publicity that followed.  <u>See</u> Walkers Br. at 31-32, n. 19.  In addition, the Varga Plaintiffs mischaracterize the Walkers Defendants' arguments by claiming that they "concede that the allegations regarding Lennon and Wilson-Clarke's participation in the scheme to thwart the Removal Petitions 'suggests more than mere negligence,'" when in fact the Walkers Defendants argued that the Varga Plaintiffs state only one allegation "that even suggests more than mere negligence." <u>Id</u>.

have not alleged any facts demonstrating that Lennon or Wilson-Clarke had actual knowledge of the other defendants' alleged fraud.[17]   Plaintiffs allege no facts demonstrating that they acted with reckless indifference to their duties.   As demonstrated in the Opening Brief and reaffirmed above, allegations of failure to act are at best mere negligence claims, which are expressly precluded by the exculpatory clauses in the Articles of Association. See Pension Comm., 446 F. Supp. at 188 (holding that allegations that directors of a hedge fund failed to follow their own stated policies to independently review NAVs and failed to prevent the hedge fund from falsely reporting the fund's NAV is mere negligence and does not establish recklessness.); Globis Partners, L.P. v. Plumtree Software, Inc., Civ. No. 1577-VCP, 2007 WL 4292024, *6 n.49 (Del. Ch. Nov. 30, 2007).   Accordingly, Plaintiffs' claims for breach of fiduciary duty should be dismissed.[18]

---

[17] The Varga Plaintiffs' reliance on Forsythe is misguided.  In Forsythe, the plaintiffs alleged that the defendants violated their fiduciary duties by causing the fund to purchase investments "worth significantly less than the consideration paid to the fund," in violation of the fund's restrictions on investing, in addition to abdicating their oversight responsibilities and aiding and abetting the other defendants' violations of fiduciary duties.  However, there, unlike here, the plaintiffs specifically alleged that the defendants had actual knowledge of the fraud and their complaint referred to minutes from a meeting of the investment advisory board that specifically supported their allegations that the defendants had actual knowledge.  Here, Plaintiffs have merely alleged that Lennon or Wilson-Clarke failed to discover the alleged misdeeds of others, and as explained in Point I.B.1 supra, Plaintiffs have not alleged any facts or identified documents demonstrating that Lennon or Wilson-Clarke had actual knowledge of the other defendants' alleged fraud.

[18] The Varga Plaintiffs' suggestion that whether conduct constitutes gross negligence is a question of fact, not appropriate for a motion to dismiss, is a red herring.  Courts routinely grant motions to dismiss where, as here, a complaint contains nothing more than mere conclusory allegations. (Varga Br. at 54), see Lemoine v. Cornell Univ., 2 A.D.3d 1017, 1020 (2003) ("Where a complaint does not allege facts sufficient to constitute gross negligence, dismissal is appropriate."); see also Teacher's Ret. Sys. of Louisiana v. Welch, 244 A.D.2d 231, 232 (N.Y. App. Div. 1st Dep't 1997); Bildstein v. Atwater, 222 A.D.2d 545 (2d Dep't 1995).

**B.    Plaintiffs Claims Are Preempted by the Martin Act**

As set forth in the Walkers Defendants' Opening Brief, Plaintiffs' breach of fiduciary duty claims are preempted under New York law by the Martin Act for the reasons set forth in Bear Stearns' Opening Brief.[19]  The Walkers Defendants hereby incorporate by reference the additional arguments contained in Bear Stearns Varga Reply at Point II.C.2 and the Bear Stearns Navigator Reply at Point II.B.1.

## POINT IV

## THE WALKERS DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION

In their Opening Brief, the Walkers Defendants established that the Amended Complaints did not and could not plead sufficient facts to establish personal jurisdiction in New York over Walkers under either CPLR §§ 301 or 302.  As alleged in the Amended Complaints and conceded in the Oppositions, "Walkers"[20] is not present in New York to satisfy the strict requirements for general jurisdiction, the Walkers Defendants did not perform any of the requisite acts required to establish jurisdiction within the state of New York, nor did they commit a tort outside of the state, causing injury in New York.  Plaintiffs' arguments supporting the

---

[19] The Opening Brief established that the Walkers Defendants do not owe a fiduciary duty to Navigator or the other limited partners in the High-Grade Fund because neither of them is the General Partner or Manager of the High Grade Fund.  (Walkers Br. at 29 n. 17).  In its opposition, the Navigator Plaintiff incorrectly asserts that Lennon and Wilson-Clarke owe a fiduciary duty to Navigator because "the limited partners were pro rata owners of interest in the Master Fund through the Partnership, thus the Partnership and its limited partners were owed fiduciary duties." (Nav. Br. at 25 n. 24). Navigator misses the point. The cases cited by Navigator stand for the unremarkable proposition that directors owe a fiduciary duty to shareholders of the corporation *of which they are directors*.  Here, Lennon and Wilson-Clarke are directors of the Master Funds, of which Navigator is neither a shareholder nor a limited partner.

[20] The Navigator Opposition defines "Walkers" as Walkers FS.  Their allegations regarding  contacts by Walkers Group or the Walkers Firm are therefore irrelevant to the establish jurisdiction over Walkers FS, the named defendant in this action.  These allegation are particularly misleading given the fact that it is the Varga Plaintiffs who attempt – unsuccessfully - to assert a veil piercing argument.

assertion of jurisdiction on the Walkers Defendants are frivolous and misrepresent New York law.

**A.**     **The Walkers Defendants Do Not Do Business In New York**

The Walkers Defendants' Opening Brief demonstrates, and the Oppositions reinforce, that there is not and can be no general jurisdiction over the Walkers Defendants pursuant to C.P.L.R. § 301.  Notably, the Varga Plaintiffs do not even attempt to assert that this Court can exercise general jurisdiction over the Walkers Defendants. (See Varga Br. at 20, n.9). And, the Navigator Plaintiff's assertion that the Walkers Defendants are subject to general jurisdiction in New York is contrary to well-established New York law.

The Navigator Plaintiff concedes that they have not and cannot establish the requisite facts that courts typically look to when deciding general jurisdiction. (See Navigator Br. at 14).  Instead, the Navigator Plaintiff asserts that, although the Complaint fails to allege that "Walkers" maintains offices, employees, or bank accounts in New York, this Court should nevertheless exercise general jurisdiction pursuant to a "solicitation plus" theory.  Under "solicitation plus," only if the defendant's solicitation in New York "is substantial and continuous, and defendant engages in other activities of substance in the state" can jurisdiction under § 301 be found.  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).  The Navigator Plaintiff fails to allege anything approaching the kind of substantial and continuous solicitation required for general jurisdiction.  The Navigator Plaintiff points to only two factors as proof that "Walkers" solicits business in New York: (i) The Walkers Group hosted a conference on hedge fund business in New York on Nov. 6, 2008, and

(ii) The Walkers Group maintains a website that can be accessed by individuals in New York that "touts" its services.   (Nav. Br. at 14).[21]

As a threshold matter, the Court should not even consider the November 6, 2008 meeting – which was unrelated to the causes of action at issue here – to determine general jurisdiction because the meeting is mentioned in neither the Navigator Complaint nor in an affidavit attached to the Navigator Opposition.   Courts in this jurisdiction do "not consider arguments raised in the *memoranda of law*, rather than in a sworn affidavit [or the Complaint]." Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320, 2008 WL 4615896, at *3 (S.D.N.Y. Oct. 15, 2008).  However, regardless of whether the alleged meeting is properly before the Court, one meeting, on one day, cannot be characterized as continuous or substantial.  See Landoil, 918 F.2d at 1045-46 (holding that 13 business trips made by defendants' employees to New York, over a period of 18 months, was insufficient to show substantial and continuous solicitation in New York).  The argument that the Walkers Group maintains a website accessible in New York is similarly unavailing.  New York courts have held that a plaintiff who merely alleges that a defendant has a website available in New York has not done nearly enough for purposes of the "solicitation plus" theory.  See Allojet PLC v. Vantage Assocs., No. 04 Civ. 05223, 2005 WL 612848, at *6 (S.D.N.Y. March 15, 2005) (holding that plaintiff who merely alleged that defendant solicited business in New York because it had an interactive website, without demonstrating "substantial solicitation based on its . . . website activity" had not done enough to show general jurisdiction under the "solicitation plus" theory).[22]

---

[21] As noted in footnote 19, the alleged contacts of the Walkers Group are irrelevant to any assertion of jurisdiction over Walkers FS.

[22]  Moreover, the Walkers website cannot be characterized as "interactive."

Notably, in <u>Law Debenture</u>, cited by the Navigator Plaintiff, the court declined to find § 301 jurisdiction over a defendant who allegedly had more New York contacts than the Navigator Plaintiff has alleged here.  There, the plaintiff alleged that the defendant, <u>inter alia</u>, held an annual investor relations event in New York, proclaimed New York to be its local community, listed its shares on the NYSE, negotiated at least two major transactions in New York and regularly used its parent company's office in New York. <u>Law Debenture</u>, 2008 WL 4615896, at *5.  The court held that while the annual investors event may be solicitation, "even solicitation cannot be said to be substantial and continuous when it occurs only once per year." <u>Id.</u>  Here, Plaintiffs do not and cannot allege that Walkers FS or any of its affiliates maintain an office in New York and cannot even muster allegations of annual solicitation by Walkers FS in New York – much less the pervasive solicitation required to establish general jurisdiction.

**B.**     **The Walkers Defendants Did Not Transact Business In New York**

      **1.**     **Lennon And Wilson-Clarke Did Not Transact Business In New York**

There is and can be no personal jurisdiction under N.Y. C.P.L.R. §302(a)(1) unless plaintiffs demonstrate that their claims arise directly out of the Walkers Defendants' transaction of business in New York.[23]  <u>See</u> <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239 (2d Cir. 2007).  Not a single allegation against the Walkers Defendants in the Amended Complaints arises out of any activity conducted by Walkers in the state of New York.

Plaintiffs' claims against the Walkers Defendants are based entirely on the following allegations: Walkers "failed to ensure the quality and nature of the investments were as represented by BSAM" ( Varga Compl. ¶ 406); "failed to question the NAVs assigned by BSAM

---

[23] Varga admits an inability to allege the other route to § 302(a)(1) liability – contracting to provide services in New York. <u>See</u> Varga Br. at 27 n.15.  Navigator asserts that there was a contract to provide services in New York, but points to no allegation of such a contract in their complaint.  <u>See</u> Nav. Br. at 16.

to the Funds" (id. ¶ 407); "failed to monitor the audit and work of Deloitte" (id. ¶ 408); "failed to review related party transactions" (id. ¶ 409); "neglected their duties to the Master Fund" (Navigator Compl. ¶ 306); approved at least 165 related party-transactions" (id.); and "[Walkers FS] failed to supervise the Independent Directors" (id.).[24]   The Cayman Islands is the location of all of this alleged misconduct, *i.e.,* the Cayman Islands are where the Walkers defendants lived, worked, and did (or did not do) all of the actions alleged by Varga and Navigator.   While it may be the case that some courts have found specific jurisdiction even when a defendant has never been physically present in New York (see Nav. Br. at 21-22; Varga Br. at 21-22), it is also true that "no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York."   Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982).   See also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 788-89 (2d Cir. 1999).   Similarly, Plaintiffs here have not alleged that the Walkers Defendants were ever physically present in New York, solicited clients in New York, or performed any of its services in New York, thus there is no jurisdiction pursuant to §302(a)(1).

Cromer I[25] relied on by the Varga Plaintiffs is inapposite.   The claims at issue in Cromer I, unlike the ones here, arose under federal securities laws.   As a result the court paid scant attention to the long-arm statute, focusing instead on the minimum contacts with the United

---

[24] The Varga Plaintiffs in their Opposition suggest that the alleged activities conducted by the Walkers Defendants "in connection with their effort to thwart the Removal Petitions also had ties to and affected persons and property located in New York" constitute "significant contacts" with New York which support an exercise of jurisdiction over the Walkers Defendants in New York. (Varga. Br. at 16).  For the reasons discussed above and in the Walkers Defendants' Opening Brief, the Varga Plaintiffs are wrong, as these alleged activities do not support a finding of either general or specific jurisdiction under New York law.  See Walkers Br. at 27.

[25] Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452 (S.D.N.Y. 2001).

States under the Due Process Clause of the 14th Amendment to the U.S. Constitution.  Also, as discussed in more detail infra, in Cromer I the court was persuaded by the fact that the defendants' parent corporations were physically located in New York.  Id. at 475.[26]  Likewise, the Navigator Plaintiff's reliance on Parke-Bernet Galleries v. Franklyn[27] is misplaced.  In Parke-Bernet, the defendant clearly projected himself into New York by participating - in real time, via telephone - in an auction taking place in New York.  The auction house was in New York, the art was in New York, and the bidder was supposed to pay a New York business.  The Walkers Defendants' communications with BSAM pertained to work the Walkers Defendants were doing in the Cayman Islands and there is no allegation that the Walker Defendants, like the defendant in Parke-Bernet, clearly injected themselves into New York transactions.

> **2.    Lennon And Wilson-Clarke Were Not Agents Of Walkers FS For Purposes Of Jurisdiction.**

As the Walkers Defendants established in their Opening Brief – and the Plaintiffs failed to rebut – Plaintiffs' agency theory alleging specific jurisdiction over Walkers FS fails. (Walkers Br. at 24, n. 13).  Although New York's long-arm statute confers jurisdiction over any defendant transacting business in New York "in person or through an agent," neither of the Plaintiffs have sufficiently alleged that Lennon and Wilson-Clarke transacted any business in New York, let alone did so as Walkers FS's agent.   N.Y.C.P.L.R. § 302.   Without first establishing that this Court has specific jurisdiction over Lennon and Wilson-Clarke, it is impossible to extend jurisdiction to Walkers FS by virtue of an agency theory.  See Big Apple

---

[26] The Varga Plaintiffs' statement that defendant Deloitte Cayman did not move to dismiss on jurisdictional grounds is irrelevant to the Walkers Defendants' motion to dismiss.  (Varga Br. at 25 n. 13).  Whether the Court has jurisdiction over an unrelated Cayman entity such as Deloitte (Cayman) or that entity chooses not to assert a jurisdictional defense has no bearing on absence of jurisdiction over the Walkers Defendants, particularly since none of the Walkers Defendants have any affiliates with offices in New York.

[27] 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970).

Pyrotechnics and Multimedia Inc. v. Sparktacular Inc., No. 05 Civ. 9994, 2007 WL 747807, at *6 (S.D.N.Y. March 9, 2007) ("To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state.") (emphasis added).

Not only do Plaintiffs fail to allege sufficient facts to obtain § 302(a)(1) jurisdiction over Lennon and Wilson-Clarke, they have also failed to allege that Lennon and Wilson-Clarke were acting as agents of Walkers FS in the exercise of their duties as Independent Directors of the Funds. This is because any such allegation is contrary to the law. Directors owe a duty to the corporation on whose board they sit, not to the company that placed them there. See Parmalat, 474 F. Supp. 2d at 553 ("[D]irectors have fiduciary duties to act on behalf of the companies on the boards of which they serve, not on behalf of the entities who appointed them. . . . the logical conclusion from that proposition is that the [directors] were not acting within the scope of their authority as agents of [the appointing company] when they [acted] in their capacities as directors.") (discussing In re Global Crossing, Ltd. Secs. Litig., 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005). Accordingly, Lennon and Wilson-Clarke were not acting as agents of Walkers FS in performing their duties as Independent Directors to the Funds. As such, Plaintiffs' insistence that the Amended Complaints allege enough facts to infer an agency relationship because Walkers FS provided Lennon and Wilson-Clarke to the Funds[28], is contrary to clearly established precedent. See e.g. Traub v. Robertson American Corp., 368 N.Y.S.2d 958, 963 (1975) ("common law precepts of agency are not conclusive in determining whether a particular operative is an agent for purposes of CPLR § 302(a)(1)").

The weakness of Plaintiffs' argument is further evidenced by Plaintiffs' half-hearted attempts to support it. The Navigator Plaintiff provides no case law to support its agency

---

[28] See Nav. Br. at 19-20; Varga Br. at 25-26.

theory.  Although the Varga Plaintiffs cite a handful of cases, these cases describe a test to establish agency that the Varga Plaintiffs neither discuss nor even attempt to satisfy.  Under those cases, to establish a principal/agency relationship, Plaintiffs must convince the court that the alleged agent (1) engaged in purposeful activities in the state, (2) in relation to the Plaintiffs' transaction, (3) for the benefit of and with the knowledge and consent of the principal and (4) that the principal exercised some control over the agent in the matter.  (Varga Br. at 26), see Louros v. Cyr, 175 F. Supp. 2d 497, 519-20 (S.D.N.Y. 2001).  See also Karabu Corp. v. Gitner, 16 F.Supp.2d 319, 323 (S.D.N.Y. 1998); In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000).  Karabu, on which all of the Varga Plaintiffs' cases rely, states that the "control" prong of this agency test requires the plaintiff to "persuade a court that the defendant was a 'primary actor' in the specific matter in question."'  Karabu, 16 F. Supp. 2d at 324; see also Maersk v. Neewra, 554 F.Supp.2d 424, 442 (S.D.N.Y. 2008) (holding that, to assess control, the court will look at "the ability of the principal to influence [the relevant acts or decisions at issue] by virtue of the parties' respective roles.") (quoting Scholastic, Inc. v. Stouffer, No. 99 Civ. 11480 2000 WL 1154252, at *5 (S.D.N.Y. Aug. 14, 2000).  Plaintiffs fail to allege any facts showing that Walkers FS exercised any control over Lennon and Wilson-Clarke in connection with fulfilling their duties in the capacity of Independent Directors of the Funds.  Thus, the agency argument fails and Plaintiffs' claims against Walkers FS should be dismissed.

> **3.    The Alleged "Connections" Between The Various Walkers Entities Does Not Subject Walkers FS To Specific Jurisdiction.**

Having failed to establish jurisdiction under an agency theory, the Varga Plaintiffs attempt to exert jurisdiction over the Walkers Defendants by virtue of what they term a "mere

department" or "alter ego" theory.[29]  In reality, the Varga Plaintiffs seek to pierce the corporate

veil[30] for jurisdictional purposes.  Despite Varga's myriad references to "significant contacts[31],"

(See Varga Br. at 35) piercing the corporate veil actually requires the Varga Plaintiffs to first

establish that Walkers Global or the Walkers Firm is definitively present in New York.  See e.g.

Mayatextil, 1995 WL 131774, at *4 ("Jurisdiction over a foreign corporation may [] be based on

its relationship on another entity that is definitively "present" in New York."); Aboud v. Rapid

Rentals, Inc., No. 97 Civ. 1742, 1998 WL 132790, at *1 (S.D.N.Y. Feb. 2, 2006) (parent

corporation was "admittedly present in New York"); Beech, 751 F.2d 120 (In reverse-piercing

situation, "[parent] does not dispute that [subsidiary] is 'doing business' in New York).  Here,

the Varga Plaintiffs have not – and cannot – allege that any Walkers defendant or entity is

definitively present in New York – not Scott Lennon, Michelle Wilson-Clarke, Walkers FS, the

Walkers Firm, nor Walkers Global.

Even if the Varga Plaintiffs had alleged that Walkers Global or the Walkers Firm

was definitively present in New York for jurisdictional purposes – or enumerated and satisfied

the factors used in determining the apocryphal "significant contacts" standard – piercing the

corporate veil to extend jurisdiction to the Walkers Defendants would still be inappropriate here.

The Varga Plaintiffs' Opposition points to the four factors courts balance in assessing whether

one corporation is merely a department of another: (i) common ownership (which is essential);

(ii) financial dependency of the subsidiary on the parent; (iii) the degree to which the parent

---

[29] In section I.A.3 of the Varga Plaintiffs' Opposition, it is unclear what sub-section of CPLR § 302 they are asserting confers jurisdiction.

[30] See Mayatextil, S.A. v. Liztek, U.S.A., No. 92 Civ. 4528, 1995 WL 131774, at *5 (Alter-ego or mere-department analysis "allows New York courts to pierce the corporate veil for purposes of jurisdiction only.")

[31] A phrase that makes an appearance in exactly none of the cases Varga cites in support of its veil piercing theory.

interferes in the selection of the subsidiary's executive personnel and fails to observe corporate formalities; and (iv) the degree of the parent's control over the subsidiary's marketing and operational policies. See Mayatextil, 1995 WL 131744, at *5. Plaintiffs do not even pretend to allege facts sufficient to prove (ii) or (iv)[32]. The only case the Varga Plaintiffs cite for factor (iii) is inapposite. The Varga Plaintiffs cite Self Int'l HK Ltd. v. LaSalle Nat'l Bank, Chicago, which held that it was undisputed that there was "mirror image symmetry" between the executive personnel of the two entities. No. 01 Civ. 4291 (RCC), 2002 WL 500372, at *3 (S.D.N.Y. March 29, 2002). Here, the Varga Plaintiffs have not alleged mirror image symmetry. They merely allege that some of the members of the boards of directors of Walkers FS and Walkers SPV are also partners of the Walkers Firm and that all members of the Walkers entities share the same office buildings. (Varga Br. at 36). Thus, even if the Varga Plaintiffs had sufficiently alleged common ownership, the absence of any of the other three factors leaves the court nothing to balance. Accordingly, the Varga Plaintiffs have not established that Walkers FS is a mere department of any Walkers entity.

### 4. The Walkers Defendants Did Not Contract To Provide Services In New York

Plaintiffs' argument that this Court has personal jurisdiction over the Walkers Defendants under the second prong of CPLR § 302(a)(1), which provides for personal jurisdiction to a party that contracts anywhere to provide goods or services within New York also fails. First, the Walkers Defendants contracted to provide services in the Cayman Islands, not New York. Plaintiffs concede, as they must, that the Cayman Islands is the sole location of Walkers business, its employees, including Lennon and Wilson-Clarke, and all of its records. (Nav. Compl. ¶¶ 42-43, 45, 46, 55; Varga Compl. ¶¶ 51-53). All services provided by the

---

[32] See Varga Br. at 36, n.21.

Walkers Defendants to the Funds were provided in the Cayman Islands.  The mere fact that the fruits of those services may have benefited the Funds (or Plaintiffs) at a some later point in time in New York does not alter the location of where the services were actually performed, which is determinative. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 789 (2d Cir. 1999).

C.    **The Walkers Defendants Did Not Commit a Tortious Act Outside New York That Caused Injuries in New York**

Plaintiffs' argument that the Walkers Defendants are subject to this Court's jurisdiction pursuant to Section 302(a)(3) - commission of a tortious act outside New York causing injury to person or property within New York - is meritless.  As established in the Walkers Defendants' Opening Brief, even if Plaintiffs could state a claim of breach of fiduciary duty or aiding and abetting fraud or breach of fiduciary duty, 302(a)(3) is inapplicable because Plaintiffs cannot satisfy a necessary element of the statute - "causing injury in New York."   See Walkers Br. at 25-28.   In cases, such as this one, where Plaintiffs allege a non-physical, commercial injury, the "situs of the injury" is "where the critical events associated with the dispute took place." Jaisan, Inc. v. Sullivan, No. 96 Civ. 4336, 1997 WL 86402 at * 5 (S.D.N.Y. Feb. 28, 1997) (citation omitted).  It is well-settled that financial consequences in New York, or the fact that a plaintiff may reside in New York, are an "[in]sufficient basis for jurisdiction under 302(a)(3) where the underlying events took place outside New York." Id.  As established in the Opening Brief, the "critical event" that caused Plaintiffs' alleged Walkers-related injuries – Defendants' alleged failures to: insure BSAM was following proper guidelines, monitor and assess valuations and the Deloitte Defendants' audits, and to review related-party transactions – could only have taken place, if at all, in the Cayman Islands.  This is where Plaintiffs have

conceded the Walkers Defendants' entire Funds-related business took place and where the Funds themselves were located.  (Varga Compl. ¶ 29).

Even assuming, _arguendo_, that the Plaintiffs can satisfy the "situs of the injury", they still are required by § 302(a)(3) to allege that the Walkers Defendants either: (1) regularly do business in New York or derive substantial revenue from New York, or (2) should reasonably have foreseen that their activities would have consequences in New York and that they derive substantial revenue from interstate or international commerce.  See Bank Brussels, 171 F.3d at 793.  As to the first element, Plaintiffs clearly have not met their burden of showing that any of the Walkers Defendants do business in New York.  See Section III.A supra.  In addition, as established in the Opening Brief, the Amended Complaints are utterly devoid of a single allegation that the Walkers Defendants derived _any_ revenue from services rendered in New York – as opposed to revenue derived for services provided by them in the Cayman Islands to other unaffiliated entities that happen to be from New York.  In order to establish jurisdiction under § 302(a)(3), Plaintiffs must establish forseeability and that the Walkers Defendants derived substantial revenue from interstate or international commerce.  As established in the Opening Brief and above in Section I.B., Plaintiffs have failed to allege that the Walkers Defendants should have foreseen that their allegedly tortious conduct would have consequences in New York.  Accordingly, Plaintiffs' have failed to plead all of the necessary elements to assert jurisdiction pursuant to CPLR § 302(a)(3).  See Ivoclar Vivodent, Inc. v. Ultident, Inc., No. 04 Civ. 0984 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005).[33]

---

[33] Again, Plaintiffs cannot allege or prove that the Walkers Defendants meet the statutory requirements for personal jurisdiction.  It is therefore unnecessary for the Court to consider whether the exercise of jurisdiction under New York's long-arm statute would comport with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316.

## POINT V

### PLAINTIFFS LACK STANDING TO PURSUE DERIVATE CLAIMS

As explained in the Bear Stearns Opening Brief, and adopted and incorporated in the Walkers Defendants' Opening Brief, Plaintiffs' derivative claims against the Walkers Defendants should be dismissed because the Navigator Plaintiff and Plaintiffs Essex and Stillwater in the Varga action failed to make a demand on the Joint Liquidators pursuant to FRCP 23.1 and Delaware law.  The Walkers Defendants refer to Point I in the Bear Stearns Navigator Reply and Bear Stearns Varga Reply, in further support of this argument, which the Walkers Defendants hereby incorporate by reference

### CONCLUSION

For the foregoing reasons, and those set forth in Walkers Defendants' Opening Brief, the Court should dismiss the Complaints in their entirety.

Dated:     New York, New York
              December 19, 2008

**CADWALADER, WICKERSHAM & TAFT LLP**


By: _____/s/ Martin Seidel_____

Martin L. Seidel (MS 9459)
Jessica Lively (JL-1744)
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
Phone: (212) 504-6000
Fax: (212) 504-6666
martin.seidel@cwt.com
jessica.lively@cwt.com

*Attorneys For Defendants Walkers Fund Services Limited, Scott Lennon And Michelle Wilson-Clarke*